Tonia Ouellette Klausner
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 999-5800

Attorneys for Defendant Veeva Systems Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| QUINTILES IMS INCORPORATED and IMS SOFTWARE SERVICES, LTD., | ) ) ) | Case No.:  2:17-cv-00177-CCC-MF |
| Plaintiffs – Counterclaim Defendants, | ) ) ) | Honorable Claire C. Cecchi |
| v. | ) ) | Hearing Date:  April 17, 2017 |
| VEEVA SYSTEMS INC., | ) ) | *Document Electronically Filed* |
| Defendant – Counterclaim Plaintiff. | ) ) ) | |

---

## DEFENDANT VEEVA SYSTEMS INC.'S
## BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS

---

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     PLAINTIFFS' FACT ALLEGATIONS ........................................................ 2

III.    ARGUMENT ................................................................................................. 3

     A.      Legal Standard ................................................................................... 3

     B.      Plaintiffs' DTSA Claim Fails the Retroactivity Bar .............................. 4

     C.      Plaintiffs' New Jersey Claims Should be Dismissed Because New Jersey is the Incorrect Choice of Law for the State Law Allegations................................ 6

          1.      The Controlling Choice of Law Test. ..................................... 6

          2.      California is the Place of the Alleged Wrongdoing. ................... 8

          3.      Material Conflicts Exist Between California and New Jersey Law. ......... 9

               a.      Material Conflict Regarding Automatic UTSA Preemption at the Pleading Stage........................ 10

               b.      Material Conflict Regarding "Inevitable Disclosure."................... 11

          4.      Plaintiffs' State Law Claims are Governed by California Law ............... 12

     D.      The Statute of Limitations Bars Plaintiffs' State-Law Trade Secret Claim.......... 13

          1.      Legal Standard:  Statute of Limitations. .................................. 13

          2.      Legal Standard:  Accrual of a Trade Secret Cause of Action. ................... 14

          3.      Plaintiffs Pleaded that Inquiry Notice was Triggered in 2013.................. 17

     E.      Plaintiffs Fail to Plausibly Plead Software-Based Misappropriation. .................. 18

IV.     CONCLUSION............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams Arms, LLC v. Unified Weapon Sys. Inc.*,
2016 WL 5391394 (M.D. Fla. Sept. 27, 2016) ...................................................5

*Adcor Indus., Inc. v. Bevcorp, LLC*,
411 F. Supp. 2d 778 (N.D. Ohio 2005), *aff'd*, 252 F. App'x 55 (6th Cir.
2007) ...........................................................................................................15, 17

*Alamar Biosciences, Inc. v. Difco Lab., Inc.*,
1996 WL 648286 (E.D. Cal. Oct. 13, 1995) ...........................................15, 16

*All Bus. Sols., Inc. v. NationsLine, Inc.*,
629 F. Supp. 2d 553 (W.D. Va. 2009) ...............................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... *passim*

*ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 2013 WL 6086924 (N.D. Cal. Nov.
19, 2013) ...........................................................................................................19

*Avago Tech. U.S., Inc. v. Nanoprecision Prod., Inc.*,
2017 WL 412524 (N.D. Cal. Jan. 31, 2017) ..................................................4, 5

*Bay State HMO Mgmt. v. Tingley Sys., Inc.*, 152 F. Supp. 2d 95 (D. Mass. 2001) .......................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................... *passim*

*Bulldog N.Y. LLC v. Pepsico, Inc.*,
8 F. Supp. 3d 152 (D. Conn. 2014) ....................................................................7

*Cambridge Filter Corp. v. Int'l Filter Co.*,
548 F. Supp. 1301 (D. Nev. 1982) ......................................................................8

*Central Valley Gen. Hosp. v. Smith*,
162 Cal. App. 4th 501 (Cal. Ct. App. 2008) ...................................................14

*Chasteen v. Unisia Jecs Corp.*,
216 F.3d 1212 (10th Cir. 2000) ........................................................................15

*Chubb INA Holdings Inc. v. Chang*,
2017 WL 499682 (D.N.J. Feb. 7, 2017) ............................................................5

*Dazzle Software II, LLC v. Kinney*,
2016 WL 6248906 (E.D. Mich. Aug. 22, 2016) ................................................5

*Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.*,
    753 F. Supp. 1566 (S.D. Fla. 1990) ......................................................................8

*E.R. Squibb & Sons, Inc. v. Hollister, Inc.*,
    1991 WL 15296 (D.N.J. 1991), *aff'd*, 941 F.2d 1201 (3d Cir. 1991) ..............12

*Edifecs Inc. v. TIBCO Software, Inc.*,
    756 F. Supp. 2d 1313 (W. Wash. 2010) ...............................................................7

*Fail-Safe LLC v. A.O. Smith Corp.*,
    744 F. Supp. 2d 831 (E.D. Wisc. 2010) .............................................................15

*FLIR Sys., Inc. v. Parrish*,
    176 Cal. App. 4th 1270 (Cal. Ct. App. 2009) ....................................................11

*Forcier v. Microsoft Corp.*,
    123 F. Supp. 2d 520 (N.D. Cal. 2000) ...............................................................14

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .................................................................................3

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
    857 F. Supp. 2d 997 (S.D. Cal. 2012) ...............................................................14

*Glue-Fold, Inc. v. Slautterback Corp.*,
    82 Cal. App. 4th 1018 (Cal. Ct. App. 2000) .....................................................17

*Gognat v. Ellsworth*,
    259 P.3d 497 (Colo. 2011) .................................................................................14

*HiRel Connectors, Inc. v. United States*,
    465 F. Supp. 2d 984 (C.D. Cal. 2005) ...............................................................14

*Hydrogen Master Rights, Ltd. v. Weston*,
    2017 WL 78582 (D. Del. Jan. 9, 2017) ................................................................5

*In re Cygnus Telecomms. Tech., LLC Patent Litig.*,
    536 F.2d 1343 (Fed. Cir. 2008) .........................................................................16

*Jacobs Vehicle Sys., Inc. v. Yang*,
    2013 WL 4833058 (M.D.N.C. Sept. 10, 2013) ..................................................19

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (Cal. Ct. App. 2009) .....................................................10

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
    636 F. Supp. 2d 1283 (M.D. Fla. 2009) .............................................................15

*Magnum Defense, Inc. v. Harbour Grp. Ltd.*,
    248 F. Supp. 2d 64 (D.R.I. 2003) ........................................................................8

*Maniscalco v. Brother Int'l (USA) Corp.*,
    709 F.3d 202 (3d Cir. 2013) .................................................................................6

-iii-

*McLeod v. Nw. Alloys, Inc.,*
    969 P.2d 1066 (Wash. Ct. App. 1998)........................................................15

*MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.,*
    422 F. Supp. 2d 724 (N.D. Tex. 2006) .......................................................7

*MODDHA Interactive, Inc. v. Philips Elec. N. Am. Corp.,*
    92 F. Supp. 3d 982 (D. Haw. 2015) ...........................................................14

*Montich v. Miele USA, Inc.,*
    849 F. Supp. 2d 439 (D.N.J. 2012) .............................................................6

*Mopex, Inc. v. Barclays Global Inv'rs, N.A.,*
    2003 WL 880996 (N.D. Ill. Mar. 5, 2003)...................................................16

*Nat'l Starch & Chem. Corp v. Parker Chem. Corp.,*
    530 A.2d 31 (N.J. App. 1987).....................................................................11

*nexTUNE, Inc. v. McKinney,*
    2013 WL 2403243 (W.D. Wash. May 31, 2013)..........................................19

*On-Line Techs., Inc. v. Perkin-Elmer Corp.,*
    253 F. Supp. 2d 313 (D. Conn. 2003), *aff'd in part, vacated in part, and
    remanded by On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,*
    386 F.3d 1133 (Fed. Cir. 2004)...................................................................12

*Ophthalmic Research Assocs. v. SARcode Corp.,*
    2013 WL 2247584 (D. Mass. May 22, 2013) ...........................................7, 11

*P.V. ex rel T.V. v. Camp Jaycee,*
    197 N.J. 132 (2008) .................................................................................6, 7

*Prescott v. Morton Int'l, Inc.,*
    769 F. Supp. 404 (D. Mass. 1990) ..............................................................15

*Raza v. Siemens Med. Sol. USA Inc.,*
    607 F. Supp. 2d 689 (D. Del. 2009) ............................................................16

*Reynolds-Southwestern Corp. v. Dresser Indus., Inc.,*
    438 S.W.2d 135 (Tex. Civ. App. Houston 1969) ........................................16

*Sarkissian Mason, Inc. v. Enterprise Holdings, Inc.,*
    955 F. Supp. 2d 247 (S.D.N.Y 2013).........................................................8

*SCS Healthcare Mktg., LLC v. Allergan USA, Inc.,*
    2012 WL 6565713 (N.J. Super Ct. Ch. Div. Dec. 7. 2012)...........................11

*Silvaco Data Sys. v. Intel Corp.,*
    184 Cal. App. 4th 210 (Cal. Ct. App. 2010) *overruled in part on unrelated
    ground by Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310 (Cal. 2011) ..............10

*SunPower Corp. v. SolarCity Corp.,*
    2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ............................................10

-iv-

*United States v. Gentile,*
    2017 WL 424907 (D.N.J. Jan. 30, 2017) ........................................................4

*Whyte v. Schlage Lock Co.,*
    101 Cal. App. 4th 1443 (Cal. Ct. App. 2002) ...............................................11

**STATUTES**

18 U.S.C. §§ 1831-1839 .......................................................................................4

Cal. Civ. Code. § 3426.1 .....................................................................................13

Cal. Civ. Code § 3426.2(a) ..................................................................................14

Cal. Civ. Code § 3426.6 .......................................................................................13

Cal. Civ. Code § 3426.7 .......................................................................................10

Cal. Civ. Code § 3426.8 .......................................................................................13

N.J. Rev. Stat. § 56:15-2 ......................................................................................13

N.J. Rev. Stat. § 56:15-3 ......................................................................................14

N.J. Rev. Stat. § 56:15-8 ......................................................................................13

N.J. Rev. Stat. § 56:15-9 ......................................................................................10

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................1, 3, 10

**MISCELLANEOUS**

Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e) 130 Stat. 376 ............................4

James Pooley, TRADE SECRETS 10-64 (2016) ....................................................15

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (Am. Law Inst. 1969) ...........................6, 7, 8

## I.      INTRODUCTION

Defendant Veeva Systems Inc. respectfully requests an order under Rule 12(b)(6) dismissing Plaintiffs' causes of action for (1) federal trade secret misappropriation; (2) trade secret misappropriation under New Jersey law; and (3) three New Jersey law tort claims for interference with contract, unfair trade practices, and unjust enrichment.[1]  Veeva moves to dismiss for the following reasons:

● **Plaintiffs' DTSA Claim Fails the Retroactivity Bar**:  A claim under the newly-enacted Defend Trade Secrets Act of 2016 exists only for an "act" of misappropriation after May 11, 2016, but Plaintiffs conspicuously avoid pleading any facts to allege post-DTSA misconduct.

● **Choice of Law Rules Preclude Plaintiffs' State Law Claims**:  Although Plaintiffs purport to plead four state law claims under New Jersey law – chiefly trade secret misappropriation – Plaintiffs plead no conduct in New Jersey.  Despite the total lack of nexus between Plaintiffs' Complaint and this forum, Plaintiffs filed here to avoid specific rules of California trade secret law that would preempt at the pleading stage Plaintiffs' three follow-on, repetitive tort claims.  Under the controlling choice-of-law test for trade secret cases, as well as for tort claims in general, California law, not New Jersey law, governs this dispute.

● **The Statute of Limitations Bars Plaintiffs' Trade Secret Claim**:  Even apart from choice-of-law principles, Plaintiffs' trade secret allegations fail because the Complaint shows that Plaintiffs were aware of what they believed was a threatened misappropriation by Veeva in mid-2013, more than three years before Plaintiffs filed suit.  Plaintiffs allege this threat was maintained through 2016.  Because trade secret claims are subject to a three-year time bar, this claim fails as a matter of law.

● **Plaintiffs Fail to Plausibly Plead Software Misappropriation**:   Even if Plaintiffs' trade secret allegations were not otherwise defective, partial dismissal would be appropriate as to

---

[1] Veeva has also filed a motion to transfer venue for this litigation, including its counterclaims, to the Northern District of California.

Plaintiffs' unsupported, "information and belief" allegation that Veeva engineers misappropriated Plaintiffs' trade secrets by improving Veeva's software. Plaintiffs center their Complaint on allegedly secret healthcare data, not technology, and do not allege that Veeva obtained Plaintiffs' software. Nevertheless, Plaintiffs add three paragraphs to their Complaint listing generic accusations that Veeva misappropriated trade secrets by improving its software – without specifying what improvements were made, or any other supporting details. These conclusory allegations are insufficient under the *Iqbal/Twombly* standard.

For these reasons, Veeva respectfully requests an order dismissing these causes of action.

## II.   PLAINTIFFS' FACT ALLEGATIONS

Plaintiffs' allegations pertinent to each ground for dismissal will be addressed in detail below. In brief, Plaintiffs and Veeva compete in providing software products that render healthcare data readily accessible to customers in the industry. Complaint ¶¶ 16-17, 59-60. Plaintiffs allege that they are headquartered in Connecticut and North Carolina, and that the entity which "holds the rights" to the alleged trade secrets is based in Connecticut. *Id*. ¶¶ 11-12. They allege that Veeva is based in California. *Id*. ¶ 15. Plaintiffs allege they have a New Jersey office but make no fact allegations about any conduct within New Jersey. *Id*. ¶ 11.

Plaintiffs spend most of their Complaint alleging that they possess secret healthcare data, and accusing Veeva of misappropriating that data from customers who do business concurrently with Plaintiffs as well as Veeva. *Id*. ¶¶ 17-46, 52, 67, 73. Plaintiffs contend that Veeva has for several years organized its facilities, personnel, products, and technology to enable it to obtain and misuse Plaintiffs' healthcare data. *Id*. ¶¶ 95-101.

Plaintiffs allege that Veeva's products are "inevitably improved" through misappropriation because Veeva allegedly does not "firewall" employees who troubleshoot products from those who develop products. *Id*. ¶¶ 74-76. They also allege, on "information and belief," that Veeva engineers have made unspecified improvements to its software though misuse of trade secrets. *Id*. ¶¶ 79-81.

Plaintiffs contend that on "April 4, 2016," Veeva allegedly obtained data from a common customer in order to compare Plaintiffs' data to Veeva's data and requested a meeting with the customer – though Plaintiffs do not allege that the meeting ever took place. *Id.* ¶¶ 119-123, 142.

At the same time, Plaintiffs plead that back in mid-2013, some three and a half years before they filed suit, Veeva publicly announced a plan for "crowdsourcing," which Plaintiffs allege can only be interpreted as a plan to engage in misappropriation. *Id.* ¶¶ 61-64. Plaintiffs further contend that from that point forward, Veeva "maintained its cavalier attitude through 2016" regarding Plaintiffs' alleged trade secrets. *Id.* ¶ 65.

## III.   ARGUMENT

### A.   Legal Standard

On a Rule 12(b)(6) motion to dismiss, the *Iqbal/Twombly* pleading rules prohibit plaintiffs from substituting generic, conclusory allegations that track the elements of a cause of action in place of concrete fact allegations specific to the dispute.  "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and thus a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *See id.*  ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.") (quoting *Twombly*, 550 U.S. at 555, 557); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible . . . a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.") (citation omitted). "Speculative" allegations are insufficient. *Iqbal*, 556 U.S. at 680.

*Iqbal* explains the method for analyzing a complaint on a Rule 12(b)(6) motion.  First, courts identify and disregard allegations "that, because they are no more than conclusions, are not

entitled to the assumption of truth." *See* 556 U.S. at 679-80.   Second, courts look at the remaining fact allegations and "determine whether they plausibly give rise" to a claim. *See id*. Fact allegations that are "'merely consistent with' a defendant's liability" are not enough to state a claim, because such facts "stop[] short of the line between possibility and plausibility[.]" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.     Plaintiffs' DTSA Claim Fails The Retroactivity Bar**

Plaintiffs' first cause of action is trade secret misappropriation under the Defend Trade Secrets Act of 2016 (DTSA) – a statute enacted on May 11, 2016.[2]   Plaintiffs fail to state a DTSA claim because (1) the statute does not have retroactive effect; and (2) Plaintiffs failed to plead facts that any "act" of alleged misappropriation took place after DTSA's enactment date.

DTSA is not retroactive:   the statute does not provide a claim for acts of alleged trade secret misappropriation that occurred before Congress enacted the statute.  *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, § 2(e) 130 Stat. 376, https://www.gpo.gov/fdsys/pkg/PLAW-114publ153/html/PLAW-114publ153.htm.   Under the well-established presumption that federal statutes have no retroactive effect other than as provided by Congress, there can be no valid DTSA claim based on prior "acts" of misappropriation.  *See generally United States v. Gentile*, 2017 WL 424907, at *4 (D.N.J. Jan. 30, 2017) (stating rules for presumption against retroactivity).

Thus, an act that occurred before the DTSA was enacted does not give rise to a claim. *See Avago Tech. U.S., Inc. v. Nanoprecision Prod., Inc*., 2017 WL 412524, at *8-9 (N.D. Cal. Jan. 31, 2017) (analyzing text of statute and dismissing claim where plaintiff alleged that prior act of trade secret disclosure "continued" after DTSA enactment date).   While a plaintiff can bring a DTSA claim for alleged misappropriation where such conduct has taken place for the first time after May 2016, it must plead sufficient facts to do so.  *See Avago*, 2017 WL 412524,

---

[2] The DTSA was an amendment to an existing criminal statute, the Economic Espionage Act, and therefore in some instances relies on pre-existing portions of the EEA for its definitions. *See generally* 18 U.S.C. §§ 1831-1839.

at *9; *Adams Arms, LLC v. Unified Weapon Sys. Inc.*, 2016 WL 5391394, at *5 (M.D. Fla. Sept. 27, 2016) (plaintiff pleaded a specific act of disclosure of alleged trade secrets in June 2016 and thus stated a claim).[3]

A vague, "conclusory allegation of continuing use and disclosure" does not suffice. *Hydrogen Master Rights, Ltd. v. Weston*, 2017 WL 78582, at *10 (D. Del. Jan. 9, 2017). Instead, a plaintiff must plead specific facts alleging that a defendant has done or threatens to do something concrete after May 11, 2016 that constitutes an "act" of misappropriation. *See Chubb INA Holdings Inc. v. Chang*, 2017 WL 499682, at *9 (D.N.J. Feb. 7, 2017) (on motions to dismiss and for preliminary injunction, plaintiffs met *Twombly* standard by pleading not just that defendants took trade secrets before May 11, 2016, but had used them for "subsequent solicitation of Chubb's customers" afterwards).

Plaintiffs do not plead any alleged act of trade secret misappropriation that occurred after May 11, 2016. To the contrary, and like the plaintiffs in *Avago* and *Hydrogen Master*, Plaintiffs allege only conclusory speculation: "In violation of IMS' rights, including, upon information and belief, following the enactment of the Defend Trade Secrets Act, Veeva has used its technology and other property to misappropriate IMS's trade secrets, and continues to propagate and/or disseminate IMS's trade secrets, in various improper and unlawful ways as alleged herein." Complaint ¶ 135. Plaintiffs nowhere allege any specific "act" after May 11, 2016.

Tellingly, in Plaintiffs' state-law trade secret claim, Plaintiffs include a specific date that was omitted from the DTSA claim – "April 4, 2016" – and elsewhere alleges acts starting on April 3, 2016 and lasting only until "a full month later" without pleading anything after May 11, 2016. Complaint ¶¶ 120-121, 142. The necessary implication is that if Plaintiffs were able

---

[3] *See also Dazzle Software II, LLC v. Kinney*, 2016 WL 6248906, at *1 (E.D. Mich. Aug. 22, 2016) (dismissing DTSA claim without prejudice; directing that "[p]laintiffs shall plead with specificity any alleged conduct by Defendants post-dating the effective date of the DTSA that, according to Plaintiffs, constitutes a violation of the DTSA[.]").

to plead any "act" after May 11, 2016, they would have, and consciously chose not to because they could not.   The DTSA claim should be dismissed because Plaintiffs plead no act after the date of its enactment, and the statute has no retroactive effect.   Their generic allegation that bad acts have continued does not suffice under *Iqbal/Twombly*, especially where, at best, Plaintiffs alleged only specific acts that ended by early May 2016.

### C.   Plaintiffs' New Jersey Claims Should be Dismissed Because New Jersey is the Incorrect Choice of Law for the State Law Allegations.

Plaintiffs' second cause of action is state-law trade secret misappropriation.   Even though no party is based in this District, and even though they plead no facts specific to New Jersey, Plaintiffs alleged this claim under New Jersey's version of the Uniform Trade Secrets Act.   *See* Complaint ¶¶ 139-150.  Plaintiffs also allege three tort claims, again ostensibly under New Jersey law, which repeat the same trade secret allegations labeled as tortious interference with contract, unfair trade practices, and unjust enrichment.   *Id*. ¶¶ 151-156, 163-173.

Plaintiffs filed in New Jersey for forum-shopping reasons.   But choice-of-law rules mean that Plaintiffs failed to state any of these claims as a matter of law, because New Jersey law does not govern this dispute.   Because Veeva is based in California and stands accused of a corporate strategy to engage in misappropriation, California trade secret law governs this dispute – and extinguishes Plaintiffs' three repetitive tort claims at the pleading stage.

### 1.   The Controlling Choice of Law Test.

In New Jersey, like most states, the "significant relationship" test from the Restatement (Second) Conflict of Laws governs the choice of law analysis.   *See P.V. ex rel T.V. v. Camp Jaycee*, 197 N.J. 132, 139-42 (2008) (setting forth rules for analysis); *Maniscalco v. Brother Int'l (USA) Corp*., 709 F.3d 202, 206-07 (3d Cir. 2013) (same; applying New Jersey analysis).

The first step is to determine whether a conflict exists between the law of the potential forums.   *See P.V.*, 197 N.J. at 143; *Maniscalco*, 709 F.3d at 206.   When a conflict exists, the second step is to apply the Restatement's rules for the causes of action at issue.   *See P.V.*, 197 N.J. at 143; *Maniscalco*, 709 F.3d at 206; *Montich v. Miele USA, Inc*., 849 F. Supp. 2d 439, 451

(D.N.J. 2012) (dismissing New Jersey claim under Restatement rules for consumer protection claim).   For tort claims, and pursuant to Restatement Section 145, courts examine (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the location of the parties; and (4) the place where the parties' relationship is centered.  *See P.V.*, 197 N.J. at 140 (listing four-part test; "The Second Restatement also provides specific guidance for resolving particular types of cases."); RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (Am. Law Inst. 1969).

Under the specific guidance the Restatement provides for trade secret cases, the second factor – the place of the defendant's alleged misappropriation – is by far the most important factor in determining what law applies.  In comparison, the first factor, the plaintiff's place of injury, is given little if any weight.  *See id*. § 145 cmt. f (explaining why "the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts."); *Bulldog N.Y. LLC v. Pepsico, Inc*., 8 F. Supp. 3d 152, 162-63 (D. Conn. 2014) (applying Comment f and applying New York law, where alleged misappropriation occurred); *Ophthalmic Research Assocs. v. SARcode Corp*., 2013 WL 2247584, at *5 (D. Mass. May 22, 2013) (on motion to dismiss, noting Comment f in trade secret cases and thus "[f]ollowing the Second Restatement" on that point to find that California, where defendant was based, supplied the choice of law); *Edifecs Inc. v. TIBCO Software, Inc.*, 756 F. Supp. 2d 1313, 1319 (W. Wash. 2010) (law of California, where alleged misappropriation occurred, applied on motion to dismiss, even though Plaintiff based in Washington; "Comment F of the Restatement shows that the place where the injurious conduct occurred is heavily weighted in trade secret disputes."); *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc*., 422 F. Supp. 2d 724, 739 (N.D. Tex. 2006) (Texas law applied to trade secret claim under Restatement test because alleged wrongdoing took place there, though

both parties resided elsewhere); *Default Proof Credit Card Sys., Inc. v. State Street Bank & Trust Co.*, 753 F. Supp. 1566, 1570-71 (S.D. Fla. 1990) (same).[4]

The third factor (location of the parties) matters less, and is neutral when the parties' locations differ. *See Default Proof*, 753 F. Supp. at 1571 (following RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 cmt. e). Likewise, the fourth factor (whether the parties' relationship was centered anywhere) is insignificant in a trade secret case where the parties are located in different places. *See id.*

### 2.   California is the Place of the Alleged Wrongdoing.

Plaintiffs carefully avoid pleading that Veeva engaged in alleged misappropriation in New Jersey. Instead, Plaintiffs use an either/or formulation to plead that Veeva either engaged in wrongdoing in New Jersey, or caused injury in New Jersey. Complaint ¶ 9. Nowhere in the Complaint do Plaintiffs allege any facts that Veeva undertook an act of misappropriation in New Jersey, much less that Veeva management directed wrongdoing from New Jersey.

To the contrary, Plaintiffs allege that Veeva is based in Pleasanton, California. *Id.* ¶ 15. The gist of Plaintiffs' Complaint is not an allegation that some stray employee somewhere around the country or the world did something wrong. Rather, Plaintiffs allege that Veeva has engaged in a company-wide effort, to misappropriate trade secrets at the direction of company management. That is, Plaintiffs contend that Veeva has dedicated a corporate strategy to misuse Plaintiffs' data, and to modify Veeva's technology, for global competition. *Id.* ¶¶ 3, 6, 72-73, 148.

---

[4] Other cases applying this rule include *Sarkissian Mason, Inc. v. Enterprise Holdings, Inc.*, 955 F. Supp. 2d 247, 254 (S.D.N.Y 2013) (Missouri law, where alleged misappropriation occurred, governed trade secret claim); *Magnum Defense, Inc. v. Harbour Grp. Ltd.*, 248 F. Supp. 2d 64, 69 (D.R.I. 2003) (applying Rhode Island UTSA to trade secret claim because alleged wrongdoing took place there); *Bay State HMO Mgmt. v. Tingley Sys., Inc.*, 152 F. Supp. 2d 95, 115 (D. Mass. 2001) (following Restatement to hold that Massachusetts (place of alleged wrongdoing) determined choice of law for trade secret claim); *Cambridge Filter Corp. v. Int'l Filter Co.*, 548 F. Supp. 1301, 1305 (D. Nev. 1982) (applying California law to trade secret claim because "[t]hat is the state where any disclosure or use of Plaintiff's trade secrets or confidential information would be taking place.").

Plaintiffs' specific allegations focus on Veeva's management and central corporate operations, not any localized act in New Jersey:  They assert that  (1) Veeva made corporate announcements Plaintiffs construe as admissions of misappropriation (*id*. ¶¶ 62-64); (2) Veeva's CEO displayed the company's continuing "cavalier attitude" towards Plaintiffs' alleged secrets (*id*. ¶ 65); (3) a Veeva "senior executive," or perhaps two such executives, made a statement Plaintiffs construe as supporting their allegation that Veeva's overall division of personnel could lead to misappropriation (*id*. ¶¶ 76, 124); (4) Veeva's corporate plan is to steal from IMS rather than doing its own work (*id*. ¶ 87); (5) Veeva has structured its software, facilities, and personnel to facilitate the alleged misappropriation (*id*. ¶¶ 96-98); (6) Veeva "lied" to Plaintiffs when they worked with Veeva management (*id*. ¶¶ 100-101); (7) Veeva operates a website which Plaintiffs allege falsely claims that Veeva does not misappropriate (*id*. ¶¶ 104-109); and (8) Plaintiffs audited "Veeva's premises" and believe this supports their misappropriation claim (*id*. ¶ 113).   Plaintiffs therefore allege misappropriation directed from, occurring at, and deriving from Veeva's headquarters in California.

Meanwhile, Plaintiffs are silent about any facts in New Jersey.  They do not allege that Veeva did anything there, that any common client is based there, or any other specific facts.  Instead, in the boilerplate paragraphs of their trade secret cause of action, they use the phrase "New Jersey and elsewhere" and "New Jersey and other states."  *Id*. ¶¶ 140-143.   No fact allegations support these everything-and-nothing generalities.  In turn, Plaintiffs allege they are headquartered in Connecticut, and that the entity which owns the alleged trade secrets is based there.  *Id*. ¶¶ 12-13.  The only justification Plaintiffs allege for filing under New Jersey law is that the alleged secrets were expensive to assemble – but they allege no facts tying that purported assembly process to New Jersey.  *Id*. ¶ 145.

### 3.    Material Conflicts Exist Between California and New Jersey Law.

There are material conflicts between the trade secret laws of California and New Jersey – conflicts that appear on the face of the Complaint, and explain why Plaintiffs forum-shopped to file in a district where no party is based.

a. **Material Conflict Regarding Automatic UTSA Preemption at the Pleading Stage.**

California and New Jersey enacted materially different language in their respective versions of the Uniform Trade Secrets Act ("UTSA"). Under California's version, Plaintiffs' three tack-on claims – tortious interference, unjust enrichment, and unfair trade practices (to the extent it covers the same fact allegations as the trade secret claim) – are extinguished at the pleading stage as a matter of law. By contrast, New Jersey's legislature inserted custom language into the UTSA's preemption clause softening its effect, such that whether the statute preempts a conflicting tort claim involves a factual analysis.

Under California's UTSA, the statute completely displaces overlapping tort claims as a matter of law, including each of the three claims pleaded here, when they are premised on allegations that a defendant misused the plaintiff's confidential business information. It makes no difference how the plaintiff labels the information at issue – whether "trade secret" or "confidential" or "proprietary" – or what it calls the claim. *See* Cal. Civ. Code § 3426.7; *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *14-15 (N.D. Cal. Dec. 11, 2012) (explaining rule of complete California UTSA displacement in detail and dismissing multiple alternative claims on Rule 12(b)(6) motion that were premised on alleged misuse of confidential information); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 232-40 (Cal. Ct. App. 2010), *overruled in part on unrelated ground*, *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (Cal. 2011) (precedential California appellate ruling affirming broad UTSA preemption of numerous claims including unfair competition); *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 957-60 (Cal. Ct. App. 2009) (same). Under California law, Plaintiffs' three follow-on claims are preempted at the outset.

By contrast, New Jersey altered the UTSA displacement language when it enacted the statute in 2012. It added a clause stating that the statute is "in addition to" existing common law and "nothing contained herein shall be construed to deny, abrogate or impair" the common law except for "conflicting" law for "misappropriation of a trade secret." *See* N.J. Rev. Stat. §

56:15-9.  Thus, New Jersey – unlike California and most other states – does not follow the majority rule on UTSA preemption, and instead reserves preemption for situations where a conflict is shown between the common law and a trade secret claim.  *See generally SCS Healthcare Mktg., LLC v. Allergan USA, Inc*., 2012 WL 6565713, at *6-7 (N.J. Super Ct. Ch. Div. Dec. 7. 2012) (unpublished ruling analyzing statute and denying preemption on motion to dismiss).   California's broad preemption rule thus constitutes a material conflict of law.  *See SARcode*, 2013 WL 2247584, at *4 (finding California UTSA's automatic preemption of plaintiff's unfair competition claim, compared to Massachusetts trade secret law, a conflict).

### b.    Material Conflict Regarding "Inevitable Disclosure."

Part of Plaintiffs' Complaint involves a theory of trade secret misappropriation called inevitable disclosure:   the concept that Veeva's corporate infrastructure, facilities, and personnel are organized such that misappropriation will unavoidably occur.  Complaint ¶¶ 76, 87, 95-101.  Indeed, Plaintiffs specifically allege that "Veeva's CRM and MDM Application updates and enhancements are improperly and inevitably improved by Veeva's use of IMS Market Research Offerings."  *Id*. ¶ 74.

California completely rejects any theory of "inevitable disclosure" as a matter of law. *See Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443, 1464 (Cal. Ct. App. 2002) ("inevitable disclosure" is not a viable theory under California trade secret law).   Speculative accusations of future, unavoidable misuse of confidential information are not only impermissible, but sanctionable to assert – even when the plaintiff has a reasonable suspicion that trade secrets might be misused.  *See FLIR Sys., Inc. v. Parrish*, 176 Cal. App. 4th 1270, 1277, 1278 n.4 (Cal. Ct. App. 2009) (describing California's rejection of "inevitable disclosure" theory).   Thus, Plaintiffs could not allege under California law that Veeva will inevitably engage in misappropriation based on how it organizes its business, or for any other reason.

Again by contrast, New Jersey law follows a fact-based approach to "inevitable disclosure," rather than a bright line rule.  *See generally Nat'l Starch & Chem. Corp v. Parker Chem. Corp*., 530 A.2d 31, 32-33 (N.J. App. 1987) (granting inevitable disclosure-based

injection on the facts);  *E.R. Squibb & Sons, Inc. v. Hollister, Inc.*, 1991 WL 15296, at *11-12 (D.N.J. 1991), *aff'd*, 941 F.2d 1201 (3d Cir. 1991)  (denying injunction).

### 4.     Plaintiffs' State Law Claims are Governed by California Law

Plaintiffs filed in this District at least (1) to take advantage of New Jersey's unusual narrow UTSA preemption to allege additional, overlapping tort claims; and (2) to attempt "inevitable disclosure" based accusations.[5]

Plaintiffs raise three state law claims premised on the same fact allegations as the trade secret claim:  (1) tortious interference with contract; (2) common law unfair trade practices, and (3) unjust enrichment.  Plaintiffs allege each under New Jersey law.  *See* Complaint ¶¶ 151-156, 163-173.

But Plaintiffs cannot evade the procedural and substantive rules of California trade secret law by alleging these claims under New Jersey law.  Because there is a clear conflict between the trade secret laws of New Jersey and California, the Court must engage in a choice-of-law analysis to determine which law applies to Plaintiffs' state law claims.

Under the controlling test, California law governs.  First, and with respect to the Restatement test, the place of alleged wrongdoing is California, where Veeva is located, for all the reasons set forth above.  This factor is the most important in the "significant relationship" analysis, and counts much more than Plaintiffs' location in Connecticut – and certainly more than New Jersey where neither party is based, and about which no specific facts are alleged. The other factors in the "significant relationship" test are neutral:  the parties' location is split, and there is no "center" to their relationship in a trade secret dispute.  New Jersey is not the location for *any* of these four factors.  Under the Restatement analysis, the corporate origin point of Veeva's alleged wrongdoing supplies the choice of law.

_____

[5] Plaintiffs avoided their home state of Connecticut for similar reasons; the Connecticut UTSA blocks overlapping tort claims like California does.  *See On-Line Techs., Inc. v. Perkin-Elmer Corp.*, 253 F. Supp. 2d 313, 334 (D. Conn. 2003) (UTSA preemption of overlapping fraud claim), *aff'd in part, vacated in part, and remanded by On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1146 (Fed. Cir. 2004).

Because California law governs Plaintiffs' state law claims, and because California law preempts and thus extinguishes the three repetitive tort claims, all four of Plaintiffs' New Jersey claims should be dismissed as a matter of law. [6]

### D.   The Statute of Limitations Bars Plaintiffs' State-Law Trade Secret Claim.

Regardless of the choice of law governing Plaintiffs' trade secret claim, the claim also fails as a matter of law because Plaintiffs pleaded facts showing that the three-year statute of limitations expired before they filed this lawsuit on January 10, 2017.  Specifically, Plaintiffs allege that Veeva publicly announced an intent and a threat to engage in misappropriation in mid-2013, and maintained that attitude over the years.  Plaintiffs' belief triggered their duty of inquiry notice then, more than three years before filing suit.

### 1.   Legal Standard:  Statute of Limitations.

The limitations period for a misappropriation claim is three years.  Cal. Civ. Code § 3426.6 ("An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."); *see also* N.J. Rev. Stat. § 56:15-8 (same).  "Misappropriation" includes not just unlawful use and disclosure of a trade secret, but mere unauthorized acquisition.  Cal. Civ. Code. § 3426.1; N.J. Rev. Stat. § 56:15-2.

A claim for misappropriation of trade secrets is a single claim for limitations purposes, and the limitations period therefore is not extended on a "continuing tort" theory.  *See* Cal. Civ. Code § 3426.8; N.J. Rev. Stat. § 56:15-8.  When the statute begins to run on a claimed trade secret, the limitations period also runs on all information relating to the allegations.  Put another

---

[6] To the extent Plaintiffs' unfair trade practices claim does not just re-state the trade secret-like allegations, and instead is based on postings on Veeva's corporate website that Plaintiffs contend are false, Plaintiffs do not allege that Veeva's website is hosted, operated, or designed in New Jersey.  That portion of the claim too has no significant relationship to New Jersey, and California law should govern it, even if it were to survive California UTSA preemption.

way:  related claims stand and fall together.[7]

Dismissal without leave to amend is appropriate when a plaintiff pleads facts on the face of the complaint that trigger the statute of limitations.  *See MODDHA Interactive, Inc. v. Philips Elec. N. Am. Corp.*, 92 F. Supp. 3d 982, 993-94 (D. Haw. 2015) (plaintiff's misappropriation allegations showed information sufficient to have caused a reasonable party to investigate its suspicions more than three years before complaint was filed).

## 2.      Legal Standard:  Accrual of a Trade Secret Cause of Action.

Plaintiffs filed suit on January 10, 2017, so the relevant date is January 10, 2014.  In trade secret cases, UTSA jurisdictions apply virtually the same legal analysis for determining when the statute of limitations begins to run.

A trade secret plaintiff need not suffer damages before a cause of action exists, nor must a threat of misappropriation become actual.  Cal. Civ. Code § 3426.2(a) ("Actual or threatened misappropriation may be enjoined."); N.J. Rev. Stat. § 56:15-3 (same).   The claim accrues earlier.   A UTSA claim arises when there is a basis for an injunction to stop threatened or ongoing misappropriation, and that may be well before any wrongful act culminates in commercial use of a trade secret.  *See Central Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 528 (Cal. Ct. App. 2008) (noting that an UTSA action for injunctive relief over "threatened" misappropriation could include a request merely to return trade secrets to their owner).

As the text of the UTSA make clear, the limitations test is based on (1) a "should have known" standard; and (2) a duty to diligently investigate.  A trade secret plaintiff therefore need

---

[7] *See Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012) (stating rule where "all of Plaintiff's purported trade secrets were allegedly shared in the same time period and in connection with the same relationship"; granting summary judgment); *Gognat v. Ellsworth*, 259 P.3d 497, 502-04 (Colo. 2011) (stating rule and affirming summary judgment); *HiRel Connectors, Inc. v. United States*, 465 F. Supp. 2d 984, 988 (C.D. Cal. 2005) (same where plaintiff sues for "separate misappropriations of related trade secrets"); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 527-28 (N.D. Cal. 2000) (stating rule).

not have actual knowledge of a potential claim for the limitations period to start, much less a "smoking gun."[8]  If there is reason to suspect misappropriation, and if a reasonable investigation would have produced facts to justify a lawsuit, the limitations period expires even if the plaintiff never conducted the investigation.[9]  For that reason, the plaintiff is charged with the knowledge of facts an investigation would have shown.[10]  Whether the plaintiff knew or should have known facts is what matters, not whether the plaintiff recognized that the facts would establish a cause of action.[11]

Of course, ungrounded fear and suspicion premised on speculation alone does not trigger the limitations period.   Between the extremes of smoking-gun evidence and speculation, a grounded suspicion triggers the statute – *i.e.*, inquiry notice.   That is, the plaintiff need only have known of facts that would cause a reasonable person to start investigating.   The statute thus starts running when the "plaintiff has become aware of 'enough suspicious circumstances that would lead a reasonably prudent person to discover the harm.'"[12]

Under these principles, a defendant's public announcements and publications trigger

---

[8] *See Chasteen v. Unisia Jecs Corp.*, 216 F.3d 1212, 1218 (10th Cir. 2000) (affirming summary judgment; statute of limitations begins to run "not when a plaintiff can positively and directly prove misappropriation").

[9] *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, 636 F. Supp. 2d 1283, 1293-94 (M.D. Fla. 2009) (collecting nationwide cases); *Fail-Safe LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 831, 852 (E.D. Wisc. 2010) (quoting *Knights Armament*; granting summary judgment).

[10] *See Adcor Indus., Inc. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 786 (N.D. Ohio 2005) (citing nationwide cases; granting summary judgment), *aff'd*, 252 F. App'x 55 (6th Cir. 2007); *Alamar Biosciences, Inc. v. Difco Lab., Inc.*, 1996 WL 648286, at *3 (E.D. Cal. Oct. 13, 1995) (granting summary judgment).

[11] *See Chasteen*, 216 F.3d at 1217 ([W]hether plaintiff "understood that the disclosures legally constituted a misappropriation of trade secrets is of no consequence, as long as [plaintiff] knew the facts which would give rise to such a claim"); *McLeod v. Nw. Alloys, Inc.*, 969 P.2d 1066, 1070 (Wash. Ct. App. 1998) (affirming summary judgment).

inquiry notice:

- A plaintiff's allegation in a complaint that a defendant's public product description was evidence of wrongdoing showed that the claim was time-barred, and the plaintiff could not backtrack and argue that the announcement didn't really disclose enough detail to permit the plaintiff to judge whether misappropriation had occurred.[13]

- A defendant's public announcement that it has launched a similar technology after receiving the plaintiff's claimed trade secrets often triggers the statute.[14]  Similarly, a public notice such as a published patent application that the plaintiff did not even read can constitute constructive notice to trigger the statute.[15]

- A plaintiff's knowledge that the defendant was advertising a product at trade shows can trigger the statute, even if the plaintiff is not entirely sure whether the defendant was "actually using" the claimed trade secret.[16]

- A plaintiff cannot argue that it did not need to take action because it did not believe that the defendant posed a serious economic threat, or that the defendant had ceased advertising a

---

[12] (...continued from previous page)
*See* James Pooley, TRADE SECRETS 10-64 (2016) (citing *Prescott v. Morton Int'l, Inc.*, 769 F. Supp. 404, 408 (D. Mass. 1990)).

[13] *See Mopex, Inc. v. Barclays Global Inv'rs, N.A.*, 2003 WL 880996, at *1-2 (N.D. Ill. Mar. 5, 2003) (granting motion to dismiss based on plaintiff's judicial admission).

[14] *See In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 536 F.2d 1343, 1357 (Fed. Cir. 2008) (affirming motion to dismiss; plaintiff admitted in complaint that it had been aware that defendant had announced a plan to launch a service similar to plaintiff's claimed secrets); *see also Reynolds-Southwestern Corp. v. Dresser Indus., Inc.*, 438 S.W.2d 135, 140 (Tex. Civ. App. – Houston 1969, writ ref'd n.r.e.) (plaintiff heard that defendant had launched a similar product and "lost faith" but did not sue).

[15] *See Raza v. Siemens Med. Sol. USA Inc.*, 607 F. Supp. 2d 689, 693 (D. Del. 2009).

[16] *See Alamar*, 1996 WL 648286, at *4 (plaintiff's employees saw defendant's trade show exhibit and asked defendant about it).

suspicious product.[17]

### 3.    Plaintiffs Pleaded that Inquiry Notice was Triggered in 2013.

Plaintiffs allege that in mid-2013, Veeva publicly announced a plan to gather data through a "crowdsourcing model."   Complaint ¶¶ 61-62.   Plaintiffs allege that this unambiguously could only be construed as a threat to misappropriate Plaintiffs' information:

> Because many life sciences and other companies rely on IMS Healthcare Professional data, this crowdsourcing proposal was just another way of advising clients that Veeva would disseminate IMS Healthcare Professional data without IMS's consent … [s]uch proposed crowdsourcing would have violated . . . . IMS's proprietary rights in information belonging to it.  Indeed, the very nature of a crowdsourcing model is completely antithetical to respecting the confidential and proprietary information belonging to clients and third parties.

*Id*. ¶¶ 63-64.  Plaintiffs allege that Veeva "eventually dropped" this "model," but "maintained its cavalier attitude through 2016 with regard to the proprietary nature of IMS Health Care Professional Data."   *Id*. ¶ 65.   Plaintiffs also allege that they have been investigating their allegations directly with Veeva "for more than two years[.]"  *Id*. ¶ 100.

These admissions mean that the UTSA statute of limitations was triggered in mid-2013, when Plaintiffs argue that Veeva's announcement "was just another way" to threaten misappropriation, because "the very nature" of the announcement meant that "proprietary information" would be violated.  Plaintiffs' allegation that Veeva "maintained" this "attitude" through 2016 is also a concession that the perceived threat was constant and ongoing.  And Plaintiffs clearly were on notice and had commenced an investigation by 2015, within the limitations period.

These admissions exceed anything seen in the cases cited above.  In the typical trade secret statute of limitations dispute, the plaintiff may have seen enough or known enough to

---

[17] *See Adcor*, 411 F. Supp. 2d at 789 (plaintiff argued that it did not take action because the defendant was not causing enough harm to justify the cost of suit); *Glue-Fold, Inc. v. Slautterback Corp*., 82 Cal. App. 4th 1018, 1027 (Cal. Ct. App. 2000) ("There is an air of unreality about [plaintiff's] implicit claim that it was entitled to relax once [defendant] had halted its advertising campaign[.]").

believe that a defendant was, behind the scenes, stealing technology.   Here, by contrast, Plaintiffs pleaded that Veeva publicly announced a practice that Plaintiffs contend unambiguously amounts, "by its nature," to misappropriation.   Plaintiffs not only claim that Veeva publicly announced a threat to misappropriate data, but also contend that Veeva "maintained" that attitude for years – all while Plaintiffs allege that Veeva engaged in a company-wide, management-level plot to harm Plaintiffs through inevitable misappropriation.

Plaintiffs' admission means that Plaintiffs were on inquiry notice, by mid-2013, of their misappropriation contentions.   As noted above, a trade secret claim accrues when a "threatened misappropriation" is made, even if there is no completed act of misappropriation, and even if there are no damages.   A threat is exactly what Plaintiffs have alleged.   Simply put, Plaintiffs knew enough in mid-2013 – in their own words – to investigate.   That means the clock started ticking then, and it means that Plaintiffs are charged with knowledge within the limitations period of all the things they claim are wrongful – including Veeva's organization of its facilities and personnel, which Plaintiffs allege to be inherently wrongful.   Indeed, because Plaintiffs contend that Veeva's very corporate infrastructure leads ineluctably to misappropriation, Plaintiffs cannot plausibly contend they did not know enough to sue before mid-2016 when the limitations period expired.   Plaintiffs' trade secret claim is time-barred as a matter of law.

### E.    Plaintiffs Fail to Plausibly Plead Software-Based Misappropriation.

Separately, Plaintiffs fail to plead plausible facts to support their empty, "information and belief" allegation that Veeva engineers wrongfully improved Veeva software in some unidentified fashion.

While a trade secret plaintiff need not precisely identify its alleged secrets in a public complaint, it still must meet the *Iqbal/Twombly* pleading standard:   conclusory accusations without factual enhancement are insufficient.   *See All Bus. Sols., Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 559 (W.D. Va. 2009) (dismissing trade secret claim where plaintiff made simplistic allegation that defendant sought to misuse customer information, without additional,

supporting fact allegations to meet the *Iqbal /Twombly* test).   Speculation that a defendant may have engaged in an act of misappropriation is not enough.   *See nexTUNE, Inc. v. McKinney*, 2013 WL 2403243, at *4 (W.D. Wash. May 31, 2013) (plaintiff alleged that one defendant may have shared allegedly secret documents with another).   And even where a trade secret plaintiff adequately pleads one portion of its claim, it still faces partial dismissal of the claim if other allegations are inadequate.   *See Jacobs Vehicle Sys., Inc. v. Yang*, 2013 WL 4833058, at *8 (M.D.N.C. Sept. 10, 2013) (plaintiff pleaded details to allege that defendant misused trade secrets in patent applications, but claim nonetheless partially dismissed as to plaintiff's vague allegations that defendant misused secrets in such areas as product development); *ATS Prod., Inc. v. Champion Fiberglass, Inc.*, 2013 WL 6086924, at *3-4 (N.D. Cal. Nov. 19, 2013) (same where plaintiff adequately pleaded a wrongful acquisition, but failed to sufficiently plead that defendant used the alleged trade secret).

Plaintiffs spend most of their Complaint alleging that Veeva misused Plaintiffs' healthcare data by using it to compete against Plaintiffs in the marketing of competing products.   But then, without specific fact allegations, Plaintiffs allege additional, conclusory allegations that Veeva engineers improved Veeva's software, in some unspecified fashion, via some unidentified use of Plaintiffs' healthcare data.   Complaint ¶¶ 74-81.   Plaintiffs do not allege that Veeva obtained Plaintiffs' own software, and they do not explain how or why an alleged misuse of healthcare data could lead to software improvement.   Most important, they do not identify a single change, alteration, or modification of any Veeva software product. Instead, Plaintiffs allege generically on "information and belief" that Veeva designs, improves, and tests its software in some fashion that uses Plaintiffs' healthcare data.

This is insufficient under the *Iqbal/Twombly* standard.   If Plaintiffs mean to plausibly allege that Veeva designed or changed software through misappropriation, Plaintiffs should be required to identify the specific change(s) that Veeva supposedly made instead of relying on content-free "information and belief" generalities.   At best, these allegations are "'merely consistent with' a defendant's liability" and thus are not enough to state a claim, because they

"stop[] short of the line between possibility and plausibility[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).   Because Plaintiffs' software-based allegations would fail regardless of the choice-of-law and limitations issues, this is an independent basis for partial dismissal.

## IV.   CONCLUSION

For the foregoing reasons, Veeva respectfully requests that the Court dismiss Plaintiffs' DTSA and New Jersey law claims.

Dated: March 13, 2017

Respectfully Submitted,

Steven F. Benz, *pro hac vice pending*
Benjamin L. Rudofsky, *pro hac vice pending*
Stefan J. Hasselblad, *pro hac vice pending*
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
sbenz@kellogghansen.com
brudofsky@kellogghansen.com
shasselblad@kellogghansen.com

By:  *s/ Tonia Ouellette Klausner*
Tonia Ouellette Klausner
Charles Tait Graves, admitted *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 999-5800
tklausner@wsgr.com
tgraves@wsgr.com

*Attorneys for Defendant Veeva Systems Inc.*

## CERTIFICATE OF SERVICE

I, Tonia Ouellette Klausner, hereby certify that on March 13, 2017, the foregoing document was filed through the Court's CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


By: *s/ Tonia Ouellette Klausner*
Tonia Ouellette Klausner