Robert I. Steiner
Monica Hanna
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Tel: (973) 503-5900

Michael Critchley
Amy Luria
CRITCHLEY, KINUM & DENOIA, LLC
75 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 422-9200

*Attorneys for Plaintiffs-Counterclaim Defendants Quintiles IMS Inc. and IMS Software Services, Ltd.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| QUINTILES IMS INC. and IMS SOFTWARE SERVICES, LTD., | Case No.: 2:17-cv-00177-CCC-MF |
| Plaintiffs-Counterclaim Defendants, | |
| v. | Return Date: July 3, 2017 |
| VEEVA SYSTEMS INC., | |
| Defendant-Counterclaim Plaintiff. | |

## PLAINTIFFS' REPLY IN SUPPORT OF ITS
## <u>MOTION TO DISMISS COUNTERCLAIMS</u>

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT......................................................................................................... 2

  I.   VEEVA'S SECTION TWO CLAIMS ARE WITHOUT MERIT ................. 2

     A.   Veeva's new theory that IMS engaged in exclusive dealing, rather than refused to deal with Veeva, is based on inapposite cases and is unsupported by factual allegations .......................................................... 2

     B.   Veeva's argument regarding IMS's alleged refusal to deal with Veeva is wrong under *Aspen Skiing* and its progeny................................................ 4

     C.   Even viewing IMS's alleged conduct as a whole, Veeva's unpled "monopoly broth" theory fails to state a Section Two claim .................. 6

     D.   Veeva has not pled a dangerous probability of achieving monopoly power in MDM ................................................................................... 7

  II.   VEEVA'S SECTION ONE CLAIMS ARE WITHOUT MERIT................. 9

     A.   Veeva cannot point to parallel conduct or plus factors that make an IMS-Cegedim conspiracy plausible............................................................... 9

     B.   Veeva's jumbled clarifications of its claim based on the Reltio agreement highlight that there is no Section One violation......................................12

  III. VEEVA'S STATE LAW CLAIMS ARE WITHOUT MERIT ...................13

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aspen Skiing Co. v. Aspen Skiing Highlands Corp.*,
    472 U.S. 585 (1985).............................................................................4

*Banxcorp v. Bankrate Inc.*,
    No. 07–3398 (ES)(CLW), 2012 WL 3988182 (D.N.J. Sept. 11, 2012).............12

*Bayer AG v. Schein Pharm., Inc.*,
    129 F. Supp. 2d 705 (D.N.J. 2001), *aff'd*, 301 F.3d 1306 (Fed. Cir. 2002).......13

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007)...........................................................6, 8

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011)..............................................................10

*Conwood Co. v. U.S. Tobacco Co.*,
    290 F.3d 768 (6th Cir. 2002)...............................................................7

*Dial a Car, Inc. v. Transportation, Inc.*,
    82 F.3d 484 (D.C. Cir. 1996) ..............................................................8

*Glory Licensing LLC v. Toys R Us, Inc.*,
    No. CIV. 09-4252 FSH, 2011 WL 1870591 (D.N.J. May 16, 2011)................13

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)............................................................ 4-5

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)....................................................... 10-11

*Int'l Ass'n of Machinists and Aerospace Workers v. Verso Corp.*,
    153 F. Supp. 3d 419 (D. Me. 2015)....................................................10

*Integrated Storage Consulting Servs., Inc. v. Netapp, Inc.*,
    No. 5:12-CV-06209-EJD, 2016 WL 3648716 (N.D. Cal. July 7, 2016) ..... 14-15

*Lorain Journal Co. v. United States*,
    342 U.S. 143 (1951) ....................................................................... 2-3

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) ..........................................................5

*Omnicare, Inc. v. Unitedhealth Grp., Inc.*,
    524 F. Supp. 2d 1031 (N.D. Ill. 2007) ...............................................10

*Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*,
    836 F.2d 173 (3d Cir. 1988) ..........................................................1, 6

*RealPage, Inc. v. Yardi Systems, Inc.*,
    852 F. Supp. 2d 1215 (C.D. Cal. 2012) .........................................3, 15

*Rossi v. Standard Roofing, Inc.*,
    156 F.3d 452 (3d Cir. 1998) .............................................................13

*SCEcorp v. Super. Ct. of San Diego Cty.*,
    3 Cal. App. 4th 673 (Cal. Ct. App. 1992) ..........................................14

*Schuylkill Health Sys. v. Cardinal Health 200, LLC*,
    2014 WL 3746817 (E.D. Pa. July 30, 2014) .......................................8

*Sullivan v. Finn*,
    No. 16-CV-01948-WHO, 2017 WL 1209933 (N.D. Cal. Apr. 3, 2017) ..... 14-15

*TI Inv. Servs., LLC v. Microsoft Corp.*,
    23 F. Supp. 3d 451 (D.N.J. 2014) .....................................................11

*Trembath v. Digardi*,
    43 Cal. App. 3d 834 (Cal. Ct. App. 1974) .........................................15

*United States v. Dentsply Int'l, Inc.*,
    399 F.3d 181 (3d Cir. 2005) ..............................................................3

*United States v. General Motors Corp.*,
    384 U.S. 127 (1966) .........................................................................13

iii

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) ....................................................................... 3-4

*United W. Med. Ctrs. v. Super. Ct. of Orange Cty.*,
   49 Cal. Rptr. 2d 682 (Cal. Ct. App. 1996), *as modified* (Feb. 26, 1996)...........15

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)................................................................................. 2, 4-5

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010).....................................................................7

**Federal Statutes**

15 U.S.C. § 6a.................................................................................11

## INTRODUCTION

Veeva argues in its opposition that IMS has obligations to share intellectual property that are not found in any antitrust statute or case.  It attempts to fabricate new legal standards and relies heavily on mischaracterizations of its own allegations.[1]  It does this in an attempt to impose massive antitrust discovery costs on IMS in a case that is about Veeva's own wrongdoing in stealing the very trade secrets it now asks the Court to force IMS to share.  The Court should decline Veeva's invitation to rewrite the antitrust laws and should dismiss its counterclaims, just as many courts have dismissed similarly baseless antitrust claims under Rule 12(b)(6).

---

[1] Time and again, Veeva's opposition asserts facts and cites paragraphs of its counterclaims that do not allege those facts.  For example, Veeva states, "Before mid-2014, customers were generally free to buy data and analytics software separately, and from the company of their choosing."  Opp'n at 4.  It cites paragraphs 28 and 68 of its counterclaims in support, but those paragraphs allege nothing about customers being free to buy data and analytics software separately.  Veeva again cites paragraph 68 to support the statement that "IMS first invited customers to use its data on the understanding that they could use it with other products – including Veeva's MDM or Reference Data."  Opp'n at 13.  But paragraph 68 alleges nothing about IMS customers.  Veeva cites paragraphs 68 and 69 to support the assertion that "IMS apparently believed its worldwide market share in data was insufficient to block customers from using Veeva MDM," Opp'n at 26, but there is no allegation in those paragraphs about IMS's belief regarding the sufficiency of its market share.  Only factual allegations in the counterclaims themselves – not new ideas that Veeva has introduced in its opposition – should be considered in assessing the sufficiency of Veeva's counterclaims under Rule 12(b)(6).  *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

1

**ARGUMENT**

## I.   VEEVA'S SECTION TWO CLAIMS ARE WITHOUT MERIT

### A.   Veeva's new theory that IMS engaged in exclusive dealing, rather than refused to deal with Veeva, is based on inapposite cases and is unsupported by factual allegations

The Supreme Court has held in no uncertain terms that the antitrust laws impose no obligation on a defendant to assist its rivals.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409-10 (2004).  In its opposition, Veeva attempts to evade the strict standards governing refusals to deal by asserting that the licensing agreement, or "TPA," at issue here is alleged to be signed at the request of a customer.  *See* Opp'n at 8.  The law, however, does not support this distinction.  Veeva cites no authority suggesting that an exception to this broad principle exists simply because a third party requests that the rivals work together.  Veeva is asking the Court to create a novel and potentially gaping exception to this unambiguous Supreme Court precedent.

Veeva also tries to recast its counterclaims as alleging exclusive dealing by IMS with its customers.  The cases Veeva cites in support of this argument fall into two categories, neither of which is applicable here.  The first involves an outright refusal to sell to customers if they deal with a rival.  *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) is an example of this.  It involved a defendant newspaper refusing to sell any advertising space to customers that advertised on

2

the radio.  *Id.* at 148-50.  *RealPage, Inc. v. Yardi Systems, Inc.* similarly involved a software provider refusing to offer its software to customers who used a competing cloud network.  852 F. Supp. 2d 1215, 1219 (C.D. Cal. 2012).  Veeva does not and cannot allege that IMS refuses to provide its offerings to customers, cuts off existing customer relationships, or otherwise retaliates against customers who use Veeva products.  Veeva instead alleges "upon information and belief" that "fears are inspired and encouraged by IMS sales teams" and that customers will face "substantial burdens" if they switch products, and that "IMS communicates these burdens as an implicit threat."  CC ¶ 117.  These conclusory allegations fall far short of *Twombly*'s requirement to provide factual heft.  Veeva cites no example of IMS actually depriving a customer of IMS offerings and therefore the *Lorain Journal* line of cases is beside the point.

The second category of cases cited by Veeva involves contractual exclusivity.  *United States v. Dentsply International, Inc.* involved a term in the defendant's purchase orders that contractually prohibited its distributors from carrying a rival's product line.  399 F.3d 181, 185 (3d Cir. 2005).  There is no such contractual exclusivity alleged in this case.

Veeva also cites *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), a pre-*Trinko* decision that involved many types of contract provisions and conduct found to be anticompetitive.  That case was very different from the present

3

case. Microsoft allowed competing browsers to work with its operating system alongside its own browser, but imposed contract terms on hardware manufacturers that generated consumer confusion and practical obstacles that prevented rival browsers from gaining traction in the market; this in turn protected Microsoft's operating system monopoly. *Id.* at 60-62. This bears no resemblance to the simple refusal to license intellectual property here, and to the extent *Microsoft* might be read to impose a duty on IMS to give Veeva its intellectual property, that aspect of the opinion did not survive the subsequent Supreme Court decision in *Trinko.*

### B. Veeva's argument regarding IMS's alleged refusal to deal with Veeva is wrong under *Aspen Skiing* and its progeny

Veeva's argument on its primary theory of this case – that IMS refuses to deal with Veeva – highlights its failure to adequately allege the existence of a prior course of conduct, which is a core requirement of *Aspen Skiing Co. v. Aspen Skiing Highlands Corp.*, 472 U.S. 585 (1985). Veeva argues that *one* TPA allowing a single customer's use of IMS Reference Data in Veeva MDM is enough to constitute a "*course* of dealing." Opp'n at 17, 19 (citing *Trinko*, 540 U.S. at 409) (emphasis added). In contrast, in *Aspen Skiing*, the parties had "cooperated for years," and even this prior course of dealing was later deemed to be "at or near the outer boundary of § 2 liability." *Trinko*, 540 U.S. at 408-09 (explaining *Aspen Skiing*). Veeva's failure to plead a terminated prior course of dealing is fatal to its claims. *See, e.g., In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007).

4

Lacking sufficient facts to support a prior course of conduct in MDM, Veeva mischaracterizes its own allegations relating to IMS's conduct with respect to other offerings. *See* Opp'n at 18. Veeva's counterclaim allegations simply do not support that IMS has signed TPAs allowing the matching of IMS Sales Data with Veeva Reference Data "for years" or that IMS has "chang[ed] course" with respect to the matching of IMS Reference Data with Veeva Reference Data. *See id.*; *see also* Mot. at 3-6 (explaining offerings). In any event, the Court should not venture into a new area by accepting Veeva's argument that the course of conduct can be in an entirely different product. Nor should the Court accept Veeva's argument that *Trinko* only applies in regulated industries, Opp'n at 17 n.9, as the regulatory scheme was "not essential to *Trinko*'s holding." *Elevator*, 502 F.3d at 53.

Even assuming a prior course of conduct, Veeva fails to allege that IMS is forsaking short-term profits, as it never alleges that the grants of TPAs – for which IMS does not charge – are profitable. The termination of the course of dealing in *Aspen Skiing* was significant because it "suggested a willingness to *forsake short-term profits* to achieve an anticompetitive end." *Trinko*, 540 U.S. at 409 (emphasis added); *see also Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075, 1080 n.5 (10th Cir. 2013) (noting where "there is no evidence that the defendant has sacrificed short-term profits to further an anticompetitive agenda, the plaintiff cannot prevail" on a refusal to deal theory).

Veeva's citations to *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) do not help.  Opp'n at 19-20.  *Broadcom* involved a defendant who made the market reliant on its intellectual property by persuading a technology standard-setting organization to adopt the intellectual property as the standard, and then refused to license it on fair and reasonable terms.  501 F.3d at 304.  The anticompetitive conduct was the deception of the standard setting organization – the defendant's commitment to the organization created an independent basis for the defendant's duty.  *Id.*  There is no standard setting organization here and Veeva does not allege in its counterclaims that IMS ever "invit[ed] cooperation," Opp'n at 17, or deceived any entity that is comparable to a standard setting body.

**C.   Even viewing IMS's alleged conduct as a whole, Veeva's unpled "monopoly broth" theory fails to state a Section Two claim**

Beginning from the premise that each individual claim might not survive, Veeva would have the Court nonetheless let it proceed under a "monopoly broth" theory.  Veeva did not plead a claim for relief based on "monopoly broth," and the Court should reject Veeva's effort to cobble together such a claim in its opposition. *See Zimmerman*, 836 F.2d at 181 ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss.").  This is not a mere technicality, as Veeva's "monopoly broth" appears to mix and match different conduct pertaining to different offerings, such that it is not even clear which offering is allegedly

6

being monopolized by what conduct.  IMS and the Court are entitled to know what the claim is and how the individual allegations fit together.

Turning to the alleged conduct, even under a generous view of Veeva's counterclaim allegations, Veeva comes up short.  First, the vast majority of these allegations relate to IMS's refusal to enter into TPA agreements.  That is not anticompetitive conduct for the reasons already discussed, and alleging the same thing over and over again does not somehow turn it into a viable claim.  *See* Mot. at 11-21.  The "additional" allegations Veeva cites – "deception, threats, and market interruptions," Opp'n at 13 – are for the most part conclusory and based on jargon rather than factual allegations.  Moreover, Veeva's own authority confirms that "[i]solated tortious activity alone does not constitute exclusionary conduct for purposes of a § 2 violation, absent a significant and more than a temporary effect on competition."  *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 783 (6th Cir. 2002).  *West Penn Allegheny Health System, Inc. v. UPMC* is also inapt, as the systematic predatory hiring, customer coercion, and false statements there far exceed what Veeva alleges here.  *See* 627 F.3d 85, 109-10 (3d Cir. 2010).  And *Broadcom* did not involve a monopoly broth theory.

### D.     Veeva has not pled a dangerous probability of achieving monopoly power in MDM

Veeva argues that it is not *obligated* to plead IMS's market share in MDM in order to plead a dangerous probability of achieving monopoly power in MDM.

7

This ignores that market share is typically a key factor in the consideration of dangerous probability, *see* Mot. at 16 (citing cases), and it also ignores that courts often rely heavily on a failure to allege market share in granting 12(b)(6) motions against attempted monopolization claims. *See, e.g.*, *Dial a Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 487 (D.C. Cir. 1996) (affirming dismissal where plaintiff failed to allege market share "or any facts concerning [plaintiffs'] market positions relative to other market participants"); *Schuylkill Health Sys. v. Cardinal Health 200, LLC*, 2014 WL 3746817, at *8-9 (E.D. Pa. July 30, 2014) (dismissing where pleaded market share was not sufficient to show dangerous probability). Veeva again points to *Broadcom*, where market share was not alleged. 501 F.3d at 319. But in *Broadcom*, the defendant's rival was completely foreclosed by the defendant's conduct, making the dangerous probability of success obvious. *Id.* at 319 & n.11. Whether the defendant had high market share was therefore irrelevant, because of the unique and compelling circumstances of that market. *Id.*

Veeva points to no such compelling circumstances here. Veeva alleges only that the MDM market is "concentrated," without providing further explanation, and even admits that it has successfully developed its own MDM despite purported barriers to entry. *See* CC ¶¶ 13, 133. Veeva says nothing about the other MDM competitors, trends in MDM market shares, or trends with respect to its own MDM sales. Veeva does not even allege that IMS or Reltio has won a single MDM sale

8

or gained any market share at all.  In short, Veeva alleges no basis from which to conclude that IMS has a dangerous probability of successfully monopolizing MDM.  The Court should decline Veeva's invitation essentially to give a free pass at the pleading stage to any claimant that conclusorily alleges a market is concentrated and has barriers to entry.  Under *Twombly*, Veeva must plead specific facts showing that it can make a plausible showing on dangerous probability of success, and Veeva has failed to provide any facts supporting such a showing here.

## II.    VEEVA'S SECTION ONE CLAIMS ARE WITHOUT MERIT

### A.    Veeva cannot point to parallel conduct or plus factors that make an IMS-Cegedim conspiracy plausible

Veeva says it has alleged both parallel conduct and "plus factors" sufficient to plead a viable group boycott claim.  It has done neither.  As a threshold matter, Veeva does not offer plausible allegations that IMS and Cegedim engaged in parallel conduct.  To support the "stark," "abrupt," and "dramatic" "reversal of course" with respect to TPAs that is the purportedly parallel conduct, Opp'n at 25-26, Veeva points to thin, carefully crafted allegations.  First, it cites a cautiously worded allegation relating to one TPA negotiation between Veeva and IMS where there was a change in what "Veeva understood and expected."  CC ¶ 68.  Second, it references "general language" used by Cegedim in prior TPAs that changed to more specific language.  CC ¶ 69.  These allegations do not add up to the "abrupt" and "dramatic" reversal that Veeva claims as parallel conduct.

9

Regardless, even adequately alleged parallel conduct is not enough; Veeva "must make a showing . . . of something more" to rule out the possibility of independent conduct.  *E.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322-24 (3d Cir. 2010).  Veeva's three claimed "plus factors" do not support the plausibility of its conspiracy theory.  The factual assertion underpinning all three is that IMS and Cegedim entered into a lawful acquisition agreement.  This is not enough.  *See, e.g.*, *Int'l Ass'n of Machinists and Aerospace Workers v. Verso Corp.*, 153 F. Supp. 3d 419, 432-33 (D. Me. 2015) (dismissing Section One claim based on parallel conduct of merger partners).  Veeva cites *Omnicare, Inc. v. Unitedhealth Group, Inc.*, 524 F. Supp. 2d 1031 (N.D. Ill. 2007), but unlike *Omnicare*, Veeva has not alleged that the acquisition agreement itself contained anticompetitive provisions.

Veeva's three plus factors are without merit.  First, Veeva speculates in its opposition that, after signing the acquisition agreement, IMS was "motivated . . . to conspire with Cegedim immediately" and Cegedim "had to avoid displeasing IMS."  Opp'n at 26-27.  This speculation as to motivations is not even alleged anywhere in the counterclaims, and in any event provides no factual heft to support a theory that the companies agreed to anything with respect to Veeva during the pendency of their merger.  *See Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 229 (3d Cir. 2011) (rejecting speculation as to motivation).  Second, Veeva claims that

10

IMS and Cegedim took actions that, without the alleged agreement, would have been against their self-interests.  Opp'n at 27-28.  But Veeva does not explain how IMS behavior that would drive customers to Cegedim (or vice versa) *after the lawful acquisition agreement was signed* would be "irrational absent their conspiracy" because IMS would shortly recoup those sales upon closing the merger.  *Id.*  Third, Veeva claims to have alleged evidence of a traditional conspiracy, including "meetings" or "high-level information exchange[s]" related to TPAs in connection with the acquisition.  *Id.* at 28.  But this assertion in the opposition is wholly unsupported, as the counterclaims contain no such allegations.

In short, Veeva cannot explain why IMS's or Cegedim's actions are inconsistent with rational business conduct, and its conspiracy claim cannot stand.  *See Ins. Brokerage*, 618 F.3d at 322-23 ("[A]llegations of conspiracy are deficient if there are obvious alternative explanations for the facts alleged.").[2]

---

[2] The Court need not decide whether to credit the allegations of conduct in Europe, as Veeva's pleadings are insufficient even with those allegations.  Still, the allegations of overseas conduct, *see* CC ¶¶ 63, 65, 69-75, 77, 103-04, 110-11, do not meet the requirements of the FTAIA, 15 U.S.C. § 6a, because Veeva does not allege a direct, substantial, and reasonably foreseeable effect on the United States.  *See* Mot. at 23-24; *see also e.g.*, *TI Inv. Servs., LLC v. Microsoft Corp.*, 23 F. Supp. 3d 451, 468-69 (D.N.J. 2014) (granting motion to dismiss because the FTAIA blocked claims that conduct harmed a foreign party in a foreign market).

**B.    Veeva's jumbled clarifications of its claim based on the Reltio agreement highlight that there is no Section One violation**

Veeva's argument that the IMS-Reltio agreement is a *per se* violation of the antitrust laws defies comprehension.  It is a jumble of antitrust concepts mixed and matched in different combinations that are without precedent.  In one place, Veeva asserts that the agreement "allocates customers to support IMS's attempt to exclude Veeva and monopolize the MDM market."  Opp'n at 29.  But a customer allocation agreement only helps a third rival.  *See Banxcorp v. Bankrate Inc.*, No. 07–3398 (ES)(CLW), 2012 WL 3988182, at *2 (D.N.J. Sept. 11, 2012) (explaining why competitors lack standing to challenge customer allocation agreements). Veeva cites no case where such a bizarre theory was successful and points to no factual allegations that plausibly suggest IMS and Reltio entered an agreement to allocate customers.  In fact, Reltio is not alleged to have taken any action at all. Nothing in Veeva's counterclaims indicates that the agreement is anything other than a standard distribution arrangement that is perfectly lawful under the antitrust laws or at least subject to rule of reason, not *per se*, analysis.  *See* Mot. at 24-27 (explaining *per se* versus rule of reason).

Elsewhere, Veeva asserts that the IMS-Reltio distribution agreement is "a group boycott in support of vertical restraints on a horizontal rival," Opp'n at 30, and cites *Rossi v. Standard Roofing, Inc.  Rossi* involved a group of distributors conspiring with their common manufacturer to impose restraints that excluded a

12

competing distributor.  156 F.3d 452, 456 (3d Cir. 1998).  *United States v. General Motors Corp.* has a similar fact pattern.  384 U.S. 127, 143-44 (1966).  IMS and Reltio are not alleged to have conspired to impose a vertical restraint on Veeva. There is nothing at all comparable between distributor cases like *Rossi* and IMS's choosing not to license its intellectual property to Veeva.  The fact that Veeva stretches to rely on such inapposite cases itself reveals the weakness of its claim.

Veeva would go even further and extend this novel claim to be a *per se* violation.  But Veeva cites no basis for this ordinary business relationship to be within the narrow class of conduct reserved for *per se* treatment.  And Veeva has not alleged a rule of reason violation, making dismissal appropriate.  Mot. at 24-27.

## III.    VEEVA'S STATE LAW CLAIMS ARE WITHOUT MERIT

Veeva does not establish that California law applies.[3]  Even assuming so, Veeva concedes its state law claims largely fall with its antitrust claims, Opp'n at 34, and to the extent any of those claims are independent, they still fail.

Veeva argues its tortious interference with contractual relations claim survives because "disruption" of a business relationship is actionable.  But Veeva

---

[3] Veeva does not establish California law applies, but rather contends IMS waived choice of law arguments.  Neither *Glory Licensing LLC v. Toys R Us, Inc.*, No. CIV. 09-4252 FSH, 2011 WL 1870591, at *4 (D.N.J. May 16, 2011), nor *Bayer AG v. Schein Pharmaceutical, Inc.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001), *aff'd*, 301 F.3d 1306 (Fed. Cir. 2002) prohibit IMS from incorporating by reference legal authority submitted to the very same court on the very same issue, as IMS did.

admits that IMS must have "induce[d] a breach or disruption of an *enforceable*

contract" to support a viable claim.  Opp'n at 35 (emphasis modified).  No

enforceable contracts existed here to be interfered with, as the condition precedent

– granting of the TPA – never occurred, by Veeva's own allegations.  *Sullivan v.*

*Finn*, cited by Veeva, makes clear that, if a contract has a condition precedent, that

condition must occur before contractual rights or duties arise.  No. 16-CV-01948-

WHO, 2017 WL 1209933, at *5 (N.D. Cal. Apr. 3, 2017).  Veeva wrongly asserts

that IMS's cases are limited to the at-will employment contract context.  But

*Integrated Storage Consulting Services, Inc. v. Netapp, Inc.*, No. 5:12-CV-06209-

EJD, 2016 WL 3648716 (N.D. Cal. July 7, 2016) did not involve an at-will

employment contract, and the court broadly recognized there is no tortious

interference with contractual relations claim when, as here, "a party to a contract

with the plaintiff is free to terminate the contract when he chooses."  *Id.* at *6.

SCEcorp v. Superior Court of San Diego County*, 3 Cal. App. 4th 673 (Cal.

Ct. App. 1992), cited by Veeva, is not to the contrary.  There the court narrowly

considered whether a condition precedent of regulatory approval foreclosed a

tortious interference with contractual relations claim of a merger contract.  *Id.* at

678.  The court held that, because the parties had received some regulatory

approval and the defendant "undertook to disrupt the merger…before its full

consideration by the regulatory agencies," a claim existed.  *Id.* at 682.  And in

14

*RealPage*, the contract forming the basis for the claim was not premised on any condition precedent.  852 F. Supp. 2d at 1230-31.  Here, however, the condition precedent of any specifically alleged contract never occurred, and Veeva's contractual rights never accrued.  *See* Mot. at 33; *Sullivan*, 2017 WL 1209933 at *5; *Netapp*, 2016 WL 3648716 at *6.[4]

Furthermore, if California law applies, Veeva's tortious interference claims are time barred.  Veeva argues that "undated allegations are not dismissed."  Opp'n at 37.  But where "the dates in question are shown on the face of the complaint," and are outside the statute of limitations, dismissal is appropriate.  *United W. Med. Ctrs. v. Super. Ct. of Orange Cty.*, 49 Cal. Rptr. 2d 682, 685 (Cal. Ct. App. 1996), *as modified* (Feb. 26, 1996).  Here, the face of the complaint reveals the dates of the purported disruption – IMS and Cegedim allegedly interfered with specific contracts no later than 2014, and Veeva became aware of IMS's alleged blanket refusal to sign TPAs at that time.  *See* Mot. at 34-35; CC ¶¶ 67-93, 114.  To the extent IMS disrupted Veeva's subsequent ability to enter into contracts, its claim for tortious interference of prospective economic advantage arose then, not at the discovery of damages.  *See Trembath v. Digardi*, 43 Cal. App. 3d 834, 837 (Cal. Ct. App. 1974).  It had two years to bring that claim, but it did not.

---

[4] Veeva's remaining allegations fail to allege that a contract even existed, let alone was effective.  *See* CC ¶¶ 103-08, 110-12.

Dated:  June 19, 2017

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: _s/ Robert I. Steiner_

| | |
|---|---|
| Michael Critchley | Robert I. Steiner |
| Amy Luria | Monica Hanna |
| CRITCHLEY, KINUM & DENOIA, LLC | One Jefferson Road, 2nd Floor |
| 75 Livingston Avenue | Parsippany, New Jersey 07054 |
| Roseland, New Jersey 07068 | Tel: (973) 503-5900 |
| Tel: (973) 422-9200 | Fax: (973) 503-5950 |
| Fax: (973) 422-9700 | |

| | |
|---|---|
| David I. Gelfand | Jonathan K. Cooperman |
| Carl Lawrence Malm | (*pro hac vice*) |
| Kelly Bahlke | KELLEY DRYE & WARREN LLP |
| (*pro hac vice*) | 101 Park Avenue |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP | New York, New York 10178 |
| 2000 Pennsylvania Avenue, NW | Tel: (212) 808-7800 |
| Washington, DC 20006 | Fax: (212) 808-7897 |
| Tel: (202) 974-1500 | |
| Fax: (202) 974-1999 | |

*Attorneys for Plaintiffs-Counterclaim Defendants Quintiles IMS Inc. and IMS Software Services, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert I. Steiner, hereby certify that on June 19, 2017, the foregoing document was filed through the Court's CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

By: <u>*s/ Robert I. Steiner*</u>
Robert I. Steiner
