NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| QUINTILES IMS INCORPORATED and IMS SOFTWARE SERVICES, <br><br> Plaintiffs-Counterclaim Defendants, <br><br> v. <br><br> VEEVA SYSTEMS, INC., <br><br> Defendant-Counterclaim Plaintiff. | Civil Action No. 17-177 (CCC) <br><br><br><br> MEMORANDUM OPINION |

**FALK, U.S.M.J.**

This matter is before the Court on the motion of Defendant, Veeva Systems, Inc., to transfer the case to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a). [ECF No. 11.] The motion is opposed. It is decided on the papers submitted. Fed. R. Civ. P. 78(b). For the reasons that follow, the motion is **DENIED**.

## BACKGROUND

Plaintiff Quintiles IMS is a Delaware corporation with dual corporate headquarters in Danbury, Connecticut and Durham, North Carolina. (Compl., ¶11.) Plaintiff IMS Software Services is Delaware corporation with headquarters in North Carolina.

(Compl., ¶ 12.) Quintiles and IMS (together, "IMS") are engaged in the business of providing market research, analytics, technology and services to the life sciences, medical device, and diagnostics and healthcare industries. (Compl., ¶ 13.) Veeva Systems, Inc., a Delaware corporation with its principal place of business in Pleasanton, California, is an information and technology services company and competitor of IMS. (Compl., ¶¶ 15-16.)

This case involves IMS's claim that Veeva has engaged in corporate theft and misconduct, including the repeated misuse and mishandling of confidential and proprietary information over a period of years. (Compl., ¶ 1.) The Complaint alleges that IMS provides clients with, *inter alia*, market research products that combine healthcare data, market research, and proprietary analytics ("IMS Market Research Offerings"), which it invests hundreds of millions of dollars a year to build and improve upon. (Compl., ¶¶ 13, 17.) At times, IMS granted Veeva access to IMS confidential and proprietary information through Third Party Limited License Agreements. IMS contends that, among other things, Veeva used IMS confidential and proprietary information improperly and for the purpose of developing and improving Veeva's own data and technology products, and to assist in marketing and promoting Veeva's competing brand. (Compl., ¶¶ 2-4.)

On January 10, 2017, the Complaint was filed, alleging that the above misuse and mishandling of confidential information gives rise to the following claims: (1) Federal Theft of Trade Secrets, the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.; (2) Theft

of Trade Secrets (New Jersey state law; N.J.S.A. § 56:15); (3) Tortious Interference (New Jersey state law); (4) Federal False and Misleading Advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(A); (5) Unfair Trade Practices (New Jersey state law); and (6) Unjust Enrichment (New Jersey state law).

On March 13, 2017, Veeva filed a motion for partial dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss IMS's New Jersey state law claims. Veeva filed an answer to the remainder of the Complaint and asserted counterclaims, based on alleged antitrust violations. In addition, Veeva filed the current motion to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

IMS opposed the motions for partial dismissal and transfer, and filed its own motion to dismiss Veeva's counterclaims.

Veeva argues that the case should be sent to California because IMS is "foreign" to New Jersey and because the central facts underlying the claims arose outside the State. It further argues that California law should apply, and, in general terms, that proceeding in California would be more convenient for the parties and witnesses.

IMS counters that it has a strong business presence in New Jersey, including four offices and over 700 employees. IMS contends that New Jersey is the focus of much of its business operations, including much of the information at issue in the case, and that many of the employees directly involved in the case, including senior personnel, work in New Jersey. IMS further contends that it has comparatively small operations in

California, and that all of the private and public interest factors strongly weigh in favor of keeping the case in the forum in which it was filed.

## DISCUSSION

### A. Transfer of Venue pursuant to 28 U.S.C. § 1404(a)

Section 1404(a) provides broad authority to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The decision to transfer a case under Section 1404(a) is discretionary. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Cadapult Graphic Sys., Inc.v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of section 1404(a) "is to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses . . . .'" *Ricoh Co., ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). The moving party bears the burden of establishing the need for transfer, and a plaintiff's choice of forum "should not be lightly disturbed." *See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.,* 309 F. Supp. 2d 637, 643 (D.N.J. 2004); *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). The burden of establishing the "need to transfer rests with the movant to show that the balance of the parties and witnesses *strongly* favors the defendants." *Medtronic, Inc. v. Boston Scientific Corp.*, 587 F. Supp. 2d 648, 654 (D. Del. 2008) (internal cites and quotes omitted; emphasis added).

**B.      Balance of Interests**

The transfer statute identifies certain criteria to be considered: convenience of parties, convenience of witnesses, and the interest of justice. 28 U.S.C. § 1404(a). The Third Circuit has articulated a more comprehensive list of public and private concerns implicated by § 1404(a). Private concerns include but are not limited to: (1) plaintiff's original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical condition; (5) availability of witnesses in each of the fora; and (6) the location of books and records. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d. Cir. 1995). Public concerns include but are not limited to: (1) the ability of each forum to enforce the judgment; (2) practical considerations that would make trial more expeditious or inexpensive; (3) court congestion; (4) local interest in deciding the controversy; (5) public policies of each fora; and (6) familiarity with state law in diversity cases. *Id.* Thus, courts consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Id.*; *see also Clark v. Burger King Corp.*, 255 F.Supp.2d 334, 337 (D.N.J. 2003). The "analysis is flexible and must be made on the unique facts of each case." *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citations omitted).

1.  **<u>Private Interest Factors</u>**

    i.  *Plaintiff's Forum Selection*

Within the Third Circuit, a plaintiff's choice of forum has been described as a "paramount concern" in deciding a motion to transfer venue. *Shutte*, 431 F.2d at 25. The plaintiff's chosen forum is generally entitled to significant deference. *Id.* When the forum selected is a plaintiff's home forum, the deference becomes even more pronounced. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, if the plaintiff chooses a foreign forum with little connection to the operative facts of the lawsuit, the deference is lessened. *See, e.g.*, *Wm. H. McGee & Co. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 290 (D.N.J. 1997).

Much of Veeva's transfer motion focuses on the argument that IMS is not incorporated in New Jersey and does not have its formal principal place of business in the State, rendering New Jersey a foreign forum with little connection to the suit. Veeva then claims, despite admitting that it is subject to personal jurisdiction in New Jersey and that venue is proper here, that California would simply be a more convenient forum. The Court strongly disagrees.

All agree that IMS is incorporated in Delaware and has its corporate headquarters in Connecticut and North Carolina. But IMS's selection of New Jersey as the forum for this suit is eminently reasonable when the entirety of Plaintiff's business operations and structure is analyzed. A list of IMS's connections to New Jersey is overwhelming:

6

- It conducts a significant portion of its business in this State and derives substantial revenue from services rendered in this District;

- It has four offices in New Jersey employing over 700 people, with one of its largest offices located in Parsippany totaling over 83,000 square feet. The facility is located on a street named "IMS Drive" in Parsippany;

- Its Parsippany office is home to certain members of IMS's senior leadership team – including legal, finance, human resources, and corporate development;

- Its Parsippany office houses employees with various responsibilities relating to . . . information services, including product management, sales, service and support, development and production of the market research offerings at issue in the Complaint;

- Its major data center and employees with responsibilities for technology solutions business are located within New Jersey;

- A substantial number of IMS employees with responsibility for sales, services, infrastructure delivery, management and operations are located within New Jersey;

- Three of its five Sales Vice President, Regional Leaders, in the U.S. responsible for managing its client relationships nationwide are located in Parsippany;

- A significant [number] of IMS employees relevant to MDM, CRM, and/or reference data are located in the New Jersey area. Its global technology solutions team, tasked with creating its technology products such as CRM and MDM, its MDM product development director, its MDM and CRM application engineering leads, and head of its MDM Center of Excellence are located in New Jersey or in nearby Pennsylvania;

- The Parsippany office is home to the executive responsible for IMS's TPA program, which will be relevant to both IMS's claims and Veeva's counterclaims and is in close proximity to the rest of the TPA contracting team located at IMS's Plymouth Meeting, Pennsylvania office.

(Declaration of Harvey Ashman ("Ashman Decl.") ¶¶ 5-20.)[1]

These are substantial and meaningful connections between IMS, New Jersey, and this case. Nevertheless, Veeva strains to avoid the New Jersey connection by claiming that IMS is attempting to "import" New Jersey as its "home turf" and secure the supposedly strong deference that would be afforded such a selection. But that is a technical argument that misses the point.

A transfer analysis does not reflexively turn on a sliding scale of theoretical deference to a single factor embedded in a discretionary decision. As to the Plaintiff's forum choice, the overarching question is genuine inconvenience and the interest of justice. The true inquiry is whether a plaintiff is forum shopping and whether the selected venue bears no real connection to the parties and facts. That is not this case. A plaintiff's choice of forum is sensible provided the forum was selected "*for some legitimate reason.*" *Medtronic*, 587 F. Supp. 2d at 655 (emphasis added). On what has been presented, it is beyond question that New Jersey is a legitimate venue.

Moreover, even assuming New Jersey was not IMS's home forum, the choice of forum still remains "of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interest of justice weigh strongly in favor of transfer." *Id.* (citing *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993)). Here, Veeva's primary argument is a technical legal

---

[1] Mr. Ashman is Senior Vice President and General Deputy Counsel to Quintiles IMS Incorporated. (Ashman Decl., ¶ 1.) Mr. Ashman's primary work location is at IMS

8

argument about the precise level of deference to give to IMS's choice of New Jersey, which is largely immaterial. Such relatively abstract arguments are not what the interest of justice of standard should be about. In other words, IMS selected New Jersey "for some legitimate reason," regardless of whether it is incorporated here or maintains its official principal place of business in the State. Plaintiff's choice of New Jersey as the forum to file this suit is not only plainly appropriate, but—because of the facts—would likely be more than sufficient to transfer the case *to* New Jersey if it had been filed in California. This factor strongly opposes transfer.

### ii. *Where the Claims Arose*

The second factor is where the claims in the case arose. Veeva contends IMS's complaint alleges a company-wide effort to steal trade secrets and misappropriate confidential information, which would, it contends, mean that the claims arose in California.

IMS contends that key statements and alleged admissions in the Complaint were made at meetings in New Jersey in August 2016; that the parties commonly entered into TPA agreements allowing Veeva access to IMS's product, which are governed by New Jersey law; that Veeva employees called IMS employees in New Jersey and made statements material to the allegations of the Complaint; that an audit referenced in the Complaint was conducted by a New York firm, with the principal auditor and at least one other working in New Jersey; that IMS's presence in New Jersey, whether incorporated

---

Drive in Parsippany. (*Id.*)

here or otherwise, is the logical point where alleged harm occurred and where many of the impacted clients are located; and finally, that Veeva's antitrust counterclaims will likely involve the New Jersey pharmaceutical industry and, if they proceed, discovery from those companies and their representatives in New Jersey. (Pl.'s Br. 8-9.)

What policies and procedures were allegedly set and where is really a fact issue subject to discovery and not persuasive in this transfer analysis. Such a determination would likely require additional discovery and parsing of each allegation of the Complaint to determine where each individual claim arose, including the parties' dispute over what state's law should apply to state law claims. From the record presented, it does seem that many, if not all, of the claims may have accrued in New Jersey. Certainly to the extent the alleged New Jersey state law claims remain in the case, it would suggest claims accrued in New Jersey. That said, nothing conclusive has been shown either way. Therefore, Veeva has not shown that this factor supports transfer.

### iii. *Convenience of the Parties & Witnesses*

The next private interest factors, the convenience of the parties and the witnesses, do not support transfer. As it relates to the parties, both Plaintiff and Defendant are Delaware corporations, a next-door neighbor to New Jersey. IMS is also headquartered in Connecticut and North Carolina (both on the East Coast), as well as having a substantial presence in New Jersey as has been described. Veeva has its principal offices in California. However, Veeva also admits to having dealings, meetings, and customers in New Jersey, as well as conducing substantial business in New York. In fact, Veeva

10

has an office in Princeton, New Jersey, and employs approximately 65 individuals in this State that may relate to the products at issue in the case. (Pl.'s Br. 7.) Similarly, it appears that the entity responsible for Veeva's competing health care data service is located in Fort Washington, Pennsylvania. (*Id.*) Finally, as IMS points out, Veeva identifies 77 clients on its website and "11 have their U.S. headquarters in New Jersey and another 10 have headquarters in Pennsylvania, Connecticut, New York or Delaware," while only 12 have headquarters in California. (*Id.*)

The indisputable reality is no legal or factual basis to send this case across the Country has been shown; it's just what Veeva would like to happen. IMS, on the other hand, would incur palpable inconvenience if the matter was transferred away from New Jersey to California. The contacts and presence IMS has in New Jersey overwhelm the limited contacts it has with California. Not to mention the New Jersey IMS employees that would have to travel to California.

Transfer is not about shifting inconvenience from the party being sued to the party suing. *See, e.g.*, *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 446 (E.D. Pa. 1999) ("the purpose of transfer is not to shift the inconvenience from one party to the other. [T]he defendant must show that its alternative forum is more convenient."). Both parties are large companies with varied dealings—much apparently occurring in and around New Jersey—and financial status is not an issue. *See Santi v. Nat'l Business Records Mgmt., LLC*, 722 F. Supp. 2d 602, 608 (D.N.J. 2010) (courts look to the relative physical and financial condition of the parties). The case has been filed in New Jersey in

which both Plaintiff and Defendant conduct substantial business and which borders on the state of Defendant's incorporation and business interests. "Unless the defendant can show that the inconvenience to the parties strongly favors its preference, plaintiff's choice of forum should prevail." *Santi*, 722 F. Supp. 2d at 607. No such showing has been made here.

The same is especially true of non-party witnesses. Compulsory process over non-party witnesses has been referred to as the single most important factor in a Section 1404 analysis. *See Teleconference Sys.*, 676 F. Supp. 2d at 333 (citing *Genetech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)); *see also LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 590-91 (D.N.J. 2001). Here, Veeva does not identify *any* non-party witnesses in California that would be unavailable in New Jersey, and certainly not with the specificity required to meet its burden of showing inconvenience that would warrant transfer of the case. *See, e.g.*, *Bachmann Software & Servs, v. Intouch Group, Inc.*, 2008 WL 2875680 (D.N.J. July 22, 2008 ("The party seeking transfer should support its motion with affidavits and other documentation that establishes that the interest of justice and convenience of the parties would best be served by transfer."); *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57.[1] On the other hand, IMS explains that part of

---

[1] With regard to convenience of the witnesses, the *Plum Tree* court noted that a party seeking transfer should provide:

> a list of the names and address of witnesses whom the moving party plans to call and affidavits showing the materiality of the matter to which these witnesses will testify, statements by the moving parties of the business

12

the reason the case was filed in New Jersey is the proximity to the pharmaceutical industry in New Jersey, and its suggestion that, given the nature of the product at issue, it would be likely that customers in and around the New Jersey area could be witnesses in the case.[2]

The parties appear to be of comparable financial means, each claims convenience in a different state, and no non-party witnesses have been identified that would benefit from a transfer to California. This important factor does not support transfer.

The private interest factors all support keeping the case in New Jersey and do not support transfer.

## 2. **Public Interest Factors**

The public factors are secondary to the private factors and it has been implied will rarely control transfer. *See, e.g.*, *Atl. Marine Cstr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 134 S. Ct. 568, 582 (2013). Here, they are only lightly argued and do not support transfer. First, the time to trial between the Northern District of California and New Jersey is negligible and insufficient to justify transfer. *See, e.g.*, *Church & Dwight*

---

> difficulties or personal hardships that might result from their having to defend against the suit in the district court where it was originally brought, affidavits concerning the relative ease of access to sources of documentary evidence, and other materials where appropriate.

488 F.2d at 757 n.2.

[2] Veeva contends that certain of its employees are in California, but that does not effectively bear on the transfer analysis. *See Atanassov v. Amspec Servs., LLC*, 2016 U.S. Dist. LEXIS 22334, at *15 (D.N.J. Feb. 24, 2016) ("The convenience of witnesses who are employees of a party carries no weight because the parties are obligated to

13

*v. Mayer Labs, Inc.*, 2010 U.S. Dist. LEXIS 10939, at *34 (D.N.J. Sept. 28, 2010) (comparing N.D. Cal. and D.N.J. are concluding "that both districts are among the most congested in the country, thus, this factor is neutral").

Second, the Complaint, as it currently stands, contains New Jersey state law claims, giving New Jersey a palpable interest in the dispute. This interest is magnified by the fact that IMS has a substantial office in the state and that the claims in the Complaint and in Veeva's counterclaims touch upon the pharmaceutical industry, which has a heavy presence in New Jersey.

Third, the parties disagree whether New Jersey or California law will ultimately apply in the case, but it makes little difference, as a federal judge in either state can apply the law equally. *See, e.g.*, *Atl. Marine*, 134 S. Ct. at 584 ("federal judges routinely apply the law of a State other than the State in which they sit").

\*            \*            \*

IMS filed this case in a district in which it has large operations and conducts substantial business. Veeva has not shown that transfer to California is in the interest of justice or supported by any of the public or private factors. Indeed, the papers suggest the opposite: this case belongs in New Jersey.

---

procure their attendance at trial).

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to transfer venue is **DENIED**.

An appropriate order will be entered.


                **s/Mark Falk**
                **MARK FALK**
                **United States Magistrate Judge**


**DATED: June 23, 2017**