UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD, <br><br> Plaintiffs/ Counterclaim Defendants, <br><br> vs. <br><br> VEEVA SYSTEMS, INC., <br><br> Defendant/ Counterclaim Plaintiff. | Case No.: 2:17-CV-00177-CCC-MF <br><br><br> **ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master on Defendant-Counterclaim Plaintiff Veeva Systems, Inc.'s ("Veeva") motion for partial reconsideration of the Special Master's March 28, 2018 Order and Opinion. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that Veeva's motion is **DENIED in part and GRANTED in part.**

## OPINION

Veeva seeks reconsideration of the Special Master's March 28, 2018, Opinion Regarding Discovery Disputes with respect to Interrogatory Nos. 15, 17, and 18, which Veeva propounded on IQVIA. Veeva argues that when the opinion stated that IQVIA need not identify additional trade secret claims at this time or respond to Veeva's discovery aimed at trade secret claims not yet identified, the Order could be read to also say that IQVIA need not provide discovery to Veeva as to the one trade secret claim IQVIA has already pointed to—the April 2016 Shire incident. Veeva believes that if the Order is interpreted in this manner then there is a potential

error of fact because IQVIA has never disputed its ability to respond to Veeva as to the Shire related trade secret claim and Veeva sought discovery as to the Shire incident.

IQVIA argues that Interrogatory Nos. 15, 17, and 18 do not request information regarding Veeva's theft of IQVIA trade secrets in the Shire incident; rather they request information about the identity of IQVIA's trade secrets, which has already been provided. IQVIA thus maintains that the Shire incident is not a trade secret claim but an example of Veeva's theft.

Motions for reconsideration are proper pursuant to this District's Local Civil Rule 7.1(i) if there are "matters or controlling decisions which counsel believes the Judge . . . has overlooked." L.Civ.R. 7.1(i); Dunn v. Reed Grp., Inc., No. 08-1632, 2010 WL 174861, at *1 (D.N.J. Jan 13, 2010). The comments to that Rule make clear, however, that "reconsideration is an extraordinary remedy that is granted 'very sparingly.' " L.Civ.R. 7.1(i) cmt. 6(d) (quoting Brackett v. Ashcroft, No. 03-3988, 2003 WL 22303078, *2 (D.N.J. Oct. 7, 2003)). In that regard, the Third Circuit has held the scope of a motion for reconsideration is "extremely limited." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." Id. Accordingly, an order or judgment may only be altered or amended if the party seeking reconsideration shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." United States ex rel. Schumann v. AstraZeneca Pharms. L.P., 769 F.3d 837, 848-49 (3d Cir. 2014).

A court commits clear error of law "only if the record cannot support the findings that led to the ruling." ABS Brokerage Servs. v. Penson Fin. Servs., Inc., No. 09-4590, 2010 WL

3257992, at *6 (D.N.J. Aug. 16, 2010) (citing United States v. Grape, 549 F. 3d 591, 603–04 (3d Cir. 2008) "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." Id.

In short, "[m]ere 'disagreement with the Court's decision' does not suffice." ABS Brokerage Servs., 2010 WL 3257992, at *6. (quoting P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. 2001)); see also United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 163 (D.N.J. 1988); Schiano v. MBNA Corp., No. 05-1771, 2006 WL 3831225, at *2 (D.N.J. Dec. 28, 2006) ("Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, . . . and should be dealt with through the normal appellate process ....") (citations omitted).

### Interrogatory Nos. 17 and 18

It is the opinion of the Special Master that Veeva has not met its burden to demonstrate that there is a need to correct a clear error of law or fact or to prevent manifest injustice with respect to Interrogatory Nos. 17 and 18. See United States ex rel. Schumann v. AstraZeneca Pharms. L.P., 769 F.3d 837, 848–49 (3d Cir. 2014).

Interrogatory No. 17 requested each of the steps IQVIA alleges it used to assemble and process each trade secret, including but not limited to the witnesses to such processes and the dates of such assembly. In response, IQVIA stated in part:

> IMS incorporates its response to Interrogatory No 15. In addition, IMS has thousands of employees with knowledge of one or more of the steps IMS uses to

>assemble and process its trade secrets. These individuals include, but are not limited to: Mike Allelunas, Harvery Ashman, Dave Busch, Jody Fischer, Michelle Mitchell, Lisa Molan, Hossam Sadek, Adriance Sheibley, and Esther Van Hulten. IMS will supplement this response upon receipt of discovery from Veeva.

The Special Master is persuaded that Interrogatory No. 17 does not request information regarding the Shire incident, but rather information regarding the steps IQVIA used to assemble and process its Market Research Offerings and witnesses to that processes. Additionally, in its opposition papers, IQVIA represents that there is no separate assembly and process for the data involved in the Shire incident, thus IQVIA has already answered Interrogatory No. 17 as it relates to Shire. Therefore, the Special Master does not believe there is a need to correct a clear error of law or fact with respect to Interrogatory No. 17. Accordingly, IQVIA will not be compelled to provide a response to Interrogatory No. 17 as it relates to Shire.

Interrogatory No. 18 requested every non-party to whom IQVIA disclosed each alleged trade secret identified in interrogatory No. 14. IQVIA's response stated in part:

>IMS discloses subsets of its Healthcare Professional Data and Sub-National Information to life sciences and other companies subject to confidentiality provisions and other restrictions on the use and disclosure of IMS's Healthcare Professional Data and Sub-National Information contained in license agreements, third-party access agreements, and other agreements and/or policies. IMS will supplement this response upon receipt of discovery from Veeva.

The Special Master is persuaded that Interrogatory No. 18 does not request information regarding the Shire incident, but rather information regarding non-parties to whom IQVIA has disclosed its Market Research Offerings. In addition, IQVIA represents in its opposition papers that the information it provided in its response is applicable to all Market Research Offerings, including data involved in the Shire incident. Therefore, the Special Master does not believe there is a need to correct a clear error of law or fact with respect to Interrogatory No. 18. Accordingly, IQVIA will not be compelled to provide a response to Interrogatory No. 18.

**Interrogatory No. 15**

Veeva's original motion sought an order compelling IQVIA to provide a complete and detailed response to Interrogatory No. 15. That interrogatory requested the following information:

> **Interrogatory 15**
> For each ALLEGED TRADE SECRET that IMS identified in response to INTERROGATORT NO.14, identify with precision AND SPECIFICITY EACH non-party source from which IMS acquired, received, AND/OR obtained ANY portion of ANY such ALLEGED TRADE SECRET.

In response to Interrogatory No. 15, IQVIA stated in part:

> IMS obtains data from numerous third-parties, including but not limited to, national and state licensing boards, professional associations, wholesalers, pharmacy dispensary software vendors, and pharmacies. IMS applies proprietary processes to this data which allow IMS to, among other things, extract data, organize data, create data, link data, prioritize certain data sets and sources of information, identify incorrect data or portions of data, duplicate data, and process data consistent with IMS's proprietary business rules to generate final data sets that are very accurate and complete and include information not available from other sources. It is continually updated and validated final data that are then licensed to life sciences companies for various uses, all subject to limitations contained in IMS's agreements with those companies.

After careful consideration, the Special Master agrees with Veeva that the sources from which IQVIA acquired, received or obtained the information that it utilizes when creating its Market Research Offerings is information in the sole possession of IQVIA. IQVIA has not claimed that it is unable to provide the sources it utilizes when creating its Market Research Offerings; rather, IQVIA argues that this matter is not about sources but the accuracy of the end product, its Market Research Offerings. The Special Master has not determined that the sources from which IQVIA acquired, received or obtained the information that it utilizes when creating its Market Research Offerings is irrelevant or undiscoverable. Rather, the Special Master was under the mistaken impression that IQVIA was unable to provide more specific information as to

its sources. As this does not appear to be the case, the Special Master will order IQVIA to provide a more specific response to Interrogatory No. 15, identifying the specific sources which IQVIA acquired, received or obtained the information that it utilized when creating its Market Research Offerings which it provided to Shire, within **30 days** of the date of this order and opinion.

Both parties are again reminded that they remain under a continuing duty to amend their interrogatory responses as they obtain additional information. The Special Master further reminds the parties that the Special Master's rulings are limited to the parties' current Interrogatory and Document Requests and should not be taken as a limitation on future discovery and areas of inquiry during the taking of depositions to be conducted in the future.

_____
DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
**Special Master**

Date: May 8, 2018