UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD,<br><br>    Plaintiffs/ Counterclaim Defendants,<br><br>vs.<br><br>VEEVA SYSTEMS, INC.,<br><br>    Defendant/ Counterclaim Plaintiff. | Case No.: 2:17-CV-00177-CCC-MF<br><br><br>**ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master on Defendant-Counterclaim Plaintiff Veeva Systems, Inc.'s ("Veeva") motion to compel Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD, (collectively "IQVIA") to produce in full documents responsive to Veeva Request for Production Nos. 79, 198, 229, 273-288, and 295-300. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that Veeva's motion is **DENIED in part and GRANTED in part.**

## OPINION

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Relevance has been construed liberally under Rule 26(b)(1), to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

### A. Request Nos. 229 and 277-288.

Request Nos. 229 and 277-288 seek documents regarding the sources from which IQVIA received its data, including the identity of those sources, the cost to IQVIA of obtaining the data, and the training or guidance IQVIA provides its employees about how to get the data from those sources.

In its motion papers, Veeva argues that the sources from which IQVIA acquired its data in 2012-2016, and the dollar amount it spent to do so, are foundational facts relevant to key legal elements under the trade secret statutes at issue in this matter. Veeva argues it must determine if IQVIA gets its information from public sources so it may defend itself against IQVIA's allegation that Veeva copied IQVIA's data. Veeva believes that a complete comparison of sources each company uses to obtain data will allow Veeva to demonstrate that it was able to assemble high quality data products in the same manner as IQVIA. Additionally, Veeva argues that IQVIA is improperly narrowing its response to only a subset of its alleged trade secrets, namely, Healthcare Professional Data Offering. Veeva argues that IQVIA alleged in its Complaint that it had trade secrets in both its Healthcare Professional Data products and Sub-National Information products.

Veeva further argues that IQVIA should not be allowed to limit responses to 2017, since IQVIA alleges misappropriation of trade secrets from 2012 up to January 2017. Veeva also argues that IQVIA's refusal to produce documents about the costs associated with its sources and documents used to train employees about IQVIA's sources is unwarranted as the documents are plainly relevant. Veeva believes a source by source breakdown of the money IQVIA expended for its sources is necessary.

IQVIA asserts that it will produce responsive documents concerning the raw sources for its Healthcare Professional Data. However, IQVIA asserts that Veeva's request to know what sources were used in each year from 2012 to 2016 is unreasonable as IQVIA currently has approximately 735 sources for Healthcare Professional Data and nearly 1 million sources for Sub-National Information. IQVIA maintains that while sources change from time to time, these sources have remained substantially the same over the default discovery period.

IQVIA further maintains that it will produce information regarding its Sub-National Information offerings for the year 2017. However, IQVIA argues that this information is not relevant as Veeva does not even have Sub-National Offerings; thus, Veeva has nothing within which to compare IQVIA's Sub-National offerings. It again objects to providing this information from 2012 to 2016 as unduly burdensome and irrelevant.

IQVIA also asserts that it will provide documents sufficient to show what it expends annually to obtain data from its raw sources. However, it does not intend to provide an individual breakdown on a source by source basis, but rather total costs expended. IQVIA argues that a source by source breakdown would be excessively burdensome and would ultimately be of no relevance to Veeva's defense or counterclaims.

### Opinion

It is the opinion of the Special Master that the sources IQVIA obtains its information from and the cost of those sources is relevant. The Special Master notes that IQVIA has agreed to produce the sources it used in 2017 to develop both its Healthcare Professional Data Offering product and Sub-National Offering product. However, the Special Master does not agree that it would be an undue burden for IQVIA to provide the sources of its data from 2012-2016 or a source by source breakdown of the money IQVIA spent to acquire this data. Accordingly, the

Special master will order IQVIA to provide full and complete Reponses to Request Nos. 229 and 277-288 within **45 days** of the date of this order and opinion.

### B. Request No. 198, 273-276 and 295-300

#### 1. Request No. 198

IQVIA responded to this request by stating that it will produce sample terms of the agreements it used to license its Market Research Offerings, including standard form license agreements under which IQVIA disclosed any portion of its Market Research Offerings.

In its motion to compel papers, Veeva argues that Request No. 198 is relevant because IQVIA pleaded that under IQVIA customary terms, client licenses do not allow a client to share information from IQVIA with a third-party. Veeva argues that exceptions may exist and that if IQVIA has ever deviated from its customary terms, it may dispose of IQVIA's claims. Veeva believes that IQVIA's offer to produce sample terms is insufficient because it does not allow Veeva to test whether IQVIA has gaps in its contracting process with third-parties or whether IQVIA's contracts prohibit customers from publishing data on websites pursuant to government regulations.

IQVIA argues that every license or agreement under which IQVIA provided its Offerings is not relevant and is unnecessary. IQVIA believes that under the law it is only required to take reasonable measures to maintain the secrecy of its trade secrets. IQVIA alleges that it has agreed to produce sample agreements IQVIA signs with third parties as a condition of receiving its data, its policies about entering into such agreements and the policies that govern IQVIA employees. IQVIA argues that these documents are sufficient to show the efforts IQVIA takes to protect the information at issue in this matter. IQVIA further argues that the case law cited by Veeva involve situations in which the trade secret owner did not require other parties to sign

4

confidentiality agreements in which there was no evidence of policies designed to guard against unauthorized disclosures. Finally, IQVIA maintains that requiring it to produce every agreement would be unduly burdensome and disproportionate to the needs of the case. IQVIA alleges that it has entered into tens of thousands of such agreements and that it would be enormously burdensome for it to locate and produce every single such agreement.

### Opinion

It is the opinion of the Special Master that IQVIA's offer to produce sample terms of agreements it uses to license its Market Research Offerings is not sufficiently responsive to Veeva's Request. However, the Special Master agrees that if IQVIA has, as it alleges, entered into tens of thousands of such agreements, production of each agreement is unduly burdensome. Accordingly, the Special Master will order IQVIA to provide a full and complete Reponses to Request No. 198, within **45 days** of the date of this order and opinion. However, the Special Master will limit the production of non-disclosure or other confidentiality agreements IQVIA has with non-parties to the relevant time period, between 2012-2017.

### 2. Requests Nos. 273-276

Veeva argues that Request Nos. 273-276 seek documents sufficient to ascertain the full scope of IQVIA's disclosure to companies that are legally required to publish that information in online directories. Veeva believes that any such disclosure by IQVIA would extinguish a trade secret claim. Veeva argues that at the very least, IQVIA must provide discovery regarding its disclosures of alleged trade secret information to such customers.

IQVIA argues that production of this information is not relevant to the case and that production of this information would be unduly burdensome. IQVIA argues that even if some of its information is published by payers it does not mean that IQVIA's Offerings are publicly available for anyone to download and access for free. IQVIA further argues that Veeva's

suggestions that its Market Research Offerings is publicly available information is belied by Veeva's anti-trust claims, wherein Veeva argues that IQVIA has refused to issue a TPA to allow Veeva access to its Healthcare Professional Data for use in its MDM, thereby excluding it from the market.

### Opinion

It is the opinion of the Special Master that the information Veeva's seeks in Requests Nos. 273-276 is relevant. The Special Master is not convinced that production of the requested information would unduly burden IQVIA. Accordingly, the Special Master will order IQVIA to provide full and complete Reponses to Request Nos. 273-276 within **45 days** of the date of this order and opinion.

### 3. Requests Nos. 295-300

In its motion papers, Veeva argues that Request Nos. 295-300 focus on IQVIA's disclosures to Shire and that IQVIA's attempts to limit document production to any "Healthcare Professional Data Offering" is improper since IQVIA alleges trade secrets more broadly. Veeva further argues that the communications sought are crucial because IQVIA has never specified what portion of the information it sent to Shire it accuses Veeva of misappropriating. Veeva thus asserts that by claiming trade secrets broadly, IQVIA must provide broad discovery. Veeva maintains that there is little burden to IQVIA and it clarifies that it is not seeking communications of every employee who might have transmitted data to Shire. Rather, it seeks communications that actually transmit an alleged IQVIA trade secret data product to Shire. Veeva goes on to argue that relevance of such transmissions would outweigh any burden.

IQVIA argues that it has already agreed to produce any Healthcare Professional Data files that it sent to Shire, as well as any communications including such transmissions, or about such transmissions, to the extent they are in the possession of the 25 agreed-to IQVIA

custodians. IQVIA believes Veeva's request for Sub-National Information and any communication from any IQVIA employee sending such information, even if not an agreed-to custodian, is excessive. IQVIA maintains that it will nevertheless respond to Veeva's request for all data products in Requests Nos. 295-297.

However, IQVIA argues that the requests for the production of any communications transmitting any such data files, Requests No. 298-300, are burdensome and inconsistent with the process agreed to between the parties for production, namely the agreement on 25 initial custodians. IQVIA argues that Veeva's requests seek to revise the agreement and creates an undue burden on it that would result in the production of irrelevant information. IQVIA argues that it simply cannot reasonably search the emails and communications of every employee who may have transmitted data to Shire over a three year period.

### Opinion

It is the opinion of the Special Master that the information Veeva's seeks in Requests Nos. 295-300 is relevant. IQVIA maintains that it will respond to Requests Nos. 295-297 by providing: (1) Any Healthcare Professional Data and Sub-National Information data files, to the extent they exist, that it sent to Shire, during the requested time period; and (2) Any communications including such transmissions, or about such transmissions, to the extent they are in the possession of the 25 agreed-to IQVIA custodians. The Special Master will order IQVIA to produce the aforementioned information in response to Request Nos. 295-297 within **45 days** of the date of this order and opinion.

With respect to Requests No. 298-300, the Special Master believes this information is relevant but is not persuaded that production of information beyond what is in possession of the 25 initial custodians is necessary at this time. Accordingly, the Special Master will order IQVIA

7

to provide full and complete Reponses to Request Nos. 298-300 to the extent they are in the possession of the 25 agreed-to IQVIA custodians within **45 days** of the date of this order and opinion.

### C. Request No. 79

In its May 16, 2018, correspondence to Veeva, IQVIA stated that it would produce documents sufficient to reflect the methods it uses to protect the confidentiality of its Market Research Offerings, including sample agreements and policies. However, IQVIA stated that it did not have the requested documents for Reltio and made a relevancy objection to requests for Cegedim documents.

In its moving papers, Veeva maintains that Request No. 79 seeks only documents sufficient to understand IQVIA's security certifications, protections, procedures, trainings, and standards regarding information it receives from third-parties. Veeva argues that IQVIA is alleging that its security measures are deficient with respect to IQVIA data Veeva receives from third-parties. Veeva believes IQVIA's own security standards over data it receives from third-parties is relevant to the question of appropriate security standards.

Veeva argues that IQVIA's offer to produce documents sufficient to reflect the methods it uses to protect the confidentiality of its Market Research Offerings is an improper limitation because Veeva directed the Request to IQVIA's security over its data from third-parties, not its alleged trade secrets. Veeva further argues that IQVIA is attempting to limit its responses to its security measures for its internal database into which it pours its raw files as opposed to the raw files it receives.

IQVIA argues that the protections IQVIA may use for information that it receives from third-parties are a matter of negotiated contracts with third-party life science companies. It

argues that information concerning whether IQVIA has adequate practices to protect third-party data could only be relevant if such evidence could absolve Veeva from liability for its own theft or misuse, which it cannot. IQVIA further argues that its security protections are not relevant to Veeva's theft of IQVIA trade secrets and that allowing such discovery would open the door to ancillary discovery.

### Opinion

It is the opinion of the Special Master that the information Veeva seeks in request No. 79 is relevant as the appropriateness of security measures has been placed in issue. Accordingly, the Special Master will order IQVIA to provide a full and complete Reponse to Request No. 79, with respect to Cegedim and IQVIA to the extent such documents exist and are in its possession, within **45 days** of the date of this order and opinion.

DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
**Special Master**

Date: 7/19/18