# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD,<br><br>Plaintiffs/ Counterclaim Defendants,<br><br>vs.<br><br>VEEVA SYSTEMS, INC.,<br><br>Defendant/ Counterclaim Plaintiff. | Case No.: 2:17-CV-00177-CCC-MF<br><br>**ORDER AND OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master on Defendant-Counterclaim Plaintiff Veeva Systems, Inc.'s ("Veeva") motion to compel Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD, (collectively "IQVIA") to provide full and complete responses to Veeva's Interrogatory Nos. 29-32 and documents in response to Request for Production Nos. 302-318. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that Veeva's motion is **DENIED in part and GRANTED in part.**

## DISCUSSION

### I.  *Discovery Standard*

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Discoverable material is not limited to that which would be admissible at trial, but also includes any non-privileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance has been construed liberally under Rule 26(b)(1), to "encompass any matter that bears on, or that reasonably could

1

lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). "Discovery is not a fishing expedition." *Arena v. RiverSource Life Ins. Co.*, No. 2:16-CV-5063-JLL-SCM, 2017 WL 6513056, at *2 (D.N.J. Dec. 19, 2017)

In this Circuit, "[i]t is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777–78 (3d Cir.1999) (citation omitted). Nevertheless, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir.1999). Pursuant to Rule 26(b)(2)(C)(3), "the court must limit the ... extent of discovery otherwise allowed by these rules ... if it determines that ... the burden [ ] of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(C)(3). Courts consider "the importance of the discovery in resolving the issues" at stake in the case in determining whether the burden of the discovery outweighs its likely benefit. *Id.*

## II. *Interrogatory Nos. 29 & 30*

**Interrogatory No. 29**
Identify with precision and specificity all facts upon which IQVIA based the statement in Paragraph 1 of its January 10, 2017 Complaint in this lawsuit that "Veeva has used the stolen information from IMS Market Research Offerings, and continues to use it, to develop and improve its own competing products and services and to compete unfairly with IMS."

**Interrogatory No. 30**
Identify with precision and specificity all facts upon which IQVIA based the statement in Paragraph 73 of its January 10, 2017 Complaint in this lawsuit that "Veeva uses IMS Market Research Offerings to regularly improve and enhance its CRM and MDM Applications to gain a competitive edge over IMS."

Veeva explains that Interrogatory Nos. 29 and 30 requested information IQVIA had in January 2017 when it filed its Complaint. Veeva believes that the allegations made by IQVIA are false and that asking IQVIA what information it had when it filed its Complaint will demonstrate a lack of any evidence. Veeva argues these interrogatories are not premature because they seek information IQVIA had in January 2017. Veeva believes this information is relevant because IQVIA's accusations against it were made in bad faith. Veeva argues that if misappropriation is asserted at the outset of a case without supporting evidence that demonstrates bad faith. Veeva maintains that bad faith is a triable issue and one on which discovery is permitted. Veeva further argues that IQVIA's allegations of trade secret theft are part of its anticompetitive actions.

IQVIA argues that these interrogatories seek the same set of facts as Veeva's prior contention interrogatories—Nos. 19, 20, 21, 22, and 25—all of which IQVIA has already responded to with all available responsive information known to IQVIA. IQVIA argues that the Special Master has already found that IQVIA sufficiently answered the previous interrogatories. IQVIA argues these interrogatories are duplicative, harassing, and improper. IQVIA further argues that Veeva's request for "all facts" is an improper use of contention interrogatories. IQVIA contends that the general rule is that interrogatories may ask for the "principal or material facts which support an allegation or defense." IQVIA argues that it has more than met this standard. IQVIA further argues that with respect to bad faith, it has a valid misappropriation claim and has provided evidence to date in support of its claim. IQVIA argues that Veeva is demanding that it demonstrate each instance of misappropriation by Veeva before it has obtained any real discovery.

It is the opinion of the Special Master that Interrogatory Nos. 29 and 30 are not duplicative as they request information IQVIA had when it filed its January 10, 2017 Complaint.

However, the Special Master agrees that Veeva's requests are "overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case." *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006). Accordingly, with respect to Interrogatory No. 29, the Special Master will compel IQVIA to identify with precision and specificity the material facts upon which IQVIA based the statement in Paragraph 1 of its January 10, 2017 Complaint in this lawsuit that "Veeva has used the stolen information from IMS Market Research Offerings, and continues to use it, to develop and improve its own competing products and services and to compete unfairly with IMS." With respect to Interrogatory No. 30, the Special Master will compel IQVIA to identify with precision and specificity the material facts upon which IQVIA based the statement in Paragraph 73 of its January 10, 2017 Complaint in this lawsuit that "Veeva uses IMS Market Research Offerings to regularly improve and enhance its CRM and MDM Applications to gain a competitive edge over IMS." IQVIA shall provide responses to Interrogatory Nos. 29 and 30 within thirty days of the date of this Order.

### III. Interrogatory No. 31

**Interrogatory No. 31**
Identify with precision and specificity what information IQVIA contends is or ever was an IQVIA Trade Secret in any data extract obtained from a third-party or otherwise accessed by Veeva in any manner IQVIA alleges to be wrongful. For instance (and by way of example, not limitation), if IQVIA contends that the entirety of the data, or any subset of the data, in the extracts from Shire produced in this litigation by Veeva at Veeva_000001688 or Veeva_000001689, this Interrogatory calls for IQVIA to specify whether IQVIA contends the entirety of each such extract is or ever was an IQVIA Trade Secret, or whether IQVIA contends some subset of data within that file (such as particular rows, or particular columns, or some combination of both) is or ever was an IQVIA Trade Secret.

IQVIA responded in part by stating: IQVIA's Market Research Offerings are trade secrets. Accordingly, Veeva's access and use of those Market Research Offerings, including any portion of any Market Research Offerings, or any derivations from those Market Research Offerings, without authorization constitutes a theft of IQVIA's trade

4

secrets; this includes the data extracts from Shire produced in this litigation by Veeva at VEEVA_000001688 and VEEVA_000001689. Veeva's General Counsel, Josh Faddis, conceded as much when IQVIA discovered that Veeva had obtained IQVIA Market Research Offerings from Shire and Mr. Faddis advised that he was "embarrassed" by Veeva's actions. IQVIA incorporates its response to Interrogatory No. 14, which provides further details on IQVIA's Market Research Offerings.

Veeva argues that IQVIA has never specified what precisely it contends to be IQVIA's alleged trade secret information that Veeva has misappropriated via particular data extracts from certain mutual customers like Shire. Veeva maintains that Interrogatory No. 31 asks IQVIA to look at specific data extract files produced by Veeva and identify what particular information in such extract files IQVIA alleges is its trade secret. Veeva argues that IQVIA has refused to answer and instead states in open-minded form that its trade secret "includes" any portion of any IQVIA Market Research Offerings. Veeva argues that now that IQVIA has the data extracts, there is no reason it cannot respond to the specific information requested by Veeva. If IQVIA believes it has trade secrets that Veeva could receive via a data extract file, IQVIA should welcome the opportunity to state which information in the file it alleges is a trade secret.

IQVIA argues that Interrogatory No. 31 is another attempt by Veeva to circumvent the Special Master's previous rulings. IQVIA argues that nothing has changed since the Special Master's prior rulings as neither party has made custodial productions to date.

Veeva retorts that no prior interrogatory pointed to third party data extracts and asked IQVIA to say what IQVIA trade secret IQVIA claims is anywhere within those files. It further argues that a Veeva deponent cannot tell it what alleged trade secrets IQVIA believes exist.

It is the opinion of the Special Master that IQVIA has sufficiently responded to Interrogatory No. 31 with the information it has in its possession at this time. Both parties are reminded that they remain under a continuing duty to amend their interrogatory responses as they obtain additional information.

### *IV. Interrogatory No. 32; Request for Production Nos. 310-315*

IQVIA asserts that it will produce responses to Interrogatory No. 32 and Request for Production Nos. 310-315 pursuant to the Special Master's July 19, 2018 Scheduling Order. As IQVIA has stated that it will provide responses to these requests, the Special Master will therefore require IQVIA to produce its responses to Interrogatory No. 32 and Requests for Production Nos. 310-315 within thirty days of the date of this Order.

### *V. Request for Production Nos. 302-306*

**RFP 302**
All documents relating to any actual or potential receipt by any IQVIA employee or agent (including but not limited to the persons on Individual List A) from any non-party (including, but not limited to the entities of Company List A) of access credentials, account information, login or password information, or any other information enabling IQVIA to log into any Veeva software product. This includes documents up to an including the present date.

**RFP 303**
All documents relating to any actual or potential use by any IQVIA employee or agent (including but not limited to the persons on Individual List A) of access credentials, account information, login or password information, or any other information enabling IQVIA to log into any Veeva software product. This includes documents up to and including the present date.

**RFP 304**
All documents relating to any actual or potential access by any IQVIA employee or agent (including but not limited to the persons on Individual List A) to any Veeva software product, including information gleaned from such access. This includes documents up to and including the present date.

**RFP 305**
All documents comprising or relating to any communications about actual or potential access by any IQVIA employee or agent (including but not limited to the persons on Individual List A) to any Veeva software product. This includes documents up to and including the present day.

**RFP 306**
Documents sufficient to identify all IQVIA employees or agents who have accessed a Veeva software product in the absence of RSAA with Veeva. This includes documents up to and including the present day.

Veeva argues that it needs documents showing IQVIA's unauthorized access to rebut IQVIA's charge that Veeva must have engaged in wrongdoing because Veeva supposedly has lax security policies around access agreements. Veeva argues that IQVIA cannot call its policies lax without a baseline on which to compare and contrast Veeva's practices against its own. Veeva argues that it needs this information to make the comparison between the companies' respective security practices that IQVIA hints at. Veeva argues that because IQVIA put Veeva's security practices at issue, it is entitled to obtain evidence to rebut the charge that IQVIA makes and undermine IQVIA's proffer of circumstantial evidence.

IQVIA argues that Veeva is seeking to review the emails and documents of 93 additional IQVIA employees (not custodians) that Veeva claims improperly logged into Veeva's CRM software applications despite making no counterclaims or affirmative defenses regarding IQVIA's improper access to Veeva's CRM software. IQVIA argues that the parties' policies' concerning access to the other's software is not at issue, it maintains that the case is about Veeva's misappropriation of data, not software. IQVIA argues that Veeva is not entitled to such overbroad and burdensome discovery. IQVIA estimates that this request will require it to review over 9.3 million documents from the 93 additional employees for documents it alleges have nothing to do with this case. IQVIA further maintains that to the extent Veeva is seeking documents so that it can compare its own policies to IQVIA's policies preventing its employees from accessing systems or databases they are not authorized to access, IQVIA will produce documents sufficient to understand IQVIA's security certifications, protections, procedures, trainings, and standards regarding information it receives from third parties. IQVIA believes this is more than sufficient for Veeva to make a comparison between the companies' respective security practices. It believes anything more would be irrelevant, cumulative, and plainly

burdensome. IQVIA argues that requiring it to produce documents from outside the 25 agreed custodians imposes an undue burden and expense on IQVIA and is not proportional to the needs of the case.

Veeva retorts that RFPs 302-306 are narrowly designed to expose the absence of logic behind an inference that IQVIA has announced at several points in its Complaint—namely, that one should infer that Veeva has engaged in wrongdoing because Veeva has lax security practices regarding IQVIA data. Veeva thus seeks discovery to show that IQVIA's own security practices with respect to Veeva's data are lax, while Veeva's security practices for IQVIA data are stronger. Veeva argues that it does not need a counterclaim to rebut the inference that IQVIA seeks to draw against Veeva. Veeva further argues that IQVIA's burden argument is incorrect because it seeks documents about specific events of access to non-IQVIA data, using a customer's instance of Veeva software, where IQVIA had no permission to do so.

It is the opinion of the Special Master that these requests seek a broad swath of documents related to IQVIA employee access to Veeva software product. The extent to which Veeva allegedly requires this information to retort the inference that Veeva has lax security practices regarding IQVIA data is disproportionate to the burden imposed on IQVIA, which asserts that these requests would require it to review over 9.3 million documents. Accordingly the Special Master will not compel IQVIA to produce documents in response to RFPs 302-306. Instead, the Special Master will require IQVIA to produce documents sufficient to show IQVIA's security certifications, protections, procedures, trainings, and standards regarding information it received from third-parties. IQVIA is to provide this information within thirty days of the date of this Order.

## VI. Request for Production No. 307

Veeva has withdrawn its motion as to RFP 307 given IQVIA's assertion that it does not contend that Veeva misappropriated source code.

## VII. Request for Production No. 308

Veeva has withdrawn its motion as to RFP 308 given IQVIA's assertion that it does not contend that Veeva misappropriated fields.

## VIII. Request for Production No. 309

**RFP 309**
All documents evidencing, referring to, or relating to any comparison of data originating from any version or instance of Veeva's OpenData product and data originating from any version or instance of any IQVIA product, including in China or any country belonging to the European Economic Area. This includes documents up to and including the present data, and includes any analysis or report provided to IQVIA's Chief Executive Officer, any member of its Executive Team, or any person on its Board of Directors.

Veeva argues that IQVIA does not deny that its employees reviewed data from Veeva's OpenData product before IQVIA filed its lawsuit—it just refuses to produce the documents relating to such events. Veeva argues it is entitled to this information because IQVIA falsely contends that Veeva took data from IQVIA and copied it into Veeva's OpenData product. Veeva believes a comparison would show otherwise. Veeva believes that to the extent IQVIA employees have compared data taken from a Veeva source with data from an IQVIA source that evidence is relevant to not only rebut IQVIA's false accusations but also to show that IQVIA knowingly asserted the accusations in bad faith despite possessing contrary information. Veeva maintains it will also use evidence that IQVIA's security policies and practices are slipshod compared to Veeva's, thus further showing the false inferences that underlay IQVIA's claims.

IQVIA argues that it is not alleging that Veeva wholesales copied its data. Rather, it alleges that Veeva stole or misused IQVIA Market Research Offerings by: (1) using IQVIA

Market Research Offerings to improve Veeva competing OpenData product; (2) using IQVIA Market Research Offerings to market Veeva competing OpenData product; and (3) using IQVIA Market Research Offerings to improve the functionality of Veeva's CRM and MDM applications. IQVIA therefore argues that to the extent it did any pre-suit comparisons, such information is not relevant. IQVIA further argues that since Veeva has no claim in this case that IQVIA copied Veeva's data, discovery into such a speculative event is improper. IQVIA further argues that this information is not proportional to the needs of the case. It argues that any marginal benefit is outweighed by the burden of going on a fishing expedition and conducting searches outside of the agreed-upon parameters, including the agreed to 25 custodians, in an effort to produce additional, irrelevant documents.

Veeva retorts that this evidence is directly relevant because Veeva has alleged that IQVIA filed this lawsuit in bad faith. Veeva argues that if IQVIA made accusations that were inconsistent with facts it possessed then that would constitute circumstantial evidence of bad faith. Veeva further argues that IQVIA's arguments are convoluted and that it is unclear of the difference between "misusing" and "copying."

It is the opinion of the Special Master that the information sought in Request for Production No. 309 is relevant to Veeva's defenses and allegation of bad faith in this matter. Accordingly, the Special Master will order IQVIA to respond to Veeva's RFP 309 within thirty days of the date of this Order.

### IX. *Request for Production Nos. 316 and 317*

<u>RFP 316</u>
Documents sufficient to show your policies, procedures, or practices regarding requests from any IQVIA customer to make changes to any database or data set used or maintained by IQVIA for any data product.

<u>RFP 317</u>

> All training guides or similar materials relating to requests from any IQVIA customer to make changes to any database or data set used or maintained by IQVIA for any data product.

Veeva argues that these requests are relevant based on IQVIA's circumstantial theory that one must infer wrongdoing by Veeva because Veeva had lax security policies. Veeva argues that these RFPs are designed to enable a comparison between Veeva's practices and those of IQVIA. Veeva argues that IQVIA has put this at issue through its suggestions that receiving information from customers is inherently suspect and permits an inference of wrongdoing.

IQVIA argues that its claims are not based on Veeva's receipt and misuse of all customer data—it is the misappropriation of data that Veeva knows or should have known belonged to IQVIA that is at issue. IQVIA argues that its claims are not based on crowdsourcing allegations. IQVIA further argues that requiring it to produce policies and data change requests from any IQVIA customer is unduly burdensome and disproportionate to the needs of the case. IQVIA maintains that searching for each and every data change request from its customers for a period of six years is tantamount to analyzing every single document relating to IQVIA's business practices.

Veeva retorts that these are discrete, narrow, "sufficient to show" requests that are in no way tantamount to analyzing every single document relating to IQVIA. Veeva further argues that there is no authority for IQVIA's proposition that a defendant only gets to rebut a plaintiff's "foreground" accusations but not the plaintiff's "background" accusations.

It is the opinion of the Special Master that the information sought in Request for Production Nos. 316 and 317 are relevant to Veeva's defenses in this matter. Accordingly, the Special Master will order IQVIA to respond to Veeva's Request for Production Nos. 316 and 317 within thirty days of the date of this Order.

## X. Request for Production No. 318

**RFP 318**
For each year in the relevant time period, documents sufficient to show all public sources of information that IQVIA used in connection with its data product development for the European market, Turkey, Russia, and the Commonwealth of Independent States ("CIS").

According to Veeva, IQVIA alleges that Veeva "invaded" countries by launching the OpenData product in those countries. Veeva argues it needs evidence to demonstrate (1) independent development- a rebuttal codified in the trade secret statutes—which undermines the credibility of IQVIA's accusations; and (2) that IQVIA's own data from these other countries is readily ascertainable from external sources and thus not a trade secret. Veeva argues that IQVIA cannot refuse to provide this information which is necessary for Veeva to ascertain the external sources that any party may use in those countries and thereby show that both companies go about building their independent product in the same manner.

IQVIA argues that Veeva provides no explanation for why it needs information from these particular geographic regions. IQVIA argues that it has already produced the 2017 sources from which IQVIA has sourced information to develop its Market Research Offerings in the U.S. and that it will be producing its 2012-2016 sources. IQVIA argues that Veeva has provided no basis for why this is not sufficient. IQVIA further argues that Veeva has not sufficiently addressed the relevance or proportionality of this request.

Veeva retorts that in its opposition IQVIA does not deny that it intends to accuse Veeva of misappropriating data for the countries in Europe Veeva has named in RFP 318. Because Veeva is making accusations regarding these countries, Veeva argues it must obtain information to defend itself. Veeva notes that the Special Master compelled this same information from US sources so Veeva could defend itself.

It is the opinion of the Special Master that the information sought in Request for Production No. 318 is relevant to Veeva's defenses in this matter. Accordingly, the Special Master will compel IQVIA to produce documents in response to this request within thirty days of the date of this Order.

Date: Sept 12, 2018

_____
DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
**Special Master**