UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD, <br><br> Plaintiffs/ Counterclaim Defendants, <br><br> vs. <br><br> VEEVA SYSTEMS, INC., <br><br> Defendant/ Counterclaim Plaintiff. | Case No.: 2:17-CV-00177-CCC-MF <br><br><br> **ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master on Defendant-Counterclaim Plaintiff Veeva Systems, Inc.'s ("Veeva") motion to compel Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD, (collectively "IQVIA") to provide responses to Interrogatory Nos. 33-35. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that Veeva's motion is **DENIED**.

## DISCUSSION

### I. *Discovery Standard*

Interrogatories are a discovery device designed "to obtain simple facts ..." and "can be a simple mode of obtaining the names and addresses of persons having knowledge of pertinent facts, or of securing information about the existence of documentary evidence[.]" *Erie Ins. Property & Cas. Co. v. Johnson*, 272 F.R.D. 177, 183 (S.D.W. Va. 2010)(quoting Wright, Miller, & Marcus, Federal Practice & Procedure: Civil 3d § 2163). "A responding party generally is not required to conduct extensive research to answer an interrogatory, but ... must make a reasonable effort to respond." *Legends Mgmt. Co., LLC v. Affiliated Ins. Co.*, No. 2:16-CV-01608-SDW-SCM, 2017 WL 4618817, at *3 (D.N.J. Oct. 13, 2017). The responding party

1

must respond "to the fullest extent possible, stating any objections with specificity." *Reyes v. City of Paterson*, No. 2:16–CV–2627, 2017 WL 1536425, at *2 (D.N.J. Apr. 28, 2017) (citing Fed.R.Civ.P. 33(b)(3) and (4)); *see also Lamon v. Adams*, 2014 WL 309424 at *3 (E.D. Cal. 2014).

## II.    *Interrogatory Nos. 33, 34 & 35*

### Interrogatory No. 33
Identify with precision and specificity any facts (including without limitation any fact contained in Veeva's October 20, 2017 or Veeva's April 27, 2018 responses to IQVIA's Interrogatory No. 1) that IQVIA knew of when it filed its Complaint or learned of since the filing of its Complaint, that IQVIA contends is evidence of an act of trade secret misappropriation; and if none so state.

### Response
IQVIA's Complaint makes clear the basis for the filing of this Action, and the factual statements contained in the Complaint relating to Veeva's theft of trade secrets are incorporated in this response. IQVIA further incorporates its responses to Interrogatory Nos. 16, 19, 20, 21, 22, 25, 26, and 27. Further, Veeva disclosed, among other things, information to IQVIA regarding Veeva's data management practices, the design of Veeva's CRM and MDM applications, the structure and operation of Veeva technical support and development processes, Veeva's staffing practices, and the integration of employees within facilities across functions and roles during the course of the various discussions among the representatives of Veeva and IQVIA from late 2013 through 2016, some of which were confirmed by the Ernst and Young Assessment.

### Interrogatory No. 34
For each fact IQVIA knew of at the time it filed its Complaint, or has learned of since the filing of its Complaint (including without limitation any fact contained in Veeva's October 20, 2017 or Veeva's April 27, 2018 Responses to IQVIA's Interrogatory No. 1), which IQVIA contends is evidence of an act of trade secret misappropriation, identify with precision and specificity the precise information IQVIA contends constitutes the IQVIA trade secret associated with each such alleged act of trade secret misappropriation.

### IQVIA
IQVIA contends that its Market Research Offerings and any derivation from those Market Research Offerings are IQVIA trade secrets. Thus, any access and use by Veeva of those Market Research Offerings, or any access and use of derivations from those Market Research Offerings by Veeva, for any purpose not permitted in a Third Party Access Agreement or any access and use of those Market Research Offerings by Veeva without a Third Party Access Agreement, constitutes a trade secret misappropriation by

Veeva. IQVIA incorporates its response to Interrogatory No. 14, which provides further details on IQVIA's Market Research Offerings.

**Interrogatory 35**
To the extent IQVIA presently contends that Veeva copied any data from any IQVIA Market Research Offerings for the purposes of improving any Veeva Data Product, identify with precision and specificity any non-circumstantial evidence upon which IQVIA bases any such contention; and if none so state. Non-circumstantial evidence excludes, for instance, evidence relating to the time it took Veeva to develop any Veeva data product for any geographical area; and evidence relating to Veeva's investments in developing any Veeva Data product for any geographic area.

**Response**
IQVIA's Complaint contains facts relating to Veeva's theft of trade secrets and those facts are incorporated in this response. IQVIA further incorporates its responses to Interrogatory Nos. 16, 19, 20, 21, 22, 25, 26, and 27. Further, Veeva disclosed, among other things, information to IQVIA regarding Veeva's data management practices, the design of Veeva's CRM and MDM applications, the structure and operation of Veeva technical support and development processes, Veeva's staffing practices, and the integration of employees within facilities across functions and roles during the course of the various discussions among the representatives of Veeva and IQVIA from late 2013 through 2016, some of which were confirmed by the Ernst & Young Assessment.

Veeva argues that this is as simple and straight forward as it gets: IQVIA says Veeva misappropriated trade secrets, so Veeva asked IQVIA to say what facts support the accusation based on discovery served and what supposed trade secret is at issue as to any such facts. Veeva argues that IQVIA must respond with precision and specificity. Veeva believes IQVIA's responses are evasive, showing that IQVIA has no intention to play fair and obey the Rule 33 and Rule 37 mandate that it provide factual and complete responses. For instance, with respect to Interrogatory No. 34, Veeva alleges that IQVIA posed a general abstract response, that any "derivative" of its data is a trade secret. Veeva argues that this is evasive because it is non-specific. Veeva argues it does not know what "derivative" IQVIA contends Veeva misappropriated. Veeva argues that it needs plain, honest, completed answers without obfuscation.

Veeva further argues that bad faith is a triable issue and an issue on which discovery is permitted. Veeva pleaded that IQVIA made accusations in bad faith thus it argues it is allowed to seek circumstantial evidence that IQVIA does not have facts for its broad and sweeping misappropriation accusations in the present, despite receiving Veeva's highly detailed interrogatory responses and substantial document production. Veeva argues that if IQVIA has no facts it must respond by stating that it has no facts to support the accusations at this time.

In opposition, IQVIA argues that Veeva is seeking for at least the sixth time, to obtain a more detailed narrative of IQVIA's trade secret claims. IQVIA argues that Veeva is improperly insisting that it prove its misappropriation claims now despite being provided little meaningful discovery. IQVIA argues that while Veeva continues to state that it has produced 1.7 million documents, those documents were almost all technical and that to date Veeva has not produced a single document from the 25 agreed-upon custodians, nor many requested non-custodial documents. Thus IQVIA argues that information is still uniquely within Veeva's knowledge. IQVIA further argues that Veeva has given little regard to the Special Master's prior orders by simply interposing new interrogatories seeking the same information.

IQVIA argues that it has already provided the facts supporting its claims at this early stage of discovery. It points to the following facts summarized from prior interrogatories:

- Veeva's senior management, Josh Faddish, had various conversations and communications with IQVIA, including Harvey Ashman, admitting that Veeva wrongly obtained IQVIA data from Shire and used it for Veeva's benefit for competitive purposes, and had committed this same type of theft on multiple other occasions, and that Veeva's business practices included Veeva having obtained, reviewed and used IQVIA data. (Response to Interrogatory No. 25)

- Tara Smith of Shire informed Frank Papaianni of IQVIA via phone call and May 18, 2016 email with an attached letter stating that on April 3, 2016 Veeva requested approval from Shire's IT organization to pull a data extract from Shire's CRM system, and on April 4, 2016 Shire provided this approval. Veeva pulled the requested data on April 7, 2016 and analyzed the extracted data. On or around

4

May 11, 2016, Veeva requested a meeting with Shire in order for Veeva's sales team to review the results of a data analysis and to market its own reference data product. The data referenced by Mrs. Smith was IQVIA property. (Responses to Interrogatory Nos. 16, 19, 20-22, 25)

- Veeva employees were improperly using IQVIA Market Research Offerings by applying insight and information gained from having access to IQVIA Market Research Offerings to shortcut the development and maintenance of Veeva's own healthcare professional data (reference data) offering, to design and implement improvements in its CRM and MDM applications, to test any planned updates and enhancements using IQVIA data, and to resolve and anticipate any software design errors. (Responses to Interrogatory Nos. 16, 19, 20-22)

- Veeva did not have the proper "safeguards and controls required between Veeva's MDM Application and OpenData to sufficiently protect IMS Healthcare Professional Data stored in Veeva MDM Application." IQVIA determined this based on the findings of the EY Assessment, including that Veeva's MDM Application and OpenData lacked organizational separation and technical controls, that Veeva lacked the ability to meaningfully enter into contractual safeguards, and that Veeva's MDM Application and OpenData were not effectively auditable.

IQVIA argues that Veeva's continued attempts to circumvent the Special Master's prior orders by serving duplicative interrogatories is harassing and improper. IQVIA argues that duplicative discovery requests followed by a motion to compel on issues already litigated has been found to be sanctionable conduct.

IQVIA further argues that Veeva's request for "all facts" has been found to be overly broad and unduly burdensome. It states that the general rule is that interrogatories may properly request "principal or material facts which support an allegation or defense." IQVIA also argues that Veeva's request for "any non-circumstantial evidence" is improper. IQVIA maintians that while much of IQVIA's evidence at this point—without significant discovery from Veeva—is circumstantial, that does not lead to Veeva's conclusion that IQVIA has no "facts" to support its allegations. IQVIA concludes that if Veeva wants to pursue its baseless allegations of bad faith, it will have ample opportunity in depositions and review of documents to do so.

Veeva retorts that it has provided incredibly lengthy and detailed interrogatory responses and selected key documents for early production thus IQVIA should be able to provide more specific responses at this point. Veeva further argues that IQVIA has provided conclusory allegations, not facts. Veeva argues that IQVIA's reference to alleged circumstantial evidence is not responsive as the interrogatory specifically requested non-circumstantial evidence. Veeva also argues that the Special Master did not rule that IQVIA's description of its alleged trade secrets was sufficiently specific; rather the Special Master accepted IQVIA's representation that it has no more information to provide at that time. IQVIA argues that nothing in that ruling suggested that IQVIA can refuse to answer the interrogatories at issue here, especially now that Veeva has provided extensive discovery. Veeva goes on to argue that IQVIA has made no representation that it has no more responsive information to provide at this time. Veeva argues that IQVIA alleges at a high level that Veeva has wrongfully received data extract files for data comparison marketing exercises from additional third parties beside Shire—it alleges that Veeva's discovery responses "provide information about Veeva's pattern and practice of improperly obtaining access to IQVIA Market Research Offerings" from IQVIA customers. Veeva points out that it does not know which IQVIA customers and which product data extract fields IQVIA contend evidence such wrongdoing.

It is the opinion of the Special Master that IQVIA has appropriately responded to Interrogatory Nos. 33, 34, and 35 at this time. In responding to these interrogatory requests IQVIA has provided the material facts supporting its claims at this stage of discovery. Interrogatories are intended "to obtain simple facts, to narrow the issues by securing admissions from the other party, and to obtain information needed in order to make use of the other discovery procedures." *Erie Ins. Prop. & Cas. Co. v. Johnson*, 272 F.R.D. 177, 183 (S.D.W. Va.

2010)(quoting Wright, Miller, & Marcus, Federal Practice & Procedure: Civil 3d § 2163). *See also* 23 Am.Jur.2d Depositions and Discovery § 117 (stating that a party serves interrogatories for the purpose of "ascertaining facts and procuring evidence or securing information as to where pertinent evidence exists."). The Special Master is persuaded that IQVIA has made a reasonable effort to respond. *See Williams v. Acxiom Corp.*, No. 2:15-CV-08464-ES-SCM, 2017 WL 945017, at *2 (D.N.J. Mar. 10, 2017) ("Although a responding party generally is not required to conduct extensive research to answer an interrogatory, it must make a reasonable effort to respond.") Accordingly, Veeva's motion to compel responses to Interrogatory Nos. 33-35 is denied. Both parties are reminded that they remain under a continuing duty to amend their interrogatory responses as they obtain additional information.

_____
DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
**Special Master**

Date: September 13, 2018