UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD, <br><br> Plaintiffs/ Counterclaim Defendants, <br><br> vs. <br><br> VEEVA SYSTEMS, INC., <br><br> Defendant/ Counterclaim Plaintiff. | Case No.: 2:17-CV-00177-CCC-MF <br><br><br> ORDER & OPINION OF THE SPECIAL MASTER |

This matter comes before the Special Master on Defendant-Counterclaim Plaintiff Veeva Systems, Inc.'s ("Veeva") motion to compel Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD, (collectively "IQVIA") to provide a full and complete response to Veeva's Interrogatory No. 15. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that Veeva's motion is **DENIED in part and GRANTED in part.**

## DISCUSSION

### I. Discovery Standard

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Discoverable material is not limited to that which would be admissible at trial, but also includes any non-privileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance has been construed liberally under Rule 26(b)(1), to "encompass any matter that bears on, or that reasonably could

1

lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). "Discovery is not a fishing expedition." *Arena v. RiverSource Life Ins. Co.*, No. 2:16-CV-5063-JLL-SCM, 2017 WL 6513056, at *2 (D.N.J. Dec. 19, 2017)

In this Circuit, "[i]t is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777–78 (3d Cir.1999) (citation omitted). Nevertheless, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir.1999). Pursuant to Rule 26(b)(2)(C)(3), "the court must limit the ... extent of discovery otherwise allowed by these rules ... if it determines that ... the burden [ ] of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(C)(3). Courts consider "the importance of the discovery in resolving the issues" at stake in the case in determining whether the burden of the discovery outweighs its likely benefit. *Id.*

## II. *Interrogatory No. 15*

Interrogatory No. 15 states:

> For each ALLEGED TRADE SECRET that IMS identified in response to INTERROGATORY NO.14, identify with precision AND SPECIFICITY EACH non-party source from which IMS acquired, received, AND/OR obtained ANY portion of ANY such ALLEGED TRADE SECRET.

On May 8, 2018, the Special Master ordered IQVIA to provide a more specific response to Interrogatory No. 15, instructing IQVIA to identify the specific sources which IQVIA acquired, received or obtained the information that it utilized when creating its Market Research Offerings which it provided to Shire.

Veeva now argues that IQVIA's supplemental response to Interrogatory No. 15 is deficient both in form and substance. With respect to form, Veeva argues that the Court's Order Concerning the Production of Electronically Stored Information ("ESI Order") requires text content to be produced in computer-searchable form. Veeva argues that IQVIA's response is not in the proper form and renders approximately 30,000 pages of entries unsearchable.

IQVIA argues that its list of sources produced totaled 29,056 pages and was exported directly from IQVIA's proprietary database within which IQVIA maintains a record of its sources. IQVIA argues that it was not prohibited from producing the information in the manner it did. IQVIA explains that it produced its information as a TIFF image, which included the "Highly Confidential" watermark, given that Veeva is a competitor that markets a competing Healthcare Professional Data offering.

With respect to Text Files, the ESI Order provides that "[n]o party shall be obligated to OCR ESI that contains no extractable text, but the producing party shall provide such OCR in its possession." With respect to Databases, the ESI Order provides that "[t]o the extent a response to discovery requires production of discoverable electronic information contained in a database, the producing party may comply by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file (for example, Excel or CSV format). . . . The parties shall meet and confer to finalize the appropriate data extraction and production format for specific information contained in a database." The ESI Order also provides

that "[t]o the extent a producing party believes discovery requests or particular applications of this order may be unduly burdensome or otherwise objectionable under the applicable rules, the parties will meet and confer in good faith as to the necessity for, scope of, and objections to such production before seeking relief from the Court. To the extent a receiving party believes that the production of a document in a format different from that originally produced is necessary to translate the document into a reasonably usable form, the parties will meet and confer in good faith as to the necessity for, scope of and objection to such production before seeking relief from the Court."

It is the opinion of the Special Master that IQVIA needs to produce its response to Interrogatory No. 15 in the format it obtained the information it exported directly from IQVIA's proprietary database within which IQVIA maintains a record of its sources, without converting that format to TIFF images. If that format is not searchable, IQVIA is not under an obligation to render that format searchable. However, if it utilized a searchable format such as Excel, it must produce the information in that searchable format. This is to be produced within thirty days of the date of this Order. The Special Master is mindful of the sensitive information being produced in response to Interrogatory No. 15. However, the Court has entered a Discovery Confidentiality Order and the parties are expected to handle these documents as they have been designated, "Highly Confidential."

With respect to substance, Veeva argues that it is unable to understand each source's identity from the charts provided by IQVIA. With respect to the HCRS chart, Veeva argues that many entries convey no meaningful information. Veeva does not believe it should be left guessing as to the entries. Second, Veeva argues that IQVIA cannot list itself as the source of data instead of listing the external "vendors" who are the real source. Veeva argues that a source

is plainly external to IQVIA, not the people at IQVIA who receive the data from external sources. Veeva does not want IQVIA to identify every hospital or doctor an IQVIA data steward has ever called but it argues there is no reason IQVIA cannot describe the sources to which its primary research sources look, in a categorical manner. Veeva also argues that IQVIA's subnational information source list is deficient. It argues that many of the entries are meaningless because they do not identify a cognizable source of data. Veeva further argues that it cannot determine what IQVIA data products are linked to any of these sources.

IQVIA argues that Interrogatory No. 15 did not ask for the level of detail Veeva is requesting. IQVIA argues that it produced over 1 million sources and outlets from which IQVIA sources its data. IQVIA argues that it should not be forced to answer additional burdensome questions relating to each of the million sources it produced. IQVIA explains that it listed itself as a source because data is often sourced through primary research, such as phone calls or desk research, conducted by IQVIA data stewards. IQVIA argues that Veeva's request for a list of websites its data stewards use is information that was not originally requested and not the subject of the prior Order. Moreover, IQVIA argues that most of the sources it listed are easily discernable by their names. IQVIA argues that any follow up questions or clarifications Veeva may have are best reserved for depositions. IQVIA further asserts that Veeva can produce no explanation as to why it requires additional information on IQVIA's sources. IQVIA maintains that the sources and additional questions will do nothing to advance Veeva's defenses or defeat IQVIA's trade secret claim as to this information. IQVIA asserts that its trade secrets are not just the "ingredients" that it uses to create its Healthcare Professional Data, but also the proprietary process it employs to extract, organize, link, and prioritize data sources.

In the Special Master's May 8, 2018 Order, IQVIA was ordered to identify the specific sources which IQVIA acquired, received or obtained the information that it utilized when creating its Market Research Offerings which it provided to Shire. IQVIA has produced a list of sources by exporting this information directly from IQVIA's proprietary database within which IQVIA maintains a record of its sources. The Special Master believes IQVIA has appropriately responded to Interrogatory No. 15. However, this does not preclude Veeva from exploring additional information with respect to these sources through supplemental discovery and depositions.

DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
**Special Master**

Date: Sept 12, 2018