UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD,<br><br>    Plaintiffs/ Counterclaim Defendants,<br><br>vs.<br><br>VEEVA SYSTEMS, INC.,<br><br>    Defendant/ Counterclaim Plaintiff. | Case No.: 2:17-CV-00177-CCC-MF<br><br><br>ORDER & OPINION OF THE SPECIAL MASTER |

This matter comes before the Special Master on Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD's (collectively "IQVIA"), motion for partial reconsideration and/or clarification of the Special Master's July 19, 2018 Order and Opinion. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that IQVIA's motion is DENIED in part and GRANTED in part.

## DISCUSSION

### I. *Standard for Reconsideration*

Only three situations warrant granting reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The moving party has the burden of establishing one of these grounds. *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). The grant or denial of reconsideration lies within the discretion of the district court. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

1

The scope of a motion for reconsideration is "extremely limited" and should not be used to relitigate the case. *Blystone*, 664 F.3d at 415. "It is improper on a motion for reconsideration to ask the Court to rethink what it already thought through—rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F.Supp. 1109, 1122 (E.D. Pa. 1993) (citation omitted).

## II. Request for Production No. 198

**Request No. 198**
Documents and things sufficient to exactly set forth the date, parties, and terms of any non-disclosure or other confidentiality agreement IMS claims to have with any non-party under which quintiles disclosed any portion of any of the alleged trade secrets.

Request No. 198 requires IQVIA to produce all of its non-disclosure and confidentiality provisions. According to IQVIA, these non-disclosure and confidentiality provisions are generally found in four categories of agreements: (1) client agreements, totaling tens of thousands; (2) third party access agreements, totaling many thousands; (3) hundreds of agreements with consultants, contractors, vendors and others who provide services to IQVIA; and (4) thousands of agreements with current and former employees. IQVIA argues that to comply with the Special Master's Order it will need to locate, retrieve, and review many tens of thousands of agreements. IQVIA argues that such an incredible undertaking is not proportionate to the minimal relevance of such documents. IQVIA argues that these documents will merely show that such confidentiality and non-disclosure provisions exist, and not instances to support Veeva's avenue of inquiry into whether or not there are situations where no restrictions are imposed to protect IQVIA's Market Research Offerings.

IQVIA believes samples of the agreements it enters into with third parties for the disclosure of its Market Research Offerings should suffice; this would include samples of actual customer agreements and standard-form license agreements under which IQVIA disclosed any

portion of its Market Research Offerings. IQVIA maintains it is also willing to produce its policies and procedures regarding entering into such agreements, including documents sufficient to show when they were entered into and why, and documents from custodian files that reference any situation where policies were followed or not. IQVIA then argues that should the Special Master conclude that reconsideration is not warranted, it will be impossible for IQVIA to complete the process of producing such documents within 45 days.

Veeva argues that IQVIA raised the same arguments in opposition to its motion to compel, which the Special Master considered and rejected. Veeva argues that as a matter of law IQVIA cannot reargue a prior argument on a motion for reconsideration because it does not point to a new law, new evidence, or any manifest injustice. Veeva also argues that nothing supports IQVIA's burden argument. Veeva clarifies that it is not asking for agreements with IQVIA's employees or individual consultants/contractors. Veeva explains that its request concerns contracts between IQVIA and third parties, such as IQVIA customers, pursuant to which IQVIA provides data to them. Veeva argues that IQVIA makes no particularized burden argument as to the third party contracts it has already been ordered to produce. Veeva beleives that a large business entity like IQVIA keeps customer agreements in a known electronic storage location and should be easy to retrieve.

IQVIA retorts that Veeva's position belies their real intent—that is, to create as much burden on IQVIA as possible to gain leverage in this litigation—as production of IQVIA's client agreements is both unduly burdensome and unnecessary. IQVIA argues that if Veeva is "only" seeking the tens of thousands of "contracts between IQVIA and third parties such as IQVIA customers pursuant to which IQVIA provides them data," compliance with such a request would require IQVIA to gather, review and produce all of its tens of thousands of client agreements

between 2012 and 2017. IQVIA argues that the Special Master has already ruled that this is an undue burden.

IQVIA argues that to avoid manifest injustice and bring attention to the apparent inconsistency in the Special Master's Order, IQVIA requests that the July 19 Order be revised to require IQVIA to produce: (1) a representative sampling of the agreements IQVIA enters into with third parties for the disclosure of its Market Research Offerings, including samples of actual customer agreements and standard-form license agreements; (2) IQVIA's policies and procedures regarding entering into such agreements, including documents sufficient to show when they are entered into and why; and (3) documents from custodial files that reference any situation where such policies were or were not followed. IQVIA argues that if after receiving this information Veeva can show the need for additional information, the Special Master can determine how best to provide it. IQVIA believes that such an approach is consistent with the federal rules.

The Special Master agrees that the July 19, 2018 Order was contradictory. The opinion reads:

> It is the opinion of the Special Master that IQVIA's offer to produce sample terms of agreements it uses to license its Market Research Offerings is not sufficiently responsive to Veeva's Request. <u>However, the Special Master agrees that if IQVIA has, as it alleges, entered into tens of thousands of such agreements, production of each agreement is unduly burdensome</u>. Accordingly, the Special Master will order IQVIA to provide a full and complete Reponses to Request No. 198, within 45 days of the date of this order and opinion. However, the Special Master will limit the production of non-disclosure or other confidentiality agreements IQVIA has with non-parties to the relevant time period, between 2012-2017.

The Special Master did not intend to Order IQVIA to produce every agreement it has entered into that has a non-disclosure and confidentiality provision, which IQVIA maintains number in the tens of thousands. The Special Master reiterates that this would be unduly

4

burdensome. Veeva has clarified that it does not want IQVIA to produce its agreements with employees, consultants, contractors, vendors, and others who provide services to IQVIA. However, Veeva is seeking (1) client agreements and (2) third party access agreements that contain non-disclosure and confidentiality provisions. The Special Master believes Veeva has established the relevancy of these non-disclosure and confidentiality provisions to its defenses in this matter and that it should be allowed to review a sufficient sampling of these provisions. Accordingly, the Special Master will clarify the July 19, 2018 Order and require IQVIA to produce a sufficient sampling of client agreements and third party access agreements that contain non-disclosure and confidentiality provisions to allow Veeva to evaluate the provisions of these agreements. The Special Master will specifically order IQVIA to produce 25 client agreements and 25 third party access agreements containing these provisions for each year from 2012-2017. The Special Master will also require IQVIA to produce: (1) IQVIA's policies and procedures regarding entering into such agreements, including documents sufficient to show when they are entered into and why; and (2) documents from custodial files that reference any situation where such policies were or were not followed. IQVIA is to produce this information within thirty days of the date of this order.

### III. Request for Production No. 229

**Request No. 229**
Documents Sufficient to show the amounts IMS paid to third parties to obtain data that IMS used in the IMS products mentioned in IMS's Complaint in this lawsuit.

According to IQVIA, Request 229 demands the production of a price breakdown, for each year from 2012 through 2017, for every one of IQVIA's 735 sources for IQVIA's Healthcare Professional Data Offerings, as well as the more than 900,000 sources for IQVIA's Sub-National Information. IQVIA believes it failed to fully and clearly explain the undue and

disproportionate burden this request imposes on IQVIA. IQVIA explains that it pays its sources a single sum that includes, among other things, payments for data that it uses to create its Market Research Offerings. IQVIA argues that compliance with the Order would require IQVIA to attempt to allocate the total amount paid to a given source into its component parts through an extensive review of available documents to determine, if it is able to, what of that total amount expended is attributed to the acquisition of any raw data used as part of the process for creating its Market Research Offerings. The analysis of how much of a given cost goes to raw data as an input to IQVIA's proprietary process for creating its Market Research Offering likely would or could involve many, sometimes hundreds, of calculations for each calendar year.

IQVIA argues that compliance with the Order would require it to undertake this cumbersome process for each individual source for each year of a six year period. IQVIA asserts that the effort in many cases would be impossible and would potentially take months to accomplish. IQVIA asserts that it simply does not maintain this information in the ordinary course of business as it has no commercial reason to differentiate such payments. Thus IQVIA argues that to require it to create something that does not exist solely to respond to a discovery request is contradictory to the requirements of FRCP 34. IQVIA further argues that the information this effort would produce has marginal value and is thus disproportionate to the needs of the case.

Veeva argues that the Special Master's Order does not require IQVIA to create brand new documents that do not exist. Veeva argues that no one expects such a thing. Instead, Veeva argues that IQVIA is required to produce the documents that do exist. Veeva does not believe IQVIA has identified any new changes in the law, new evidence, or arguments that it has not

already raised in opposing Veeva's motion to compel. Absent such, Veeva argues there is no basis for IQVIA's repetition of its prior argument regarding relevance.

IQVIA retorts that Veeva makes clear in its opposition that it wants check stubs, wire transfers, emails, agreements, letters, conversation notes, presentations, and every other document that may show what IQVIA spends for each one of its almost one million sources for its Market Research Offerings. IQVIA argues that these documents are found in a variety of departments with hundreds, perhaps thousands of custodians. Requiring IQVIA to produce all such documents would thus require IQVIA to significantly expand its electronic custodial search to each individual IQVIA employee who would have had involvement in discussing, negotiating, analyzing or seeing to it that the cost of obtaining raw data was paid. IQVIA argues that the burden of complying with such a request and the manifest injustice that would result is obvious and even greater than what was detailed in IQVIA's moving brief.

IQVIA further argues that Veeva has no legitimate reason to need all the requested information. IQVIA believes Veeva is only seeking this information to create a burden on IQVIA that is so immense that it gains leverage in this litigation on issues having nothing to do with the merits. IQVIA argues that it has already offered to produce information sufficient to show the amounts it expends to obtain the sources for its data on a year by year basis. It has also agreed to produce information concerning these same costs from the files of the agreed custodians from which IQVIA is producing electronically stored information. IQVIA argues that after Veeva receives that information, if it is legitimately not enough, then the Special Master can revisit what more needs to be provided. Thus IQVIA requests that the Special Master reconsider or clarify the July 19, 2018 Order to require IQVIA to produce documents sufficient

to show the total amounts IQVIA pays its sources on a year-by-year basis as reflected in its business records.

The Special Master did not intend to order IQVIA to produce information or documents that it does not possess. If IQVIA does not maintain the requested information in the ordinary course of business, it is under no obligation to create it for discovery purposes. Veeva clarifies that it only expects IQVIA to produce available documents. However, with respect to the information IQVIA may have in its possession— check stubs, wire transfers, emails, agreements, letters, conversation notes, presentations, etc.—considering the number of sources IQVIA obtains data from, it would be an incredible burden for IQVIA to search its records to find evidence of the amount it spends on data on a source by source basis. The Special Master fails to see how production of any check stubs, wire transfers, emails, agreements, letters, conversation notes, presentations, or other documents that may vaguely demonstrate what IQVIA spends for each one of its sources, is of any useful value to Veeva. Thus the Special Master finds that the July 19, 2018, Order must be revised to prevent a manifest injustice to IQVIA. Accordingly, the Special Master will now deny Veeva's request to compel IQVIA to response to Request for Production No. 229.

_____
DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
Special Master

Date: Oct 9, 2018