# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

IQVIA, INC. and IMS SOFTWARE
SERVICES, LTD,

      Plaintiffs/ Counterclaim Defendants,

vs.

VEEVA SYSTEMS, INC.,

      Defendant/ Counterclaim Plaintiff.

Case No.: 2:17-CV-00177-CCC-MF

## ORDER & OPINION OF THE SPECIAL MASTER

This matter comes before the Special Master on Defendant-Counterclaim Plaintiff Veeva Systems, Inc.'s ("Veeva") motion to compel Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD, (collectively "IQVIA") to provide good faith, complete productions of the requested documents in response to Request for Production ("RFP") Nos. 319-372. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that Veeva's motion is **DENIED in part** and **GRANTED in part**.

## DISCUSSION

### I.    Discovery Standard

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Discoverable material is not limited to that which would be admissible at trial, but also includes any non-privileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance has been construed liberally under Rule 26(b)(1), to "encompass any matter that bears on, or that reasonably could

1

lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). "Discovery is not a fishing expedition." *Arena v. RiverSource Life Ins. Co.*, No. 2:16-CV-5063-JLL-SCM, 2017 WL 6513056, at *2 (D.N.J. Dec. 19, 2017). A party seeking to compel discovery bears the initial "burden of showing that the information sought is relevant to the subject matter of the action." *Arena v. RiverSource Life Ins. Co.*, No. 16–5063, 2017 WL 6513056, at *2 (D.N.J. Dec. 19, 2017).

In this Circuit, "[i]t is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777–78 (3d Cir.1999) (citation omitted). Nevertheless, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir.1999). Pursuant to Rule 26(b)(2)(C)(3), "the court must limit the ... extent of discovery otherwise allowed by these rules ... if it determines that ... the burden [ ] of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(C)(3). Courts consider "the importance of the discovery in resolving the issues" at stake in the case in determining whether the burden of the discovery outweighs its likely benefit. *Id.* Additionally, the Federal Rules of Civil Procedure expressly allow the court to use its discretion and deny discovery requests if the material sought is "unreasonably cumulative." Fed.R.Civ.P. 26(b)(2).

Rule 34(b) requires the producing party on a request for production of documents to serve a written response within 30 days after service of the request or within a longer or shorter period set by the court or agreed to by the parties. In its response, the producing party must state

2

whether it assents or objects to the request and the reasons for any stated objection. "The failure to object to a discovery request in a timely fashion may constitute a waiver of the objection. However, it is within the Court's discretion not to compel discovery which is patently improper." *Boselli v. Se. Pennsylvania Transp. Auth.*, 108 F.R.D. 723, 726 (E.D. Pa. 1985)(citations omitted).

## II.    General Arguments

Veeva argues that its requests are tailored to seek information about antitrust topics identified during Veeva's review of nonparty productions. Veeva asserts that to date it has only received 162 documents from IQVIA. Veeva argues that the burden is on IQVIA to show that Veeva's requests are unreasonably duplicative and that to meet this standard, IQVIA must demonstrate that particular requests are duplicative of produced documents or completed searches. Veeva argues that IQVIA's proposal to have Veeva withdraw its motion and give IQVIA more time to respond will lead to unnecessary delay and litigation and is contradictory to the rules of federal motion practice. Veeva further argues that IQVIA waived its duplication arguments because it did not object to duplicativeness in its initial responses to RFPs 319, 321, 329-332, 342-344, 347-349, 352-353, 355, 361-365, and 368-369. Veeva also argues that IQVIA relies on the baseless argument that since it has agreed to produce some relevant information, it need not produce further relevant material. Veeva believes that no rule prevents it from serving targeted discovery while also serving more comprehensive requests.

IQVIA argues that Veeva has already received responses to hundreds of requests for production, which cover a broad range of subjects including virtually all of what Veeva currently requests in the 53 requests at issue. IQVIA argues that the outer bound of Veeva's requests should be targeted requests for documents not previously covered. IQVIA believes the Special

3

Master should deny the motion to compel without prejudice to Veeva withdrawing the motion and re-serving narrow requests focused on non-duplicative requests. IQVIA explains that it is not taking the position that additional discovery is not warranted; rather, IQVIA's position is that sufficient discovery has been propounded and defined by negotiation or Court order. It argues that Veeva has no basis for assessing whether its prior requests will result in production of documents sought by the third set of requests.

IQVIA further explains that because of the complexity of the formulations of Veeva's requests, it is difficult to tell whether the requests are 100% duplicative or just close to it and that the burden should be on Veeva to demonstrate that the request is not duplicative. IQVIA cites Federal Rule of Civil Procedure 26(b)(2)(C), which provides that the court may limit the extent of discovery if it determines the discovery is unreasonably cumulative or duplicative. IQVIA believes that Veeva's additional requests are not proportional to the needs of the case, particularly before Veeva has the chance to assess what IQVIA has already agreed to produce. IQVIA further explains that the artificial intelligence being employed for its document production make nuance of the type that Veeva would focus on impossible; thus the documents Veeva is now requesting are likely already going to be produced.

At the outset, the Special Master notes that this litigation involves highly complex claims and concerns the production of millions of documents. The parties were to provide documents in response to prior Requests for Production by October 1, 2018. Accordingly, document production is well underway and the parties should have each received documents in response to their prior requests.

### III. Request for Production Nos. 329-351

Veeva alleges that IQVIA violated Section I of the Sherman Act by illegally colluding with Reltio as part of a scheme to block Veeva from the MDM software market. To prove this, Veeva argues that it must show a concerted action by IQVIA and Reltio that unreasonably restrains trade. Veeva explains that RFPs 329-351 stem directly from its review of documents produced by Reltio in response to a subpoena.

**RFP 329**
Documents and communications from 2014 to the present relating to any IQVIA program or project involving work with Reltio on the design, maintenance, or development of MDM software.

IQVIA objected to this request as overbroad and unduly burdensome. It further objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 330**
Documents and communications from 2014 to the present relating to any IQVIA program or project involving developing or improving the functionality of any IQVIA life sciences IT product or product suite in or with any Reltio software product.

IQVIA objected to this request as overbroad and unduly burdensome. It further objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 331**
All documents and communications relating to any design or product team or project(s) led by Mike DiEmma and working with Reltio or Reltio's MDM product.

IQVIA objected to this request as overbroad and unduly burdensome. It also objected based on relevancy. It further objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

Veeva argues that RFPs 329-331 seek information about IQVIA-Reltio agreements relating to a joint product design. Veeva argues that efforts regarding IQVIA's control over Reltio's MDM product and corresponding interest in excluding Veeva from the MDM market is relevant. Veeva further argues that these requests are not duplicative because IQVIA has only

agreed to produce similar types of documents. Moreover it asserts that the RFPs cited by IQVIA (94, 96, 101, 103, and 98) related to (1) agreements or meetings and (2) communications as to Veeva, anti-trust law or customers. Veeva argues that its current requests encompass IQVIA materials relating to internal discussion of efforts to design its products to be more compatible with Reltio's products.

In response to these requests, IQVIA argues that it has already agreed to produce information about the IQVIA-Reltio agreements relating to joint product design, documents and communications relating to the IQVIA-Reltio Collaboration Agreement, and communications between IQVIA and Reltio concerning their collusion in the MDM market both before and after the companies' formal Collaboration Agreement in June 2016. It cites RFPs 94, 96, 98, 101, 102, 103, and the Special Master's Opinion.

### Opinion

The Special Master has reviewed Veeva's prior Requests for Production and has determined that all information sought in RFPs 329-331 should be produced in response Veeva's prior requests, including RFP 96 (G) which seeks "[a]ll documents and things relating to IMS's partnership or contract with Reltio, including without limitation all documents and things relating to any.....plans regarding any Reltio or IMS product suite[.] Accordingly, it is the opinion of the Special Master that it is unreasonably cumulative for IQVIA to produce responses to RFPs 329-331. While IQVIA failed to object on the grounds of cumulativeness or duplication, the Special Master believes good cause exists to excuse IQVIA's failure to object and that this best serves the interest of justice by supporting prompt and efficient discovery and resolution of this matter.

### RFP 332
All documents and communications relating to Project Vanguard.

6

IQVIA objected to this request as overbroad and unduly burdensome. It further objected to the request as vague and ambiguous. It also objected to the extent that this request seeks documents about geographic markets that do not impact U.S. commerce.

## RFP 333
All "project plans" as defined in the June 2016 Collaboration and Services Agreement between Reltio and IQVIA.

IQVIA objected to this request as cumulative and duplicative. It further objected to the request as overbroad and unduly burdensome. It also objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

## RFP 334
All documents and communications relating to any "project plan" as defined in the June 2016 Collaboration and Services Agreement between Reltio and IQVIA.

IQVIA objected to this request as cumulative and duplicative. It further objected to the request as overbroad and unduly burdensome. It also objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

## RFP 335
All documents and communications relating to Section 3.3(c) (titled "Competitive Restrictions") in the June 2016 Collaboration and Services Agreement between Reltio and IQVIA, including without limitation documents and communications relating to the rationale, negotiations, interpretation, effect, or enforcement of that provision.

IQVIA objected to this request as cumulative and duplicative. It further objected to this request as overbroad and unduly burdensome. It also objected to the extent that the request seeks documents about geographic markets that do not impact U.S. commerce.

## RFP 341
All documents and things relating to any proposed or potential amendment to the terms of Reltio's partnership with IQVIA.

IQVIA objected to this request as cumulative and duplicative. It further objected to this request as overbroad and unduly burdensome. It also objected to this request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

Veeva argues that RFPs 332-335 and 341 seek documents and communications relating to the IQVIA-Reltio Collaboration Agreement. Veeva points out that the Special Master has already held that IQVIA must produce materials relating to the agreement. Veeva argues that RFP 332 encompasses all IQVIA-Reltio negotiations, including those beyond the specific

7

agreement types enumerated in the Special Master's opinion. Veeva argues that producing "additional" documents is not the same as producing all relevant documents. In RFP 335 Veeva seeks information about a provision of the IQVIA-Reltio Agreement that prohibits Reltio from entering certain agreements with Veeva. Veeva believes the Special Master has already determined that this subject is relevant. Veeva further argues that this request seeks materials about topics beyond the categories of agreements addressed in the Special Master's opinion. RFP 341 seeks information about amendments to the formal IQVIA-Reltio Agreement which Veeva argues falls into the category of documents relating to "any present or future relationship/partnership between IQVIA and Reltio related to MDM" that the Special Master has already ruled is relevant. Veeva argues that this request seeks materials about topics beyond the categories of agreements addressed in the Special Master's opinion.

With respect to RFP 332, IQVIA argues that Veeva cannot use obvious duplication in flagrant violation of the rules to argue for IQVIA being put through the burden and expense of responding to and negotiating requests for production only to eventually confirm that the requests are actually subsumed by prior requests. IQVIA further argues that it has already agreed to produce information about the IQVIA-Reltio agreements relating to joint product design, documents and communications relating to the IQVIA-Reltio Collaboration Agreement, and communications between IQVIA and Reltio concerning their collusion in the MDM market both before and after the companies' formal Collaboration Agreement in June 2016. It cites RFPs 94, 96, 98, 101, 102, 103, and the Special Master's Opinion.

**Opinion**

Project Vanguard is the code name for the IQVIA-Reltio Collaboration Agreement. RFP 332 seeks all documents and communications relating to Project Vanguard. As IQVIA is already

obligated to produce "[a]ll documents and things relating to any potential or actual contract, agreement, or relationship between IMS and Reltio," in response to RFP 94, the Special Master finds RFP 332 unduly cumulative. While IQVIA did not object based on duplication or cumulativeness in its initial response, the Special Master believes there is good cause to excuse this and deny Veeva's request to compel a response to RFP 332 request as the request is cumulative and would place an undue burden on IQVIA.

RFP 333 seeks all "project plans" as defined in the June 2016 Collaboration and Services Agreement between Reltio and IQVIA. RFP 334 seeks all documents and communications relating to any "project plan" as defined in the June 2016 Collaboration and Services Agreement between Reltio and IQVIA. A review of Veeva's prior requests reveals that IQVIA must already produce "[a]ll documents and things relating to IMS's partnership or contract with Reltio, including without limitation all documents and things relating to any rationale, business purpose, strategies, projections, or plans regarding any Reltio or IMS product suite, or any agreement related to any IMS or Reltio Product Suite" in response to RFP 96(G). The Special Master further notes that IQVIA is already obligated to produce "[a]ll documents and things relating to any potential or actual contract, agreement, or relationship between IMS and Reltio," in response to RFP 94. Thus the Special Master finds RFPs 333 and 334 unduly cumulative.

RFP 335 seeks all documents and communications relating to Section 3.3(c) (titled "Competitive Restrictions") in the June 2016 Collaboration and Services Agreement between Reltio and IQVIA, including without limitation documents and communications relating to the rationale, negotiations, interpretation, effect, or enforcement of that provision. The Special Master notes that RFP 94 already requires IQVIA to produce "[a]ll documents and things relating to any potential or actual contract, agreement, or relationship between IMS and Reltio."

Thus all documents responsive to RFP 335 should be produced in response to RFP 94. Moreover, the Special Master notes that RFP 96 already requires IQVIA to produce"[a]ll documents and things relating to IMS's partnership or contract with Reltio, including without limitation all documents and things relating to: (B) Any term of the agreement between Reltio and IMS." Accordingly, the Special Master finds RFPs 335 unduly cumulative.

RFP 341 seeks all documents and things relating to any proposed or potential amendment to the terms of Reltio's partnership with IQVIA. The Special Master again notes that RFP 94 already requires IQVIA to produce "[a]ll documents and things relating to any potential or actual contract, agreement, or relationship between IMS and Reltio." The Special Master also notes that RFP 97 sought "[a]ll documents and things relating to IMS or Reltio's analysis, evaluation, or consideration ..... of a potential or actual change to any current agreement, understanding, or relationship between IMS and Reltio[.]" All information sought in RFP 341 should thus be produced in responses to RFPs 94 and 97. Accordingly, the Special Master finds RFP 341 unduly cumulative.

## IV.    RFPs 336-340

Veeva argues that these requests seek communications between IQVIA and Reltio concerning their collusion in the MDM market both before and after the companies' formal Collaboration Agreement in June 2016. Veeva argues its requests are critical to its antitrust claims and go straight to its horizontal conspiracy claims.

**RFP 336**
All communications between IQVIA and Reltio relating to TPAs, Veeva, or Veeva Data, MDM, or CRM products.

IQVIA objected to this request as cumulative and duplicative. It further objected as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 337**

All communications between IQVIA and Reltio relating to any request for pricing, request for proposal, request for information, sales opportunity, sales presentation, or sales strategy before June 2016.

IQVIA objected to this request as cumulative and duplicative. It also objected to this request as overbroad and unduly burdensome. It also objected based on relevancy. It further objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 338**

All communications between IQVIA and Reltio relating to any request for pricing, request for proposal, request for information, sales opportunity, sales presentation, or sales strategy in or after June 2016.

IQVIA objected to this request as cumulative and duplicative. It further objected as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

Veeva argues that RFPs 336-338 seek communications relating to TPAs, Veeva and its products, and sales to pharmaceutical companies. Veeva argues that Reltio documents show that IQVIA and Reltio coordinated their sales efforts to block Veeva long before the official Agreement and that IQVIA executives detailed IQVIA's blocking tactics. Veeva asserts that its counterclaims allege that IQVIA's bad faith negotiation tactics were part of its illegal exclusionary conduct. Veeva argues that further evidence of this conduct is available in IQVIA's communications thus IQVIA cannot avoid producing them. Veeva further argues that IQVIA does not identify any prior RFPs that encompass such documents.

**Opinion**

RFP 336 seeks all communications between IQVIA and Reltio relating to TPAs, Veeva, or Veeva Data, MDM, or CRM products. A review of Veeva's prior requests reveals that IQVIA must already produce "[a]ll documents and things relating to communications between any person at IMS and any person at Reltio directly or indirectly related to: (A) Veeva or any Veeva

life sciences IT product," in response to RFP 98. It is the opinion of the Special Master that all communications sought in RFP 336 are encompassed in RFP 98 as thus unduly cumulative.

RFP 337 seeks all communications between IQVIA and Reltio relating to any request for pricing, request for proposal, request for information, sales opportunity, sales presentation, or sales strategy before June 2016. The Special Master has reviewed Veeva's prior Requests for Production and believes this request does not seek information that has already been requested. The Special Master is persuaded that this information is relevant to Veeva's antitrust action. Accordingly, the Special Master will order IQVIA to respond to RFP 337 within thirty days of the date of this order.

RFP 338 seeks all communications between IQVIA and Reltio relating to any request for pricing, request for proposal, request for information, sales opportunity, sales presentation, or sales strategy in or after June 2016. The Special Master has reviewed Veeva's prior Requests for Production and believes this request does not seek information that has already been requested. The Special Master is persuaded that this information is relevant to Veeva's antitrust action. Accordingly, the Special Master will order IQVIA to respond to RFP 338 within thirty days of the date of this order.

**RFP 339**

Records of telephone calls or text messages between Tal Rosenberg and any Reltio representative between June 1, 2015 and October 1, 2016.

IQVIA objected to this request as cumulative and duplicative. It further objected as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 340**
Records of telephone calls or text messages between Mike Allelunas and any Reltio representative between June 1, 2015 and October 1, 2016.

IQVIA objected to this request as cumulative and duplicative. It further objected as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

Veeva argues that RFPs 339 and 340 seek records of phone calls and text messages between Reltio and two IQVIA executives—Tal Rosenberg and Michael Allelunas—who Veeva alleges were key figures in the IQVIA-Reltio collusion. Mr. Rosenberg was the IQVIA executive in charge of coordinating sales operations. Mr. Allelunas communicated with Reltio concerning IQVIA's anticompetitive blocking tactics. Veeva argues that as these two executives have already been named as custodians, there should be little burden associated with providing the materials. Veeva further argues that IQVIA does not identify any prior RFPs that encompass such documents.

### Opinion

RFP No. 95 seeks "[a]ll documents and things relating to the existence or substance of any communications...between IMS executives or officers and Reltio's executives or officers between May 1, 2015 and July 1, 2016, including... phone or text message records of communications[.]" The Special Master notes that RFP No. 95 seeks records between IQVIA executives and Veeva executives while RFP Nos. 339 and 340 seek communications between two specific IQVIA executives and any Reltio representative. The Special Master further notes that Veeva seeks records through October 1, 2016 in RFPs 339 and 340. As RFP Nos. 339 and 340 seek targeted information beyond the scope of RFP No. 95, the Special Master will compel IQVIA to respond to Veeva's Requests for Production Nos. 339 and 340 within thirty days of the date of this order. The Special Master is persuaded that the information sought in these requests is relevant to Veeva's antitrust action and that the targeted nature of the requests adequately reduce IQVIA's burden of production.

**RFP 342**

All communications between IQVIA and Reltio relating to any sales opportunity relating to BMS involving MDM or Data products, including without limitation BMS's 2015-2016 Customer Master Request for Proposal.

IQVIA objected to this request as overbroad and unduly burdensome. It also objected based on relevancy. It further objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 343**

All documents and things relating to any sales opportunity relating to BMS involving MDM or data products, including without limitation BMS's 2015-2016 Customer Master Request for Proposal.

IQVIA objected to this request as overbroad and unduly burdensome. It also objected based on relevancy. It also objected to the request on grounds that it seeks production of documents that are subject to confidentiality and or other non-disclosure agreements. It further objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 344**

Documents sufficient to identify any IQVIA representative involved in the sale of any life sciences IT products or product suites to BMS between September 1, 2015 and January 1, 2017, including without limitation any such IQVIA representative whose job title includes the word(s) "account" or "sales."

IQVIA objected to this request as overbroad and unduly burdensome. It further objected to the request to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 345**

All communications between any IQVIA representative responsive to Request No. 344 and Reltio concerning BMS, Veeva, Veeva products, or TPAs.

IQVIA objected to this request as cumulative and duplicative. It further objected as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 346**

All documents and communications relating to potential or actual cooperation or coordination between Reltio and IQVIA in the sale of life sciences IT products to BMS, including without limitation any such cooperation or coordination relating to TPAs, Veeva, or Veeva products.

IQVIA objected to this request as cumulative and duplicative. It further objected as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 347**
All communications between IQVIA and Reltio from January 1, 2015 to the present relating to any sales opportunity concerning Novartis and involving MDM or data products.

IQVIA objected to undue burden and the extent the request seeks documents about the relationship between IQVIA and Reltio that are irrelevant and beyond the permissible scope of discovery. It also objected to the request on grounds that it seeks production of documents that are subject to confidentiality and or other non-disclosure agreements.

**RFP 348**
All documents and things from January 1, 2015 to the present relating to any sales opportunity concerning Novartis involving MDM or data products.

IQVIA objected to this request as overly broad and creating an undue burden. It also objected to the request on grounds that it seeks production of documents that are subject to confidentiality and or other non-disclosure agreements.

**RFP 349**
Documents sufficient to identify any IQVIA representative involved in the sale of any life sciences IT products or product suites to Novartis between January 1, 2015 and January 1, 2017, including without limitation any such IQVIA representative whose job title includes the word(s) "account" or "sales".

IQVIA objected to this request as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 350**
Any communications between any IQVIA representative responsive to Request No. 349 and Reltio concerning Novartis, Veeva, Veeva Products, or TPAs.

IQVIA objected to this request as cumulative and duplicative. It further objected as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 351**
All documents and communications relating to potential or actual cooperation or coordination between Reltio and IQVIA in the sale of life sciences IT products to Novartis, including without limitation any such cooperation or coordination relating to TPAs, Veeva, or Veeva products.

IQVIA objected to this request as cumulative and duplicative. It further objected as overbroad and unduly burdensome. It also objected to the extent that it seeks documents about geographic markets that do not impact U.S. commerce.

Veeva argues that RFPs 342-351 seek IQVIA's materials concerning IQVIA-Reltio coordination to block Bristol-Myers Squibb and Novartis from using Veeva products. Veeva argues that this collusion occurred before the formal IQVIA-Reltio Collaboration Agreement. With respect to RFPs 342-351, IQVIA argues that it has already agreed to produce this information. It points to RFPs 96, 98, 101, and the Opinion of the Special Master. Veeva retorts that it seeks communications about similar topics in other RFPs but here it seeks communications about those topics from the specific employees that must be identified in RFPs 344 and 349.

**Opinion**

RFP 342 seeks all communications between IQVIA and Reltio relating to any sales opportunity relating to BMS involving MDM or Data products, including without limitation BMS's 2015-2016 Customer Master Request for Proposal. The Special Master notes that RFP No. 98 seeks "[a]ll documents and things relating to communications between any person at IMS and any person at Reltio directly or indirectly relating to: (C) Any actual or potential life sciences IT product customer of either IMS or Reltio." The Special Master believes that any documents responsive to RFP 342 will be produced in response to RFP 98. Accordingly, the Special Master finds RFP 342 unduly cumulative. While IQVIA failed to object on the grounds of cumulativeness or duplication, the Special Master believes good cause exists to excuse IQVIA's failure to object and that this best serves the interest of justice by supporting prompt and efficient discovery and resolution of this matter.

RFP 343 seeks all documents and things relating to any sales opportunity relating to BMS involving MDM or data products, including without limitation BMS's 2015-2016 Customer Master Request for Proposal. A review of Veeva's prior requests reveals that RFP 58 requested "for the relevant time period, all documents and things relating to offers, proposals, negotiations, or contracts between IMS, Cegedim, or Reltio and any potential or actual purchaser of any life sciences IT products, or any IMS or Reltio product suite, including "(C) all documents and things relating to any contract term, strategy, tactic, plan, procedure, practice, action, or non-action considered, taken, or adopted because of a customer's possible or actual use of any life sciences IT products of any person, including without limitation any Veeva product." The Special Master believes that any documents responsive to RFP 343 will be produced in response to RFP 58. Accordingly, the Special Master believes RFP 343 is unduly cumulative. While IQVIA did not object based on duplication or cumulativeness in its initial response, the Special Master believes there is good cause to excuse this and deny Veeva's request to compel a response to RFP 343 as the request is cumulative and would place an undue burden on IQVIA.

RFP 344 seeks documents sufficient to identify any IQVIA representative involved in the sale of any life sciences IT products or product suites to BMS between September 1, 2015 and January 1, 2017, including without limitation any such IQVIA representative whose job title includes the word(s) "account" or "sales." A review of Veeva's prior requests reveals that this information has not previously been requested. The Special Master is persuaded that the information sought in this request is relevant to Veeva's antitrust action and that the targeted nature of the request reduces IQVIA's burden of production. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Requests for Production No. 344 within thirty days of the date of this order.

RFP 345 seeks all communications between any IQVIA representative responsive to Request No. 344 and Reltio concerning BMS, Veeva, Veeva products, or TPAs. The Special Master notes that RFP No. 98 seeks "[a]ll documents and things relating to communications between any person at IMS and any person at Reltio directly or indirectly relating to: (A) Veeva or any Veeva life sciences IT product; . . . and (C) Any actual or potential life sciences IT product customer of either IMS or Reltio." The Special Master believes that any documents responsive to RFP 345 will be produced in response to RFP 98. Accordingly, the Special Master believes RFP 345 is unduly cumulative.

RFP 346 seeks all documents and communications relating to potential or actual cooperation or coordination between Reltio and IQVIA in the sale of life sciences IT products to BMS, including without limitation any such cooperation or coordination relating to TPAs, Veeva, or Veeva products. A review of Veeva's prior requests for production reveals that IQVIA is producing documents in response to RFP 102, which requested "[a]ll documents and things relating to any joint, shared, coordinated, or formally or informally agreed upon IMS and Reltio strategy, tactic, plan, procedure, policy, practice, action, or non-action to benefit either or both companies, pursuant to any contract or otherwise." The Special Master believes that any documents responsive to RFP 346 will be produced in response to RFP 102. Accordingly, RFP 346 is unduly cumulative.

RFP 347 seeks all communications between IQVIA and Reltio from January 1, 2015 to the present relating to any sales opportunity concerning Novartis and involving MDM or data products. The Special Master notes that RFP No. 98 seeks "[a]ll documents and things relating to communications between any person at IMS and any person at Reltio directly or indirectly relating to: (A) Veeva or any Veeva life sciences IT product; . . . and (C) any actual or potential

life sciences IT product customer of either IMS or Reltio." The Special Master believes that any documents responsive to RFP 347 will be produced in response to RFP 98. Accordingly, the Special Master believes RFP 347 is unduly cumulative. While IQVIA failed to object on the grounds of cumulativeness or duplication, the Special Master believes good cause exists to excuse IQVIA's failure to object and that this best serves the interest of justice by supporting prompt and efficient discovery and resolution of this matter.

RFP 348 seeks all documents and things from January 1, 2015 to the present relating to any sales opportunity concerning Novartis involving MDM or data products. A review of Veeva's prior requests reveals that RFP 58 requested "all documents and things relating to offers, proposals, negotiations, or contracts between IMS, Cegedim, or Reltio and any potential or actual purchaser of any life sciences IT products, or any IMS or Reltio product suite, including "(C) all documents and things relating to any contract term, strategy, tactic, plan, procedure, practice, action, or non-action considered, taken, or adopted because of a customer's possible or actual use of any life sciences IT products of any person, including without limitation any Veeva product." The Special Master believes that any documents responsive to RFP 348 will be produced in response to RFP 58. Accordingly, the Special Master believes RFP 348 is unduly cumulative. While IQVIA did not object based on duplication or cumulativeness in its initial response, the Special Master believes there is good cause to excuse this and deny Veeva's request to compel a response to RFP 348 as the request is cumulative and would place an undue burden on IQVIA.

RFP 349 seeks documents sufficient to identify any IQVIA representative involved in the sale of any life sciences IT products or product suites to Novartis between January 1, 2015 and January 1, 2017, including without limitation any such IQVIA representative whose job title

includes the word(s) "account" or "sales." A review of Veeva's prior requests reveals that this information has not been previously requested. The Special Master is persuaded that the information sought in this request is relevant to Veeva's antitrust action and that the targeted nature of the request reduces IQVIA's burden of production. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Request for Production No. 349 within thirty days of the date of this order.

RFP 350 seeks any communications between any IQVIA representative responsive to Request No. 349 and Reltio concerning Novartis, Veeva, Veeva Products, or TPAs. The Special Master notes that RFP No. 98 seeks "[a]ll documents and things relating to communications between any person at IMS and any person at Reltio directly or indirectly relating to: (A) Veeva or any Veeva life sciences IT product; . . . and (C) Any actual or potential life sciences IT product customer of either IMS or Reltio." The Special Master believes that any documents responsive to RFP 350 will be produced in response to RFP 98. Accordingly, the Special Master believes RFP 350 is unduly cumulative.

RFP 351 seeks all documents and communications relating to potential or actual cooperation or coordination between Reltio and IQVIA in the sale of life sciences IT products to Novartis, including without limitation any such cooperation or coordination relating to TPAs, Veeva, or Veeva products. As IQVIA is already obligated to produce "[a]ll documents and things relating to any potential or actual contract, agreement, or relationship between IMS and Reltio," in response to RFP 94, the Special Master finds RFP 351 unduly cumulative.

V.   **RFPs 319-327**

**RFP 319**
All documents and things relating to customization of any MDM product that IQVIA sells or re-sells. This request includes without limitation documents sufficient to show manuals, procedures, or processes relating to customization of any MDM product that IQVIA sells or re-sells.

20

IQVIA objected as overbroad and creating an undue burden. It also objected as seeking information that is irrelevant to any party's claim or defense and therefore beyond the scope of permissible discovery. IQVIA further objected to the extent that this request seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 320**
Documents sufficient to show customization of any MDM product IQVIA sells or re-sells, due to that product's use with data products in a particular language.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as beyond the scope of permissible discovery. It also objected as cumulative and duplicative of other discovery requests. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 321**
All documents and things relating to customization of any IQVIA data product. This request includes without limitation documents sufficient to show manuals, procedures, or processes relating to customization of any IQVIA data product.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as beyond the scope of permissible discovery. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 322**
All documents and things relating to any IQVIA policy, practice, strategy, or sales techniques of offering volume discounts for IQVIA data products.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as beyond the scope of permissible discovery.

**RFP 323**
For each year in the relevant time period, documents sufficient to show any person's exit from any life sciences IT product market.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as beyond the scope of permissible discovery. It also objected as cumulative and duplicative of other discovery requests. It also objected to the extent this request seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 324**
Documents and things discussing or considering life sciences IT product costs in conjunction with life sciences IT product price changes.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as beyond the scope of permissible discovery. It also objected as cumulative and

duplicative of other discovery requests. It also objected to the extent the request seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 325**
Any research, analyses, presentation, summaries, or reports of customers switching from purchasing customer reference data from IQVIA to another data provider, and vice versa.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as cumulative and duplicative of other discovery requests. It also objected to the extent the request seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 326**
Any research, analyses, presentations, summaries, or reports of customers switching from purchasing sales and performance data from IQVIA to another data provider, and vice versa.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as beyond the scope of permissible discovery. It also objected as cumulative and duplicative of other discovery requests. It also objected to the extent the request seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 327**
Any research, analyses, presentations, summaries, or reports of customers switching from purchasing MDM product(s) IQVIA sells or re-sells to another MDM provider, and vice versa.

IQVIA objected on the grounds that it is cumulative and duplicative of other discovery requests. It also objected to the extent the request seeks documents about geographic markets that do not impact U.S. commerce.

Veeva argues that at the heart of its Section 2 claims under the Sherman Act, it alleges that IQVIA has abused the TPA process to prevent customers from being able to use Veeva products. It contends that RFPs 319-327 seek standard information necessary to show the first element of a claim under Section 2 of the Sherman Act—that IQVIA has market power in the relevant markets of Reference Data, Sales Data, and MDM.

With respect to RFPs 319-321 Veeva argues that it seeks information about IQVIA's customization of the MDM products it sells or re-sells, which Veeva argues is relevant to the issue of product market definition. Veeva argues that courts frequently analyze product

customization when considering the relevant product market. Veeva further argues that customization is relevant because Veeva alleges that life sciences-specific MDM software is the relevant product market while IQVIA asserts that it competes against large sellers of undifferentiated MDM software like IBM. Veeva argues that the degree to which IQVIA competes in a life sciences-specific MDM market is thus contested and IQVIA's customization practices speak to that issue.

Veeva argues that RFP 322 seeks information about IQVIA volume discounts, which Veeva argues is relevant to the issue of geographic market definition as Veeva alleges global markets for software and data while IQVIA asserts country-specific markets. Veeva believes that in antitrust cases, the determination of what constitutes the relevant geographic market is a question of fact for the fact finder. Veeva thus argues that IQVIA volume discounts across national markets would reflect a business understanding that these software and data markets are global and that its customers buy globally. Veeva further argues that RFP 322 requests volume discount materials because it may show industry recognition of global markets. Thus it seeks materials related to "sales techniques" and would encompass other marketing materials beyond RFP 54, which focuses on pricing based on product characteristics.

Veeva argues that RFPs 323-324 seek evidence of IQVIA's market power in the Reference Data, Sales Data, and MDM markets. RFP 323 seeks information about IQVIA competitors who have exited relevant product markets since 2012. Veeva argues that the exit of competitors from relevant markets is circumstantial evidence of IQVIA's power to exclude. RFP 324 seeks documents in which IQVIA discussed product pricing in conjunction with product cost. Veeva argues that these materials will illustrate IQVIA's price-cost margin, a key piece of direct evidence for monopoly power.

Veeva argues that RFPs 325-327 seek reports and analysis concerning customers who have switched from IQVIA's products to competitors' products and vice versa. Veeva believes this information is also relevant to the question of product market definition. Veeva argues that courts typically consider substitute products when defining the scope of the product market. Thus Veeva maintains that IQVIA's records of the alternate products that its customers choose or abandoned will help identify products that are actually substitutes for IQVIA products. To test IQVIA's assertions that its markets are broad, Veeva argues it needs IQVIA records and analysis of departing customers to determine what companies those customers actually see as substitutes.

With respect to RPFs 319-321, IQVIA argues that the cases Veeva cites make clear that the relevant question is the extent to which other MDM providers can compete with so-called life sciences-specific MDM providers. The question is not the extent to which IQVIA is customizing its own product. IQVIA argues that in any event, Veeva has already asked for a significant amount of information about competition for MDM and cites RFPs 19, 42, 46, and 240.

IQVIA argues that Request 322 is duplicative of request 54, which sought information about pricing or pricing strategy for any IMS, Reltio, or Cegedim life science products or any IMS or Reltio product suit. IQVIA explains that the geographic limitation of this request was the subject of motion practice resolved by the Court in its favor. Now, it alleges that Veeva is back with a request for documents relating to volume discounts for data products, which it maintains are obviously part of pricing or pricing strategy. IQVIA points out that Veeva's current request is without geographic limitation. IQVIA argues that it is inappropriate for IQVIA to lose a motion to compel and then serve duplicative requests and bring another motion to compel.

With respect to RFPs 323-324, IQVIA argues that Veeva has already asked for information about IQVIA's costs, competitors, and competitive analyses and points to RFPs 18-

20, 24-26, 30-32, 36-38, 42-46, 234-235, 237-238, and 240-241. With respect to RFPs 325-327, IQVIA argues that it has already agreed to produce information about competitive opportunities and points to RFPs 235, 238, and 241.

**Opinion**

RFP 319 seeks all documents and things relating to customization of any MDM product that IQVIA sells or re-sells. RFP 320 seeks documents sufficient to show customization of any MDM product IQVIA sells or re-sells, due to that product's use with data products in a particular language. RFP 321 seeks all documents and things relating to customization of any IQVIA data product. The Special Master agrees that whether Veeva will be able to show antitrust injury will depend in part on IQVIA's market power and thus the definition of the relevant market. Veeva has cited to case law that demonstrates that the degree of customization of products may be relevant to determination of the relevant market. See *Klickads, Inc. v. Real Estate Bd. of New York, Inc.*, No. 04CIV8042LBS, 2007 WL 2254721, at *8 (S.D.N.Y. Aug. 6, 2007), adhered to on denial of reconsideration sub nom. *Klickads, Inc. v. Real Estate Bd. of New York*, No. 04 CIV 8042 (LBS), 2007 WL 2981422 (S.D.N.Y. Oct. 9, 2007). The Special Master is persuaded that the information sought in these requests is relevant to Veeva's antitrust action. However, the Special Master also believes these requests must be limited to avoid an undue burden to IQVIA. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Requests for Production Nos. 319-321 but will limit IQVIA's responses to documents "sufficient to show" the requested information. IQVIA is ordered to provide the aforementioned responses within thirty days for the date of this order.

RFP 322 seeks all documents and things relating to any IQVIA policy, practice, strategy, or sales techniques of offering volume discounts for IQVIA data products. The Special Master

notes that RFP No. 54 seeks "[a]ll documents and things relating to IMS's pricing or pricing strategy for any IMS, Reltio, or Cegedim life sciences IT products, or any IMS or Reltio product suite. This includes without limitation documents and things sufficient to explain the characteristics of such products or suites that determine prices(s), including without limitation customer characteristics or number of users of the product or product suite, price per user, duration of the contract, renewal terms, and whether the customer buys the product or product suite on its own or with other products or product suites." The Special Master believes that any documents responsive to RFP 322 will be produced in response to RFP 54. Accordingly, the Special Master believes RFP 322 is unduly cumulative.

RFP 323 seeks for each year in the relevant time period, documents sufficient to show any person's exit from any life sciences IT product market. A review of prior requests reveal that IQVIA is already producing documents relating to persons competing against IQVIA in response to RFPs 19, 20,25, 26, 31, 32, 37, 38, 42-46, 237-238, and 240-241. The Special Master believes that any documents responsive to RFP 323 will be produced in response to the aforementioned RFPs. Accordingly, the Special Master believes RFP 323 is unduly cumulative.

RFP 324 seeks documents and things discussing or considering life sciences IT product costs in conjunction with life sciences IT product price changes. The Special Master is persuaded that the information sought in this request is relevant and the targeted nature of the request reduces IQVIA's burden of production. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Request for Production No. 324 within thirty days of the date of this order.

RFP 325 seeks any research, analyses, presentation, summaries, or reports of customers switching from purchasing customer reference data from IQVIA to another data provider, and vice versa. The Special Master is persuaded that the information sought in this request is relevant

and that the information has not been sought in prior requests. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Request for Production No. 325 within thirty days of the date of this order.

RFP 326 seeks any research, analyses, presentations, summaries, or reports of customers switching from purchasing sales and performance data from IQVIA to another data provider, and vice versa. The Special Master is persuaded that the information sought in this request is relevant and that the information has not been sought in prior requests. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Request for Production No. 326 within thirty days of the date of this order.

RFP 327 seeks any research, analyses, presentations, summaries, or reports of customers switching from purchasing MDM product(s) IQVIA sells or re-sells to another MDM provider, and vice versa. The Special Master is persuaded that the information sought in this request is relevant and that the information has not been sought in prior requests. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Request for Production No. 327 within thirty days of the date of this order.

## VI.    RFPs 328, 354-355, 359, 366-369, 372

### RFP 328
All documents and things relating to any IQVIA, Reltio, or Cegedim policy, practice, or strategy to decrease or limit the compatibility of any life sciences IT products with any competitor's life sciences IT products, including Veeva's life sciences IT products.

IQVIA objected on the grounds that it is largely cumulative and duplicative. It also objected on the ground it is vexatious and creates an undue burden. It also objected that the requests are irrelevant and beyond the scope.

### RFP 354
Documents sufficient to show any IQVIA policy or practice of allowing or prohibiting customers or their agents from matching an IQVIA data product with any competitor's data product when a customer switches from an IQVIA data product to a competitor data product.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected on the grounds that it seeks the production of documents subject to confidentiality and or other non-disclosure agreements. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 355**
All documents and communications relating to any instance in which IQVIA has allowed or prohibited a customer or its agents from matching any IQVIA data product with any competitor's data product when a customer switches from an IQVIA data product to a competitor data product.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected on the grounds that the request is vague and ambiguous.

**RFP 359**
Any documents and communications relating to "sensitive" or "elevated" TPA requests, including without limitation documents and communications relating to elevation of any TPA requests to Seyed Mortazavi.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It objected on the grounds that it is cumulative and duplicative. It also objected to the request as irrelevant and beyond the scope. It also objected on the grounds that it seeks the production of documents subject to confidentiality and or other non-disclosure agreements. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 366**
All documents and communications concerning "Global TPA process and analytics adoption."

IQVIA objected on the grounds that it is largely cumulative and duplicative. It also objected on the ground it is vexatious and creates an undue burden. It also objected to the request as irrelevant and beyond the scope. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 367**
From 2010 to the present, all documents and communications relating to "competitive sections," "action plans" or "mandatory executive review for priority competitors" involving TPAs.

IQVIA objected on the grounds that it is largely cumulative and duplicative. It also objected on the ground it is vexatious and creates an undue burden. It also objected to the request as irrelevant and beyond the scope. It also objected to the extent the request seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 368**
Documents sufficient to identify all persons who participated in any "mandatory executive review for priority competitors."

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected to the request as irrelevant and beyond the scope. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 369**
Documents sufficient to identify all "priority competitors" (as IQVIA uses the term).

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected to the request as irrelevant and beyond the scope. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 372**
For any portal used by IQVIA to process requests or applications for TPAs, documents and communications relating to changes to rules, conditions, policies, or coding that affect(ed) the approval or rejection of life sciences IT product TPAs with (1) Veeva or any other IQVIA competitor (as IQVIA uses the term), and (2) MDM TPAs, or data integration TPAs (as IQVIA uses the term). This request includes without limitation (a) documents and communications relating to such changes relating to any element of IQVIA data or any person named in a TPA request and (b) any TPA portal change logs.

IQVIA objected on the grounds that it is largely cumulative and duplicative. It also objected on the ground it is vexatious and creates an undue burden. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce

Veeva argues that these RFPs are relevant to IQVIA's anticompetitive TPA policies and practices conduct at the heart of its Section 2 claims under the Sherman Act.

RFP 328 seeks information regarding any strategy or practice by IQVIA to limit the compatibility of its relevant data and software products with any competitor's complementary products, including Veeva's. Veeva argues that any IQVIA strategy to limit compatibility with a rival's complementary products could constitute anticompetitive conduct, both by harming competitors and by harming life sciences company customers who depend on the interoperability of these data and software products to create lifesaving drugs. Veeva argues that none of the previous RPFs served implicate IQVIA's attempt to design product incompatibility.

RFPs 354-355 seek information about IQVIA's policy of blocking Veeva customers from matching certain elements found in Veeva's data with certain elements found in IQVIA's data. Veeva argues that its counterclaim alleges that such practices are anticompetitive, as they raise customers' cost of using Veeva data products, thereby working to exclude Veeva from data and MDM markets. Thus Veeva argues that materials related to these practices are relevant. Veeva asserts that IQVIA has agreed to produce only its data match-blocking strategy documents from designated custodians.

RFPs 359 and 366-369 seek materials concerning IQVIA's practices regarding requests for TPAs by customers of certain competitors. Veeva argues that according to deposition transcripts obtained from Symphony, IQVIA conducts executive reviews for TPAs involving strong competitors. Veeva seeks documents and communications regarding these review sessions and the identity of persons participating. Veeva believes this will demonstrate that IQVIA targets Veeva and Veeva's customers with more burdensome TPA procedures.

RFP 372 concerns the technical process IQVIA uses to block customer TPAs. Veeva explains that when customers want to use IQVIA data with a Veeva product, they must request a TPA from IQVIA's TPA Portal. Veeva alleges that over the years customers have reported increasing restrictions within the portal when they seek TPAs involving Veeva. Veeva requests logs or records of changes to IQVIA's TPA portal concerning TPAs requested by Veeva's customers, which Veeva believes will provide a timeline of IQVIA's anticompetitive behavior. Veeva argues that it seeks noncustodial records from IQVIA's TPA portal—materials separate from the custodial documents IQVIA agreed to produce in RFPs 70-71.

With respect to RFP 328, IQVIA argues that it has already agreed to produce such documents to the extent they exist. IQVIA maintains that it has gone even further and agreed to

produce any relevant information relating to any strategy to affect the sale of any person's life sciences products by restricting access to any IMS, Cegedim or Reltio input or product.

With respect to RFPs 354-355, IQVIA argues that it has agreed to produce relevant documents relating to policies concerning "matching or mapping" any of its products with any other person's products. It points to RFP No. 82.

With respect to RFPs 359 and 366-369, IQVIA argues that Veeva has also asked for— and IQVIA has agreed to produce—documents related to IQVIA's TPA process for the offerings relevant to this litigation and points to RFPs 70-71.

With respect to RFP 372, IQVIA argues that that Veeva has also asked for—and IQVIA has agreed to produce—documents related to IQVIA's TPA process for the offerings relevant to this litigation and points to RFPs 70-71.

**Opinion**

RFP 328 seeks all documents and things relating to any IQVIA, Reltio, or Cegedim policy, practice, or strategy to decrease or limit the compatibility of any life sciences IT products with any competitor's life sciences IT products, including Veeva's life sciences IT products. With respect to RFP 328, IQVIA has stated that has agreed to produce documents responsive to this request to the extent they exist and that it will produce any relevant information relating to any strategy to affect the sale of any person's life sciences products by restricting access to any IMS, Cegedim or Reltio input or product. Consequently, the Special Master does not believe it is necessary to compel IQVIA to respond to RFP 328.

RFP 354 seeks documents sufficient to show any IQVIA policy or practice of allowing or prohibiting customers or their agents from matching an IQVIA data product with any competitor's data product when a customer switches from an IQVIA data product to a competitor

data product. The Special Master notes that RFP No. 82 sought "[a]ll documents and things relating to any IMS, Cegedim, or Reltio strategy, tactic, policy, practice, or procedure preventing any person from matching or mapping any IMS or Cegedim data product with any other person's data product in any technological environment or software." This RFP was limited to designated custodians and Veeva now appears to seek all documents from all sources. The Special Master is persuaded that the information sought in Request 354 is relevant and that the request for documents "sufficient to show" adequately reduces IQVIA's burden of production. Accordingly, the Special Master will compel IQVIA to respond to RFP 354 within thirty days of the date of this order. IQVIA's response shall not be limited to custodial documents.

RFP 355 seeks all documents and communications relating to any instance in which IQVIA has allowed or prohibited a customer or its agents from matching any IQVIA data product with any competitor's data product when a customer switches from an IQVIA data product to a competitor data product. The Special Master is persuaded that the information sought in this request is relevant and that the information has not been sought in prior requests. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Requests for Production No. 355 within thirty days of the date of this order.

RFP 359 seeks any documents and communications relating to "sensitive" or "elevated" TPA requests, including without limitation documents and communications relating to elevation of any TPA requests to Seyed Mortazavi. The Special Master notes that RFP 71 seeks "[a]ll documents and things relating to any potential or actual TPA or RSAA between IMS, Reltio, or Cegedim and any Veeva customer" and that RFP 72 seeks "[a]ll documents and things relating to any potential or actual TPA or RSAA between IMS, Reltio, Cegedim or Veeva and any other participant in the life sciences IT product market." It is the opinion of the Special Master that

information responsive to RFP 359 will be produced in response to RFPs 71 and 72. Accordingly, the Special Master believes RFP 359 is unduly cumulative.

RFP 366 seeks all documents and communications concerning "Global TPA process and analytics adoption." The Special Master notes that RFP 70 seeks "[a]ll documents and things relating to any potential or actual terms or negotiations of, or tactics, strategies, policies, procedures, actions, or non-actions relating to any potential or actual IMS or Cegedim TPA with any person participating in the market for life sciences IT products. This includes without limitation all documents and things relating to: (A) any rationale, motivation, or justification for any TPA policy, from TPA agreements, and specific provisions of TPAs; (B) any negotiations, tactics, strategies, policies, practices, procedures, actions or non-actions concerning a TPA or provision of a TPA; (C) any research or analysis by any person of the market, financial, or competitive effects of any potential or actual TPAs, specific provisions of those agreements, negotiations, tactics, strategies, policies, practices, procedures, actions or non-actions; and (D) any document reviewed, created by, or contributed to by any expert or consultant evaluating TPAs, specific provisions of those agreements, negotiations, tactics, strategies, policies, practices, procedures, actions, or non-actions." It is the opinion of the Special Master that information responsive to RFP 366 will be produced in response to RFPs 70-72. Accordingly, the Special Master believes RFP 366 is unduly cumulative.

RFP 367 seeks from 2010 to the present, all documents and communications relating to "competitive sections," "action plans" or "mandatory executive review for priority competitors" involving TPAs. It is the opinion of the Special Master that information responsive to RFP 367 for the relevant time period, 2012-2017, will be produced in response to RFPs 72. Veeva has not

provided an explanation for its need for documents from prior to the relevant time period at issue in this matter. Accordingly, the Special Master believes RFP 367 is unduly cumulative.

RFP 368 seeks documents sufficient to identify all persons who participated in any "mandatory executive review for priority competitors." The Special Master is persuaded that the information sought in this request is relevant and that the information has not been sought in prior requests. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Requests for Production No. 368 within thirty days of the date of this order.

RFP 369 seeks documents sufficient to identify all "priority competitors" (as IQVIA uses the term). The Special Master is persuaded that the information sought in this request is relevant and that the information has not been sought in prior requests. Accordingly, the Special Master will compel IQVIA to respond to Veeva's Requests for Production No. 369 within thirty days of the date of this order.

RFP 372 seeks for any portal used by IQVIA to process requests or applications for TPAs, documents and communications relating to changes to rules, conditions, policies, or coding that affect(ed) the approval or rejection of life sciences IT product TPAs with (1) Veeva or any other IQVIA competitor (as IQVIA uses the term), and (2) MDM TPAs, or data integration TPAs (as IQVIA uses the term). This request includes without limitation (a) documents and communications relating to such changes relating to any element of IQVIA data or any person named in a TPA request and (b) any TPA portal change logs. The Special Master is persuaded that the information sought in this request is relevant and that the information has not been sought in prior requests. Accordingly, the Special Master will compel IQVIA to respond to RFP 372 within thirty days of the date of this order. IQVIA's response shall not be limited to custodial documents.

## VII.  RFPs 352-353, 356-358, 364-365, 370-371

### RFP 352
All documents and communications discussing the importance or value of maintaining or increasing IQVIA's market share or position in data product markets.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as beyond the scope of permissible discovery. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

### RFP 353
All documents and communications discussing the importance or value of maintaining or increasing IQVIA's market share or position in the MDM product market.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

### RFP 356
All documents and communications relating to winning or maintaining "enterprise customers" (as IQVIA uses the term) for any IQVIA life sciences product or product suite.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected as cumulative and duplicative of other requests. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

### RFP 357
From January 1, 2012 through December 31, 2013, all documents and things relating to any changes to IQVIA TPA policy with respect to ImpactRx Inc. This includes without limitation documents and communications relating to: (a) Any changes to IQVIA TPA policy relating to Impact Rx Inc. in light of Symphony Technology Group's acquisition of Source Healthcare Analytics LLC on or about May 2012; (b) Any customer complaints relating to any changes; and (c) any research, reports, estimates, or analysis, relating to whether and how IQVIA's TPA policy relating to ImpactRx Inc. affected or harmed ImpactRx Inc., Symphony Health Solutions Corporations, Source Healthcare Analytics LLC, or any other Symphony Technology Group portfolio company, including any additional costs, lost market share, or lost revenue from or lost sales to customers, including but not limited to Forest, Shire, and UCB.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected on the grounds that it seeks the production of documents subject to confidentiality and or other non-disclosure agreements. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 358**
From January 1, 2013 through December 31, 2013, all documents and things relating to any changes to IQVIA TPA policy with respect to Evidera Inc. This includes without limitation documents and communications relating to: (a) any changes to IQVIA TPA policy relating to Evidera Inc. in light of Symphony Technology Group's acquisition of Evidera Inc. or United BioSource Corporation (UBC) on or about July 2013; (b) any customer complaints relating to any such changes; and (c) any research, reports, estimates, or analysis, relating to whether and how IQVIA's TPA policy affected or harmed Evidera Inc., Symphony Health Solutions Corporations, Source Healthcare Analytics LLC, or any other Symphony Technology Group portfolio company, including any additional costs, lost market share, or lost revenue from or lost sales to customers.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It objected on the grounds that it is cumulative and duplicative. It also objected on the grounds that it seeks the production of documents subject to confidentiality and or other non-disclosure agreements. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 364**
All documents, including but not limited to slide decks, presentations, reports, analyses, or research, referred to as "monopoly cards" (as IQVIA uses the term), including any documents referring to IQVIA assets as "monopoly cards." For purposes of this request, "assets" includes without limitation information assets, including any data with patient ID or patient identification.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected to the requests as irrelevant and beyond the scope. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 365**
All communications relating to "monopoly cards."

IQVIA objected on the grounds that it is vexatious and undue burden. It also objected to the request as irrelevant and beyond the scope. It also objected to the request as vague. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 370**
All communications concerning any "win-back" or displacement of business from Veeva.

IQVIA objected on the grounds that it is largely cumulative and duplicative. It also objected on the ground it is vexatious and creates an undue burden. It also objected to the extent the request seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 371**

All documents, including research, analysis, reports, presentations, pricing or pricing strategies, or marketing or marketing strategies, concerning any "win-back" or displacement of business from Veeva. This request includes without limitation all presentations to the "leadership steering committee," or "customer steering review" relating to competition with or displacement of Veeva.

IQVIA objected on the grounds that it is largely cumulative and duplicative. It also objected on the ground it is vexatious and creates an undue burden. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

Veeva argues that these requests are relevant to IQVIA's anticompetitive intent. Veeva cites case law to support the proposition that intent is relevant to both monopoly maintenance and attempted monopolization. It also cites law to suggest that prior conduct may shed light upon the motivation of its refusal to deal in violation of Section 2 of the Sherman Act and that broad discovery may be needed to uncover evidence of invidious design, pattern or intent.

RFPs 352-353 and 356 seek materials relating to IQVIA's efforts to maintain market share, and IQVIA's views on the importance of maintaining or winning enterprise customers. Veeva argues that discussions of maintaining market share enterprise customers—especially as it relates to competitors—is likely to shed light on IQVIA's motivations for its TPA policies and other anticompetitive behavior. Veeva further argues that IQVIA has not agreed to produce the documents sought in these requests in response to RFP 60. It argues that RFPs 60 and 64 concern competitive strategies, not analysis of acquiring market share or winning enterprise customers.

RFPs 370-371 seek materials related to IQVIA's alleged efforts to win-back customers who have switched from IQVIA to Veeva. Veeva argues that it alleges that IQVIA has targeted Veeva for exclusion from life sciences IT product markets and IQVIA's win-back efforts are likely to involve the anticompetitive behavior outlined in Veeva's Section 2 claims. Veeva further argues that while IQVIA has agreed to provide information relating to gaining and maintaining customers, that does not necessarily encompass regaining customers or "win-backs."

RFPs 357-358 seek information relating to IQVIA's anticompetitive behavior towards Symphony, who Veeva alleges also experienced TPA related anticompetitive conduct. Veeva argues that IQVIA's previous TPA related anticompetitive conduct is relevant to IQVIA's current anticompetitive intent. Veeva argues that these RPFs target two prior instances of IQVIA's anticompetitive conduct against a similarly situated competitor, are limited to precise time periods, and seek information about the result of that conduct, including customer complaints.

RFPs 364-365 concern monopoly cards. Veeva argues that the Symphony depositions demonstrate that IQVIA refers to its own data products as monopoly cards. Veeva thus seeks internal communications and documents in which IQVIA refers to its own data products as monopoly cards. Veeva argues that IQVIA's exclusionary conduct directed at Veeva is directly relevant to Veeva's Section 2 claims.

With respect to RFPs 352-353 and 356, IQVIA argues it has already agreed to produce these documents and points to RFPs 60 and 64. With respect to RFPs 370-371, IQVIA argues that it has already agreed to produce a wide range of documents relating to competition with Veeva including strategies, tactics, practices, and actions to gain customers or sales customers who are or were customers of Veeva. IQVIA has also agreed to produce relevant information concerning strategies to maintain customers more generally.

With respect to RFPs 357-358, IQVIA argues that these requests relate to information about changes in IQVIA's TPA policy, which it has already agreed to produce in response to RFPs 70-71. With respect to RFPs 364-365, IQVIA argues that it is already producing a substantial amount of information related to market power and points to RFPs 18-20, 24-26, 30-32, 36-38, 42-46, 234-235, 237-238, and 240-241.

**Opinion**

RFP 352 seeks all documents and communications discussing the importance or value of maintaining or increasing IQVIA's market share or position in data product markets. A review of prior discovery requests reveals that Veeva has already requested "[a]ll documents and things relating to any actual or potential IMS strategy or tactic that IMS has considered or used to enter, compete in, or gain share in any life science IT product market" and "[a]ll documents and things relating to IMS, Reltio, or Cegedim's considered, potential, or actual strategies, tactics, plans, policies, practices, procedures, actions, or non-actions for retaining IMS, Reltio, or Cegedim life sciences IT product customers, or preventing those customers from using any other product, or responding to those customers' decision to use any other product." See RFPs 60 and 64. However, the Special Master does not believe all information sought in RFP 352 will necessarily be produced in response to RFPs 60 and 64. Accordingly, the Special Master will order IQVIA to respond to RFP 352 within thirty days of the date of this order.

RFP 353 seeks all documents and communications discussing the importance or value of maintaining or increasing IQVIA's market share or position in the MDM product market. The Special Master does not believe all information sought in Veeva's RFP 353 will necessarily be produced in response to RFPs 60 and 64. Accordingly, the Special Master will order IQVIA to provide a response to RFP 353 within thirty days of the date of this order.

RFP 356 seeks all documents and communications relating to winning or maintaining "enterprise customers" (as IQVIA uses the term) for any IQVIA life sciences product or product suite. The Special Master has reviewed Veeva's prior requests and does not believe the information sought in RFP 356 has previously been requested. Accordingly, the Special Master will order IQVIA to respond to RFP 356 within thirty days of the date of this order.

RFP 357 seeks from January 1, 2012 through December 31, 2013, all documents and things relating to any changes to IQVIA TPA policy with respect to ImpactRx Inc. This includes without limitation documents and communications relating to: (a) Any changes to IQVIA TPA policy relating to Impact Rx Inc. in light of Symphony Technology Group's acquisition of Source Healthcare Analytics LLC on or about May 2012; (b) Any customer complaints relating to any changes; and (c) any research, reports, estimates, or analysis, relating to whether and how IQVIA's TPA policy relating to ImpactRx Inc. affected or harmed ImpactRx Inc., Symphony Health Solutions Corporations, Source Healthcare Analytics LLC, or any other Symphony Technology Group portfolio company, including any additional costs, lost market share, or lost revenue from or lost sales to customers, including but not limited to Forest, Shire, and UCB. The Special Master has reviewed Veeva's prior discovery requests and does not believe the information sought in RFP 357 has previously been requested. Additionally, the information sought by Veeva in this request is targeted as to time and companies thereby decreasing the burden to IQVIA. Accordingly, the Special Master will order IQVIA to respond to RFP 357 within thirty days of the date of this order.

RFP 358 seeks from January 1, 2013 through December 31, 2013, all documents and things relating to any changes to IQVIA TPA policy with respect to Evidera Inc. This includes without limitation documents and communications relating to: (a) any changes to IQVIA TPA policy relating to Evidera Inc. in light of Symphony Technology Group's acquisition of Evidera Inc. or United BioSource Corporation (UBC) on or about July 2013; (b) any customer complaints relating to any such changes; and (c) any research, reports, estimates, or analysis, relating to whether and how IQVIA's TPA policy affected or harmed Evidera Inc., Symphony Health Solutions Corporations, Source Healthcare Analytics LLC, or any other Symphony

Technology Group portfolio company, including any additional costs, lost market share, or lost revenue from or lost sales to customers. The Special Master has reviewed Veeva's prior discovery requests and does not believe the information sought in RFP 358 has previously been requested. Additionally, the information sought by Veeva in this request is targeted as to time and companies thereby decreasing the burden to IQVIA. Accordingly, the Special Master will order IQVIA to respond to RFP 358 within thirty days of the date of this order.

RFP 364 seeks all documents, including but not limited to slide decks, presentations, reports, analyses, or research, referred to as "monopoly cards" (as IQVIA uses the term), including any documents referring to IQVIA assets as "monopoly cards." For purposes of this request, "assets" includes without limitation information assets, including any data with patient ID or patient identification. The Special Master has reviewed Veeva's prior discovery requests and does not believe the information sought in RFP 364 has previously been requested. Accordingly, the Special Master will order IQVIA to respond to RFP 364 within thirty days of the date of this order.

RFP 365 seeks all communications relating to "monopoly cards." Veeva asserts that "monopoly cards" are how IQVIA refers to its own data products. The Special Master has reviewed Veeva's prior discovery requests and does not believe the information sought in RFP 365 has previously been requested. While IQVIA maintains it is producing substantial information related to market power, this does not foreclose Veeva from requesting additional relevant information. Accordingly, the Special Master will order IQVIA to provide a response to RFP 365 within thirty days of the date of this order.

RFP 370 seeks all communications concerning any "win-back" or displacement of business from Veeva. The Special Master has reviewed Veeva's prior discovery requests

including RFPs 42 and 43, which seek documents relating to any market research, market analysis, or competitor research related to MDM and CRM. The Special Master does not believe that the information sought in RFP 370 will necessarily be produced in response to other discovery requests. Accordingly, the Special Master will order IQVIA to respond to RFP 370 within thirty days of the date of this order.

RFP 371 seeks all documents, including research, analysis, reports, presentations, pricing or pricing strategies, or marketing or marketing strategies, concerning any "win-back" or displacement of business from Veeva. It is the opinion of the Special Master that information responsive to RFP 371 will be produced in response to RFPs 42, 43, 234, 235, and 240. Accordingly, the Special Master believes RFP 371 is unduly cumulative.

### VIII. RFPs 360-363

#### RFP 360
All documents and communications indicating customer desire for increased competition in life sciences IT product markets. This request includes without limitation any market research, reports, or analysis relating to customer funding or support of competitors to IQVIA in life sciences IT product markets, including but not limited to NDCHealth Corporation.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected on the grounds that it is cumulative and duplicative. It also objected that the request is irrelevant and beyond the scope. It also objected on the grounds that it seeks the production of documents subject to confidentiality and or other non-disclosure agreements. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

#### RFP 361
All communications from customers in which customers refer to IQVIA as a monopolist; IQVIA's holding, acquiring, manipulation, or exploiting monopoly power or assets; or monopolizing any life sciences IT product market.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected that the request as irrelevant and beyond the scope. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

**RFP 362**
For each year in the relevant time period, all surveys conducted by or on behalf of IQVIA of IQVIA customers in the United States, including "customer experience surveys," relating to customer opinion of IQVIA or IQVIA life sciences IT products or product suites.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected that the request as irrelevant and beyond the scope.

**RFP 363**
For each year in the relevant time period, all surveys conducted by or on behalf of IQVIA of IQVIA customers outside the United States, including "customer experience surveys," relating to customer opinion of IQVIA or IQVIA life sciences IT products or product suites.

IQVIA objected on the grounds that it is vexatious and creates an undue burden. It also objected to the request as irrelevant and beyond the scope. It also objected to the extent it seeks documents about geographic markets that do not impact U.S. commerce.

Veeva argues that an antitrust plaintiff must show antitrust injury which can be proven by a showing that the defendant's conduct harms consumers. Veeva alleges that IQVIA's anticompetitive conduct harms competition and harmed life science company customers by raising costs and reducing choice for data products and software application. Thus Veeva argues these requests seek relevant information regarding consumer harm.

RFPs 361-362 concern customer communications regarding market competition and IQVIA's market power. Veeva seeks documents and communications in which customers express desire for increased competition or refer to IQVIA as monopolist. Veeva argues that this will support its claim that IQVIA's conduct harms competition and harms consumers. Veeva further argues that when analyzing the issue of product market definition and market power, courts consider customers' opinions regarding product markets and monopolist's power.

With respect to RFPs 361-362, IQVIA argues that it has already agreed to produce a substantial amount of relevant information relating to competition and the retention of its

customers. It argues that it has also agreed to produce information about customer communications and points to RFPs 64 and 66.

RFPs 362-363 concern customers' opinions about their experiences interacting with IQVIA and using IQVIA's products. Veeva argues that the deposition transcripts obtained from Symphony indicate that IQVIA conducts customer surveys and that its customers have reported "feeling trapped." Veeva argues that these surveys will show customers' perceptions of consumer choice, their rationales for using IQVIA's products, and their opinions about IQVIA's TPA policies. Veeva believes such materials will show the extent to which customers feel forced to use IQVIA's products, as well as harm to customers from IQVIA TPA policies. Veeva further argues that its requests are not encompassed in RFPs 64 and 66. Moreover, it argues that it is not enough for IQVIA to produce a large amount of relevant information, it must produce the relevant information requested here.

With respect to RFPs 362-363, IQVIA argues that it has already agreed to produce a substantial amount of relevant information relating to competition and the retention of its customers. It argues that it has also agreed to produce information about customer communications and points to RFPs 64 and 66.

**Opinion**

RFP 360 seeks all documents and communications indicating customer desire for increased competition in life sciences IT product markets. The Special Master has reviewed Veeva's prior discovery requests and does not believe the information sought in RFP 360 has previously been requested. The Special Master also believes the information requested is relevant to Veeva's antitrust claims. Accordingly, the Special Master will order IQVIA to respond to RFP 360 within thirty days of the date of this order.

RFP 361 seeks all communications from customers in which customers refer to IQVIA as a monopolist; IQVIA's holding, acquiring, manipulation, or exploiting monopoly power or assets; or monopolizing any life sciences IT product market. The Special Master has reviewed Veeva's prior discovery requests and does not believe the information sought in RFP 361 has previously been requested. The Special Master also believes the information requested is relevant to Veeva's antitrust claims. Accordingly, the Special Master will order IQVIA to respond to RFP 361 within thirty days of the date of this order.

RFP 362 seeks for each year in the relevant time period, all surveys conducted by or on behalf of IQVIA of IQVIA customers in the United States, including "customer experience surveys," relating to customer opinion of IQVIA or IQVIA life sciences IT products or product suites. The Special Master has reviewed Veeva's prior discovery requests and does not believe the information sought in RFP 362 has previously been requested. The Special Master also believes the information requested is relevant to Veeva's antitrust claims. Accordingly, the Special Master will order IQVIA to respond to RFP 362 within thirty days of the date of this order.

RFP 363 seeks for each year in the relevant time period, all surveys conducted by or on behalf of IQVIA of IQVIA customers outside the United States, including "customer experience surveys," relating to customer opinion of IQVIA or IQVIA life sciences IT products or product suites. The Special Master has reviewed Veeva's prior discovery requests and does not believe the information sought in RFP 363 has previously been requested. The Special Master notes that Veeva is seeking information related to IQVIA customers outside the Unites States. It is well established that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States. *Hartford Fire Ins. Co. v. California*,

509 U.S. 764 (1993). The Special Master believes that the information sought may be relevant to a determination of whether IQVIA engaged in any foreign conduct that had a substantial effect on U.S. commerce. Accordingly, the Special Master will order IQVIA to respond to RFP 363 within thirty days of the date of this order.

## IX. Closing Remarks

The Special Master notes that unless otherwise indicated, his opinion compelling IQVIA to produce information in response to Veeva's requests is limited to documents in possession of the designated custodians. The Special Master also notes that the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States. In order to focus responses to relevant information and to lessen the burden posed by Veeva's discovery requests, the Special Master limits his Order compelling production of relevant documents to those with information that involves or affects U.S. commerce or those that relate to the United States, geographic areas such as North America that include the United States, and documents that relate to global markets.

**DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)**
**Special Master**

Date: 10/11/18