UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD, <br><br> Plaintiffs/ Counterclaim Defendants, <br><br> vs. <br><br> VEEVA SYSTEMS, INC., <br><br> Defendant/ Counterclaim Plaintiff. | Case No.: 2:17-CV-00177-CCC-MF <br><br><br> **ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master on Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD's (collectively "IQVIA") motion for reconsideration or, in the alternative, clarification of the Court's May 13, 2019 Order & Opinion. After considering the submissions of IQVIA and Defendant-Counterclaim Plaintiff Veeva Systems, Inc. ("Veeva"), based upon the following, it is the opinion of the Special Master that IQVIA's motion for reconsideration is **DENIED** and that IQVIA's request for clarification is **GRANTED in Part**.

## DISCUSSION

### Arguments

**IQVIA's Arguments**

IQVIA asserts that this motion has been necessitated by Veeva's attempt to use the Court's language as to the purpose of the audit to demand that IQVIA withdraw its privilege claims over documents relating to the audit that were not previously before the Court. In particular, IQVIA points to Veeva's demand that IQVIA withdraw its assertion of privilege over documents subpoenaed by Veeva from Stroz Friedberg, a digital security expert firm retained

1

with assistance from outside counsel for IQVIA following the Ernst & Young ("EY") audit. IQVIA contends that Veeva has construed the Order as blocking its assertion of privilege over documents that related to the EY audit as a blanket matter.

In support of reconsideration, IQVIA first argues that the decision whether to grant Veeva a TPA and the performance of the EY audit were predominately legal in nature. IQVIA explains that it licenses its information on terms that do not permit its licensees to share the licensed information with third parties. Thus, a client or vendor's request to enter into a TPA generally arises after the client has already taken a license to IQVIA's information. IQVIA asserts that decision making authority as to whether to grant a TPA to Veeva specifically was entrusted to IQVIA's in-house legal team, and not its business team. IQVIA argues that the vesting of authority to IQVIA's legal team reflects the legal nature of the TPA request. Thus IQVIA argues that the decision whether to grant a TPA request is fundamentally a legal decision over whether contractual terms and conditions can be drafted to sufficiently protect IQVIA's intellectual property, and if so, what those terms and conditions should be. Because EY was retained by IQVIA's in-house legal counsel to facilitate the legal team's evaluation of a TPA request relating to Veeva, IQVIA argues the predominate purpose of the EY audit is likewise legal in nature.

Second, IQVIA argues that if the Court declines to find that the EY audit was predominately legal in nature, it requests that the Court not reach the issue of the purpose of the EY audit at this time. IQVIA points out that the Court viewed the question as a difficult one, stating "licensing of this data and TPA agreements are intimately intertwined with and difficult to distinguish from the business purpose of the audit." IQVIA thus argues that the Court should reconsider its Order and decline to determine the purpose of the audit. IQVIA points out that the

Court independently reasoned that the advice being sought from the audit was that of EY's and that EY was evaluating Veeva's systems and processes, not IQVIA's technical information. Thus the dispute over whether attorney client privilege extended to the EY documents could have been resolved without reaching the question of whether the purpose of the EY audit was predominately legal.

Third, to the extent that the Court does not revisit its holding as to the purpose of the EY audit, IQVIA requests that the Court clarify the language of its holding that "the Veeva assessment served a predominately business purpose." IQVIA explains that taken in this context, IQVIA understands the Order to reason that EY's role in the audit was predominately business-related. IQVIA further understands the Court's holding to be limited in scope to the documents at issue in the briefing before the Court—i.e., the documents subpoenaed from EY—and not to extend to IQVIA's privilege assertions over documents that were not at issue before the Court. IQVIA requests that the Court clarify these points, in light of Veeva's contrary interpretation of the Court's language, which appears to interpret the Order to invalidate IQVIA's assertion of privilege over documents that are beyond the scope of the EY documents subpoenaed by Veeva. IQVIA asserts that such documents could include communications between IQVIA's legal counsel and digital security experts regarding potential modifications to IQVIA's TPA program to protect IQVIA's intellectual property and/or communications among IQVIA's counsel or between IQVIA's counsel and other IQVIA employees providing or seeking advice relating to same. IQVIA argues that whether or not these documents are privileged is a separate inquiry that has not yet been briefed for the Court and is thus not properly within the scope of the Order.

### Veeva's Arguments

Veeva argues that IQVIA cannot meet the legal standard for reconsideration or clarification of the Court's Order. Veeva asserts that there must have been an intervening change

in the law, previously unavailable evidence that has become available, or there must be a clear error of law or manifest injustice. Veeva argues that IQVIA cannot meet this standard and that its disagreement with the Court's outcome does not suffice for reconsideration. Veeva contends that IQVIA has done no more than present the same arguments it already made and which the Special Master considered and rejected.

Veeva further argues that IQVIA presents no legitimate grounds for its request that the Order be narrowed and the issue of the purpose of the EY audit be deleted. Veeva argues that the purpose of the audit was fully briefed and ruled on in the May 13, 2019 Order & Opinion. Veeva asserts that IQVIA's real argument is that it wishes the Court had ruled differently.

Veeva believes that IQVIA is attempting to expand the record and introduce new issues, which it argues is improper and does not warrant relief. Veeva agrees with IQVIA that other issues were not and are not presently before the Court. Veeva asserts that if other issues over other IQVIA privilege assertions ever become ripe, the Special Master should decide them when properly presented on a full record, not on a motion for reconsideration or clarification.

### IQVIA's Reply Arguments

IQVIA argues that it cited the correct standard for granting motions for reconsideration and that courts in this district have explicitly cited *Bowers v. Nat'l Collegiate Athletic Assoc.*, 130 F.Supp.2d 610, 613 (D.N.J. 2001). IQVIA asserts that the matter overlooked can be, a clear error that needs to be corrected to prevent a manifest injustice. IQVIA argues that it demonstrated the matters overlooked that might reasonably have resulted in a different conclusion: first, the distinction between the legal nature of the TPA process and the separate decision driven by business considerations to license data to a client; and, second, the distinction between EY's specific purpose compared with that of IQVIA's audit of Veeva more generally. IQVIA asserts that it does not merely re-present rejected arguments but has pointed out what it

4

believes the Special Master may have been unaware of with respect to these issues. IQVIA further argues that its motion seeks to avoid resolution of any unripe collateral issues. It seeks only to ensure that separate issues are resolved separately.

### Opinion

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). A motion for reconsideration is viable when one of three scenarios is present: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Allowing a motion for reconsideration to go forward is an "extraordinary remedy" to be granted "sparingly." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996) (citations omitted).

Notably, a motion seeking reconsideration may not be used by a party to "restate arguments that the court has already considered." *Lawrence v. Emigrant Mortg. Co.*, Civ. No. 11-3569, 2012 WL 5199228, *2 (D.N.J., Oct. 18, 2012). Nor may such a motion be used "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc.*, 935 F.Supp. at 516. Further, where a party merely has a difference of opinion with the court's decision, the issue should be raised through the normal appellate process; reconsideration is not the appropriate vehicle. *Dubler v. Hangsterfer's Laboratories*, Civ. No. 09-5144, 2012 WL 1332569, *2 (D.N.J., Apr. 17, 2012) (citing Bowers v. Nat'l Collegiate Athletic Ass'n, 130 F.Supp.2d 610, 612 (D.N.J. 2001)).

IQVIA's application for reconsideration fails to provide a basis to grant the "extraordinary remedy" requested. IQVIA has not demonstrated an intervening change in the

controlling law, the availability of new evidence not previously available, or the need to correct a clear error of law or prevent manifest injustice.

However, in light of the issues raised in the parties' submission, the Special Master will clarify that his May 13, 2019 Order & Opinion considered and ruled on IQVIA's privilege assertions related to documents subpoenaed from EY in relation to EY's audit of Veeva. The Special Master did not consider and did not rule on any other documents or issues. To provide the parties with clarity in consideration of the issues raised in the present motion, the Special Master will revise the May 13, 2019 Order & Opinion as follows (all changes are underlined):

> Additionally, it is the opinion of the Special Master that the Veeva assessment performed by EY served a predominately business purpose. While the EY audit may also have supported IQVIA's thinking on how it would proceed with the licensing of IQVIA reference data to Veeva for master data management purposes under the TPA program and inform IQVIA's thinking on TPA agreement terms, the EY audit was predominantly for business purposes, not legal purposes. The primary purpose of the EY audit was to determine the accuracy of Veeva's assurances that IQVIA reference data could be used in Veeva's MDM offering without risk that IQVIA's data would be used by Veeva to improve its own offerings. Thus the EY audit was intended to inform IQVIA's business decision on whether or not to allow Veeva to use its reference data in Veeva's MDM offering. While licensing of this data and TPA agreements are intimately intertwined with and difficult to distinguish from the business purposes of the EY audit, here, the EY assessment would not have been undertaken but for IQVIA's need to make a business determination as to whether, at the request of IQVIA's clients, IQVIA would allow its clients to share certain data licensed from IQVIA with Veeva for use by Veeva in its MDM offering. While this generally involves evaluation of TPA agreements and licensing protections, it does not change the fact that the central purpose of the EY audit was business in nature. EY was chiefly engaged to assess the assurances made by Veeva regarding its protection of IQVIA data. That the information obtained from EY's assessment of Veeva might inform IQVIA's decision on whether its TPA agreements were sufficient does not transform the purpose of the EY audit into a predominately legal one and thus shield all EY communications from disclosure.

Accordingly, as both IQVIA and Veeva acknowledge in their submissions to the Court, should issues over other IQVIA privilege assertions become ripe, they may at that time be presented to the Court and properly decided. The Special Master's May 13, 2019 Order and Opinion dealt exclusively with IQVIA's privilege assertions related to Veeva's subpoena of documents from EY concerning EY's audit of Veeva.

*[signature]*

**DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)**
**Special Master**

Date: July 10, 2019