# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD,<br><br>Plaintiffs/ Counterclaim Defendants,<br><br>vs.<br><br>VEEVA SYSTEMS, INC.,<br><br>Defendant/ Counterclaim Plaintiff. | Case No.: 2:17-CV-00177-CCC-MF<br><br>**ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master upon letter briefing submitted by Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD, (collectively "IQVIA") and Defendant-Counterclaim Plaintiff Veeva Systems, Inc. ("Veeva") related to the parties' discovery dispute involving health insurance payers.

## DISCUSSION

On or about November 1, 2017, Veeva served IQVIA with its Second Set of Requests for Production ("RFP"). Those requests included:

### 273
All documents and things related to any disclosure by IMS, whether pursuant to any sale, license, or otherwise, of any Healthcare Professional Data or Healthcare Organization Data to any entity required to maintain a provider database regulated by 45 C.F.R. § 156.230, 42 C.F.R. §438.10, and/or 42 C.F.R. § 422.111.

### 274
All documents and things relating to any disclosure by IMS, whether pursuant to any sale, license, or otherwise, of any Healthcare Professional Data or Healthcare Organization Data to any QHP issuer as that term is used in 45 C.F.R. § 156.230 and related regulations.

1

**275**
All documents and things relating to any disclosure by IMS, whether pursuant to any sale, license, or otherwise, of any Healthcare Professional Data or Healthcare Organization Data to any MCO, PIPH, PAHP, or PCCM entity, as those terms are used in 42 C.F.R. § 438.10 and related regulations.

**276**
All documents and things relating to any disclosure by IMS, whether pursuant to any sale, license, or otherwise, of any Healthcare Professional Data or Healthcare Organization Data to any MA organization, as that term is used in 42 C.F.R. § 422.111 and related regulations

On or about May 22, 2018, Veeva filed a motion to compel, requesting in part, that IQVIA produce documents responsive to RFP Nos. 273-276. IQVIA argued that production of the information was not relevant to the case and that production would be unduly burdensome. By Order dated July 19, 2018, the Special Master determined that the requests were relevant and that IQVIA had not demonstrated that the requests were unduly burdensome. The Special Master therefore ordered IQVIA to provide full and complete responses to RFP Nos. 273-276 within forty-five days.

Prior to the filing of the Special Master's July Order, on or about May 30, 2018, Veeva served IQVIA with its Second Set of Interrogatories and Third Set of Requests for Production ("RFP"). Veeva's Second Set of Interrogatories included the following interrogatory request:

**Interrogatory No. 32**
Identify each PAYER whom IQVIA has disclosed any DATA from January 1, 2012, to the present, including the date of each such disclosure, and the nature of the disclosure (i.e, whether it was "Healthcare Professional Date" [Comp. ¶¶20-26], or a "Sub-National Information Offering" [Compl. ¶¶ 27-37], or something else).

Veeva's Third Set of Requests for Production included the following requests:

**310**
All agreements to provide any IQVIA data product to any person that do not include a restriction against putting any portion of such information on a government or publicly available website, database, or registry. This includes agreements up to and including the present date.

### 311

All documents and things relating to any disclosure by IQVIA (whether pursuant to any sale, license, or otherwise) of any IQVIA data under any circumstances that did not include a restriction against putting any portion of such information on a publicly available website, database, or registry.

### 312

All agreements to provide any IQVIA data to any health insurance provider, such as (but not limited to) UnitedHealth Group Inc. and its affiliates; Anthem, Inc. and its affiliates; Aetna Inc. and its affiliates; Humana Inc. and its affiliates; Cinga Corporation and its affiliates; and Centene Corporation and its affiliates. This includes agreements up to an including the present day.

### 313

All documents and things relating to any disclosure by IQVIA (whether pursuant to any sale, license, or otherwise) of any IQVIA data, to any health insurance provider, such as (but not limited to) UnitedHealth Group Inc. and its affiliates; Anthem, Inc. and its affiliates; Aetna Inc. and its affiliates; Humana Inc. and its affiliates; Cinga Corporation and its affiliates; and Centene Corporation and its affiliates.

### 314

All agreements that allow a license of any such data in accordance with any applicable law, regulation, or industry standard, including without limitation agreements that reference 45 C.F.R. § 156.230, 42 C.F.R. § 438.10, or 42 C.F.R. §422.111. This includes agreements up to and including the present day.

### 315

All agreements for the sale or license of any IQVIA data to any payer. This includes agreements up to and including the present data and includes without limitation data privacy or confidentiality agreements, schedules, or addendums relating to such sale or license of IQVIA data to any payer.

On or about July 18, 2018, Vceva filed a second motion to compel, requesting in part, that IQVIA respond to Interrogatory No. 32 and RFP Nos. 310-315. In its opposition to Vecva's second motion, IQVIA stated:

> In response to Veeva's Interrogatory No. 32 and Veeva's RFP Nos. 310-315, and based on Your Honor's July 19, 2018 Order, which addressed the issue of payers, IQVIA will provide responsive information pursuant to Your Honor's July 19, 2018 Order. Thus, Veeva will receive the information it claims to seek Your Honor to compel in this Motion, making any ruling on these requests moot.

In his September 14, 2018 Order, the Special Master noted that IQVIA had represented that it would provide responses to Interrogatory No. 32 and RFP Nos. 310-315. The Special Master then ordered IQVIA to produce its responses to those requests within thirty days.

### Arguments

### Veeva's Arguments

Veeva seeks an order compelling IQVIA to comply with the Special Master's Order and Opinion dated July 19, 2018 (ECF No. 141) and the Special Master's Order and Opinion dated September 14, 2018 (ECF No. 146) by providing full and complete responses to Veeva's Interrogatory No. 32 and RFP Nos. 273-276 and 310-315, as written and without limitation. Specifically, in producing documents and providing supplemental interrogatory responses, Veeva wants to ensure that IQVIA does not exclude discovery concerning any of the "Market Research Offerings" described in IQVIA's Complaint (e.g., Complaint ¶¶20-26 and ¶¶27-37).

According to Veeva, IQVIA accuses Veeva of misappropriating information found in two types of IQVIA data products: IQVIA's reference data products, and IQVIA's sales and performance data products. Veeva explains that IQVIA refers to the two types of data products at issue as its "Market Research Offerings." One type of IQVIA's Market Research Offerings is referred to in IQVIA's Complaint as its Healthcare Professional Data Offerings. The Healthcare Professional Data Offerings provide information about healthcare professionals and healthcare organizations. This information is generally referred to as reference data and includes things like contact information, medical specialty, and so on.

According to Veeva, IQVIA refers to its other type of Market Research Offerings as its Sub-National Information Offerings. These data products are also commonly referred to as IQVIA's sales data products or performance data products. These products include, in part, information not found in IQVIA's reference data products, such as information about

4

prescriptions written by doctors and drugs used by hospitals. Veeva maintains that as IQVIA pleaded, its sales and performance data products also include some of the same reference data information. Veeva asserts that the overlap of reference data found in both types of IQVIA products is important because IQVIA has always accused Veeva of misappropriating reference data found in both.

Veeva maintains that it wrote its discovery requests to include both types of IQVIA data products. For instance, it points to Interrogatory No. 32, which explicitly seeks the identity of each payer to whom IQVIA disclosed data, including Sub-National Information Offerings. Veeva explains that payers—entities like health insurance companies—fit into the picture because such entities are required to publish reference data in online directories, pursuant to federal regulations.

Veeva argues that IQVIA originally objected to RFP Nos. 273-276, Interrogatory No. 32, and RFP Nos. 310-315 on the grounds of burden. In the July 19, 2018 Order, the Special Master ordered IQVIA to respond to RFP Nos. 273-276 in full. Having lost once, Veeva believes that IQVIA then dropped its objections to Interrogatory No. 32 and RFP Nos. 310-315, which were the subject of a second motion to compel that Veeva submitted the day before the July 19 Order was filed. Veeva argues that IQVIA is now trying to re-argue what has already been the subject of prior decisions. Accordingly, Veeva believes that the Special Master should reject IQVIA's post hoc arguments.

With respect to Interrogatory No. 32 and RFP Nos. 310-315, Veeva further explains that after IQVIA lost an earlier motion to compel, IQVIA dropped its objections to Interrogatory No. 32 and RFP Nos. 310-315 and indicated that it would provide responsive information pursuant to the July 19, 2018 Order. Veeva argues that nowhere did IQVIA state that it would only respond

to this discovery in part. Veeva believes that nothing supports IQVIA's position that it only agreed to provide discovery about reference data product disclosures and not sales and performance data product disclosures.

With respect to RFP Nos. 273-276, Veeva argues that these requests were not limited to one type of IQVIA product. Veeva argues that Healthcare Professional Data and Organization Data is included in both types of IQVIA data products. Veeva argues that IQVIA's own original briefing specifically argued both types of IQVIA products. Veeva argues that even if RFP Nos. 273-276 were found to be limited to IQVIA's disclosures of its reference data products to payers, that would not affect the scope of Veeva's Interrogatory No. 32 and RFP Nos. 310-315.

### IQVIA's Arguments

According to IQVIA, IQVIA's Healthcare Professional Market Research Offering are comprised of contact and professional relationship information for millions of individual healthcare professionals, including, for example, their names, phone numbers, addresses, license status, hospital and professional affiliations, specialties, and certifications. IQVIA's Healthcare Professional Market Research Offerings include Healthcare Relational Services and Healthcare Organization Services.

IQVIA's Sub-National Market Research Offerings are comprised of proprietary estimates relating to (a) the distribution of medicine and (b) the prescribing and dispensing of medicines. These offerings include DDD (sales information) and Xponent (prescription information).

IQVIA argues that the first payer-related discovery requests that the parties briefed—RFP Nos. 273-276, did not extend to Sub-National information. IQVIA argues the requests were limited to IQVIA's disclosure of Healthcare Professional Data, which Veeva defines by reference to paragraphs 20-26 of IQVIA's Complaint, which describes IQVIA's Healthcare Professional Market Research Offerings (not its Sub-National Market Research Offerings).

6

IQVIA further asserts that Veeva defines Healthcare Professional Data as IQVIA's OneKey, Healthcare Relational Services, and Healthcare Organization Services Offerings. Veeva does not include IQVIA's Sub-National Market Research Offerings—DDD and Xponent in this definition. Because of these limitations, IQVIA believes that Veeva's first motion to compel related only to Healthcare Professional information, without any reference to Sub-National information, and that the Court's July 19, 2018 Order was likewise limited.

IQVIA explains that the second payer-related dispute related to Veeva's Interrogatory No. 32 and RFP Nos. 310-315. IQVIA asserts that while these discovery requests do extend to Sub-National information, Veeva narrowed its requests in its briefing. IQVIA argues that Veeva did not request that the Court order IQVIA to produce Sub-National information. IQVIA thus maintains that when it agreed to respond to these requests pursuant to the July 19, 2018 Order, it was with the understanding that Veeva's requests pertained to the disclosure of Healthcare Professional information to payers in the U.S. and not to the disclosure of Sub-National information. IQVIA argues that the Court has not heard or decided the present dispute.

IQVIA then argues that disclosure of Sub-National Market Research Offerings to payers would be irrelevant. IQVIA explains that payers do not rely upon IQVIA's Sub-National Market Research Offerings to update publicly available online provider directories. IQVIA argues that to the extent that a payer would even license IQVIA's Sub-National information, it would be for the purposes of internal analyses and strategic planning—not to manage an online provider directory, for several reasons. First, IQVIA asserts that it would not comport with applicable regulations for payers to update provider directories based on IQVIA's Sub-National information. Second, IQVIA's licensing practice is to provide its Market Research Offerings to clients for internal use only. Third, IQVIA's Sub-National information is not developed or

7

marketed by IQVIA for the purpose of payers' directory management. Finally, IQVIA argues that it would be cost prohibitive for a payer to license IQVIA's Sub-National information and use whatever limited Healthcare Professional information may be contained therein to manage a directory, because IQVIA's Sub-National information is substantially more expensive than its Healthcare Professional information, and given the expense of linking the Healthcare Professional information to a publicly available directory.

IQVIA further argues that providing Veeva with information on IQVIA's disclosure of Sub-National information would be a burdensome process that is not justified in light of the fact that payers do not rely on this information to update their provider directories. IQVIA argues that the burden would include: (1) analyzing tens of thousands of purchases of licensed Sub-National Market Research Offerings to determine which Sub-National information provided to clients even included information about identified healthcare professionals or healthcare organizations (this type of detailed information is not generally available in IQVIA financial records, and it would require extensive manual research in production or client service records to make that determination); (2) analyzing information relating to hundreds of U.S. clients for each year in a five year period to identify which recipients of Sub-National information were payers; (3) for any clients that are not readily identifiable as payers or non-payers, engaging in research to determine whether any of such clients are actually payers (Veeva has not provided IQVIA with a list of payers it is interested in); and (4) in the event any such client is a payer, determining the date and nature of the delivery of Sub-National information to that client and producing related documents.

**Opinion**

RFP Nos. 273-276 request information related to disclosure by IMS of Healthcare Professional Data or Healthcare Organization Data. To determine whether these requests encompassed Sub-National Information Offerings, the Special Master has carefully examined the Complaint and discovery requests at issue.

IQVIA's Complaint explains that it provides clients with market research products that combine healthcare data, market research and proprietary analytics. This is referred to as IQVIA's "Market Research Offerings." There are two categories of IQVIA's Market Research Offerings. The first category is "Healthcare Professional Data Offerings." This includes information IQVIA acquires about healthcare professionals and healthcare organizations. The second category is "Sub-National Information Offerings," which consists of two types of services: (1) sales information services, (e.g., DDD information services); and (2) prescription information services (e.g., XPonent information services).

The Special Master does not believe RFP Nos. 273-276 expressly requested information related to IQVIA's Sub-National Information Offerings. Rather, the requests appear limited to the first category of Market Research Offerings, IQVIA's Healthcare Professional Data Offerings. The Special Master further notes that Veeva included definitions within its Second Set of Requests for Production. Veeva specifically defined "Sales and Performance Data" as data sometimes called "Sub-National Information Offerings," data described in ¶37 of Veeva's Counterclaims, or data concerning pharmaceutical sales such as the consumption, prescription, and administration of prescription drugs. RFP Nos. 273-276 make no reference or request for Sales and Performance Data. Accordingly, the Special Master does not believe that RFP Nos. 273-276 expressly sought information related to IQVIA's Sub-National Information Offerings

and thus IQVIA's responses to these requests did not need to encompass Sub-National Information Offerings.

However, Interrogatory No. 32 and RFP Nos. 310-315 plainly sought information that included IQVIA's Sub-National Information Offerings. Interrogatory No. 32 expressly states that the request includes Sub-National Information Offerings. RFP Nos. 310-315 references IQVIA "data", which was defined as "any life sciences Customer Reference Data or Sales and Performance Data product or offering." Sales and Performance Data was then defined as "(a) data sometimes called Sub-National Information Offerings; (b) data described in ¶37 of Veeva's Counterclaims; or (c) data concerning pharmaceutical sales such as the consumption, prescription, and administration of prescription drugs."

The Special Master is not persuaded by IQVIA's arguments that when it agreed to produce information responsive to Interrogatory No. 32 and RFP Nos. 310-315 it was with the understanding that Veeva's requests pertained to the disclosure of Healthcare Professional information to payers in the U.S. and not to the disclosure of Sub-National information.

In its opposition to Veeva's second motion to compel, IQVIA could have specified that it agreed to provide information limited to Healthcare Professional Data and then could have made its burden and relevancy arguments with respect to production of the requested Sub-National information. IQVIA did not do this. Instead, IQVIA stated:

> In response to Veeva's Interrogatory No. 32 and Veeva's RFP Nos. 310-315, and based on Your Honor's July 19, 2018 Order, which addressed the issue of payers, IQVIA will provide responsive information pursuant to Your Honor's July 19, 2018 Order. Thus, Veeva will receive the information it claims to seek Your Honor to compel in this Motion, making any ruling on these requests moot.

The Special Master did not understand this representation to be a limitation to the disclosure of Sub-National information. While the Special Master's July 19, 2018 Order did not

discuss the issue of Sub-National information with respect to payers, the Special Master fails to see how reference to that Order signifies that IQVIA would not be providing information responsive to the Sub-National information clearly sought in Interrogatory No. 32 and RFP Nos. 310-315. Moreover, had IQVIA intended to limit its response and not disclose Sub-National information, the motion to compel would not have been moot, as stated by IQVIA, and the Special Master could have ruled on the issue.

IQVIA has been represented by sophisticated counsel throughout this litigation. In its opposition to Veeva's second motion to compel, counsel for IQVIA represented that it would provide responsive information to Interrogatory No. 32 and RFP Nos. 310-315 thus making any ruling moot. While acknowledging that those representations were made by IQVIA's former counsel, the Special Master expects IQVIA to abide by its representations to the Court. Accordingly, IQVIA is ordered to provide full and complete responses to Interrogatory No. 32 and RFP Nos. 310-315 within thirty days of the date of this order.

**DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)**
**Special Master**

Date: September 25, 2019