

**Arnold B. Calmann**
**(973) 645-4828**
**abc@saiber.com**

October 4, 2019

**VIA ECF**

The Honorable Claire C. Cecchi
United States District Judge for the District of New Jersey
Martin Luther King Building and United States Courthouse
50 Walnut Street, Room 4015
Newark, NJ 07101

    Re:   *IQVIA, et al. v. Veeva Systems Inc.*,
           Civil Action No. 2-17-cv-00177-CCC-MF

Dear Judge Cecchi:

    On behalf of Defendant and Counterclaim-Plaintiff Veeva Systems Inc., we write in response to the Court's September 27, 2019 Order directing the parties to submit a letter regarding the status of two appeals from orders of the Special Master, Hon. Dennis M. Cavanaugh (Ret.), ECF Nos. 150, 194, and one related motion to stay, ECF No. 205. These matters concern the orderly adjudication of IQVIA's claim that Veeva misappropriated trade secrets.

    **Requested relief**. These matters still require the Court's attention. The Special Master committed an error of law in compelling Veeva to produce vast discovery without IQVIA's identification of each alleged trade secret at issue. "[I]dentification of a trade secret . . . is certainly a necessary precondition to conducting discovery." *Avaya Inc. v. Cisco Sys., Inc.*, 2011 WL 4962817, at *2 (D.N.J. Oct. 18, 2011); *see also Givaudan Fragrances Corp. v. Krivda*, 2013 WL 5781183, at *4 (D.N.J. Oct. 25, 2013) ("Generally, a plaintiff in a misappropriation of trade secrets case must identify *with precision* the trade secrets at issue at the outset of the litigation."). Prompt, clear trade-secret identification ensures fair notice to defendant of the allegations against it, enables formulation of a defense, and curtails boundless discovery. For those reasons, courts across the country require such identification *pre-discovery*. *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1152–54 (D. Or. 2015) (recognizing "the 'growing consensus' of courts from around the country" requiring pre-discovery trade-secret identification) (cite omitted). Where discovery has proceeded *for years*, conclusory allegations that Veeva "stole IQVIA's data" cannot suffice. The Court should reverse the Special Master's decisions and direct IQVIA to identify its trade secrets by supplementing its interrogatory responses. The Court should hold in abeyance whether any additional documents need be produced pending IQVIA's supplemented responses.

    **First appeal – ECF No. 150**. The first appeal concerns two interrogatories (#33 and #35) asking IQVIA to identify exactly what IQVIA contends Veeva misappropriated and who, when, where, and how Veeva used these "secrets" to improve Veeva's products. These interrogatories are as basic as can be imagined when a party is accused of such wrongdoing.

Hon. Claire C. Cecchi, U.S.D.J.
October 4, 2019
Page 2

In September 2018, the Special Master ruled that IQVIA's answers to those interrogatories were adequate "at this time" and "at this stage of discovery." ECF No. 147 at 6. At that time, no depositions had been taken and voluminous documents and files were still being exchanged. That ruling is now more than a year old and the case is in a very different state. After multiple extensions, fact discovery will be complete in mid-December. Dozens of depositions, 46 to date, have been completed. Discovery is fully mature, the record highly developed, and fact discovery ends in only two months.

Yet IQVIA has not supplemented its answers in the intervening year. It should be ordered to do so forthwith. This is a matter of fair notice: without detailed answers, Veeva still does not know exactly what it is accused of misappropriating. It cannot compare such items to information in the public domain, or to information Veeva independently developed, in order to test IQVIA's claims of secrecy and defend itself. Veeva is entitled to detailed information about its alleged wrongdoing before the close of discovery in order to probe those specifics.

Indeed, in May 2018, the Special Master said to Veeva: "I can understand your argument, that if you had to produce deponents, people from your company, or whatever, you should be in a position to know any accusations that might be against those persons." May 8, 2018 Stat. Conf. Tr. at 45. We are now well past that point. Fifteen Veeva witnesses have sat for deposition without a bill of particulars from IQVIA of how, when, and where Veeva supposedly misused any "secret." IQVIA has had nearly three years of litigation, and oceans of discovery; it can no longer say it needs more time and yet more discovery before providing foundational facts about its own claims.

**Second appeal – ECF No. 194**. The second appeal is similar. Underlying **ECF No. 194** is Veeva's interrogatory 14, which requests that "IQVIA identify with precision and specificity each alleged trade secret of IMS that IMS contends Veeva misappropriated." This is a fundamental question asked in every trade secret case — *what are your alleged trade secrets?*

Without answering interrogatory 14 with any detail, and thus unconstrained by any limits on the alleged IP at issue, IQVIA sought massive, unbounded discovery, including entire software product source code repositories, as well as extremely burdensome and expensive forensic examination of hundreds of indiscriminate computers. Veeva sought a protective order from such sweeping discovery until IQVIA identified each alleged trade secret, asserting that only then can reasonable and proportionate discovery be crafted. The Special Master denied the protective order and ordered the free-ranging discovery, expanding the group of people from whom Veeva must seek records from the agreed upon 25 custodians to a whopping 100 additional Veeva employees. Veeva appealed.

In any event, the massive additional discovery IQVIA has requested is likely mooted by what Veeva has already produced. IQVIA alleges, without specifics, that Veeva took unidentified IQVIA data about doctors or hospitals and copied that data into its OpenData and MDM software offerings, instead of gathering the information from public sources. Challenging IQVIA to back up that baseless accusation, **Veeva long ago provided IQVIA with a complete working version of its MDM product and OpenData dataset showing historical changes to the OpenData dataset. IQVIA literally has an exact working copy of the system and data that Veeva's internal teams use to compile, update and maintain the Veeva products at issue in this case.**

**This production — several *terabytes* of database information produced in its original form — includes detailed information reflecting every change to every database record going back long before the lawsuit started, such as changes based on Veeva's regular data feeds from entities like the American Medical Association and government agencies recorded by source, and changes requested by Veeva end-customers based on observations from field sales representatives.**

Despite direct access to the very thing IQVIA claims to be the subject of this case, IQVIA still refuses to identify any specific "trade secret," and refuses to explain what (if anything) Veeva has done wrong. To cover up the absence of a case, it demands an ever-changing, ever expanding set of additional discovery — data from China, forensic copies of 150 employee laptops, source code to Veeva products — inevitably moving on to the next, "critical" request when each fails to pan out.

Given what IQVIA already has in hand, none of the dozens of depositions were hampered by a lack of Veeva source code or the "forensic artifacts" IQVIA claims to need before it can say what its trade secrets are or what Veeva did wrong. On this second appeal, the Court should order IQVIA to fully answer interrogatory 14 and hold any decision on whether any additional extensive forensic searching is needed until after that answer. Once IQVIA fully answers, then a reasonable and proportionate scope of additional production, if any, can be crafted, based on articulated, discrete IP claims.

**Motion to stay – ECF No. 205**. The third pending item is Veeva's request that the Special Master's temporary stay [ECF No. 201] of the November 30, 2018 Order be maintained until Veeva's appeal is resolved because, absent a stay, Veeva's opportunity to vindicate its right of appeal would be futile. The stay should be maintained for the time being.

The Special Master required Veeva to turn over vast discovery with no guideposts, despite Veeva already handing over a complete working version with historical changes of the products at issue. When IQVIA does not find anything helpful to its case, it demands ever more discovery, unmoored from the limiting boundaries provided by a defined list of specific alleged trade secrets, and endlessly extending the discovery period. This cycle should stop. Discovery has been massively lopsided: while Veeva turns over terabytes of records, Veeva has been unable to ask IQVIA witnesses questions about any specific trade secret claim, since none has been identified. This entire process has been unfair and prejudicial.

*   *   *   *   *

Even if there had been any basis for those rulings long ago, there could be none now: After intensive fact discovery IQVIA should be required to answer the long-pending interrogatories forthwith, with *precision* and *specificity*, and without conclusory phrases that do not meaningfully communicate real information. Then, armed with that specific information, the parties and the Special Master can confront the significantly overbroad discovery demands IQVIA has made (and continues to make), including those which precipitated these appeals.

We thank Your Honor for the Court's consideration.

Hon. Claire C. Cecchi, U.S.D.J.
October 4, 2019
Page 4

                                               Respectfully submitted,

                                               Arnold B. Calmann