UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IQVIA, INC. and IMS SOFTWARE
SERVICES, LTD,

    Plaintiffs/ Counterclaim Defendants,

vs.

VEEVA SYSTEMS, INC.,

    Defendant/ Counterclaim Plaintiff.

Case No.: 2:17-CV-00177-CCC-MF

**ORDER & OPINION OF THE SPECIAL MASTER**

This matter comes before the Special Master on Plaintiffs-Counterclaim Defendants IQVIA, Inc. and IMS Software Services, LTD's, (collectively "IQVIA") motion for reconsideration and clarification of the Court's July 10, 2019 Order. After considering the submissions of the parties, based upon the following, it is the opinion of the Special Master that IQVIA's motion is **Denied but that the July 10, 2019 Order is modified as detailed herein.**

## DISCUSSION

### Background

On July 10, 2019, the Special Master entered an Order and Opinion granting in part Defendant-Counterclaim Plaintiff Veeva System, Inc.'s ("Veeva") motion to compel discovery related to Cegedim. This information included: (1) Cegedim's TPA policy and TPA decisions with respect to OneKey (whether the vendor was Veeva or a third party); (2) Cegedim's pricing of OneKey in any non-U.S. geography, including Europe and any European regions or nations; (3) Cegedim's sale of OneKey, including customer lists, win-loss records, and invoice data; (4) OneKey financial information, including revenue, profit, and cost; (5) documents sufficient to show Cegedim's pricing of OneKey in Europe from 2012 to the present; (6) documents sufficient

1

to show Cegedim's sale of OneKey in Europe from 2012 to the present; and (7) documents sufficient to show Cegedim's OneKey financial information in Europe from 2012 to the present, including revenue, profit, and cost.

## Arguments

### IQVIA

IQVIA argues that it did not have the opportunity to show that the proposed limitations made by Veeva for the first time in its reply, did not, in fact, meaningfully limit the extremely burdensome nature of Veeva's requests. IQVIA argues that while Veeva's reply limitations might have appeared superficially narrower, they were as equally burdensome as the original requests. IQVIA argues that it was improper for Veeva to wait until its reply to artificially narrow its requests. IQVIA explains that the requests remain overbroad because Cegedim's OneKey product was offered primarily in Europe. IQVIA asserts that 70% of OneKey global (non-US) records were from Europe alone. IQVIA thus argues that the request remains extraordinary.

IQVIA further argues that Veeva's requests contained no temporal limit tying any of its proposed requests to Veeva's counterclaims, as required to establish relevancy. IQVIA argues that the limitation Veeva proposed for its TPA related Request –documents from 2013 through 2015 plus a reasonable buffer period on each endpoint—is hollow since it covers the only relevant time period IQVIA is likely to have TPA related document for OneKey.

IQVIA also asserts that producing documents "sufficient to show" in response to Cegedim pricing, sales, and financial information, is not a limitation given the overbroad nature of Veeva's request and considering the number of sources IQVIA obtains data from. IQVIA asserts that it has already produced substantial discovery relating to Cegedim's OneKey offering

2

including documents related to Cegedim's TPA policy and decisions related to OneKey, OneKey pricing, OneKey sales, and OneKey financial information. IQVIA asserts that it has collected, reviewed, and produced documents from numerous former-Cegedim employees, and produced over 15,000 documents from those custodians dated pre-April 2015, including over 700 excel spreadsheets that hit on financial terms (e.g. revenue, profit, or cost). IQVIA maintains that during the meet and confer process IQVIA asked Veeva to explain why the documents IQVIA already produced were insufficient, and based on those documents, request additional narrowly tailored discovery. Veeva refused to do so. IQVIA asserts that in light of Veeva's failure to show that IQVIA's prior productions were insufficient and its failure to digest the information IQVIA provided and revert with narrowly tailored discovery requests, IQVIA respectfully requests that the Special Master reconsider the holding that Veeva has met its burden to demonstrate the relevance of its reply requests for additional documents requested for each category.

IQVIA also requests that the court clarify that the Order—which might be read to encompass documents held by Cegedim, a separate entity—is limited to January 1, 2012 (the beginning of discovery in this case) to April 2015 (the close of IQVIA's acquisition of certain of Cegedim's businesses) and applied only to documents in IQVIA's possession, custody, and control. IQVIA explains that the limitation makes sense because the discovery period in this case—agreed to by the parties—is January 1, 2012 through January 10, 2017. Second, in April 2015, IQVIA acquired parts of Cegedim's business—primarily consisting of Cegedim's OneKey and CRM offerings, but Cegedim is a separate entity, operating as a going concern, and not owned or controlled by IQVIA. Thus, IQVIA believes that the time period for which IQVIA should have to produce documents is January 1, 2012 until April 2015.

### Veeva

Veeva argues that IQVIA has failed to meet the legal standard necessary for a motion for reconsideration. Veeva argues that IQVIA cannot identify any dispositive factual or legal matter that was presented to the Special Master that the Special Master overlooked.

Veeva asserts that its offer to limit its requests in its reply was not improper. Veeva argues that in its motion it made clear that it was willing to limit certain requests to a sufficient to show basis but IQVIA indicated that it considered the requests, even so narrowed, to be too onerous and not proportional. Veeva argues that none of the case law cited by IQVIA indicates that Veeva's rebuttal arguments were improper. Veeva further asserts that IQVIA rehashes its prior arguments that because it has produced some discovery, it need not produce additional documents relating to Cegedim OneKey.

Veeva argues that the Special Master should also deny IQVIA's request for clarification. Veeva argues that it has alleged ongoing damages and Cegedim's financial documents are relevant to that calculation. Veeva also argues that no clarification is needed with respect to IQVIA's need to only produce documents in IQVIA's possession, custody, and control as that is the background legal standard.

### IQVIA's Reply Arguments

IQVIA argues that Veeva's tactic of changing its discovery demands in its reply undermines the entirety of the parties' meet and confer process. IQVIA asserts that Veeva's proposed limitations in its reply requests were superficial and did not mitigate the undue burden on IQVIA to collect, review, and produce documents responsive to the requests. IQVIA asserts that Veeva did not limit the time period of its requests relating to Cegedim's OneKey pricing, sales, and financial information at all-demanding documents that extend outside the discovery period.

IQVIA further requests that the Special Master clarify its Order to cut off discovery related to the requests at April 1, 2015, the date that IQVIA acquired Cegedim's OneKey offering. IQVIA argues it should not be required to produce documents relating to Cegedim's pricing, sale, and financial information for OneKey past April 1, 2015, when Cegedim no longer offered OneKey. IQVIA further argues that IQVIA should not be ordered to produce pricing, sales, and financial information for a separate company post-dating IQVIA's acquisition of OneKey from Cegedim on April 1, 2015.

IQVIA asserts that clarification is necessary because the Special Master ordered IQVIA to produce documents sufficient to show Cegedim's OneKey pricing, sales, and financial information through the present and IQVIA does not have documents within its possession, custody, or control to do so. IQVIA asserts that Cegedim is an entirely separate entity from IQVIA and IQVIA cannot compel an unaffiliated foreign company to produce the documents Veeva seeks. IQVIA believes that to the extent Veeva contends such documents are relevant, it must employ available legal avenues to seek such documents from Cegedim directly. IQVIA thus argues that the Special Master's Order should be clarified to state that IQVIA has no obligation to produce documents it does not have.

## Opinion

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). A motion for reconsideration is viable when one of three scenarios is present: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Allowing a motion for reconsideration to go forward

is an "extraordinary remedy" to be granted "sparingly." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996) (citations omitted).

Notably, a motion seeking reconsideration may not be used by a party to "restate arguments that the court has already considered." *Lawrence v. Emigrant Mortg. Co.*, Civ. No. 11–3569, 2012 WL 5199228, *2 (D.N.J., Oct. 18, 2012). Nor may such a motion be used "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc.*, 935 F.Supp. at 516. Further, where a party merely has a difference of opinion with the court's decision, the issue should be raised through the normal appellate process; reconsideration is not the appropriate vehicle. *Dubler v. Hangsterfer's Laboratories*, Civ. No. 09–5144, 2012 WL 1332569, *2 (D.N.J., Apr. 17, 2012) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F.Supp.2d 610, 612 (D.N.J. 2001)).

IQVIA's application for reconsideration fails to provide a basis to grant the "extraordinary remedy" requested. IQVIA has not demonstrated an intervening change in the controlling law, the availability of new evidence not previously available, or the need to correct a clear error of law or prevent manifest injustice. IQVIA's assertions that because it did not have the opportunity to show that the proposed limitations made by Veeva for the first time in its reply, did not, in fact, meaningfully limit the extremely burdensome nature of Veeva's requests, are not persuasive. IQVIA simply failed to demonstrate, in particular terms, the explicit burden Veeva's requests entailed. The federal rules allow for broad and liberal discovery. *Pacini v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999). Vague assertions of burden are not enough to overcome relevant requests.

However, to the extent the Special Master ordered IQVIA to produce documents to the present, the Special Master agrees that this was an oversight and document production should

have been limited to the recognized discovery period in this case, which is January 1, 2012 through January 10, 2017. The July 10, 2019 Order is thus amended to provide that IQVIA is to produce: (1) documents sufficient to show Cegedim's pricing of OneKey in Europe from 2012 to 2017; (2) documents sufficient to show Cegedim's sale of OneKey in Europe from 2012 to 2017, including customer lists, win-loss records, and invoice data; and (3) documents sufficient to show Cegedim's OneKey financial information in Europe from 2012 to 2017, including revenue, profit, and cost.

It is further clarified that IQVIA is to produce information according to the July 10, 2019 Order and this Order, only to the extent that responsive information exists and IQVIA is in possession, custody, or control of that responsive information. To state the obvious, IQVIA is under no obligation to produce responsive information that does not exist. Moreover, IQVIA has not been ordered to produce information that is in Cegedim's possession as opposed to its possession. Thus, to the extent IQVIA asserts that it does not have pricing, sales, and financial information post-dating IQVIA's acquisition of OneKey from Cegedim on April 1, 2015, again, IQVIA has no obligation to produce documents it does not have in its possession, custody, or control.

DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)
Special Master

Date: November 14, 2019

7