Michael Critchley
Amy Luria
CRITCHLEY, KINUM & DENOIA, LLC
75 Livingston Avenue
Roseland, New Jersey 07068
Tel. (973) 422-9200
mcritchley@critchleylaw.com
aluria@critchleylaw.com

Steig D. Olson
Stephen A. Broome
Marlo A. Pecora
David LeRay
Sophia Qasir
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. (212) 849-7000
steigolson@quinnemanuel.com
stephenbroome@quinnemanuel.com
marlopecora@quinnemanuel.com
davidleray@quinnemanuel.com
sophiaqasir@quinnemanuel.com

Stephen A. Swedlow
Michelle Schmit
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel. (312) 705-7400
stephenswedlow@quinnemanuel.com
michelleschmit@quinnemanuel.com

*Attorneys for Plaintiffs-Counterclaim Defendants
IQVIA Inc. and IMS Software Services, Ltd.*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IQVIA INC. and IMS SOFTWARE SERVICES, LTD., | |
| Plaintiffs – Counterclaim Defendants, | Case No.: 2:17-cv-00177-CCC-MF |
| v. | |
| VEEVA SYSTEMS, INC., | |
| Defendant – Counterclaim Plaintiff. | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF IQVIA'S MOTION FOR SANCTIONS AGAINST VEEVA FOR DESTROYING EVIDENCE

## TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ........................................................................................................1

II.   FACTUAL BACKGROUND ......................................................................................4

    A.   The Clean-Up Period (September – October 2015).................................................6

    B.   Ongoing Purges (November 2015 – December 2016)............................................13

    C.   Post-Filing Destruction (January 2017 – Present) ...............................................17

        1.   Veeva's Deletion Of ██████████ ...............................................17

        2.   Deletion Of ██████████ Emails ................................................22

        3.   Deletion Of Google Drive Documents ......................................................25

        4.   ███████████████████And Other Post-Filing Deletion ..........................................................................................................26

III.   ARGUMENT ............................................................................................................28

    A.   Rule 37(e)'s Preliminary Requirements Are Easily Met ......................................30

        1.   Veeva Was Obligated To Preserve Potentially Relevant Evidence ██████████████ In September 2015.................................30

        2.   The Information That Veeva Destroyed Cannot Be Recovered ...............31

        3.   Veeva's Destruction Of Evidence Was Intentional ..................................32

    B.   Veeva Acted With An "Intent To Deprive" IQVIA Of Crucial Discovery...........33

    C.   Veeva's Conduct Warrants Serious Sanctions.......................................................35

        1.   Default Judgment And Dismissal Are Commensurate With The Extreme Prejudice Veeva's Conduct Has Caused IQVIA To Suffer ........35

        2.   Any Alternative Sanction Must Be Severe ...............................................41

IV.   CONCLUSION..........................................................................................................43

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### Cases

*Ala. Aircraft Indus., Inc. v. Boeing Co.*,
319 F.R.D. 730 (N.D. Ala. 2017)..............................................................31, 33, 34

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985)............................................................................................37

*Broadcom Corp. v. Qualcomm Inc.*,
501 F.3d 297 (3d Cir. 2007)...............................................................................37

*Brown Jordan Int'l, Inc. v. Carmicle*,
2016 WL 815827, 33-37 (S.D. Fla. 2016) ..........................................................35

*Bull v. United Parcel Serv., Inc.*,
665 F.3d 68 (3d Cir. 2012).................................................................................30

*CAT3, LLC v. Black Lineage, Inc.*,
164 F. Supp. 3d 488 (S.D.N.Y. 2016)..........................................................29, 35

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
138 F. Supp. 3d 352 (S.D.N.Y. 2015)................................................................42

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
2019 WL 6527951 (S.D. Cal. Dec. 4, 2019)......................................................39

*CTC Glob. Corp. v. Huang*,
2019 WL 6357271 (C.D. Cal. July 3, 2019).......................................................42

*Culhane v. Wal-Mart Supercenter*,
364 F. Supp. 3d 768 (E.D. Mich. 2019)............................................................42

*Data General Corp. v. Grumman Sys. Support Corp.*,
36 F.3d 1147 (1st Cir. 1994)..............................................................................38

*DeCastro v. Kavadia*,
309 F.R.D. 167 (S.D.N.Y. 2015).......................................................................42

*DVComm, LLC v. Hotwire Commc'ns, LLC*,
2016 WL 6246824 (E.D. Pa. Feb. 3, 2016)...................................................33, 42

*Edelson v. Cheung*,
2017 WL 150241 (D.N.J. Jan. 12, 2017)............................................................33

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
2016 WL 5870218 (N.D. Cal. Oct. 7, 2016).......................................................34

*Folino v. Hines*,
2018 WL 5982448 (W.D. Pa. Nov. 14, 2018)................28, 30, 34, 35, 36, 38, 43

*Gentex Corp. v. Sutter*,
827 F. Supp. 2d 384 (M.D. Pa. 2011)............................................................30, 36

*GN Netcom, Inc. v. Plantronics, Inc.*,
   930 F.3d 76 (3d Cir. 2019) ........................................................................... 30

*GN Netcom, Inc. v. Plantronics, Inc.*,
   2016 WL 3792833 (D. Del. July 12, 2016) ................................................. 34

*Goldrich v. City of Jersey City*,
   2018 WL 4492931 (D.N.J. July 25, 2018) ................................................... 30

*Hildebrand v. Allegheny Cty.*,
   923 F.3d 128 (3d Cir. 2019) ........................................................................ 36

*Hugler v. Sw. Fuel Mgmt., Inc.*,
   2017 WL 8941163 (C.D. Cal. May 2, 2017) ............................................... 29

*Image Tech. Servs., Inc. v. Eastman Kodak Co. (Kodak II)*,
   125 F.3d 1195 (9th Cir. 1997) ..................................................................... 38

*In re Indep. Serv. Orgs. Antitrust Litig.*,
   203 F.3d 1322 (Fed. Cir. 2000) ................................................................... 38

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*,
   880 F.3d 620 (2d Cir. 2018) ........................................................................ 42

*Knoll v. City of Allentown*,
   707 F.3d 406 (3d Cir. 2013) ........................................................................ 30

*LendingTree, LLC v. Zillow, Inc.*,
   2014 WL 1309305 (W.D.N.C. Mar. 31, 2014) ........................................... 31

*Lexpath Techs. Holdings, Inc. v. Welch*,
   2016 WL 4544344 (D.N.J. Aug. 30, 2016) ................................................. 33

*Malone v. Weiss*,
   2018 WL 3656482 (E.D. Pa. Aug. 2, 2018) ............................................... 29

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) ..................................................................................... 37

*Nation-wide Check Corp. v. Forest Hills Distrib., Inc.*,
   692 F.2d 214 (1st Cir. 1982) ....................................................................... 43

*Nationwide Life Ins. Co. v. Betzer*,
   2019 WL 5700288 (M.D. Fla. Oct. 28, 2019) ............................................ 41

*Novell, Inc. v. Microsoft Corp.*,
   731 F.3d 1064 (10th Cir. 2013) ................................................................... 38

*OmniGen Research v. Yongqiang Wang*,
   321 F.R.D. 367 (D. Or. 2017) ............................................................... 33, 39

*Ottoson v. SMBC Leasing & Fin., Inc.*,
   268 F. Supp. 3d 570 (S.D.N.Y. 2017) ........................................................ 42

*Poulis v. State Farm Fire & Cas. Co.*,
   747 F.2d 863 (3d Cir. 1984) .................................................... 29-30, 35, 40, 41

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ........................................................................... 38

*Resnik v. Coulson*,
   2019 WL 2256762 (E.D.N.Y. Jan. 4, 2019) ..................................... 42

*Roadrunner Transp. Servs., Inc. v. Tarwater*,
   642 F. App'x 759 (9th Cir. 2016) ..................................................... 40

*Rosa v. Genovese Drug Stores, Inc.*,
   2017 WL 4350276 (E.D.N.Y. July 31, 2017) ................................... 42

*Sanofi-aventis Deutschland GmbH v. Glenmark Pharm. Inc.*,
   2010 WL 2652412 (D.N.J. July 1, 2010) .......................................... 31

*Schmid v. Milwaukee Elec. Tool Corp.*,
   13 F.3d 76 (3d Cir. 1994) ..................................................... 28, 35, 42

*Scott v. IBM Corp.*,
   196 F.R.D. 233 (D.N.J. 2000) ..................................................... 30-31

*Shim-Larkin v. City of N.Y.*,
   2019 WL 5198792 (S.D.N.Y. Sept. 16, 2019) ................................. 42

*Siani v. State Univ. of N.Y.*,
   2010 WL 3170664 (E.D.N.Y. Aug. 10, 2010) ................................. 31

*Silvestri v. General Motors Corp.*,
   271 F.3d 583 (4th Cir. 2001) ............................................................ 40

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*,
   841 F.3d 827 (10th Cir. 2016) .......................................................... 38

*Williams v. Am. Coll. of Educ., Inc.*,
   2019 WL 4412801 (N.D. Ill. Sept. 16, 2019) .......................... 29, 38, 43

**Rules**

Fed. R. Civ. P. 34(a) ............................................................................... 21

Fed. R. Civ. P. 37(e) ........................................................................ 28, 33

iv

## I.      INTRODUCTION

IQVIA (f/k/a IMS Health) respectfully requests that the Court impose severe sanctions against Veeva, the defendant in this trade-secret-theft case, to remedy Veeva's intentional spoliation of highly probative evidence.  As laid out below, it is crystal clear that Veeva:  (1) intentionally and permanently deleted evidence that is central to IQVIA's claims; (2) did so, in some cases, after the Special Master ordered Veeva to produce the evidence in question; and (3) lied about its misconduct in an effort to avoid detection by IQVIA and the Court.  Veeva's conduct should be met with a harsh penalty to ensure that Veeva does not benefit from its misconduct, and to deter both Veeva and other litigants from engaging in similar misconduct in the future.

IQVIA filed this lawsuit in January 2017, alleging, among other things, that Veeva stole trade secrets from IQVIA's "Reference Data" offerings (defined more fully below), in the United States, Europe, and other countries, as Veeva was building its own competitive Reference Data offerings (marketed as "Veeva OpenData").  As detailed below, the record demonstrates that Veeva engaged in at least the following acts to destroy relevant evidence concerning its trade-secret theft around *and after* the time the lawsuit was filed:

1.      ***Deletion of ███████ Database***:  Veeva has now admitted that Veeva deleted its ██████ database in the Summer of 2018—approximately *18 months after* IQVIA filed this lawsuit.  That database was ███████████████████████████████████ ████████████████████████████████, and it was thus critical to IQVIA's claims.  Veeva's deletion of this database has irreversibly harmed IQVIA's ability to prove its trade-secret claims concerning Veeva's conduct in Europe.

The record also establishes that Veeva sought to conceal what it had done:  In March 2018, the Special Master ordered Veeva to produce any computer evidence of the kind contained in

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████ IQVIA learned about the existence of the database only later, ███████████

███████ When IQVIA requested that Veeva produce the database consistent with the Special

Master's March 2018 Order, ████████████████████████████████████

███████████████████ It is now undeniable, however, that Veeva permanently deleted the

database *over 18 months <u>after</u>* IQVIA filed the lawsuit, and nearly *three months <u>after</u>* the Special

Master ordered Veeva to produce the exact sort of evidence contained in ███████.

    **2.**    ***Deletion of*** ████████ ***Emails***: ██████████ is a critical witness because he

was one of the key people responsible for building Veeva OpenData.  Veeva has now admitted,

however, that someone *deleted virtually all* of ██████ emails from the crucial time period of

January 2014 through May 2015.  ████████████████████████████

████████████████████████████████████████████████

That means someone else at Veeva did it, but Veeva claims—incredibly—that it does not know

how the emails of this key witness magically disappeared.

    **3.**    ***Deletion of Google Drive Documents***:  At early stages of discovery, IQVIA

observed that Veeva had not produced highly probative documents from Google Drive, a

repository where Veeva employees kept and shared important documents, and IQVIA filed a

motion to compel.  In opposition, Veeva filed a sworn declaration averring that Veeva began

preserving all Google Drive documents in ████████████.  After the Special Master granted

IQVIA's motion to compel, it became clear that many of the documents subject to the order had

not been produced because they had been deleted.  Veeva's prior declaration indicated ███

████████████████████████████████ But Veeva's 30(b)(6) witness on this topic

subsequently claimed ███████████████████████████████████ ████████████████, thereby contradicting Veeva's prior declaration.

Then, after IQVIA pressed Veeva for a Google Vault report that would actually show exactly what Veeva did and when to preserve these documents, Veeva admitted that its prior representations (under oath) were false and that it had not implemented preservation measures until at least *April 25, 2017*, over *three months after* IQVIA filed the lawsuit and *more than 18 months after* █████████████████████████ (which triggered Veeva's duty to preserve).  Veeva now refuses to explain to IQVIA the discrepancies in its various statements about when it began to preserve Google Drive documents.  But two things are certain:  (1) Veeva allowed its personnel to delete relevant documents from Google Drive after anticipating litigation, and (2) Veeva made false statements about what it had done.

**4.**  ████████████████████████: These extraordinary spoliation events are just the tip of the iceberg.  ███████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████████████████ Given Veeva's privilege assertion, IQVIA will not discuss the document's contents here, but suffice it to say that the document raises ***very*** serious concerns.

It gets worse:  Veeva's *post-filing* spoliation efforts continue a pattern and practice by Veeva of destroying evidence relevant to IQVIA's trade-secret claims that dates back to at least the Fall of 2015—█████████████████████████████████████, and thus became legally required to preserve relevant evidence.  As detailed below, it is indisputable that Veeva

3

began systematically destroying incriminating evidence in the Fall of 2015, ███████████

████████████████████ and continued its efforts to destroy relevant evidence through

the filing of this lawsuit.  In sum, the record makes clear that Veeva intentionally engaged in the

spoliation of highly relevant evidence in order to prevent IQVIA—and the Court and jury—from

learning the full extent of Veeva's misappropriation of IQVIA's trade secrets.  Harsh sanctions are

thoroughly justified.

## II.     FACTUAL BACKGROUND

Beginning around 2007, Veeva began selling to the parties' mutual clients a customer

relationship management ("CRM") software offering that hosted client data, including IQVIA's

proprietary market research offerings.  For simplicity's sake, this brief refers to these IQVIA

offerings as "Reference Data."[1]  Many life sciences clients licensed Reference Data from IQVIA

and hired Veeva to host it (and other data) in a CRM system.  At those clients' requests, IQVIA

granted dozens of licenses (called "Third Party Access" or "TPA" agreements) that allowed Veeva

to host IQVIA Reference Data for this, and *only* this, limited purpose.

In 2013, Veeva announced it was offering a new customer master solution ("Veeva

Network"), delivering healthcare provider, organization, and affiliation reference data, a cloud-

---

[1]     IQVIA licenses numerous data offerings that include key attributes on healthcare professionals, healthcare organizations, and/or the complex web of affiliations that link them together.  IQVIA has spent millions of dollars and countless human hours over decades to develop highly sophisticated technologies and processes that compile, organize, cleanse, and validate information on healthcare professionals, organizations, and affiliations in order to build its highly valuable reference data assets, which life sciences companies in countries around the world rely on for critical commercial activities, regulatory activities, and other purposes.  IQVIA's primary reference data offerings are currently marketed under the name OneKey.  In the past, IQVIA marketed U.S. reference data offerings under names such as IMS HCRS (Healthcare Relationship Services), IMS HCOS (Healthcare Organization Services) and IMS HCPS (Healthcare Professional Services).  Other IQVIA offerings—including U.S. sales and prescription information services offerings marketed under the names DDD and Xponent, respectively—also include proprietary IQVIA reference data attributes.

based software application, and data steward services, and designed to compete directly with IQVIA's OneKey and HCRS reference data offerings. Veeva stated that it was going to use data it was hosting for its clients in CRM to help build Veeva's reference data for its new customer master solution. This announcement raised concerns for IQVIA—including that Veeva might illicitly use its access to IQVIA Reference Data to build the competing data offering. But Veeva pressured IQVIA to grant licenses for Veeva to manage IQVIA Reference Data (specifically OneKey and HCRS) in Veeva Network, telling IQVIA (and the parties' mutual clients) not to worry because it supposedly had stringent protections in place to ensure that no one from Veeva could ever use IQVIA Reference Data to build or improve Veeva OpenData.

In the Fall of 2015, Veeva agreed that independent auditors could evaluate certain of Veeva's representations about those protections. ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

As detailed below, with the date of the audit looming, Veeva faced a critical choice: It could come clean to IQVIA and others about the data corruption, and face the consequences, which Veeva knew would likely involve litigation. Or it could cover up the problem, delete the evidence, deceive IQVIA and the auditors, smear IQVIA's name in the marketplace, and hope to get away with it. Veeva decided on the latter course of action. Veeva's fateful decision to cover up the truth

and destroy evidence in the Fall of 2015 put Veeva down a path of deception and evidence destruction that continued well past the time that IQVIA filed this lawsuit in January 2017.

The key events concerning Veeva's deletion of evidence can be grouped into three time periods:  (A) Veeva's destruction of evidence to hide the data corruption from the auditors and IQVIA in the Fall of 2015 (the "Clean-up Period"), (B) Veeva's continued purging of evidence through the disclosure to IQVIA by a mutual client that Veeva had misused IQVIA Reference Data in May 2016 (the "Ongoing Purge"), and (C) Veeva's continued deletion of evidence after this lawsuit was filed in January 2017 (the "Post-Filing Destruction").

### A.    The Clean-Up Period (September – October 2015)

In May 2013, Veeva issued a press release about "Veeva Network," its new customer master solution that would combine reference data for healthcare providers, institutions, and affiliations with a cloud-based master data management ("MDM") software application.[2]  Veeva announced that it planned to offer its own reference data through this offering by "crowdsourcing" data that clients had ingested into their Veeva-hosted CRM systems.[3]

█████████████ much of the data Veeva planned to "crowdsource" was data the parties' mutual customers had licensed from IQVIA.[4] ████████████████████████



---

[2]  *See* Ex. 1.

[3]  *Id*.

[4]  Ex. 2, ███████ at 95:13-21 ██████████████████████████████████████████████████████████████████████████████████████████.

███████████████████████████████████   The incident, however, put IQVIA on notice that Veeva might exploit access to IQVIA's Reference Data if given the opportunity.

Even so, IQVIA remained willing to consider granting licenses for IQVIA's HCRS and OneKey offerings to be hosted and managed by Veeva within Veeva Network for the sake of their mutual customers.  In early September 2015, the parties agreed to have a third-party auditing firm test Veeva's assurances that IQVIA's Reference Data would be safe in Veeva Network.[5]  By that time, Veeva had been publicizing its supposed safeguards,[6] while accusing IQVIA of "stifl[ing] competition" by raising questions about how Veeva would protect its data from misuse.[7]  The audit was scheduled to commence on September 28, 2015.[8]  On September 10, 2015, Veeva was sent a pre-audit questionnaire prepared by the auditor, ███████████████████████

███████████████████████████ ███████████████████████████████

---

[5]  Ex. 3, at '527-532 ███████████████████████████████████
████.

[6]  *See, e.g.*, Ex. 4 (September 2015 "Veeva Network: Measures in Place to Protect IMS HCRS & OneKey Data" presentation posted on Veeva's website).

[7]  *See, e.g.*, Ex. 5 (printout of Veeva webpage titled "Veeva Network and IMS: The Facts" from July 30, 2015); Ex. 6, at '754, '756 ████████████████████████████████
████████████████████████████████████████████████████████.

[8]  Ex. 7, at '916 ████████████████████████████████████
████████████████████████████████████████████.

[9]  Ex. 3, at '535-537 ███████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████.



[12] IQVIA will never know exactly what these files contained (or exactly what Veeva did with them), because Veeva subsequently deleted them.





As noted below, that Veeva anticipated litigation as of that time means that, as a matter of law, Veeva had a legal duty to preserve potentially relevant evidence.

---

[20] Ex. 21, at '847 ████████████████████████████████████████████████████████████████████.

[21] Ex. 22, at '104 (emphasis added).

[22] Ex. 20, at p. 1 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Ex. 87. ████████████████████████████████████████████████████████████████████.

[23] Ex. 23, at '096 ███████████████████████████████████████████████.

[24] *See* Ex. 24, at '978 █████████████████████████████████████████████████████.



█████████████████████████████████████
██ ██████████████████████████████████
██ ██████████████████████████████████
███████████████████████████ ██

████████████████████████████████████

████████████████████ ██ █████████████████

---

[25] ██████████████████████████████████████
████████████████████████ *See* Ex. 25, at '687 ████
████████████████████████████████ ; Ex. 26, at 2 ████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
████████ *See also* Ex. 10, ████████████ at 124:11-19 (discussing Ex. 26).

[26] ██████████████████████████████████████
█████████████████████████████████████████
████████████ *Compare* Ex. 25 ██████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
██████████████████████████ , *with* Ex. 26, ██
██████████████████████████████ *See also*
Ex. 27 ████████████████████████

[27] ████ Ex. 28, ████ at 249:18-23, 251:18-11 ████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
██ ; *see also* Ex. 29, at '007 ██████████████
██

[28] ██████████████████████████████████████
█████████████████████████████████████████
████████████████████████ Ex. 10 ████████████ at
160:3-21; Ex. 30 ████████████████████████████ ;
Ex. 31.



<hr />

[29] *See* Ex. 32 ███████████████████████████████████████████; Ex. 10 at 177:22-178:5 ██████████████ ██████████; Ex. 33 ███████████████████████████; Ex. 10 ██████████████. at 175:23-176:7 ██████████ ██████████████████████████████████.

[30] ███ ██████████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.,* Ex. 34, at '801-802 ██████████ ██████████████████████████████████████████████████████████████████████ ██████████████████; Ex. 14, ██████ at 367:23-370:2.

[31] *See* Ex. 30, at pp. 35-51 ████████████████████████████ ██████████████████.

[32] ███████████████████████████████████████████████ Ex. 30, at pp. 14-31 ██████████████ ██████████████████████████████████████████████ *Id.* at pp. 35-51 ██████████████████ ████████████████.

[33] "DDD" is an IQVIA offering. *See supra* note 1.



Veeva also took steps to obstruct future discovery by sanitizing email records. ▮

**B.     Ongoing Purges (November 2015 – December 2016)**

---

[34]   "Xponent" is an IQVIA offering.  *See supra* note 1

[35]   Ex. 35, at '118.

[36]   Ex. 36, at '617.

[37]   Ex. 37, at '879 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[38]   *See, e.g.*, Ex. 38 (Google cache of "The facts" page of Veeva's website from March 2016 claiming that "Veeva demonstrated the rigorous security polices and controls . . . in place to safeguard IMS' reference data within Veeva Network" during the audit and accusing IQVIA [then IMS] of engaging in "anti-competitive behavior"  and maintaining a "protectionist position . . .to . . . stifle competition" by not signing TPA agreements).





After Veeva anticipated litigation with IQVIA, however,

---

; Ex. 44, at '341

; Ex. 45, at '989

.

43   Ex. 46, at '748 (emphasis added).

44   *See, e.g.*, Ex. 47, '559

; Ex. 14,           at 145:4-12

.

45   Ex. 46, at '748

.

46   Ex. 14,           at 36:11-15

.

47   *See* Ex. 30, at p. 35

.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████ Any

of the work product saved elsewhere was likely deleted ███████████████

████████████████████████ That leaves email traffic within Veeva as the last resort for

IQVIA to prove this aspect of its claims.  But, as noted above, Veeva deleted much of that too,

████████████████████████████████████████████

Veeva engaged in dozens of these illicit types of exercises in the post-audit period, at least

until they were reported to IQVIA by a customer███████████████████████████

██████████████████████████████████████████████████

████████████████ █ ████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████ █ ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████ █

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

48   Ex. 48, at '242.

49   *Id*. at '243.

50   *Id*. (emphasis added).

16



IQVIA commenced this lawsuit in January 2017, following its investigation of the data breach reported by ▮▮▮▮ not Veeva.  But, by the time IQVIA filed this litigation, Veeva's various purges meant that much of the most relevant evidence had been illicitly destroyed.  As discussed in the following section, Veeva continued to destroy relevant evidence after this lawsuit was filed.

### C.     Post-Filing Destruction (January 2017 – Present)

#### 1.     Veeva's Deletion Of ▮▮▮▮▮

##### (a)     Background On ▮▮▮▮▮

_____

_____

---

[51]  Ex. 49, at '733.

[52]  _Id_. at '734 (emphasis added).

[53]  Ex. 50, at '778-780 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[54]  Ex. 51, at '782 (emphasis added).

[55]  Ex. 52, at '052.



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████ ██ ████████████████████████████████

███████████████████ █

    This two-part system has important implications for tracing Veeva's theft of IQVIA's

Reference Data in Europe. ████████████████████████████████

████████████ █ ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████

      ████████████████████████████████████████████

████████████████████████████████████████████████████

---

56   *See* Ex. 53, ██████ at 74:18-75:10; 76:18-25; 77:18-78:4 ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████

57   Ex. 10, █████████████ at 165:23-166:6 █████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████

58   Ex. 54, ██████████ at 165:16-21 ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████



59 ███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████ *See* Ex. 55, ███████ at 217:11-218:19;
221:14-222:5.

60 Ex. 56, at '066 ███████████████████████████
█████████████████████████

61 Ex. 57, at p. 40 ████████████████████████████
███████████████████████████████████████████
████████████████████████████████



But determining the full scope of Veeva's theft would require access to ███████ itself.  As discussed below, Veeva's deletion of ███████ means that crucial evidentiary trail is permanently lost.

**(b)**    **Veeva's Deletion Of** ███████

IQVIA's first two document requests in this case requested all "audit logs and similar computer generated documentation" capturing any "data copying, transfer or other computer-based actions" involving a "comparison"

---

[62]  Ex. 58 ███████████████████████

[63]  ███████████ *See* Ex. 59 VEEVA_5837728 ███████

[64]  *See* Ex. 60 ███████████ ; Ex. 61, at '213 ███████

to IQVIA or customer data.[65]  Veeva refused to provide this information, but Judge Cavanaugh

ordered Veeva to produce the requested ESI in March 2018,[66] and IQVIA thereafter served a

supplemental document request on May 2, 2018, seeking a full disclosure of what audit log

information Veeva had available.[67]

 In Veeva's June 1, 2018 response, Veeva represented ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ ███████████████████████████████████

██████████████████████████████████████████████████████

 Veeva tried to hide the fact that it deleted this crucial repository.  ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[65] Ex. 62, Plaintiffs First Requests for the Production, dated September 12, 2017, at pp. 10-12 (Request for Production No. 1(E) and Request for Production No. 2(E)).

[66] ECF No. 116, ¶ 3.

[67] Ex. 63, Plaintiffs' Second Requests for Production, dated May 2, 2018, at p. 10 (Request No. 163).  IQVIA's Requests for Production defined "document" to include "electronically stored information" consistent with Fed. R. Civ. P. 34(a)(1)(A).  *See* Ex. 62, Plaintiffs' First Requests for Production, dated September 12, 2017, at p. 4.

[68] Ex. 64, Veeva's Responses to IQVIA's Second Requests for Production, at pp. 57-58.

[69] Ex. 65 ████████████████████████████████████████.

[70] Veeva only made these databases available after IQVIA raised Veeva's deficient response to Requests Nos. 1(E) and 2(E) to the Special Master in late February 2019.  *See* Ex. 66, February 25, 2019 letter from IQVIA to Judge Cavanaugh at p. 2 ████████████████ ████████████████████████████████████████████; Ex. 67, at pp. 2-3 ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████.

[REDACTED]

[REDACTED]

[REDACTED].

In late July 2019, IQVIA learned for the first time about [REDACTED] [REDACTED] Veeva

denied that Veeva's production of audit logs was incomplete.[73]  Confronted with contradictory

evidence concerning [REDACTED] Veeva falsely represented [REDACTED]

[REDACTED] IQVIA served a Rule 30(b)(6)

deposition notice to examine Veeva on the issue. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

### 2.   Deletion Of [REDACTED] Emails

IQVIA learned in discovery that [REDACTED] was

a key Veeva employee at the center of substantial alleged trade secret theft, and asked Veeva to

---

[71]   Ex. 67, at p. 3.

[72]   [REDACTED]. *See*
Ex. 55, [REDACTED] at 183:21-184:18; Ex. 53, [REDACTED] at 74:18-78:4; 89:24-90:25.

[73]   Ex. 68, at pp. 2-3 (August 16, 2019 email from J. Boehm to K. Watson *et al*.).

[74]   Ex. 68,  at p. 1 (September 20, 2019 email from J. Boehm to K. Watson *et al*) (emphasis
added).

[75]   Ex. 10, [REDACTED] at 169:5-22.

[76]   Ex. 65, at 1-3 [REDACTED].

add him as a custodian.[77]  Veeva initially agreed to add ███████ but later backtracked.[78]  The

Special Master ordered Veeva to produce ██████ custodial documents in June 2019.[79]  After

months of delay, Veeva completed its production of ██████ documents on September 2, 2019.[80]

Immediately after receiving Veeva's production, IQVIA noticed a major gap in ███████

emails that coincided with the crucial period when he served as the senior manager responsible for

Veeva OpenData.  IQVIA asked Veeva for an explanation the very next day, on September 3,

2019.[81]  Veeva has never provided one.   Veeva now claims, however, that someone deleted

*virtually all* of ████████ emails from January 2014 through May 2015,[82] which is the period at the

center of the alleged theft.  ████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

████████

████████████████████

████████

████████████████

████████████

██████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████

████████

---

[77]   *See* Ex. 69, February 6, 2019 email from M. Pecora to S. Benz *et al.*

[78]   *See* Ex. 70, June 4, 2019 Status Conf. Tr. at  38:13-22.

[79]   *See* Ex. 70, June 4, 2019 Status Conf. Tr. at 40:13-41:4.

[80]   *See* Ex. 71, September 2, 2019 email from M. Qin to M. Pecora *et al.*

[81]   *See* Ex. 72, September 3, 2019 email from K. Watson to M. Qin *et al.*

[82]   Ex. 10, ████████████████ at  67:17-21 ███████████████████████████████
█████████████████████████████████████ .



Veeva's subsequent deletion of █████ emails constitutes spoliation, no matter the precise date they were purged.



[83]  Ex. 14, ██████ at 163:22-164:10; 278:18-279:2.

[84]  *See* Ex. 10, █████████ at  67:17-21.

[85]  *See* Ex. 10, ██████████ at  200:14-22 ████████████████
██████████████████████████████████████ Ex. 10, █████████ at 67:7-
15 ███████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████.

[86]  ████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████  *See* Ex. 73, at '235; Ex. 14, ████████ 313:21-314:19 █████
██████████████████████████████████████████  *See* Ex. 74,
at '594; Ex. 14, ████████ 319:24-320:8 ████████████████████████
████████████████.

IQIVA has repeatedly asked Veeva to produce a Google Vault report that would potentially verify Veeva's assurances that it configured Google Vault to start retaining all employee emails in January 2017 in connection with litigation hold implemented for this case.  Veeva, however, has refused to provide that report—and has simply ignored IQVIA's requests altogether.

### 3.    Deletion Of Google Drive Documents



IQVIA first became concerned about spoliation of Google Drive evidence in March 2019 after deposing Veeva employee ████████.

Veeva ignored IQVIA's follow up inquiries, forcing IQVIA to file a motion with the Special Master to compel Veeva to produce all responsive Google Drive documents and respond to IQVIA's questions about when Google Drive documents were deleted.[89]



---

[87]   ██████████████████████████████████

██████████████████████████████████

██████ *See* Ex. 75, at ████████ at 169:17-21.  *See also* Ex. 76, Oct. 3, 2017 email from S. Hasselblad ██████████████████████████████████; Ex. 28, ████████ at 176:21-177:8 ██████; Ex. 77, ████████ at 221:13-221:16 ██████████████████; Ex. 75, ████████ at 169:8-169:16 ██████████████████████████.

[88]   Ex. 78, April 11, 2019 email from D. Severson to K. Watson *et al*. ████████████████

[89]   Ex. 79,  IQVIA's Apr. 26, 2019 Mem. at 6.

In opposing the motion, Veeva submitted a sworn declaration from a member of its IT department (the "███████████").[90]  Veeva relied on that declaration to persuade the Special Master that the documents must have been deleted ████████████ (*i.e.*, before IQVIA filed suit).  More recently, Veeva has contradicted earlier representations ███████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████ █ ████████████████████████████████████

██████████████████████████████████████████████████████As noted above, IQVIA has asked Veeva for an explanation of these discrepancies and for Veeva to provide the official Google Vault report that would show what Veeva actually did to preserve Google Drive documents and when.  But Veeva has refused to provide the report or any further information, and has stopped responding to IQVIA's inquiries altogether.[93]

    **4.**    **████████████████████████████** **Other Post-Filing Deletion**

Veeva's spoliation of evidence *after* the filing of this lawsuit is just the tip of the iceberg.

██████████████████████████████████████████████████████

---

[90]   Ex. 80, ██████████ ¶ 6 ███████████████████████████████ ██████████████████.

[91]   *Compare* Ex. 10, ██████████████████ at 48:4-14, *with* Ex. 80, ██████████ ¶ 6.

[92]   Ex. 81, January 23, 2020 email from J. Boehm to K. Watson *et al.*

[93]   Ex. 86, at pp. 1-2.

███████████████████████████████████████████████████ ██ ██

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

Veeva has also refused to turn over important forensic evidence ordered by the Special Master.  IQVIA fully expects that this forensic evidence will reveal even more intentional document destruction by Veeva in the U.S., Europe and other parts of the world.  For example, through Request for Production No. 162, IQVIA sought certain computer activity data—known as "forensic artifacts"—that would show the names of files or folders that  Veeva employees deleted from their laptops, from Veeva servers, and/or from other accessible file storage locations, and when those deletions occurred.[95]  The Special Master ordered Veeva to produce these forensic artifacts in November 2018.[96]  But Veeva has refused to make this and other computer forensic evidence available to IQVIA pending this Court's resolution of Veeva's December 14, 2018 appeal of the November 2018 Order.[97]  Thus, IQVIA has still not had the opportunity to examine that discovery for additional evidence of Veeva's spoliation.

---

[94]   *See* Ex. 82, November 21, 2019 email from J. Boehm to S. Olson *et al.*

[95]   *See* Ex. 64, Veeva's Responses to Plaintiffs' Second Requests for Production, dated June 1, 2018, at pp. 54-56 ████████████████████████████████████████████████████

████████████████████████████████████████████████████████; *see also* Ex. 83, Decl. of H. McMahon In Support of Pls. Mot. to Compel Discovery ¶ 9  (Aug. 27, 2018) [ECF No. 195-2, at 38] (identifying artifacts frequently extracted from evidence and the relevance of those artifacts).

[96]   Order & Opinion of the Special Master, dated Nov. 30, 2018 [ECF No. 183], at 21-22 (compelling Veeva to provide forensic artifacts from certain locations and individuals).

[97]   The appeal has been fully briefed since January 30, 2019.  *See* ECF Nos. 194-196 (Veeva's Appeal); ECF No. 229 (IQVIA's Opposition to Veeva's Appeal); ECF No. 237-238 (Veeva's Reply).  Veeva also filed a motion for a stay with the Court, which has been fully briefed

## III.    ARGUMENT

As discussed below, the case law firmly establishes that the most stringent sanctions are warranted—indeed, necessary—here to address Veeva's misconduct.  Rule 37(e) grants this Court the authority to sanction Veeva for the loss of "electronically stored information that should have been preserved in the anticipation or conduct of litigation," where Veeva "failed to take reasonable steps to preserve it" and the lost information "cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e).  When a party destroys electronic evidence "with the intent to deprive another party of the information's use in litigation"—as Veeva has done here—the court may "instruct the jury that it may or must presume the information was unfavorable to the party," or it may "dismiss the action or enter a default judgment."  *Id*. at 37(e)(2).

When imposing spoliation sanctions under Rule 37(e), courts consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."  *Schmid v. Milwaukee Elec. Tool Corp*., 13 F.3d 76, 79 (3d Cir. 1994).  These factors continue to guide the assessment of requests for sanctions under the current version of Rule 37.  *See, e.g.*, *Folino v. Hines*, 2018 WL 5982448, at *3 (W.D. Pa. Nov. 14, 2018) (concluding that intentional destruction of important and irreplaceable evidence by defendant warranted default judgment in favor of plaintiff under Rule 37(e)(2)).

The Court also possesses inherent authority to sanction a party for conduct that is inconsistent with the orderly administration of justice or compromises the integrity of the judicial

---

since January 15, 2019.  *See* ECF No. 205 (Veeva's Motion for a Stay); ECF No. 213 (IQVIA's Opposition to Veeva's Stay Motion); ECF No. 226 (Veeva's Reply).

process, including the intentional destruction of ESI.  *See, e.g.*, *Malone v. Weiss*, 2018 WL 3656482, at *7 (E.D. Pa. Aug. 2, 2018) (imposing terminating sanctions pursuant to inherent authority where conduct involved "intentional manipulation of emails and contracts" in order to gain a litigation advantage, and noting that "the Third Circuit has, on multiple occasions, made it clear that federal courts have inherent authority to dismiss claims asserted by litigants who have fabricated or altered evidence").[98]

A court may issue a dispositive sanction where the innocent party's case is "severely impaired because it lacked the information that was not produced." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 83 (3d Cir. 2012)).  Before entering a default judgment sanction, courts typically conduct a "*Poulis* analysis," *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013), which entails the consideration of "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative

---

[98]   Some courts have disclaimed this inherent power in light of the 2015 Advisory Committee Notes, but many have not.  *E.g.*, *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497-98 (S.D.N.Y. 2016) ("[S]anctions would be available under the court's inherent authority even if Rule 37(e) did not apply.") (internal quotation marks and citations omitted); *Hugler v. Sw. Fuel Mgmt., Inc.*, 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017) (holding that the 2015 Amendments to Rule 37(e) did not foreclose reliance on inherent authority for violations covered by Rule because "[i]t is an irrefutable principle of law that the Supreme Court's authority cannot be limited by a body such as the [Federal Rules] Advisory Committee"); *Williams v. Am. Coll. of Educ., Inc.*, 2019 WL 4412801, at *11 (N.D. Ill. Sept. 16, 2019) (imposing terminating sanctions for intentional spoliation of ESI).

sanctions; and (6) the meritoriousness of the claim or defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis deleted).[99]

### A.   Rule 37(e)'s Preliminary Requirements Are Easily Met

#### 1.   Veeva Was Obligated To Preserve Potentially Relevant Evidence ███ ████████████████████ In September 2015



Veeva's duty to preserve potentially relevant evidence began in September 2015 ███

████████████████████████████████████████  ██████████████

████████████████   "The duty to preserve evidence arises when a party in possession of evidence knows or reasonably should know that litigation is pending or probable." *Goldrich v. City of Jersey City*, 2018 WL 4492931, at *8 (D.N.J. July 25, 2018) (internal quotation marks and citation omitted).[100]   While this standard requires only that Veeva *should* have foreseen litigation in September 2015, ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████[101]   *See, e.g.*, *Sanofi-aventis Deutschland GmbH v. Glenmark Pharm. Inc.*,

---

[99]   The applicability of certain *Poulis* factors (in particular, dilatoriness and meritoriousness) in this context is questionable.   *See, e.g.*, *Folino*, 2018 WL 5982448, at *4 (imposing default judgment sanction under Rule 37(e) without *Poulis* analysis); *Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 391-92 (M.D. Pa. 2011) (same).   IQVIA addresses these factors for completeness and out of an abundance of caution.

[100]   *See also Scott v. IBM Corp.*, 196 F.R.D. 233, 249 (D.N.J. 2000) (duty to preserve arose when defendant "should have foreseen that litigation might follow the [reduction in force]" where managers knew plaintiff "had made previous claims of race discrimination" such that "[c]ommon sense would dictate preserving all helpful documentation when dealing with the discharge of an employee with a litigious history").

[101]   ██████████████████████████████████████████████
████████████████████████████████████████████████
███████████

2010 WL 2652412, at *5 (D.N.J. July 1, 2010) (Cavanaugh, D.J.) (the duty to impose a litigation

hold arose no later than the earliest date party asserted work-product protection).[102]

Veeva's duty to preserve relevant evidence continued through the May 2016 ████ incident,

████████████████████████████████████████████████, and this duty continued through IQVIA's

filing of its Complaint in January 2017.

### 2.    The Information That Veeva Destroyed Cannot Be Recovered

None of the evidence at issue in this motion can be "restored or replaced through additional

discovery." ████████████████████████████████████████████████████

████████████████████████████████████████ ██████████████████

████████████████████████████████████ ██ ████████████

████████████████████████████████████████████████████

████████████████████ Accordingly, this threshold requirement is plainly satisfied.

*See Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 743 (N.D. Ala. 2017) ("Because the

information at issue is not even identifiable, and certain other ESI was not preserved, the allegedly

spoliated ESI cannot be restored or replaced through additional discovery.").

---

[102]   *See also LendingTree, LLC v. Zillow, Inc.*, 2014 WL 1309305, at *10 (W.D.N.C. Mar. 31, 2014) (concluding that "LendingTree's duty to preserve evidence arose no later than its assertion of the attorney work product privilege"); *Siani v. State Univ. of N.Y.*, 2010 WL 3170664, at *5 (E.D.N.Y. Aug. 10, 2010) ("If it was reasonably foreseeable for work product purposes, Siani argues, it was reasonably foreseeable for duty to preserve purposes.  The court agrees.").

[103]   *See* Ex. 10 ████████████████ at 168:25-170:3.

[104]   *See* Ex. 10, ████████████████ at 124:2-23 ████████████████████████████
████████████████████████████████████████████████.

### 3.    Veeva's Destruction Of Evidence Was Intentional

The last threshold requirement—whether the party failed to take reasonable steps to preserve relevant evidence—is also easily established.  Here, Veeva *ordered* the deletion of the ██████ instance over a year into the litigation—and after having been ordered to produce evidence contained therein.[105]  Veeva likewise *ordered* the widespread deletion of files ████ ████████████████████████████████████████████████████████████████████ ██████ And, while Veeva claims it does not know who deleted ████████ emails, Veeva has never suggested the deletion was inadvertent.

The record also shows that Veeva took steps to make sure the evidence was *permanently* deleted.  ██████████████████████████████████████████████████████████ ███████████████████████████████ ██ █████████████████████████████ ███████████████████████████████████████████████ Veeva was nevertheless required to preserve evidence for the litigation it anticipated.  ██████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ██████████████ Not surprisingly, given that the purpose of Veeva's deletion of the information was to conceal its misappropriation of IQVIA's Reference Data, Veeva did not archive the evidence it deleted.  Rather, it made sure it was *permanently* erased.

---

[105]    *Supra*, at 20-23.

[106]    *See* Ex. 10, ██████████████. at 99:9-25.

[107]     *See* Ex. 84, at '373 ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████.

### B.     Veeva Acted With An "Intent To Deprive" IQVIA Of Crucial Discovery

Pursuant to Rule 37(e)(2), "upon a finding that a party acted with the intent to deprive another party" of ESI that should have been preserved, a court may "dismiss the action or enter default judgment." Fed. R. Civ. P. 37(e)(2)(C). Evidence of "intent to deprive" may be established by both direct and circumstantial evidence, such as the suspicious timing of the deletion of information, or agreements to avoid communicating in writing about a party's wrongdoing. *See, e.g.*, *Lexpath Techs. Holdings, Inc. v. Welch*, 2016 WL 4544344, at *5 (D.N.J. Aug. 30, 2016) ("The timing of the deletion—a few days after Plaintiff sent its cease and desist letter, which also informed Defendants of the potential claims against them—is especially telling."); *Ala. Aircraft Indus.*, 319 F.R.D. at 746 (circumstantial evidence established intent to destroy relevant ESI).[108]

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[108]   *See also Edelson v. Cheung*, 2017 WL 150241, at *4 (D.N.J. Jan. 12, 2017) (the "timing" of email deletions in the course of litigation—which occurred after the adversary learned of secret email account—supported a finding of intent to deprive); *DVComm, LLC v. Hotwire Commc'ns, LLC*, 2016 WL 6246824, at *8 (E.D. Pa. Feb. 3, 2016) (finding "substantial circumstantial evidence" of intent to deprive where emails were deleted a few weeks after the court's denial of a motion to squash); *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017) (finding intent to deprive under Rule 37(e) where defendant intentionally deleted over 200 files from laptop one week after receiving cease and desist order requesting preservation); *GN Netcom, Inc. v. Plantronics, Inc.*, 2016 WL 3792833, at *7 (D. Del. July 12, 2016) ("[T]he timing of Mr. Houston's emails instructing others to delete the underlying email chains strongly suggests an intent to deprive GN of discovery, as one of his emails was sent just one month after this lawsuit was filed, and another was sent just one week after Plantronics' motion to dismiss was denied – at which point the commencement of fact discovery was imminent.").

██████████████████████████████████████████████████████████████

████ *See First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, at *3-4 (N.D. Cal. Oct. 7, 2016) (an "intent to deprive" where "an explicit agreement to avoid communicating electronically suggests a shared intent to keep incriminating facts out of evidence").

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See Folino*, 2018 WL 5982448, at *4 (noting "[t]he absence of any explanation—including of accidental or mistaken destruction—in the face of multiple opportunities to explain convinces the Court that no such good faith explanation exists").[109]

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████ ████████████████████████

██████████████████████████████████████████████████████████████

---

[109] *See also Ala. Aircraft Indus.*, 319 F.R.D. at 746 ("this . . . unexplained, blatantly irresponsible behavior leads the court to conclude that [defendant] acted with the intent to deprive [plaintiff] of the use of this information"); *Brown Jordan Int'l, Inc. v. Carmicle*, 2016 WL 815827, *1, 33-37 (S.D. Fla. 2016) (finding intent to deprive where spoliating party did not credibly explain failure to preserve); *CAT3*, 164 F. Supp. 3d at 501 (the plaintiff's conduct was intentional under Rule 37(e) because, absent "any other credible explanation for [plaintiff's alteration of] the email addresses, it is more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation").

[110] Ex. 64, Veeva's Responses to Plaintiffs' Second Requests for Production, dated June 1, 2018, at pp. 57-58 ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

**C.      Veeva's Conduct Warrants Serious Sanctions**

       **1.      Default Judgment And Dismissal Are Commensurate With The Extreme Prejudice Veeva's Conduct Has Caused IQVIA To Suffer**

The *Schmid* factors—(1) Veeva's degree of fault; (2) the degree of prejudice suffered by IQVIA; and (3) whether there is a lesser sanction that will avoid substantial unfairness to IQVIA and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future—all weigh in favor of entry of a default judgment on IQVIA's claims and dismissal of Veeva's antitrust counterclaims.  The additional relevant considerations under the *Poulis* analysis also support dismissal.  "Prejudice to the adversary is a particularly important factor in the *Poulis* analysis."  *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 134 (3d Cir. 2019).  Given the circumstances here, only a very severe sanction will prevent Veeva from benefiting from its extensive efforts to spoliate evidence directly relevant to IQVIA's claims.

       **(a)      Veeva's Degree Of Fault Is High**

"A strong degree of fault exists where there has been actual suppression or withholding of evidence."  *Folino*, 2018 WL 5982448, at *4 (internal quotation marks omitted) (internal quotations omitted).  In *Folino*, the court issued terminating sanctions after finding that the defendant suppressed or withheld evidence because (1) the evidence was in the party's control, (2) the party intentionally destroyed data, and (3) the timing of the party's spoliation demonstrates the

egregiousness of its conduct.  As discussed above, *each* of these circumstances exist in the present case.

>    **(b)**      **IQVIA Has Suffered Substantial Prejudice As A Result Of Veeva's Spoliation**

Veeva's systematic destruction of evidence has irreparably harmed IQVIA's ability to demonstrate the extent of Veeva's trade secret misappropriation.  "[W]hen the evidence is lost completely and is central to the case, the harsh sanction of default judgment may be warranted." *Folino*, 2018 WL 5982448, at *4.

*Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384 (M.D. Pa. 2011) is instructive.  Gentex alleged that employees copied proprietary files containing trade secrets, and then, after they quit, shared those trade secrets with Gentex's competitor, Armor.  *Id.* at 385.  To prevent Gentex from discovering the extent of their trade secret theft, the employees deleted computer files, thumb drives, emails, and CD-ROMs containing Gentex's information.  The court, in issuing a default judgment sanction, held that the spoliation "deprive[d] Gentex of evidence relevant to prove the extent of information taken by [the employees] and whether and how it was used at Armor."  *Id.* at 391.  The court held that a default judgment sanction was "proportional" to the misconduct which involved "intentional destruction of relevant, irretrievable evidence."  *Id.*[111]

Similarly here, although IQVIA can prove that Veeva misappropriated IQVIA's Reference Data, Veeva's egregious acts of spoliation have deprived IQVIA of the ability to prove *the extent* of Veeva's misappropriation.  IQVIA, for example, ██████████████████████████
████████████████████████████████████████████████████████████

---

[111]   *See also id.* (noting the important deterrent "value of harsh sanctions in cases like this where the crucial evidence exists in electronic form, and a party may destroy its opponent's case with the mere click of a button").

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ Without the ability to prove the extent of Veeva's misappropriation of IQVIA

Reference Data in the United States and Europe, IQVIA is grievously prejudiced.

Veeva's deletion of evidence also fundamentally prejudices IQVIA with respect to Veeva's

antitrust counterclaims, which are predicated on the theory that IQVIA unlawfully "refused to deal"

by declining to grant TPA agreements for Veeva Network.   These types of antitrust claims

inherently face an uphill battle because it is a basic axiom of American law that "[a] firm is

generally under no obligation to cooperate with its rivals."  *Broadcom Corp. v. Qualcomm Inc.*,

501 F.3d 297, 316 (3d Cir. 2007) (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752,

761 (1984)).  The Supreme Court in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S.

585 (1985), set forth a narrow "exception" to this rule—which Veeva intends to try to invoke—

"by holding that the decision of a defendant who possessed monopoly power to terminate a

voluntary agreement with a smaller rival evidenced the defendant's willingness to forego short-

run profits for anticompetitive purposes."  *Broadcom Corp.*, 501 F.3d at 316.  The Supreme

Court's profit sacrificing test is designed to isolate conduct that "must be irrational but for its

anticompetitive effects."  *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013).

Thus, a legitimate business justification is a complete defense to a refusal to deal claim, and all

courts that have considered the issue have held that protection of an intellectual property right is a

presumptively valid business justification for declining to deal with a rival.[112]

---

[112]   *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 842 (10th Cir. 2016); *In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1328 (Fed. Cir. 2000); *Image Tech. Servs., Inc. v. Eastman Kodak Co. (Kodak II)*, 125 F.3d 1195, 1219 (9th Cir. 1997); *Data General Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1187 (1st Cir. 1994), *abrogated on other grounds*

Accordingly, IQVIA's defense of Veeva's antitrust counterclaims rests largely on the same proof as IQVIA's own trade-secret claims:  IQVIA will show that the fact that Veeva *actually did* steal IQVIA's data confirms that IQVIA had a legitimate business justification for not access so Veeva would be in a position to steal even more data.  Veeva's destruction of much of the evidence of its theft thus prejudices not only IQVIA's ability to prove its trade secret claims, but also its ability to fully defend against Veeva's (meritless) antitrust counterclaims.

**(c)      The Prejudice To IQVIA Can Be Fully Remedied Only Through Default Judgment And Terminating Sanctions**

The court in *Folino* granted default judgment for spoliation, reasoning that "no other sanction is effective or is fair" to the aggrieved party, and that "[d]efault judgment is the only sanction that adequately forces [defendant] to answer for this conduct."  2018 WL 5982448, at *4. The court found defendant's deletion of evidence to be "the equivalent of destruction of Plaintiff's case and a flouting of the law."  *Id*.  The same is true in this case.

Similarly, in *Williams v. American College of Education, Inc.*, the court explained why, in circumstances like those present here, no lesser sanction suffices.  Where plaintiff destroyed evidence with intent to deprive its opponent of the information's use in litigation, and then attempted to avoid the consequences of that misconduct through evasion, the *Williams* court reasoned that alternative sanctions such as jury instructions and presumptions "cannot cure the prejudice to [defendant] because it is impossible to determine the full extent of the spoliation. . . . That said, even if a sanction short of dismissal could cure the prejudice [], dismissal of [plaintiff's] claims would still be the sanction proportionate to the wrong."  2019 WL 4412801, at *15-16 (N.D.

---

as recognized in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *see also* Areeda & Hovenkmap, *supra*, ¶ 658f ("The justification could be a claim that the conduct is . . . reasonable protection of an IP right and not inconsistent with IP policy.").

Ill. Sept. 16, 2019).  The court recognized that misconduct █████████████████

█████ is "extraordinarily serious and warrants an equally serious response" such that *only*

terminating sanctions enable the court to adequately remedy the prejudice created, to "reprimand"

the spoliator, and to "deter future parties from trampling upon the integrity of the court."  *Id.*

Veeva's deletion of ███████████████, and its other post-filing deletions and deceptive

statements, are particularly egregious and amount to disobeying the Court's orders.  As other

courts have held in similarly serious circumstances, default judgment and dismissal are the only

sanctions that will deter a spoliator such as Veeva from engaging in such egregious conduct in the

future.  *See CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2019 WL 6527951, at \*25 (S.D.

Cal. Dec. 4, 2019) (granting terminating sanctions under Rule 37(e) where defendant waited years

to implement a litigation hold, withheld responsive documents, and deleted documents during

litigation); *OmniGen Research v. Yongqiang Wang*, 321 F.R.D. 367, 369-70 (D. Or. 2017)

(granting motion for default judgment sanction under, *inter alia*, Rule 37(e) where defendants

intentionally destroyed evidence such that computer files were not recoverable, and noting that

such spoliation "severely undermines the Court's ability to render a judgment based on the

evidence" and "threatens the orderly administration of justice").[113]

---

[113]  *See also Roadrunner Transp. Servs., Inc. v. Tarwater*, 642 F. App'x 759, 759 (9th Cir.
2016) (upholding grant of default judgment against party that "deleted emails and files from his
laptops after multiple preservation demands" that were the "primary evidence" in the case);
*Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (terminating sanctions
appropriate to "preserve the integrity of the judicial process in order to retain [society's] confidence
that the process works to uncover truth").

**(d)      Veeva's Defense To IQVIA's Trade Secret Claims, And Veeva's Antitrust Counterclaims, Lack Merit**

The sixth *Poulis* factor—"the meritoriousness of the claim or defense"—also weighs in favor of granting the requested sanctions.   IQVIA alleges, *inter alia*, that Veeva improperly accessed IQVIA Reference Data licensed to the parties' mutual clients and used that illicitly-obtained data to improve Veeva's own competitive Reference Data offering, OpenData.   Veeva's primary defense is to simply "deny" that it did this while insisting that it built OpenData "independently".[114] █████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████     █████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████     This evidence is uncontroverted.

---

[114]   *See* ECF No. 180 (Veeva's First Amended Answer and Counterclaims), at ¶¶ 130-50; Ex. 85 Veeva's Supp. Obj. & Resp. to Interrog. No. 1 dated April 28, 2018 at pp. 12-14.

[115]   Ex. 85, Veeva's Supp. Obj. & Resp. to Interrog. No. 1 dated April 28, 2018 at pp. 13-14.

[116]   Ex. 15, at '001-003 (emphasis added).

As noted above, for similar reasons, Veeva's antitrust counterclaims lack merit.  As explained above, Veeva's counterclaims essentially contend that IQVIA has "refused to deal" by declining to permit Veeva to ingest IQVIA's proprietary Reference Data into Veeva Network.[117] The case law makes clear, however, that protection of an intellectual property right is a presumptively valid business justification for declining to deal with a competitor.[118]   Veeva tries to get around this by alleging that IQVIA's intellectual property concerns are "pretext to provide cover for its anticompetitive scheme,"[119] but that allegation is utterly irreconcilable with the fact that Veeva *did*, *in fact*, steal IQVIA's intellectual property.  Accordingly, Veeva's counterclaims lack merit and the sixth *Poulis* factor weighs in favor of terminating those claims.

### 2.    Any Alternative Sanction Must Be Severe

Should the Court determine that Veeva's conduct does not warrant terminating sanctions, IQVIA requests that, as an alternative sanction, the Court impose a mandatory spoliation inference at trial.   When confronted with even a fraction of the intentional destruction of ESI and unscrupulous efforts to frustrate the truth-finding adversarial process present here, numerous courts have not hesitated to impose such sanctions.  *See, e.g.*, *Nationwide Life Ins. Co. v. Betzer*, 2019 WL 5700288, at *14 (M.D. Fla. Oct. 28, 2019) (jury instructed it must presume lost data was unfavorable where defendants ran deletion software on their computers and intentionally erased data they had a duty to preserve); *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774

---

[117]   *See, e.g.*, ECF No. 180 (Veeva's First Amended Answer and Counterclaims), at ¶ 162 ("By refusing to sign TPA Agreements allowing the use of IQVIA Reference Data in Veeva MDM [*i.e.*, Veeva Network], IQVIA has impeded Veeva's ability to compete in those relevant markets and interfered with multiple life sciences companies' decisions to purchase Veeva's superior software products.").

[118]   *See supra,* at 37-38.

[119]   ECF No. 180 (Veeva's First Amended Answer and Counterclaims), at ¶ 111.

(E.D. Mich. 2019) (jury was obligated to presume information was unfavorable when defendant permitted video footage it was obligated to save to be overwritten); *Resnik v. Coulson*, 2019 WL 2256762, at *15 (E.D.N.Y. Jan. 4, 2019) (where evidence indicated defendant employed data-wiping software to deprive plaintiff of unique information on personal computer about use of spyware, court ordered sanction that "defendant be deemed to have installed and used spyware on [plaintiff's] telephone").[120]

As now-Justice Breyer observed, in language quoted by the Third Circuit in *Schmid*:

[T]he evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy the document.

---

[120]   *See also DVComm*, 2016 WL 6246824, at *8 (adverse inference imposed where plaintiff "deleted crucial information" which "destroyed" defendant's and jury's ability to determine the merits of key defense); *CTC Glob. Corp. v. Huang*, 2019 WL 6357271, at *9 (C.D. Cal. July 3, 2019) (adverse inference instruction addressing destruction of data and presumption permitted therefrom where defendant failed to take action to preserve irreplaceable data); *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 625 (2d Cir. 2018) (affirming adverse inference where defendant failed to initiate a proper litigation hold and forensic examination determined that defendant's employees deleted files, emails, and other potentially relevant data resulting in unrecoverable data); *Rosa v. Genovese Drug Stores, Inc.*, 2017 WL 4350276, at *2 (E.D.N.Y. July 31, 2017) (adverse inference imposed where defendant failed to produce relevant video surveillance footage where there were "evidentiary defects" in defendant's affidavits, which, combined with defendant's control of the video and an obligation to preserve it, gave rise to an inference of intent to deprive); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (adverse inference warranted where evidence showed that additional relevant communications likely existed but were not produced, and noting that where a spoliating party acts "willfully or in bad faith, a jury can be instructed that certain facts are deemed admitted and must be accepted as true"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 393 (S.D.N.Y. 2015) (concealment and failure to disclose a relevant social media post and related text message led to inference of intent to deprive such that jury was instructed it may infer contents contained animus and defendants were precluded from offering evidence to rebut this inference); *DeCastro v. Kavadia*, 309 F.R.D. 167, 177 (S.D.N.Y. 2015) (imposing adverse inference instruction informing jury of defendant's use of program to target and delete specific, relevant files and his false statements to the court attempting to conceal his actions).

*Schmid*, 13 F.3d at 78 (quoting *Nation-wide Check Corp. v. Forest Hills Distrib., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982) (Breyer, J.)).

Justice Breyer's observation is plainly applicable here.  Veeva deleted highly incriminating evidence precisely because that evidence was incriminating.  It is "common sense" to presume that the deleted evidence was unfavorable to Veeva.  Accordingly, if default judgment and dismissal is not imposed, the jury should, at a minimum, be instructed that the information that Veeva deleted contained evidence that Veeva misappropriated IQVIA's data.

## IV.    CONCLUSION

IQVIA respectfully requests that the Court enter default judgment as to Veeva's liability on IQVIA's trade secret and other claims (Counts I-VI), and dismiss Veeva's counterclaims (Counts I-XI) with prejudice.  This case should thus proceed toward trial to determine the damages owed by Veeva.  In the alternative, IQVIA requests that the Court instruct the jury that Veeva intentionally deleted evidence showing that Veeva misappropriated IQVIA Reference Data.  IQVIA also respectfully requests the award of fees and costs attributable to Veeva's intentional spoliation, including those associated with this motion.[121]

---

[121]    *See, e.g.*, *Folino*, 2018 WL 5982448, at *5 (granting default judgment for spoliation and awarding costs and fees incurred in connection with motion and related discovery); *Williams*, 2019 WL 4412801, at *10 (same).  Should the Court grant the instant motion, IQVIA will supply a full accounting of relevant fees and costs.

Dated: February 18, 2020

/s/ Michael Critchley
CRITCHLEY, KINUM & DENOIA, LLC
Michael Critchley
Amy Luria
75 Livingston Avenue
Roseland, New Jersey 07068
Tel. (973) 422-9200
mcritchley@critchleylaw.com
aluria@critchleylaw.com

-and-

QUINN EMANUEL URQUHART & SULLIVAN,
LLP
Steig D. Olson
Stephen A. Broome
Marlo A. Pecora
David LeRay
Sophia Qasir
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. (212) 849-7000
steigolson@quinnemanuel.com
stephenbroome@quinnemanuel.com
marlopecora@quinnemanuel.com
davidleray@quinnemanuel.com
sophiaqasir@quinnemanuel.com

Stephen A. Swedlow
Michelle Schmit
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel. (312) 705-7400
stephenswedlow@quinnemanuel.com
michelleschmit@quinnemanuel.com
*Attorneys for Plaintiffs-Counterclaim
    Defendants IQVIA Inc. and IMS Software
    Services, Ltd.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 18, 2020, a true and correct copy of the foregoing was served via electronic mail upon all counsel of record.

By:   */s/ Amy Luria*
      Amy Luria