# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IQVIA, INC. and IMS SOFTWARE SERVICES, LTD.,

      Plaintiffs/Counterclaim-Defendants,

v.

VEEVA SYSTEMS, INC.,

      Defendant/Counterclaim-Plaintiff.

Civil Action No. 17-00177 (JXN) (JSA)

**OPINION**

**NEALS**, District Judge

This matter comes before the Court upon Defendant/Counterclaim-Plaintiff Veeva Systems Inc.'s ("Veeva") appeals from and objections to three Orders entered by Special Master Honorable Dennis M. Cavanaugh, U.S.D.J. (ret.), ("Special Master").[1] Veeva appeals the Special Master's (1) September 13, 2018 Order & Opinion (ECF No. 147) denying Veeva's motion to compel, (ECF No. 150); (2) partial appeal of the November 30, 2018 Order & Opinion (ECF No. 183) granting in part and denying in part Plaintiffs/Counterclaim-Defendants IQVIA Inc. and IMS Software Services, LTD.'s (collectively "IQVIA"), motion to compel and denying Veeva's cross-motion for a protective order, (ECF No. 194); and (3) the January 15, 2021 Order & Opinion (ECF No. 325) denying Veeva's motion to compel, (ECF No. 327). IQVIA opposed the appeals, (ECF Nos. 159, 228, 338), and Veeva replied in further support (ECF Nos. 170, 237, 342). Having heard oral argument and in consideration of the parties' submissions, for the reasons set forth below, Veeva's appeals from and objections to the Special Master's September 13, 2018 Order &

---

[1] On January 10, 2018, the Court entered an order appointing the Honorable Dennis M. Cavanaugh, U.S.D.J. (ret.), as the Special Master pursuant to Federal Rule of Civil Procedure 53, for the purpose of assisting the Court with discovery and pretrial disputes. (*See* ECF No. 110 ¶ 4.)

Opinion, November 30, 2018 Order & Opinion, and January 15, 2021 Order & Opinion are **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND[2]

This highly contentious litigation involves two competitors in the life-sciences data and technology markets alleging trade secret misappropriation and antitrust violations. This matter is presently being litigated in three separate but related actions, the instant case ("*IQVIA I*") and two later-filed cases, which have since been consolidated: *IQVIA v. Veeva*, 19-15517 and Veeva *v. IQVIA*, 19-18558, (collectively, "*IQVIA II*").

IQVIA commenced *IQVIA I* against Veeva on January 10, 2017, claiming Veeva had engaged in corporate theft and misconduct, including the repeated misuse and mishandling of confidential and proprietary information over a period of years. (*See* ECF No. 1.) In the Complaint, IQVIA alleges Veeva violated the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count I); New Jersey Theft of Trade Secrets N.J.S.A. § 56:15 (New Jersey state law) (Count II); Tortious Interference with Contract (New Jersey state law) (Count III); Federal False and Misleading Advertising, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(A) (Count IV); Unfair Trade Practices (New Jersey state law) (Count V); and Unjust Enrichment (New Jersey state law) (Count VI). (*See id.* ¶¶ 130-173.) Veeva filed an Answer and Counterclaim[3] asserting eleven separate claims for relief for antitrust violations: (1) Monopoly Maintenance – Reference Data, 15 U.S.C. § 2; (2) Attempted Monopolization – MDM Software Solutions, 15 U.S.C. § 2; (3) Conspiracy to Monopolize – MDM Software and Reference Data, 15 U.S.C. § 2; (4) Violation of Section 1 of the Sherman Act – IQVIA-Reltio Collusion (Agreement in Restraint of Trade), 15

---

[2] The parties are familiar with the factual and procedural history of this matter and therefore the Court recites only those facts relevant to the instant appeals.

[3] Reference is to the Amended Answer and Amended Counterclaim Veeva filed on December 3, 2018. (ECF No. 184.)

U.S.C. § 1; (5) Violation of Section 1 of the Sherman Act – Cegedim (Group Boycott), 15 U.S.C. § 1; (6) Monopoly Leveraging of Reference and Sales Data, 15 U.S.C. § 2; (7) Intentional Interference with Contractual Relations; (8) Intentional Interference with Prospective Economic Advantage; (9) Violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq*.; (10) Violation of the Unfair Practices Act, Cal. Bus. & Prof. Code § 17200, *et seq*.; and (11) Negligent Misrepresentation. (*See* ECF No. 184 ¶¶ 168-251.)

On January 8, 2018, the Honorable Mark Falk, U.S.M.J. (ret.) ("Judge Falk"), entered a Stipulated Order Regarding Technology Assisted Review, as agreed to and requested by the parties. (*See* ECF No. 109.) The procedures outlined in the Order "govern the use of technology assisted review ("TAR") for electronically stored information ("ESI") in this litigation." (*Id*. at 1). The Order provides in relevant part that:

1. The Parties have agreed to an initial group of 25 Custodians whose documents will be collected and subject to TAR. The Parties reserve the right to identify additional Custodians for TAR at a later date, and likewise reserve the right to object on grounds of relevance or burden to the other side's identification of additional Custodians. The identity and number of additional Custodians, if any, shall be determined by further conferral between the Parties and, only if necessary, resolution by the Court.

2. The default date range for inclusion of Custodians' documents in TAR is January 1, 2012 to January 10, 2017. The Parties reserve the right to request that a particular Custodian's documents from January 1, 2010 to December 31, 2011, or January 11, 2017 to the present (on an ongoing basis) also be subject to TAR. … The Parties reserve the right to object to any such request, and any objection will be resolved by meeting and conferral or, only if necessary, the Court.

(*Id*. at 4-5.) The Order further provides that, "[t]he Parties agree that the stipulations set forth in this Protocol shall not limit their ability to request discrete documents or document categories that may not belong to a particular agreed-upon Custodian or data source. (*Id*. at 8.)

Given the large volume of discovery and pretrial related disputes in this litigation, on

January 10, 2018, the Court[4] appointed retired United States District Court Judge Dennis M. Cavanaugh to serve as Special Master pursuant to Federal Rule of Civil Procedure 53 ("Special Master"). (*See* ECF No. 110.)

**A.** <u>The Special Master's September 13, 2018 Order & Opinion (ECF No. 147)</u>

On August 6, 2018, Veeva moved before the Special Master to compel IQVIA to provide responses to Interrogatory Nos. 33-35.[5] (ECF No. 150-3, Ex. 1.) "The interrogatories ask IQVIA to identify any facts it believes it possesses now, in-hand—including through specifically identified Veeva interrogatory responses and document production thus far—to support any contention that Veeva has misappropriated any IQVIA trade secret." (*Id*. at 1.) Interrogatory No. 33 asked for any facts IQVIA contends to be evidence of trade secret misappropriation:

> <u>Interrogatory No. 33</u>
> Identify with precision AND specificity ANY facts (including without limitation ANY fact contained in VEEVA's October 20, 2017 OR VEEVA's April 27, 2018 Responses to IQVIA's Interrogatory No. 1) that IQVIA knew of when it filed its Complaint OR learned of since the filing of its Complaint, that IQVIA contends is evidence of an act of trade secret misappropriation; AND if none so state.

(*Id*. at 2.) Veeva argues that "[a]fter stating improper boilerplate objections," IQVIA responded to Interrogatory No. 33 as follows:

> <u>Response to Interrogatory No. 33</u>
> IQVIA's Complaint makes clear the basis for the filing of this Action, and the factual statements contained in the Complaint relating to Veeva's theft of trade secrets are incorporated in this response. IQVIA further incorporates its responses to Interrogatory Nos. 16, 19, 20, 21, 22, 25, 26 and 27. Further, Veeva disclosed, among other things, information to IQVIA regarding Veeva's data management practices, the design of Veeva's CRM and MDM applications, the structure and operation of Veeva technical support and development processes, Veeva's staffing practices, and the integration of employees within facilities across functions and

---

[4] The Honorable Claire C. Cecchi, U.S.D.J. ("Judge Cecchi") was assigned to this matter until July 9, 2021 when it was reassigned to the undersigned.

[5] Veeva's original motion sought to compel IQVIA to provide responses to Interrogatory Nos. 33-35. (*See* ECF No. 150-11.) However, in its appeal of the September 13, 2018 Order & Opinion, Veeva only seeks relief from the Special Master's ruling on Interrogatory Nos. 33 and 35, (*see* ECF No. 150-1). Thus, the Special Master's ruling on Interrogatory No. 34 will not be addressed in this Opinion.

roles during the course of the various discussions among the representatives of Veeva and IQVIA from late 2013 through 2016, some of which were confirmed by the Ernst & Young Assessment.

(*Id.* at 3.) Veeva argued that IQVIA's responses were evasive, showed "no intention to play fair and obey the of Rule 33 and Rule 37 mandate that it provide factual and complete responses." (*Id.* at 5.)

Next, Interrogatory No. 35 asked IQVIA to identify any facts it contends it possesses to support its key trade secret accusation:

> Interrogatory No. 35
> To the extent IQVIA presently contends that Veeva copied ANY data from ANY IQVIA Market Research Offering for the purposes of improving ANY VEEVA DATA PRODUCT, identify with precision AND specificity ANY non-circumstantial evidence upon which IQVIA bases ANY such contention; AND if none so state. Non-circumstantial evidence excludes, for instance, evidence relating to the time it took Veeva to develop ANY VEEVA DATA PRODUCT for ANY geographical area; AND evidence relating to Veeva's investments in developing ANY VEEVA DATA PRODUCT for ANY geographical area.

(*Id.* at 8.) Veeva argued that in its response IQVIA failed to provide any facts "to support the over-the-top accusations of 'theft' and 'crime'". (*Id.* at 9.)

> Response to Interrogatory No. 35
> IQVIA's Complaint contains facts relating to Veeva's theft of trade secrets and those facts are incorporated in this response. IQVIA further incorporates its responses to Interrogatory Nos. 16, 19, 20, 21, 22, 25, 26 and 27. Further, Veeva disclosed, among other things, information to IQVIA regarding Veeva's data management practices, the design of Veeva's CRM and MDM applications, the structure and operation of Veeva technical support and development processes, Veeva's staffing practices, and the integration of employees within facilities across functions and roles during the course of the various discussions among the representatives of Veeva and IQVIA from late 2013 through 2016, some of which were confirmed by the Ernst & Young Assessment.

(*Id.* at 8-9.) Veeva averred that IQVIA failed to respond with any facts, or state if it has none, to support its accusations of trade secret misappropriation, and instead provided "evasive responses," "pointed to its other interrogatory responses served long before the Veeva discovery responses,"

and "cited its pleadings, but its pleadings contain only empty allegations about acts of misappropriation." (*Id.* at 3, 8.) Veeva argued that IQVIA should be compelled to provide "plain, honest, complete answers without obfuscation." (*Id.* at 9). The Special Master disagreed.

In his September 13, 2018 Order and Opinion (the "September 13 Order"), the Special Master found that IQVIA had made "a reasonable effort to respond" to the interrogatories and had "provided the material facts, to narrow the issues *at this state of discovery*." (ECF No. 147 at 6-7) (emphasis added). The Special Master reminded the parties of their *continuing obligation* to amend their interrogatory responses as they obtain additional information. (*Id.* at 7) (emphasis added).

On September 27, 2018, Veeva filed a timely objection to and appeal from the Special Master's September 13 Order ruling on Veeva's request to compel IQVIA to provide responses to Interrogatory Nos. 33 and 35. (ECF No. 150.) On October 22, 2018, IQVIA filed an opposition to Veeva's appeal. (ECF No. 159.) On October 29, 2018, Veeva filed a reply in further support of its appeal. (ECF No. 170.)

On appeal, Veeva contends that "the Special Master's ruling is clearly erroneous blocks a trade secret defendant from obtaining complete answers as to statutory elements of the causes of action at issue" and "it is inconsistent with the mandates of Rule 33(b)(3) and Rule 37(a)(4). (ECF No. 150 at 16.) Veeva claims that the Special Master "abused his discretion by ignoring the specific questions Veeva asked in [Interrogatories Nos. 33 and 35], and [failed] to analyze IQVIA's responses to determine if they answered the questions posed rather than digressing." (*Id.* at 2, 13.) Veeva argues that it is "prejudiced by IQVIA's evasive responses because it cannot prepare specific defenses to charges that remain hidden in generalities." (*Id.* at 17.)

In its opposition, IQVIA asserts that Veeva has not shown the Special Master's Opinion was either clearly erroneous or abused his discretion. (*See* ECF No. 159 at 28.) IQVIA claims it

has provided full responses based on its current knowledge and contends the Special Master offered a reasoned explanation for his denial of Veeva's motion to compel responses to Interrogatory Nos. 33 and 35 when he noted that discovery was still in its early stages. (*Id.* at 30.) IQVIA avers that Veeva's request to compel IQVIA to provide an all-encompassing narrative of every possible fact supporting the allegations in its Complaint is improper. (*Id.* at 31.) IQVIA argues that its responses to Interrogatory Nos. 33 and 35 "properly provided the principal and material facts of which it was aware at [that] relatively early stage of discovery." (*Id.*) IQVIA maintains that the Special Master's September 13 Order is consistent with relevant law. (See *id.*)

Additionally, IQVIA notes that it has supplemented its responses to Interrogatory Nos. 33 and 35 twice, on February 18, 2020, and June 1, 2020, since the filing of its opposition to the Veeva's appeal detailing the circumstances of Veeva's misappropriation and identifying over 550 documents and deposition testimony evidencing Veeva's theft of IQVIA's trade secret. (*See* ECF Nos. 340; 377 at 4.) Thus, IQVIA contends that Veeva's appeal is moot. (*Id.*) Veeva counters by arguing that "IQVIA's supplemental responses, which merely point to a vast mass of Bates-numbered documents, are just as insufficient as the initial ones." (ECF No. 341.)

B. The Special Master's November 30, 2018 Order & Opinion (ECF No. 194)

On August 29, 2018, IQVIA filed a motion to compel Veeva to provide responses to its second set of requests for production ("RFP"), which included source code repositories and other technical documents. (ECF No. 196-1.) In support of its motion, IQVIA relied on declarations of experts Jeff Parmet and Hunter McMahon to explain the relevance of forensic computer discovery to assess Veeva's use of IQVIA's data. (*See* ECF Nos. 183 at 6; 196-8; 196-9.) In its motion, IQVIA argued that a review of the source code repositories, forensic artifacts and technical documents contained within relevant computer programs "will show the development of Veeva's

7

software, changes made to Veeva's software, when those changes were made, who made those changes, and why the changes were made." (ECF No. 183 at 3.) IQVIA asserted that this information will allow the trier of fact to see the changes made as compared with Veeva's alleged acts of theft. (*See id.*)

On September 17, 2018, Veeva filed an opposition to IQVIA's motion and cross-motion for protective order. (ECF No. 195-1, Ex. 2 at 2.) Veeva argued that IQVIA's RFPs were "too extreme, disproportionate, invasive, and burdensome . . .." (*Id.* at 6.) Veeva requested a protective order over IQVIA RFPs. As part of the protective order, Veeva requested the Special Master (1) require IQVIA to answer Veeva's Interrogatory 14, served in July 2017, by providing a list of specific and discrete asserted trade secrets IQVA contends Veeva misused; thereby establishing rational discovery boundaries tied thereto; and (2) preclude discovery on 3 of IQVIA's extremely overbroad and unduly burdensome RFPs and limit 24 RFPs to custodial sources until that identification is provided. (*Id.* at 12.) Veeva argued that "IQVIA seeks a fishing expedition into Veeva's entire business operation, with nonidentification of specific, discrete asserted trade secrets to provide proper discovery boundaries." (*Id.* at 16.) Veeva averred that IQVIA must identify its trade secret so the Court can set the appropriate bounds of discovery without which IQVIA could access its "entire software development history and thousands of employees' technical files without any basis." (*Id.* at 6.) Additionally, Veeva objected to IQVIA's experts' declarations arguing that "Mr. [Jeff] Parmet and Mr. [Hunter] McMahon speculate about what discovery could possibly show if IQVIA is allowed to review vast sets of technical discovery from Veeva." (*Id.* at 40.) Ultimately, Veeva requested the Special Master issue an order that (1) IQVIA respond to Veeva's Interrogatory 14 in complete detail; (2) rejects IQVIA's RFPs (except as to custodial

sources); and (3) limits any future, narrower discovery by IQVIA against a discrete, specific list of precisely-identified asserted trade secrets. (*Id.* at 35.)

On November 30, 2018, the Special Master issued an Order & Opinion (the "November 30 Order") granting in part and denying in part IQVIA's motion to compel certain forensic artifacts, audit logs, source code repositories, and trouble ticketing system database ("Computer Forensic Discovery") and denying Veeva's cross-motion for a protective order. (*See* ECF No. 183.) The Special Master held that "good cause did not exist to support entry of Veeva's requested protective order." (*Id.* at 5.)

As to Veeva's contention that IQVIA should identify its trade secret with specificity, the Special Master noted that courts in this district do not require trade secrets to be identified with reasonable particularity. (*See id.*) The Special Master further noted that "[u]nless there is a heightened pleading requirement, the Federal Rules of Civil Procedure do not require a plaintiff to plead all relevant facts in detail and generally do not require a plaintiff to provide specific information about trade secrets *at the outset of litigation*. (*Id.*) (emphasis added.) The Special Master held that "Veeva had not shown with specificity that disclosure of the information sought by IQVIA would cause Veeva a clearly defined and serious injury as needed for the issuance of a broad protective order." (*Id.*) Further, the Special Master denied Veeva's request to bar consideration of the Parmet and McMahon declarations.

In ruling on IQVIA's motion to compel, the Special Master found that the information IQVIA sought was relevant and proportional to the needs of the case. The Special Master explained that "[t]his is a complex trade secret and antitrust matter that has involved extensive discovery and the exchange of millions of documents. The Court summarizes the Special Master's findings on IQVIA's RFPs as follows:

1. **RFP No. 128** (Source code demand)

The Special Master explained that "considering the nature of IQVIA's claims and the fact that the source code repository and other technical documents may be the best evidence to help a forensic examiner to determine whether Veeva improved its software after improperly accessing IQVIA data, IQVIA has demonstrated a need for the data." (*Id.* at 16.) The Special Master directed Veeva to provide copies of the Computer Forensic Discovery for the relevant time period of 2012-2017, within thirty (30) days of the date of the November 30 Order. (*Id.* at 17.)

2. **RFP Nos. 129-132** (Requests technical documentation – records maintained in any system regarding (1) the identification and resolution of bugs/errors/defects for Veeva's CRM and MDM software products, and Veeva's OpenData data product; (2) any pre- or post-deployment testing and results of Veeva's HPD, and MDM and CRM applications; and (3) explanatory documents related to the use of Veeva's source code repository and other technical documentation)[6]

The Special Master held that RFP Nos. 129-131 "seek[] relevant information that will aid a forensic examiner to trace development history of Veeva's software to determine if there is evidence in support of IQVIA's trade secret misappropriation claim." (*Id.* at 17-18.) Thus, the Special Master ordered Veeva to respond to RFP Nos. 129, 130, and 131 within thirty (30) days of the November 30 Order (*See id.*) The Special Master further held that "Veeva's response shall be limited to the relevant time period, 2012-2017, but shall not be limited to documents in possession of the 25 agreed [upon] custodians." (*Id.*) Further, The Special Master held that the information sought in RFP Nos. 133-135, 137-145, 152, 157-159, 161, 164-165 was "relevant and proportional to the needs of the case." (*Id.* at 25, 28, 30, 32, 33, 34, 36.)

3. **RFP Nos. 133-135, 137** (Requests all documents concerning the use or operation of Veeva's Healthcare Professional Data, MDM and/or CRM

---

[6] With respect to RFSs 129, 130, 132, Veeva agreed to produce responsive documents, but only from the files of Veeva's 25 custodians. (See ECF No. 195-1, Ex. 2 at 30-31.) IQVIA argued that this was a meaningless offer since this type of information ordinarily is not found in custodian emails and documents, especially when 23 of the 25 Veeva custodians are not involved with software development. (ECF No. 196 at 20.)

applications; documents and databases concerning Veeva's business or technical requirements and any modifications, changes, updates or revisions by Veeva for their Healthcare Professional Data, MDM and/or CRM applications)

4. **RFP Nos. 138-140** (All documents regarding Veeva's "data bridge" software functionality)

The Special Master found the information IQVIA sought in RFP Nos. 133-135, 137-140 "will allow its forensic examiner to trace the development history of Veeva's software to determine if any changes or improvements to Veeva's software were made shortly after Veeva improperly accessed IQVIA data and therefore provide strong evidence in support of IQVIA's trade secret misappropriation claim." (*Id.* at 28, 30.) Thus, the Special Master ordered Veeva to respond to IQVIA's second set of RFPs within 30 days of the November 30 Order. (*Id.*) The Special Master further held that "Veeva's response shall be limited to the relevant time period, 2012-2017, but shall not be limited to documents in possession of the 25 agreed custodians." (*Id.* at 28, 30, 32-35, 37.)

5. **RFP Nos. 141-143** (Requests all documents reflecting any policy or procedure, used by Veeva regarding certain designation of data records)

6. **RFP No. 145** (All documents sufficient to reflect the fields in Veeva's OpenData product)

7. **RFP Nos. 150-151** (Requests all documents sufficient to identify the "local companies" that Veeva claims it partners with for Source Data and identify the date Veeva began offering Veeva OpenData in every country in which it is offered, and whether each such offering is a proprietary Veeva offering or the proprietary offering of a third party)

8. **RFP Nos. 152 and 164** (Requests documents sufficient to identify agents of Veeva with certain access levels and documents regarding role-based access controls)

9. **RFP Nos. 157-159** (Requests documents regarding "data report cards")

10. **RFP No. 161** (Requests all documents relating to instances where Veeva engaged in "data mapping" of Veeva data and IQVIA data, as the term "data mapping" is used in Slide 44 of its presentation to the Special Master)

11. **RFP No. 162** (Requests PC forensic artifacts/imaging from the devices and storage locations used by the 2,000 employees identified in Veeva's responses to Interrogatories Nos. 7 and 8)

The Special Master held that RFP No. 162 "seeks relevant information as IQVIA alleges that these forensic artifacts will allow a forensic examiner to determine if Veeva misappropriated any IQVIA Market Research Offerings to improve Veeva's own technology offerings." (*Id.* at 21.) Thus, the Special Master ordered the following:

> Veeva [shall] provide forensic artifacts from the devices and/or storage locations accessible by individuals identified by Veeva in response to IQVIA's Interrogatory No. 1. Additionally, IQVIA may choose an additional one hundred individuals identified by Veeva in response to IQVIA's Interrogatory Nos. 4-6. IQVIA shall advise Veeva which additional one hundred individuals it seeks forensic artifacts from within 15 days of the date of this Order. Veeva shall produce the information … as modified … within 60 days of the date of this Order. The Special Master does not foreclose IQVIA from seeking forensic artifacts from specific individuals in the future; however, the Special Master will not permit untargeted requests.

(*Id.* at 21.)

12. **RFP No. 163** (Requests all documents concerning requests that customers inform Veeva about third party data being loaded into Veeva's CRM/MDM software applications)

13. **RFP No. 165** (Requests all concerning Veeva's request to Veeva customers for information that will inform Veeva that the customer data that will be added to Veeva's MDM Application and/or CRM Application will include third party data)

On December 14, 2018, Veeva filed a timely objection to and appeal in part from the Special Discovery Master's ruling and November 30 Order relating to IQVIA's motion to compel Veeva to respond to IQVIA's RFP Nos. 128-135, 137-145, 150-152, 157-159, and 161-165[7] and

---

[7] Veeva asserts that if provided with a reasonable timeframe and reasonable limit on additional custodians and/or document locations, Veeva is willing to produce product release notes and operating manuals for its data product and

denial of Veeva's cross-motion for a protective order and request for IQVIA to answer Veeva's Interrogatory 14.[8] (*See* ECF No. 194.) On January 3, 2019, IQVIA filed an opposition, (ECF No. 213), and on January 15, 2019, Veeva filed a reply in further support, (ECF No. 226).

    C.  The Special Master's January 15, 2021 Order & Opinion (ECF No. 327)

On September 6, 2019, Veeva filed a motion to compel IQVIA to produce: (1) all sales data contracts with IQVIA's top 50 suppliers worldwide, effective through the relevant period; (2) all sales data contracts effective throughout the relevant period containing, in words or substance, exclusive or most favored nations ("MFN") arrangements; and (3) all amendments or addenda to original agreements it has produced or will produce and vice-versa (all original agreements for amendments or addenda IQVIA has produced or will produce). (ECF No. 325 at 1.) Veeva argued that the contracts were relevant to its Sixth Claim for Relief in its Amended Counterclaims, titled "Monopoly Leveraging of Reference Data and Sales Data" under Section 2 of the Sherman Act, 15 U.S.C. 2. (*See id.*)

---

CRM/MDM software applications, (*see* RFP Nos. 135, 137, November 30 Order at 28); documents regarding Veeva's "data bridge" software functionality, (*see* RFP Nos. 138-140, November 30 Order at 30); documents regarding certain designations of data records, (*see* RFP Nos. 141-143, November 30 Order at 31); documents sufficient to reflect the fields in Veeva's OpenData product, (*see* RFP No. 145, November 30 Order at 34); documents sufficient to identify persons with certain access levels and documents regarding role based access controls, (*see* RFP Nos. 152, 164, November 30 Order at 35); and documents concerning requests that customers inform Veeva about third party data being loaded into Veeva's CRM/MDM software applications, (*see* RFP No. 165, November 30 Order at 36). (*See* ECF No 194-1 at 15.)

Further, Veeva does not appeal the November 30 Order 's directive to produce documents regarding "data report cards" under RFP Nos. 157-159 (*see id*. at 25) except as to timing. Veeva states that while the November 30 Order is unclear, IQVIA reads it to require production within 30 days. According to Veeva, that deadline is not viable given that the collection must be made from at least 47 identified individuals (*see id*.). Veeva will endeavor to produce such documents within a reasonable time. (*Id*.)

Lastly, Veeva does not appeal the order regarding certain "audit logs" under RFP No. 163 (*see* November 30 Order at 23-24), as Veeva does not believe any such materials exist. Veeva states that to the extent IQVIA's counsel can explain some reasonable document set Veeva can produce, Veeva will do so within a reasonable amount of time. (*Id*.)

[8] On December 28, 2018, the Special Master temporarily stayed the November 30 Order to allow Veeva to file an application for a permanent stay from Judge Cecchi. (*See* ECF No. 201.)

On January 15, 2021, the Special Master issued an Order and Opinion denying Veeva's motion to compel (the "January 15 Order"). (*Id.*) The Special Master held that Veeva's motion was "an untimely motion for reconsideration that should be denied." (*Id.* at 11.) In the January 15 Order, the Special Master noted that this was Veeva's second attempt to seek IQVIA's sales data contract. (*See id.*) More specifically, the Special Master stated:

> [i]n this motion, Veeva is again seeking IQVIA's sales data contracts; all that has changed is Veeva's arguments as to why it is entitled to these contracts. Veeva could have raised these arguments in its prior motion, but did not. Veeva's failure to raise these issues earlier does not entitle it to a second bite at the apple via a second motion to compel. Such a result is inconsistent with the Rules of Civil Procedure and common sense.

(*Id.* at 14.)

On January 29, 2021, Veeva filed a timely appeal from and objection to the Special Master's ruling and January 15 Order relating to Veeva's motion to compel IQVIA to produce sales data contracts, submitted to the Special Master on September 6, 2019. (*See* ECF No. 327.) On February 16, 2021, IQVIA filed its opposition to Veeva's appeal. (ECF No. 338.) On February 22, 2021, Veeva filed a reply in further support of its appeal. (ECF No. 342.)

D.  <u>Judge Falk Lifts the Stay in *IQVIA II*</u>

On September 21, 2021, the Honorable Mark Falk, U.S.M.J. (ret.) ("Judge Falk"), issued an Order lifting the stay in *IQVIA II*. (*See IQVIA v. Veeva*, 19-15517 (JXN)(JSA), ECF No. 89.) In his Opinion, Judge Falk explained that the purpose of the stay was to "allow the parties to focus on the trade secrets question and antitrust counterclaim in *IQVIA I*." (19-15517, ECF No. 88 at 5.) Judge Falk noted that "it made sense to let *IQVIA I* play out and see if the parties and Court could conserve time and resources resolving *IQVIA II*." (*Id.* at 7.) With *IQVIA I* quickly approaching its 5-year anniversary without having materially advanced toward the conclusion Judge Falk originally envisioned, Judge Falk determined that the "prejudice to Veeva and judicial efficiency

14

compel the Court to lift the stay and address the parties' full dispute." (*Id.*) As a result, Judge Falk lifted the stay and informed the parties that the "Court intends to put into a place a case management schedule that requires *IQVIA II* to promptly catch up to *IQVIA I* and put a finite end date on all the parties' litigation issues." (*Id.*)

## II.   LEGAL STANDARD

The parties dispute whether this Court should review the Special Master's Order *de novo* or under an abuse of discretion standard. (S*ee* ECF No. 405, August 6, 2021 Tr. 60:9 to 61:16; 88:19 to 91:6.) To address this question, the Court refers to the January 22, 2018, Order Appointing Special Master (the "Appointment Order"). (*See* ECF No. 110.) The Appointment Order unambiguously states the Special Master "is appointed under [Federal Rule of Civil Procedure] 53" to assist the Court with discovery and pretrial disputes in this matter. (*Id*. at 2, ¶ 2.) The Appointment Order provides that any appeals or objections to the findings and conclusions of the Special Master must be "filed within the *time frame* set forth in Local Civil Rule 72.l(c)(l)." (*Id.* ¶ 4) (emphasis added). Further, the Appointment Order directed that any appeals or objections to the Special Master's findings or conclusions would be addressed by the District Judge. (*Id.*)

This Court's review of the Special Master's Orders is governed by Federal Rule of Civil Procedure 53. In relevant part, Fed. R. Civ. P. 53 states:

> (f) Action on the Master's Order, Report, or Recommendations.
>
> (1) Opportunity for a Hearing; *Action in General*. In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; *and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions*.
>
>          *    *    *
>
> (3) Reviewing Factual Findings. The court must decide de novo all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate that:
>
> (A) the findings will be reviewed for clear error; or

(B) the findings of a master appointed under Rule 53(a)(1)(A) or (C) will be final.

(4) Reviewing Legal Conclusions. The court must decide de novo all objections to conclusions of law made or recommended by a master.

(5) Reviewing Procedural Matters. Unless the appointing order establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion.

Fed. R. Civ. P. 53(f) (emphasis added). Thus, Fed. R. Civ. P. 53's *de novo* standard governs all findings of fact and conclusions of law by the Special Master, Fed. R. Civ. P. 53(f)(3)-(4), requiring this Court to "accord[] no deference." *Valeant Pharms. Int'l, Inc. v. AIG*, 2020 WL 7768405, at *4 (D.N.J. Dec. 30, 2020). The Court reviews the findings and conclusions of the Special Master accordingly.

## III.   DISCUSSION

### A.   Identification of IQVIA's Trade Secret and Veeva's Alleged Misappropriation of the Same

Veeva appeals the Special Master's denial of its motions to compel discovery concerning IQVIA's trade secret misappropriation claims. Specifically, Veeva appeals from and objects to the Special Master's September 13 Order (ECF No. 147), denying Veeva's motion to compel IQVIA to provide responses to Interrogatory Nos. 33 and 35, relating to IQVIA's causes of action for trade secret misappropriation and the Special Master's November 30 Order (ECF No. 183 at 4), denying Veeva's request that IQVIA be compelled to respond to Interrogatory No. 14 by providing a list of specific alleged trade secrets. (*See* ECF No. 150; *see also* ECF No. 194-1 at 17-18.)

#### The September 13 Order

First, in its appeal of the September 13 Order, Veeva argues that the Special Master's denial of its motion to compel IQVIA to respond to Interrogatory Nos. 33 and 35 "was clearly erroneous for errors of law, and an abuse of discretion for its failure to provide a specific analysis." (ECF No. 150-1 at 13.) Veeva contends that "the Special Master's ruling is clearly erroneous blocks a

trade secret defendant from obtaining complete answers as to statutory elements of the causes of action at issue" and "it is inconsistent with the mandates of Rule 33(b)(3) and Rule 37(a)(4). (*Id*. at 16.) Veeva also claims that the Special Master "abused his discretion by ignoring the specific questions Veeva asked in [Interrogatories Nos. 33 and 35], and [failed] to analyze IQVIA's responses to determine if they answered the questions posed rather than digressing" (*Id*. at 2, 13.) Veeva argues that it is "prejudiced by IQVIA's evasive responses because it cannot prepare specific defenses to charges that remain hidden in generalities." (*Id*. at 17.)

In its opposition, IQVIA asserts that Veeva has not shown the Special Master's Opinion was either clearly erroneous or abused his discretion. (*See* ECF No. 159 at 28.) IQVIA claims it has provided full responses based on its current knowledge and contends the Special Master offered a reasoned explanation for his denial of Veeva's motion to compel responses to Interrogatory Nos. 33 and 35 when he noted that discovery was still in its early stages. (*Id*. at 30.) IQVIA avers that Veeva's request to compel IQVIA to provide an all-encompassing narrative of every possible fact supporting the allegations in its Complaint is improper. (*Id*. at 31.) IQVIA argues that its responses to Interrogatory Nos. 33 and 35 "properly provided the principal and material facts of which it was aware at [that] relatively early stage of discovery." (*Id*.) IQVIA maintains that the Special Master's September 13 Order is consistent with relevant law. (*Id*.)

Additionally, IQVIA notes that it has supplemented its responses to Interrogatory Nos. 33 and 35 twice, in February and June of 2020, since the filing of its opposition to the Veeva's appeal, detailing the circumstances of Veeva's misappropriation and identifying over 550 documents and deposition testimony evidencing Veeva's theft of IQVIA's trade secret. (*See* ECF No. 377 at 4.) IQVIA claims that the detail provided in its supplemental responses "further defeats Veeva's already deficient argument that it does not know what concrete facts constitute the alleged

'misappropriation.'" (*Id*.) IQVIA argues that to the extent that it has not yet identified every detail of exactly how and to what extent Veeva misused its trade secrets, that is only because discovery is ongoing and Veeva has refused to provide the types of Computer Forensic Discovery that will allow IQVIA to do so. (ECF No. 229 at 13.)

In denying Veeva's motion to compel, the Special Master concluded that IQVIA had "appropriately responded to Interrogatory Nos. 33, [] and 35 *at this time"* and *"provided the material facts supporting its claims at this stage of discovery.*" (ECF No. 183 at 6) (emphasis added.) The Special Master advised the parties "that they remain under a continuing duty to amend their interrogatory responses as they obtain additional information." (*Id*. at 7.)

### The November 30 Order

In the November 30 Order, the Special Master denied Veeva's motion to compel IQVIA to respond to Interrogatory No. 14 and specifically identify its alleged trade secrets. (*See* ECF No. 183 at 4.) The Special Master found that "while several district courts around the country have required that alleged trade secrets be identified with reasonable particularity, there is no such prerequisite in this District." (*Id.* at 5.) The Special Master explained that "[u]nless there is a heightened pleading requirement, the Federal Rules of Civil Procedure do not require a plaintiff to plead all relevant facts in detail and generally do not require a plaintiff to provide specific information about trade secrets at the *outset of litigation*." (*Id.*) (emphasis added). The Special Master emphasized that "Veeva cannot impede relevant discovery by first requiring IQVIA to identify with precision and specificity each and every trade secret that IQVIA alleges Veeva misappropriated." (*Id.*)

On appeal, Veeva argues that the Special Master's failure to require IQVIA to first identify a list of discrete alleged trade secrets specifically is "clearly erroneous and an abuse of discretion."

(ECF No. 194 at 1.) Veeva requests this Court reverse the Special Master's November 30 Order and (1) require IQVIA to respond to Veeva's Interrogatory No. 14 by providing a list of specifically identified items that IQVIA contends to be trade secrets and that it contends Veeva misappropriated; and (2) require the Special Master and the parties to confer to define rational boundaries for discovery in light of that list and Rule 26's proportionality standards. (*Id.* at 5)

IQVIA maintains that Veeva's appeal hinges on a meritless argument—that Veeva should not have to produce relevant discovery until IQVIA identifies its trade secrets with greater specificity. (ECF No. 229 at 6.) IQVIA maintains that the Special Master correctly decided that it has sufficiently identified the trade secrets at issue. (*Id*. at 6-7.) IQVIA states that the trade secrets that are the subject of this litigation are specific IQVIA market research offerings described at length and defined in the Complaint. (*Id.*)

"To plead the existence of a trade secret in a misappropriation claim ..., [a plaintiff] must sufficiently identify the information it claims as a trade secret[.]" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). "[D]eciding whether a plaintiff has sufficiently disclosed its trade secrets is a fact-specific question to be decided on a case-by-case basis." *Oakwood*, 999 F.3d at 906 n.11 (internal quotations omitted) (quoting *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015). Courts have recognized that "competing policies protecting plaintiffs and defendants in trade secret misappropriation cases 'can make resolving this type of dispute difficult.'" *Id*. (quoting *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007)); *see also id.* at 680-81 (describing seven competing policies that bear on the plausibility of trade secret claims). In *Par Pharmaceuticals, Inc. v. QuVa Pharma, Inc*, the Court highlighted three policies that support allowing a trade secret plaintiff to take discovery prior to identifying its alleged trade secrets in the early stages of litigation:

> (1) a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(1); (2) the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating; and (3) a plaintiff that is required to identify the trade secrets at issue without knowing which of those secrets have been misappropriated is placed in somewhat of a "Catch-22" in that [s]atisfying the requirement of detailed disclosure of the trade secrets without knowledge [of] what the defendant is doing can be very difficult" because if the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret, [and] [i]f instead it is too specific, it may miss what the defendant is doing.

No. 17-cv-6115 (BRM), 2019 WL 959700, at *2 (D.N.J. Feb. 27, 2019) (internal quotations omitted) (quoting *DeRubeis*, 244 F.R.D. at 680).

The Court also identified policy considerations that support delaying certain discovery until the plaintiff has sufficiently described the trade secrets at issue:

> (1) lawsuits might regularly be filed as fishing expeditions to discover the trade secrets of a competitor; (2) until the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant, therefore, requiring the plaintiff to sufficiently identify its trade secrets prior to allowing discovery on the defendant's trade secrets helps the court to determine the outer permissible bounds of discovery; (3) it is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated; (4) requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives.

*Id.* at *3 (internal quotations omitted) (quoting *DeRubeis*, 244 F.R.D. at 680-81).

While the Court must balance these two competing considerations, 'the "proper" approach is clearly fact-dependent." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 383 n.22 (3d Cir. 2021) (citation omitted) (quoting *DeRubeis*, 244 F.R.D. at 680). "District courts must [] engage with the specific facts of the case and consider the degree of specificity necessary in light of the particular industry-based context and *the stage of litigation* ..." *Id.* (emphasis added.)

Here, the Court begins by noting that in the September 13 Order and November 30 Order the Special Master determined that IQVIA's answers to Interrogatory Nos. 14, 33, and 35 were

adequate "*at this time*" and "*at this stage of discovery*." (ECF Nos. 147 at 6; 183 at 5) (emphasis added.) In 2018, this litigation was in the early stages of discovery, few, if any, depositions had been taken and the parties were in the midst of exchanging large amounts of documents and files. Now, nearly four years later, the parties have engaged in extensive discovery, conducted depositions, and produced millions of pages of documents.

The Court finds that at this stage of the litigation, IQVIA should be able to sufficiently identify its trade secret(s) with reasonable particularity in response to Veeva's Interrogatory No. 14 and "fully" respond, with precision and specificity to Veeva's Interrogatory Nos. 33 and 35 in support of its misappropriation claims. This will put Veeva on notice of the nature of its claims and enable the Court to determine the proper scope of discovery and focus on discovery central to the parties claims and defenses.

### B. Production of IQVIA's Sales Data Contracts

On appeal, Veeva submits that the January 15 Order must be reversed and vacated because the Special Master erroneously construed its motion to compel IQVIA to produce sales data contracts, submitted on September 6, 2019, (the "2019 Motion") as an untimely motion for reconsideration of the Special Master's October 10 Order. (*See* ECF No. 328 at 1-2, 5.) First, Veeva contends that the 2019 Motion requests different relief. Veeva states its 2019 Motion seeks to compel specific sales data contracts from IQVIA's top suppliers, whereas the motion to compel that led to the Special Master's October 10 Order (the "2018 Motion") sought a comprehensive breakdown of costs for IQVIA's nearly one million sources of raw data. (*Id*.) Second, Veeva argues that the 2019 Motion requests relief for different reasons. Veeva states the sales data contracts are relevant to its affirmative antitrust claims, whereas the 2018 Motion sought a cost breakdown in support of Veeva's defense against IQVIA's trade secret claims. (*Id*.) Veeva further contends that

21

the Special Master's primary reason for denying the discovery in the October 10 Order was the lack of relevance of the requested cost breakdown to Veeva's defense. (*Id.*) Veeva argues that such reasoning is not applicable to the 2019 Motion. (*Id.*) Specifically, Veeva contends that its request for documents sufficient to determine the existence of exclusive arrangements is supported by documents that IQVIA produced in discovery after the October 10 Order. (*Id.* at 13.) These documents included sales data contracts with five suppliers, and IQVIA's letter to the Federal Trade Commission ("FTC") discussing "two sales data contracts that were arguably exclusive" and "sales data contracts [that] include MFN clauses." (*Id.*)

Further, Veeva notes that in its amended counterclaims, it alleges that IQVIA has a monopoly in global sales data, which it unlawfully leverages to maintain its global reference data monopoly and obtain a global master data management software monopoly. (*Id.* at 16) (citing to Veeva Am. Countercls. ¶ 214 (Count VI)). Veeva argues that the requested sales data contracts are relevant to establishing IQVIA's monopoly power in sales data in that: (1) they demonstrate IQVIA's use of exclusive, MFN, and long-term arrangements with suppliers, and (2) show data-acquisition costs as a barrier to market entry. (*Id.* at 16, 22.) Veeva further argues that IQVIA previous production of certain contractual amendments and addenda was deficient as IQVIA did not produce the underlying sales data contracts. Veeva maintains that IQVIA should be compelled to produce all corresponding primary agreements to ensure completeness. (*Id.* at 21.) (citing to ECF No. 329-7, Ex. M at 2 (AmerisourceBergen Corp.), 17 (Target Corp.), 24 (Rite Aid Corp.), 31 (Managed Health Care Associates, Inc.), 37 (Walgreen Co.), 48 (Walgreen Co.)).

Finally, Veeva states that to the extent the 2019 Motion requests information that overlaps to some degree with some aspect of Veeva's 2018 Motion, the October 10 Order (and the parties' underlying briefing) explicitly contemplates such a subsequent request. (*Id.* at 11.) Veeva notes

that in the October 10 Order, the Special Master explained that if IQVIA's productions are "legitimately not enough, then the Special Master can revisit what more needs to be provided." (*Id.*) (citing to the October 10 Order, ECF No. 155 at 7). Veeva argues that even assuming it seeks information like that requested in its 2018 Motion, the 2019 Motion is in compliance with the instructions provided by the Special Master in his October 10 Order. (*Id.*)

Veeva requests the Court reverse the Special Master's January 15 Order and compel IQVIA's production of (1) all sales data contracts with the 28 data suppliers (and any subsidiaries) identified by Veeva, effective throughout the relevant period (from January 1, 2012, through the present); (2) the contracts referenced in IQVIA's October 21, 2015 letter to the FTC; and (3) all amendments or addenda to original agreements it has produced or will produce and vice-versa (all original agreements for amendments or addenda IQVIA has produced or will produce). (*Id.*) However, during Oral Argument on August 6, 2021, Veeva amended its request to production of the sales data contracts referenced in IQVIA's letter to the FTC dated October 21, 2015, and the 28 suppliers (and associated subsidiaries) identified by Veeva in a supplemental handout Veeva provided to IQVIA and the Court. (*See*, ECF No. 405, August 6, 2021 Hearing Tr.138:3 to 24.)

In opposition, IQVIA argues that Veeva is attempting to take a "third bite" at the apple by appealing the Special master's denial of its 2019 Motion. (ECF No. 338 at 1.) IQVIA argues that Veeva's contention that it is seeking "different documents for different reasons" is false. (*Id*. at 6.) IQVIA notes that the documents Veeva sought in its 2018 Motion and the ones requested in the 2019 Motion are the same agreements the Special Master denied in the October 10 Order. (*Id.* at 2.) IQVIA further contends that the "different reasons" Veeva purports to base the 2019 Motion on, its Monopoly Leveraging counterclaim, were available to Veeva when it sought the same information in its 2018 Motion, "had Veeva merely bothered to raise them." (*Id.* at 8.)

Additionally, IQVIA argues that the Special Master's finding that Veeva's 2019 Motion sought the same documents previously denied in his October 10 Order is a determination uniquely within the scope of the Special Master's oversight of discovery and is thus entitled to substantial deference. (*Id.* at 6.) IQVIA contends that Veeva cannot meet its burden to show that the Special Master's January 15 Order was an abuse of discretion. (*Id.* at 13.) IQVIA argues that given the irrelevance of the requested information, the burden of producing it, and the frivolous manner in which Veeva's motion has been untimely renewed, Veeva's motion "fails under any standard." (*Id. at* 14-15, 21-22.) Further, IQVIA submits that

> [i]f the Court determines that Veeva's motion should be considered on the merits, the Court should remand the motion to Judge Cavanaugh to decide it in the first instance. *See e.g.*, *Lithuanian Commerce Corp. Ltd.*, 177 F.R.D. at 215 (granting appeal in part and remanding to magistrate for further proceedings consistent with opinion). This is particularly appropriate given Judge Cavanaugh's deep familiarity with the facts and intricacies of discovery in this case.

*Id.* at 14 n6.

The Court takes issue with IQVIA's limited view of this Court's role in as it pertains to pretrial matters in this litigation. The Court acknowledges that a special master's ruling on a discovery matter is entitled to substantial deference however, "a district court has complete discretionary authority over decisions regarding discovery [] prior to trial." *Crowley v. Chait*, No. CV 85-2441 (HAA), 2005 WL 8165115, at *4 (D.N.J. Feb. 22, 2005) (citing *Buffington v. Wood*, 351 F.2d 292, 298 (3d Cir. 1965); quoting Hall v. Clifton Precision, 150 F.R.D. 525, 527 (E.D. Pa. 1993) ("Taken together, Rules 26(f), 30, and 37(a), along with Rule 16, which gives the court control over pre-trial case management, vest the court with broad authority and discretion to control discovery...")). The Court has no doubt that the Special Master gave thorough and due consideration to the parties' positions, the matters at issue, however, when circumstances are

presented that warrant a revised ruling, the Court is not precluded from revisiting and, if appropriate, modifying such nonfinal rulings. *See* Fed. R. Civ. P. 53.

Here, the Court finds that Veeva's 2019 Motion seeks different relief than that addressed by the Special Master's October 10 Order. First, in contrast to Veeva's 2018 Motion, which sought a comprehensive breakdown of costs for IQVIA's nearly one million sources of raw data to defend against IQVIA's claims of trade secret theft, Veeva's current request seeks a limited number of contracts between IQVIA and its data suppliers. The Court finds that Veeva's current request is relevant to Veeva's amended counterclaims and proportional to the needs of the case. Further, the Court finds that IQVIA has failed to articulate the undue burden that it would suffer as a result of producing the requested information. Even if IQVIA were to make such a showing, that burden would not be disproportionate to the stakes of this case or the resources of the parties, particularly considering IQVIA's previous production of sales data contracts in this litigation. (*See* ECF No. 328 at 22.)

As the Court has determined that the sales data contracts Veeva seeks from IQVIA are relevant to Veeva's monopoly-leveraging counterclaims and proportional to the needs of the case, the Special Master's January 15 Order is modified as follows: IQVIA shall produce (1) all sales data contracts with IQVIA's 28 data suppliers identified by Veeva in the supplemental handout provided to the Court and IQVIA during the August 6, 2021 Oral Argument; (2) all contracts referenced in IQVIA's October 21, 2015 letter to the FTC, and (3) all amendments or addenda to original agreements IQVIA has produced or will produce and vice-versa within fourteen days of the date of this Order.

### C.  Computer Forensic Discovery

On appeal, Veeva submits that the November 30 Order must be set aside in part because the Special Master erred in overruling Veeva's objections to certain IQVIA expert Declarations of Jeff C. Parmet and Hunter McMahon; and in concluding that Veeva must produce software source code and voluminous other documents, while not addressing Veeva's specific objections as to burden, being overbreadth, vagueness, and prejudice. (ECF No 194 at 15.) Additionally, Veeva argues that the November 30 Order expands the group of people from whom Veeva must seek records beyond the 25 custodians agreed upon by the parties under the January 5, 2018 protocol issued by Judge Falk (ECF No. 109 at 4), to an additional 100 Veeva employees. (*Id.* at 11.)

Veeva states that it sought a protective order from such sweeping discovery until IQVIA identified each alleged trade secret, asserting that only then can reasonable and proportionate discovery be crafted. (*Id*. at 24.) Veeva argues that the Special Master erred in failing to analyze whether trade secret claim identification is necessary to allow the Court to oversee tailored, proportional discovery. (*Id*.) Veeva contends that without answering Interrogatory No. 14 with any detail, IQVIA is unconstrained by any limits on the alleged trade secret at issue and the November 30 Order erroneously grants IQVIA an "unprecedented amount of discovery," which Veeva characterizes as "a fishing expedition." (*Id*.)

Veeva further contends that the Special Master's denial of Veeva's objections to the Declarations IQVIA submitted was clear error and an abuse of discretion. (*Id*. at 28.) Veeva contends that while the Special Master agreed with Veeva's argument that the Declarations of Mr. Parmet and Mr. McMahon were not proper expert opinions under FRE 702, he "did not attempt to justify why those declarations still should be credited when the experts did not offer an opinion, are not percipient witnesses with personal knowledge, and assumed facts that are not established." (*Id*.) Veeva argues that the November 30 Order erroneously relied on "speculation from non-party

outsiders" and ignored Veeva's submissions from witnesses who understand how Veeva's software works. (*Id*.)

Further, in Veeva's letters to the Court dated July 30, 2021 (ECF No. 382) and August 17, 2021 (ECF No. 391), Veeva asserts that it has already given IQVIA access to the systems it uses to build and maintain its OpenData data product and a complete copy of OpenData. (*See* ECF Nos. 382 at 3, 391 at 1.) According to Veeva, that production included every addition and revision to every doctor or hospital record in OpenData from October 2013 through January 2019. (ECF No. 391 at 1.) Veeva argues that "[i]f IQVIA thinks Veeva compiled any part of OpenData using IQVIA records, then Veeva has given IQVIA the most comprehensive record conceivable to try to prove its claims. Forensic artifacts are a vastly inferior and less complete source of information..." (*Id*. at 2.) Moreover, Veeva claims "[o]nly 15 of the 168 forensic artifact custodians are among the 26 agreed custodians, and only 24 of the forensic artifact custodians have been deposed. Most of the forensic custodians' names have not even made an appearance in the case. After years of discovery, Veeva is unaware of reasons why these individuals are relevant to IQVIA's claims, beyond idle speculation." (ECF Nos. 382 at 2-3.) Veeva requests that the Court reverse the November 30 Order and require that the Special Master and the parties confer to define rational discovery boundaries, which clarify the information sought, in accordance with Fed. R. Civ. P. 26's proportionality standards, considering IQVIA's response to Interrogatory No. 14.

In its opposition, IQVIA maintains that to the extent that it has not yet identified every detail of exactly how and to what extent Veeva misappropriated its trade secrets, that is only because discovery is ongoing and Veeva has refused to provide the Computer Forensic Discovery specified in the November 30 Order. (ECF No. 229 at 13.) IQVIA argues that "the discovery at issue is precisely the type of discovery that will yield further evidence of that misappropriation."

27

(*Id*. at 12.) IQVIA states that it sought Computer Forensic Discovery because custodial discovery (such as emails) has its limitations and are unlikely to contain the information requested, especially given that this case alleges that Veeva used stolen data to improve data offerings and computer software. (*Id*. at 16 n.43.) Further, IQVIA contends that access to Veeva's OpenData is insufficient, "[l]ooking at the final product did not tell IQVIA why certain changes were made or whether they were the product of trade secret theft." (ECF No. 396 at 2.) IQVIA argues that in the absence of the Computer Forensic Discovery, IQVIA is inhibited from reconstructing the systematic way Veeva allegedly misused IQVIA's Market Research Offerings to build its own competing reference data offering, Veeva OpenData, and improve Veeva's software applications. (ECF No. 229 at 1-2.)  IQVIA further argues that source code information is necessary to trace how Veeva used IQVIA data to improve its software functionality and which Veeva personnel engaged in these activities. (*Id*.)

IQVIA asserts that Veeva mischaracterizes the November 30 Order as having "agreed with Veeva that the Declarations submitted by IQVIA's experts were not proper expert opinion under FRE 702, when in fact, the Special Master held that Federal Rule of Evidence 702 and the Daubert standard did not apply, because the IQVIA declarants were 'not providing expert opinion to the fact-finder.'" (*Id*. at 28.)  IQVIA argues that Veeva "did not even address the Special Master's reasoning in its Appeal, nor …cite a single case … to support its argument that the Special Master should not have relied on the declarations. (*Id*. at 28.) IQVIA argues the Special Master was correct in recognizing the crucial evidentiary role of the Computer Forensic Discovery. (*See id*.)

In his November 30 Order, the Special Master noted that the Declarations of Jeff Parmet and Hunter McMahon were submitted by IQVIA to explain to the Court why the Computer Forensic Discovery it sought was relevant to assessing Veeva's alleged use of IQVIA data. (*See*

November 30 Order at 6-7.)  The Special Master concluded that Federal Rule of Evidence 702 and the *Daubert* standard did not apply because the IQVIA declarants were "not providing expert opinion to the *fact-finder*. (*Id.* at 7-8) (emphasis added). This Court agrees.

The trial judge serves as a gatekeeper in scrutinizing the evidentiary relevance and reliability of the proposed expert submission. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595–97 (1993). "The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious [expert] testimony." *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, No. 11-07382, 2017 WL 2362848, at *2 (D.N.J. May 31, 2017) (citing *In re Zurn Pex Plumbing Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)). However, "gatekeeping function" is, reduced when, as here, testimony is presented to the court rather than to a jury. *See id.* (quoting *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). Further, as noted in the Special Master's November 30 Order, Veeva is not foreclosed from raising any issues with the substance or methodology of any future expert reports of these experts the context of a *Daubert* motion if appropriate. *See In re BlackRock Mut. Funds Advisory Fee Litig.*, No. CV141165FLWTJB, 2019 WL 1387450, at *22 (D.N.J. Feb. 8, 2019), aff'd, 816 F. App'x 637 (3d Cir. 2020) (citing *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (where the fact finder and the "gatekeeper" are the same, that is, the judge, the court does not err in admitting expert evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702). Consequently, Veeva's appeal of the Special Master's overruling its objections to IQVIA's expert declarations is denied.

As the Special Master stated in his November 30 Order, "this is a complex trade secret and antitrust matter that involves extensive discovery and the exchange of millions of documents." (ECF No. 183 at 16.) The Special Master's discovery ruling includes the production of Veeva's

source code and a vast range of technical documentation and computer forensic artifacts from over 2,000 of Veeva's personnel. Given the breadth of IQVIA's request and the highly confidential nature of the discovery it seeks, that this Court ensures that "the scope of discovery taken from the defendant [is] limited to the specific trade secrets which were allegedly misappropriated." *Givaudan Fragrances Corp. v. Krivda*, 2013 WL 6230498, at *3 (D.N.J. Dec. 2, 2013) (citing *Hill v. Best Med. Int'l, Inc.*, 2010 WL 2546023, at *3 (W.D. Pa. June 24, 2010) ("Plaintiff must provide "a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets"); *see also PTT, LLC v. Gimme Games*, 2014 WL 5798148, at *6 (D.N.J. Nov. 6, 2014) (In denying Defendants' motion to dismiss, the Court noted that "[o]nce discovery resumes, Plaintiff will be required to provide 'a description of the trade secrets at issue that is sufficient to (a) put the defendant on notice of the nature of plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets.'") (quotations omitted); *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) ("Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.")

At this stage of the litigation, IQVIA should be able to describe with sufficient particularity the information it claims as a trade secret(s) in response to Veeva's Interrogatory No. 14 and identify any facts it believes it possesses to support any contention that Veeva has misappropriated any IQVIA trade secret in response to Interrogatory Nos. 33 and 35. This information will assist

in defining the outer permissible bounds of discovery and limit the potential of "fishing expedition into Defendant's business. *See Vesta Corp.,* 147 F. Supp. 3d at 1153. Accordingly, Veeva's appeal from the Special Master's November 30, Order ruling on IQVIA's motion to compel is granted.

The Court notes that while Veeva will not be required to produce the Computer Forensic Discovery at this time, this in no way forecloses IQVIA from requesting this discovery in the future. Moreover, following the submission of IQVIA's supplemental responses to Interrogatory Nos. 14, 33, and 35, the parties shall meet and confer and work together with the Special Master and Magistrate Judge to define the appropriate scope of any outstanding discovery, including the Computer Forensic Discovery outlined in the November 30 Order, in accordance with Rule 26's proportionality standards Further, the parties are advised that discovery, while still ongoing, is mature, and the record is highly developed, accordingly, the parties should anticipate that fact discovery will end soon.

## IV.    CONCLUSION

For the foregoing reasons, within fourteen (14) days of the date of this Order, IQVIA shall supplement its responses to Veeva's Interrogatory Nos. 14, 33, and 35 in support of IQVIA's trade secret misappropriation claims with sufficient and reasonable particularity to put Veeva on notice of the nature of its claims and enable the Court to determine the proper scope of discovery in this matter and establish reasonable limitations for the production of Veeva's Computer Forensic Discovery, and any other discovery requested by the parties going forward.

Veeva's appeal (ECF No. 150) of the Special Master's September 13 Order (ECF No. 147), is hereby **DENIED** and the Special Master's Opinion & Order dated September 13, 2018 (ECF No. 147), is **AFFIRMED**.

Next, Veeva's appeal (ECF No. 194) of the Special Master's November 30 Order (ECF No. 183) is hereby **GRANTED in part** and **DENIED in part** and the Special Master's Opinion & Order dated November 30, 2018 (ECF No. 183) is hereby **MODIFIED** as follows: Special Master's ruling on IQVIA's document requests is **GRANTED** to the extent it compels Veeva to produce Computer Forensic Discovery without sufficient trade secret claim identification by IQVIA. Any further production of Veeva's Computer Forensic Discovery is stayed until the Court determines the appropriate scope of discovery based on IQVIA's supplementation, as described above. Veeva's appeal of the Special Master's denial of its motion for a protective order is **DENIED as moot**. Veeva appeal the Special Master's overruling Veeva's objections to IQVIA's expert declarations is **DENIED**.

Finally, Veeva's appeal (ECF No. 327) of the Special Master's January 15 Order (ECF No. 325) denying its motion to compel IQVIA to produce sales data contracts is hereby **GRANTED** and the Special Master's Opinion & Order dated January 15, 2021, (ECF No. 325), is hereby **REVERSED** and **VACATED** in accordance with this Opinion.  An appropriate Order will follow.

**DATED: December 29, 2022**

HONORABLE JULIEN XAVIER NEALS
United States District Judge