**David N. Cinotti**
Partner
dcinotti@pashmanstein.com
Direct: 201.270.4901



May 5, 2023

**Via ECF**
The Honorable Jessica S. Allen
United States District Court
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:   *IQVIA Inc., et al. v. Veeva Systems Inc.*, Case No. 2:17-cv-00177-JXN-JSA ("*IQVIA I*")
      *Veeva Systems Inc. v. IQVIA Inc., et al.*, No. 2:19-cv-18558-JXN-JSA
      *IQVIA Inc., et al. v. Veeva Systems Inc.*, Case No. 2:19-cv-15517-JXN-JSA ("*IQVIA II*")

Dear Judge Allen:

We write on behalf of Veeva Systems, in response to IQVIA's letter partially opposing Veeva's request for 30-day extension of expert discovery deadlines. *IQVIA I*, Dkt. 530; *IQVIA II*, Dkt. 243 ("IQVIA Ltr."). Veeva reiterates its request for a 30-day extension.

IQVIA's four-page "response" has very little to do with Veeva's request for a modest extension of expert discovery deadlines. The bulk of IQVIA's letter is improper supplemental briefing on the parties' unrelated dispute regarding trade secret identification and forensic discovery. That is the true purpose of IQVIA's opposition. IQVIA otherwise fails to show why a 30-day extension of the rebuttal period is unreasonable

### Veeva's Proposed Extension Is Modest, Reasonable, and Warranted

A modest 30-day extension of expert deadlines would not prejudice IQVIA or negatively affect the overall case schedule. Veeva's proposed extension should be uncontroversial.

IQVIA suggests that Veeva's request for an extension is hypocritical, given Veeva's opposition to IQVIA's January 2023 request for at least a *twelfth* extension of the deadline to serve opening expert reports. This argument is entirely unpersuasive because it conflates repeated extensions for opening reports with a single extension for rebuttal reports. By January 2023, fact discovery in *IQVIA I* had been closed for *three years*, fact discovery in *IQVIA II* had been closed for more than *five months*, and both parties' experts had benefitted from *over four years* of extensions. The parties' rebuttal experts, on the other hand, have had the material to which they will respond for just a few weeks, and they have never received an extension. A discrete and modest extension to a responsive report deadline—after lengthy initial reports have been served—is far different than the repeated, seemingly indefinite extensions that extended the schedule in this case.

IQVIA's argument that Veeva's requested extension is "one-sided," rather than "fair and proportional" is equally wrong. IQVIA Ltr. 3. Both parties are bound by the same expert

The Honorable Jessica S. Allen
May 5, 2023
Page 2



deadlines, and as IQVIA notes, both parties served voluminous opening reports. IQVIA Ltr. 2. Veeva's proposed extension would benefit the parties equally, allowing everyone more time to prepare responses. This case involves complex, nuanced issues and a massive factual record. A short extension would allow those issues to be addressed fully. By contrast, IQVIA's request to lengthen the time to serve reply reports is premature. Because rebuttal reports are not yet completed, it is impossible to know whether the allotted time will be sufficient, or how much more time will be necessary. When the issue is ripe, Veeva will of course work with IQVIA to set reasonable deadlines.

Experts working on both parties' opening reports had years to develop, expand, and refine their reports and opinions. Especially given the length and complexity of the opening reports, and this litigation generally, rebuttal experts should be permitted more than six weeks to read and analyze these reports, conduct further research, and draft responses. A 30-day, reciprocal extension would neither prejudice IQVIA nor disrupt the case schedule. IQVIA does not argue otherwise.

### IQVIA's Discovery Arguments Are Irrelevant and Wrong

The Court should disregard the remainder of IQVIA's letter, which relates to IQVIA's ongoing failure to identify trade secrets and its objectionable requests for extensive forensic discovery. IQVIA Ltr. 2-3. IQVIA's extraneous digression is an unsubtle effort to submit further argument on a fully briefed issue, in disregard of the Court's prior order limiting briefing on forensic and trade secret identification issues to five pages. *IQVIA I*, Dkt. 515; *IQVIA II*, Dkt. 226.

If entertained, IQVIA's improper arguments regarding forensic discovery should be rejected. IQVIA's letter misrepresents the opinions of Dr. Hartley, the state of IQVIA's trade secret identification, and Dr. Hartley's use of the narrow set of JIRA tickets.

IQVIA does not even try to draw a connection between its partial opposition to Veeva's request for an extension and IQVIA's demand for extensive forensic discovery. And IQVIA ignores the threshold issue that remains: under Judge Neals's order, IQVIA could not potentially be entitled to *any* forensic discovery—even in theory—until it identifies the asserted trade secrets with "reasonable particularity," "precision and specificity." *IQVIA I*, Dkt. 497 at 21. As Veeva explained in the February briefing, IQVIA has not provided that identification. *IQVIA I*, Dkt. 518. Many years into the litigation, Veeva still does not know what specific records IQVIA claims it has stolen. *Id.* at 3. Without that information, the parties and the Court cannot "defin[e] the outer permissible bounds of discovery and limit the potential of [a] 'fishing expedition into [Veeva's] business.'" *IQVIA I*, Dkt. 497 at 30-31.

IQVIA also does not identify any discovery deficiencies. Dr. Hartley's report shows that Veeva independently built its OpenData product. As part of his investigation, Dr. Hartley identified a small number of software bug tickets—also known as "JIRA tickets" (115) relating

The Honorable Jessica S. Allen
May 5, 2023
Page 3



to certain types of customer inquiries. Veeva produced everything upon which Dr. Hartley relied, including explanations of how to recreate the calculations and queries that led to his conclusions. Although Veeva is under no obligation to do so (because Dr. Hartley did not, for purposes of constructing his queries, need to review the substance of the underlying JIRA tickets), Veeva agreed to produce the JIRA tickets implicated. There is no live dispute.

      More importantly, Dr. Hartley's reference to 115 JIRA tickets does not somehow make IQVIA's forensic requests relevant. Dr. Hartley's count of a small handful of JIRA tickets, which Veeva has offered to produce—and which are of the sort that Veeva has consistently produced throughout discovery—cannot justify IQVIA's requests for sweeping forensic discovery. IQVIA's forensic requests encompass materials bearing no relation to JIRA tickets or Dr. Hartley's analysis. The forensic items sought include forensic artifacts, software-development artifacts, test plans, test scripts, test logs, and other items. Similarly, IQVIA's request for broad, untargeted access to Veeva's JIRA ticketing system and records is untethered to Dr. Hartley's actual limited use of JIRA.

      The collateral issues IQVIA discusses are wholly irrelevant to the modest extensions sought. Both sides have served voluminous expert reports. Both sides will have the opportunity to provide responsive reports, take expert depositions, and raise any issues with the Court in *Daubert* or summary judgment motions. The Court should reject IQVIA's attempt to link trade secret identification and discovery issues to minor adjustments to the expert schedule.

      \*   \*   \*

      Veeva respectfully requests that the Court grant a 30-day extension of the expert deadlines. We thank the Court for considering this request.

      Respectfully submitted,

      */s/ David N. Cinotti*
      David N. Cinotti

cc:  Counsel of record