**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IQVIA, INC. and IMS SOFTWARE SERVICES, LTD., <br><br> Plaintiffs – Counterclaim Defendants, <br><br> v. <br><br> VEEVA SYSTEMS INC., <br><br> Defendant – Counterclaim Plaintiff. | Civil Action Nos. 2:17-cv-00177-JXN-JSA, 2:19-cv-15517-JXN-JSA <br><br> Hon. Julien X. Neals U.S.D.J. <br> Hon. Jessica S. Allen U.S.M.J. <br><br> Motion Return Date: August 7, 2023 <br><br> Oral Argument Requested <br><br> *Document Electronically Filed* |

**VEEVA SYSTEMS INC.'S REPLY BRIEF IN SUPPORT OF ITS APPEAL FROM AND OBJECTIONS TO THE ORDER OF JUNE 2, 2023 (ECF NO. 536)**

Joseph A. Hayden, Jr.
(jhayden@pashmanstein.com)
**PASHMAN STEIN WALDER HAYDEN**
Court Plaza South
21 Main Street, Suite 200
Hackensack, New Jersey
Telephone: (201) 488-8200

Steven F. Benz
(sbenz@kellogghansen.com)
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900

Charles T. Graves
(tgraves@wsgr.com)
**WILSON SONSINI GOODRICH & ROSATI PC**
One Market Plaza, Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000

James T. Southwick
(jsouthwick@susmangodfrey.com)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana
Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366

*Attorneys for Defendant/ Counterclaim Plaintiff Veeva Systems Inc.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................II

PRELIMINARY STATEMENT ........................................................................................... 1

I. REPLY TO OPPOSITION BRIEF ............................................................................ 4

    A. Legal Standard:  Appeal to District Judge ........................................................... 4

    B. Most of IQVIA's Opposition Is Off-Point........................................................... 5

    C. The June 2 Order is Erroneous because IQVIA did not Purport to Identify Trade Secrets it Claims Veeva Received and Misappropriated............................................................... 7

    D. June 2 Order is Erroneous because it Allowed a Response that Fails the Third Circuit's *Mallet* Holding. .................................................................................................. 8

    E. The June 2 Order is Erroneous because it does not Divulge the Information Comprising Each Alleged Trade Secret............................................................................... 10

    F. The June 2 Order is Erroneous because it Hinders Veeva from Testing a Potentially Dispositive Independent Development Showing............................................................. 11

CONCLUSION................................................................................................................... 12

# **TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*Armor Correctional Health Servs., Inc. v. Teal*,
  2021 WL 5834245 (S.D. Fla. Dec. 8, 2021) ........................................................................... 11

*Calendar Res. LLC v. StubHub, Inc.*,
  2018 WL 4846797 (C.D. Cal. Aug. 7, 2018) .......................................................................... 11

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan*,
  183 F.R.D. 119 (D.N.J. 1998) ................................................................................................... 4

*Gunter v. Ridgewood Energy Corp.*,
  32 F. Supp. 2d 162 (D.N.J. 1998) ............................................................................................. 4

*IHS Global Ltd. v. Trade Data Monitor, LLC*,
  2021 U.S. Dist. LEXIS 101952 (D.S.C. May 21, 2021) .......................................................... 7

*Mallet & Co. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) ............................................................................................. passim

*Norguard Ins. Co. v. Serveon Inc.*,
  No. 08-900, 2011 WL 344076 (D. Del. Jan. 28, 2011) ............................................................ 4

*Oakwood Laboratories v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021) .................................................................................................. 3, 9

**Statutes**

18 U.S.C. § 1836(6)(B) ................................................................................................................ 11

18 U.S.C. § 1839(5) ................................................................................................................... 4, 7

N.J. Rev. Stat. § 56:15-2 ...................................................................................................... 4, 7, 12

**Rules**

Fed. R. Civ. P. 72(a) ...................................................................................................................... 4

**PRELIMINARY STATEMENT**

IQVIA's opposition demonstrates that it has no intention of complying with the Court's December 28 Order to identify its alleged trade secrets. Unless this Court acts (again), IQVIA will *never* do anything more than point to the public product names of its immense product databases – databases that contain tens of millions of data records and that everyone agrees Veeva never received or accessed. Common sense tells us that a trade-secret plaintiff can't identify alleged trade secrets by reciting the public product names that correspond to massive datasets the defendant never laid hands on.

It's obvious that the parties are not close on this issue. For its part, IQVIA points to the legal standard that governs what goes into a public complaint at the very beginning of a lawsuit, and says that it does not have to do anything but provide the public product names that correspond to databases where IQVIA builds and maintains is commercially available data offerings, even while it admits Veeva never saw those databases. Veeva, by contrast, points to the Court's December 28 Order, the text of its Interrogatory No. 14 which seeks specificity, Third Circuit precedent requiring specificity, and the fact that we are six years into this case and past the discovery close. Veeva argues that IQVIA must articulate the *content* of each alleged trade secret – contained in what Veeva actually received, not databases it never saw – so that Veeva and the Court can test each claimed secret for secrecy and for independent development. Because we are not debating what goes into a complaint at the start of a case, IQVIA's position is plainly wrong. This Court, and a jury if there were a trial, are going to need something more precise to go on than IQVIA's product names. We cannot meaningfully try this case if IQVIA were permitted to argue the "misappropriation" of undefined "trade secrets" in front of a jury.

Veeva appealed because the Magistrate Judge erred on June 2 by allowing IQVIA to continue the exact same faulty tactic that it has engaged in since discovery began: avoid identifying the *content* of alleged trade secrets in the portions and sub-portions of data records Veeva *actually received* from customers, and instead list the public product names that correspond

to of internal databases with back-office processes Veeva never accessed. That is not what the Court ordered IQVIA to do in December 2022, in response to Veeva's Interrogatory No. 14. And it could not be what the Court intended, because that was also IQVIA's position *before* the Order, and the reason Veeva appealed the Special Master's ruling in the first place.

IQVIA is capable of identifying alleged trade secrets in the portions and sub-portions of data records it contends Veeva received from customers. If that's the names of doctors or hospitals, or something similar in the records at issue, IQVIA should say so and stop playing coy. But doing so would be fatal: it would allow Veeva to show the Court that there are no trade secrets in these subsets, because what Veeva received in the events IQVIA complains of wasn't IQVIA's internal processes, or the "statistical algorithms" IQVIA mentions in its opposition. At each step, IQVIA's opposition is faulty:

- Veeva explained that the trade-secret statutes (the federal DTSA and the state-law UTSA) do not contemplate "misappropriation" except for what the defendant actually acquired. That makes sense, because a party cannot "misappropriate" something it never saw or received. Veeva then explained that the Magistrate Judge erred by allowing IQVIA to identify "trade secrets" by listing the public product names of the internal databases that IQVIA admitted during the June 1 hearing Veeva did not access or obtain. But in opposition, IQVIA ignores this flaw in its position and doubles down to repeat it.

- Veeva noted that the Court's December 28 Order required IQVIA to do more than it had done before as to identifying alleged trade secrets. IQVIA did not change this position in response to the Court's Order – it is the same position IQVIA took before that Order as well. Thus, the Magistrate Judge erred in allowing IQVIA to continue the tactic it has engaged in since discovery began back in 2017. To the extent the Magistrate Judge credited IQVIA for better filling out other interrogatories as part of a single agglomerated response (Nos. 33 and 35, on the different "misappropriation" element) is not a substitute for failing to do so with respect to the identification interrogatory, No. 14.

● IQVIA ignores the Third Circuit's leading precedent on trade-secret claim identification, *Mallet & Co. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021), which explains that where a plaintiff's conclusory description of a compilation contains admittedly public information (as IQVIA agrees is the case here), generalized identification is insufficient. Instead, IQVIA continues to insist that the Third Circuit's standard for what should go into a public, non-sealed trade secret complaint – as set forth in *Oakwood Laboratories v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) – should control the Court's December 2022 Order as well. That is obviously incorrect, because IQVIAs January 2017 Complaint is not at issue and we are past the discovery close.

● To distract attention from its failure to identify its alleged trade secrets, IQVIA instead spends much of its brief on longwinded discussions about *different* elements of a trade secret case that are not at issue on this appeal, such as whether a data compilation could ever be a valid trade secret, and the nature of its "misappropriation" allegations. But identification of each alleged trade secret is a different element than the secrecy element or the misappropriation element. Veeva will address these other issues when the appropriate time comes – for example, if the Court orders early summary judgment on the question of whether there is a valid trade secret. On this appeal, the sole issue is whether IQVIA complied with the Court's December 2022 Order and specifically identified each of its alleged trade secrets in response to Veeva's Interrogatory No. 14.

● Veeva explained that it needs *specific* claim identification to best pursue a showing of independent development – which negates a "misappropriation" claim under the trade secret statutes. In a context where both parties obtain millions of data record sets from the same or similar third parties, it is highly likely that Veeva already possessed the same data records that IQVIA would call "trade secret." Indeed, in depositions, Veeva has already shown this to be the case in rare instances where IQVIA called out the specific content of a data record. IQVIA has no answer to how its tactics prejudice Veeva's ability to make this important showing.

IQVIA's opposition does not move the needle. The Magistrate Judge's June 2 Order was clearly erroneous because it allowed IQVIA to continue its longstanding tactic of reciting the public product names that correspond to its entire internal product databases rather than, as

Veeva's Interrogatory No. 14 requests, identifying the actual content of each alleged trade secret IQVIA contends Veeva actually received.

## I.   REPLY TO OPPOSITION BRIEF

### A.   Legal Standard:  Appeal to District Judge

IQVIA argues that an abuse-of-discretion standard should govern the Court's review of the Magistrate Judge's June 2 Order, rather than a clear-error standard.  But as Veeva explained, the clear-error standard under Rule 72(a) applies to a magistrate's misinterpretation or misapplication of law.  *See* Opening Brief at 8 (collecting citations including *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)).  Thus, legal conclusions are subject to a *de novo* review even on discovery matters.  *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998).  Moreover, lesser deference exists where a magistrate's decision is not based on a clearly articulated principle.  *See Norguard Ins. Co. v. Serveon Inc.*, No. 08-900, 2011 WL 344076, *2 (D. Del. Jan. 28, 2011).  IQVIA is incorrect to suggest that anything involving discovery is exclusively subject to an abuse-of-discretion review.  Indeed, that is inconsistent with the text of Rule 72(a) which, for nondispositive matters, states that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).

Here, the Magistrate Judge erroneously found that a trade-secret plaintiff could identify trade-secret claims by pointing to merely the public product names associated with databases the defendant never received.  As Veeva explained in its opening brief, that is inconsistent with the text of the trade-secret statutes, because the DTSA and the UTSA require that a defendant is subject to "misappropriation" liability only for what it has acquired.  *See* 18 U.S.C. § 1839(5); N.J. Rev. Stat. § 56:15-2.  In addition, the Magistrate Judge did not follow the precedent of the *Mallet* case, which rejected the use of conclusory language to claim secrets in some vast combination of information.

Whether a trade-secret plaintiff can identify alleged trade secrets by reference to material the defendant never acquired is a question of law, not fact – something flatly inconsistent with the

DTSA and the UTSA. Because that legal error is the root of the problem with the Magistrate's June 2 Order, the clearly-erroneous standard governs the ruling. And because that legal error could influence how this Court hears dispositive motions, and how a jury would entertain trade-secret allegations at trial, this problem goes far beyond what IQVIA refers to as "a discovery dispute." *See* Opposition at 11.

### B. Most of IQVIA's Opposition Is Off-Point

Before reaching the substance, we should highlight that almost all of IQVIA's brief is off-point: it does not address *identification* of alleged trade secrets. Instead, IQVIA spends most of its brief arguing unrelated issues: (1) whether or not it has valid trade secrets, and (2) whether or not there was misappropriation.

For example, IQVIA spends much of its brief arguing that data compilations can be trade secrets. *See* Opposition at 13-14, 16, 18-20, 22-24 (citing the *Nosal*, *Allstate*, *Uhlig*, *Compulife*, *Sythes*, *DiscoverOrg*, *Conseco*, *IHS Global*, and *Coed Sports* cases). But the question before the Court today is not whether there is a valid trade secret. The question for today is whether IQVIA complied with the December 2022 Order by properly responding to a Veeva interrogatory which seeks a specific identification of each separate alleged trade secret. None of the cases IQVIA cites here speak to the identification element, and thus they are irrelevant to this motion.

To be sure, Veeva will address the question of whether there are valid trade secrets at the appropriate time – for example, if the Court invites early summary-judgment briefing on that question. On that point, *sometimes* data compilations can be trade secrets – but often they are not: IQVIA's case citations are, predictably, incomplete and highly cherry-picked. But that is a question for another day.

Similarly, IQVIA also spends a lot of time arguing that Veeva engaged in misappropriation – when misappropriation is also a different claim element, and not pertinent to the question of whether IQVIA has identified the actual content of each alleged trade secret. IQVIA even emphasizes its "112-page" interrogatory response, while failing to note that almost all of that

response was keyed to the "misappropriation" interrogatories not at issue here – Nos. 33 and 35. *See* Opposition at 8, 15, 17. Again, Veeva will address these arguments at the appropriate time.

Notably, however, IQVIA's misappropriation arguments inadvertently highlight what IQVIA is capable of doing – but has not done – as to better identifying its actual trade-secret claims. Specifically, IQVIA argues that:

- "IQVIA's supplemental interrogatory responses also describe Veeva's misuse of IQVIA's trade secrets, including by identifying dozens of specific exports of IQVIA's trade secrets that Veeva misused. Dkt. 539-4 at 52, 55-73, 75, 76, 79, 81-84, 85-87, 88, 89, 94-95, 97-100." Opposition at 8. But, IQVIA doesn't describe what content within these exports it claims constitute trade secrets.

- "But Veeva's argument . . . ignores over 70 pages of IQVIA's supplemental responses detailing Veeva's misappropriation . . . [a]s just one example, IQVIA's supplemental interrogatory responses identify a spreadsheet of 11,531 HCOs that Veeva obtained . . . [t]his spreadsheet was an extract of IQVIA's OneKey offering, that was licensed to [a customer]." Opposition at 15. Again, IQVIA doesn't say what if any "trade secrets" are within this spreadsheet. For example, does IQVIA contend that it has any trade secrets in the list of 11,531 hospitals? Or not, since a list of hospitals is plainly publicly available?

These assertions demonstrate why IQVIA is wrong, and why the June 2 Order was erroneous. First, IQVIA is (again) admitting that Veeva did not obtain its three immense product databases, and that instead it accuses Veeva of receiving portions or sub-portions of data from different customers at different times. Second, these alleged misappropriation examples help bring into focus what IQVIA should be identifying: not the public product names associated with three databases, but the specific content of whatever alleged trade secrets IQVIA claims are seen in the portions or sub-portions of data that IQVIA claims Veeva received.

Third, these arguments contradict IQVIA's argument that it cannot identify any "trade secrets" because Veeva supposedly spoliated documents. If IQVIA can identify the "dozens" of events where customers shared data or portions of data, and if it can muster a "112-page" response

that largely consists of "misappropriation" accusations, it can identify the content of any alleged "trade secrets" involved in such events. Indeed, it is worth highlighting that in 2019, Veeva gave IQVIA and its experts Veeva's entire change history for the millions of data records in Veeva's OpenData product. It stands to reason that if there were "trade secrets" involved, IQVIA should be able to point to specific instances in which a specific IQVIA trade secret led to a specific change in the Veeva OpenData product. Neither IQVIA nor its experts have done so.

### C. The June 2 Order is Erroneous because IQVIA did not Purport to Identify Trade Secrets it Claims Veeva Received and Misappropriated.

In its opening brief, Veeva first argued that the June 2 Order is clearly erroneous because IQVIA's supplemental response to Interrogatory No. 14 did not even claim to identify alleged trade secrets that Veeva actually received. In other words, IQVIA does not come close to identifying its alleged trade secrets because it insists on generally referring to public product names that correspond to internal databases that it admits Veeva never received in their entirety: OneKey ("Healthcare Professional and Organizational Data"), and DDD and Xponent ("Sub-National Information"). As Veeva explained, IQVIA admits that Veeva did not acquire those immense product databases or internal processes, and instead accuses Veeva of receiving portions and sub-portions of data records from different customers at different times. *See* Opening Brief at 9-10 (citations).

In opposition, IQVIA does not deny that the Magistrate Judge's June 2 Order allowed IQVIA to claim trade secrets in databases that Veeva never received, instead of specifically identifying alleged trade secrets in what Veeva *did* receive. IQVIA also cannot deny that the DTSA and the UTSA contemplate the possibility of "misappropriation" only for information the defendant received. Tellingly, IQVIA's opposition is entirely silent on this point. *See* 18 U.S.C. § 1839(5); N.J. Rev. Stat. § 56:15-2.

Instead, IQVIA misleadingly cites a District of South Carolina case which did not even consider the question of identifying alleged trade secrets, and where the defendant *did* "frequently access" the plaintiff's *entire* database product. *See* Opposition at 2 (citing *IHS Global Ltd. v. Trade*

*Data Monitor, LLC*, 2021 U.S. Dist. LEXIS 101952 (D.S.C. May 21, 2021)).  Thus, when IQVIA protests that "Veeva has simply made up this 'rule'" – meaning, the concept that a trade secret plaintiff can't properly identify alleged trade secrets by pointing to products the defendant did not receive – IQVIA ignores that the text of the DTSA and the UTSA refute IQVIA's position.  And the authority it cites has nothing to do with the point in question.

At the same time, IQVIA doubles down on referring to material Veeva never received.  For example, it refers to how its "DDD offering estimates the volume of prescription medication sales to outlets such as hospitals and pharmacies, while Xponent estimates the number of prescriptions written by [physicians]."  Opposition at 7.  But IQVIA has never accused Veeva of misappropriating its process for prescription-related estimates.  Similarly, IQVIA refers to "highly sophisticated statistical algorithms" – but again, that is not something IQVIA alleges that Veeva misappropriated.  *See id*.  When a trade-secret plaintiff would rather refer to material the defendant never received rather than identify specific alleged trade secrets in what the defendant *did* receive, something is clearly amiss.

This is not what Veeva requested in Interrogatory No. 14.  The Court surely did not mean, in its December 28 Order, that IQVIA could identify alleged trade secrets by pointing to the public product names corresponding to three immense databases with all their internal processing steps that everyone agrees Veeva did not access, receive, or acquire.  Indeed, it *could not have* meant such a thing, because that kind of identification is what the December 28 Order found insufficient.  IQVIA's tactic is plainly designed to obstruct, not to illuminate.  The Magistrate Judge clearly erred by allowing IQVIA to hold steadfast to this non-particularized identification in the face of this Court's order, instead of requiring a specific identification of each alleged trade secrets contained in the portions and sub-portions of data that IQVIA claims Veeva actually *did* receive.

### D. June 2 Order is Erroneous because it Allowed a Response that Fails the Third Circuit's *Mallet* Holding.

Veeva's second objection to the June 2 Order is that it is inconsistent with the Third Circuit's 2021 ruling in *Mallet*, which held that if a purported identification of trade-secret claims

sweeps in admittedly public information as part of conclusory descriptions, such generalizations are insufficient. *See Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 (3d Cir. 2021) ("When the breadth of a trade secret description is so far-reaching that it includes publicly available information like patent disclosures and admitted industry knowledge, that information is not specific enough to be accorded trade secret status.").

IQVIA gets off on the wrong foot by arguing that the controlling Third Circuit precedent here is not *Mallet*, but the standard that governs what goes into a public, non-sealed complaint at the very beginning of a trade-secret lawsuit. Indeed, IQVIA uses this (very low) bar to justify the Magistrate Judge's June 2 Order. *See* Opposition at 12 (citing the standard for what goes into a complaint set forth in *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021), and arguing that "IQVIA easily meets this standard" and "Judge Allen committed no error"). Indeed, IQVIA cites *Oakwood* throughout its brief. But the standard controlling what a plaintiff has to say about alleged trade secrets in a public complaint at the outset of a case plainly has no bearing on the standard that applies to an interrogatory response under a protective order, much less six years into a case when discovery has closed. As this Court found at the end of years of fact discovery, "at this stage of the litigation, IQVIA should be able to sufficiently identify its trade secret(s) with reasonable particularity in response to Veeva's Interrogatory No. 14," and "IQVIA should be able to describe with sufficient particularly the information it claims as a trade secret(s)." *See* Dec. 28 Order at 21. *Oakwood* offers no support for the June 2 Order.

*Mallet* is controlling because it arose in discovery, not a public complaint. There like here, the plaintiff sought to identify a trade-secret compilation by lumping a lot of things together in generalized language:

> Mallet's formulas; customer purchase orders demonstrating Mallet's pricing; identification of customers experiencing difficulty with Mallet's products; internal discussions of "actual major problems" at customer locations; internal discussions of how Mallet would address issues with its products; internal discussions of customers' preferences and complaints; Mallet's completed organic certifications; identification of Mallet's supply source for product ingredients; Mallet's internal manuals and procedures showing how Mallet's lab is operated; pricing and volume data; information about Mallet's equipment; Mallet's training materials showing

how Mallet markets and sells its products; and a compilation of Mallet's product specification sheets.

16 F.4th at 376-77. Importantly, the Third Circuit noted that the generic wording of this compilation included admittedly public information from the plaintiff's patents. *See id*. at 383 ("Mallet recognizes that its own patents publicly disclose some of its formulas, but it appears to contend that even formulas thus publicly disclosed are part of its trade secret. [….] Problematically, though, Mallet fails to explain how we or anyone else is to distinguish between what is generally known or available information and what it contends to be protectable trade secrets.").

In opposition, IQVIA does not deign to mention *Mallet* until Page 20 of its brief. There, it claims that *Mallet* was not a "compilation" case, when it plainly was, as shown by the block quote above. *See* Opposition at 22. IQVIA also proposes that the problem in *Mallet* was that the plaintiff used the word "formula," when many companies have formulas, but IQVIA names its own products, "OneKey, DDD, and Xponent." *See id*. at 20. Nothing in *Mallet* turned on this made-up distinction as to whether a company's own product titles were listed as claim identifications or not. Rather, *Mallet* stands for the proposition that a plaintiff cannot slide by the identification element with generalized and conclusory references to its business information – precisely what IQVIA has been doing for six years now.

   **E.** **The June 2 Order is Erroneous because it does not Divulge the Information Comprising Each Alleged Trade Secret.**

Veeva's third objection to the June 2 Order is that it permitted supplemental responses that do not divulge the *content* of any alleged trade secret such that the reader can see the *actual information* claimed as a trade secret. *See* Opening Brief at 12-13 (citing *Mallet's* rejection of "broadly stated categories of information").

It is impossible to square the Court's December 28 Order that IQVIA identify "information" when identifying its alleged trade secrets in response to Veeva's Interrogatory No. 14 with the June 2 Order, which allowed IQVIA to slide by on reciting the public product names corresponding to three databases and undisputedly did not identify the content of a single data

record said to be part of any "trade secret." After all, Veeva's Interrogatory No. 14 called upon IQVIA to identify the actual content of each alleged trade secret.

IQVIA's opposition here is misdirection. It argues something akin to saying "there is no case with facts exactly like this one, where a court ordered a party to specifically identify the elements within a compilation claim." On one hand, IQVIA just hasn't looked hard enough. There are more cases than we have space to cite where courts ordered identification of the elements of a so-called "compilation" claim or faulted the plaintiff for failing to do so. *See, e.g.*, *Armor Correctional Health Servs., Inc. v. Teal*, 2021 WL 5834245, at *19 (S.D. Fla. Dec. 8, 2021) (granting summary judgment to trade-secret defendant in part because the plaintiff "failed to identify … the contents of the lists" of customers alleged to be a compilation trade secret); *Calendar Res. LLC v. StubHub, Inc.*, 2018 WL 4846797, at *9 (C.D. Cal. Aug. 7, 2018) (granting summary judgment to trade-secret defendant in part because the plaintiff "le[ft] the contents of a protectable compilation to mere speculation").

On the other hand, the Court need not look far. *Mallet* – which is controlling authority here – ordered a plaintiff to more precisely identify the actual claimed secrets within its conclusory compilation of stuff. *See* 16 F.4th at 383-85. Moreover, we are not discussing this issue in a vacuum – there is a binding Court Order in this case requiring IQVIA to identify its alleged trade secrets by providing "information" in response to Veeva's Interrogatory No. 14.

### F. The June 2 Order is Erroneous because it Hinders Veeva from Testing a Potentially Dispositive Independent Development Showing.

Finally, Veeva noted that obtaining a precise identification of each alleged trade secret is critical to a defense Veeva expects to bring on the merits: because Veeva obtains largely the same data records as IQVIA does from largely the same third party sources (such as the AMA, U.S. government, and state providers), it is near-certain that Veeva independently gathered the same or virtually the same data records as anything IQVIA would call a "trade secret." And as a matter of law, there is no misappropriation if the defendant has lawfully gathered the same or similar information from other sources. *See* 18 U.S.C. § 1836(6)(B) (independent derivation is not

"improper means"); N.J. Rev. Stat. 56:15-2 (independent discovery of the information is proper means).

The reason Veeva needs precision – the reason it needs to know the actual content of each alleged trade secret – is so that it can then compare whatever data IQVIA claims as a "trade secret" to the data Veeva had obtained from third party sources. Indeed, in depositions, Veeva has already rebutted accusations that Veeva had obtained data that originated from IQVIA by explaining that Veeva had instead obtained the data record in question from a third-party source. We expect to be able to do this comprehensively – but only if IQVIA properly answers Interrogatory No. 14 and precisely identifies the actual content of each separate alleged trade secret.

In opposition, IQVIA has almost nothing to say. It badly garbles the independent-derivation question by citing a case (*Oakwood Laboratories*) that had nothing at all to do with a question of independent derivation. *See* Opposition at 24. IQVIA either does not understand what independent derivation is, or is trying to confuse things. Either way, the Court should order a precise claim identification to avoid prejudicing Veeva's ability to undertake this data record comparison.

## **CONCLUSION**

It is far too late in this case for IQVIA to pretend that the standard that governs what goes into a public complaint is controlling at this stage of the case. The Court should reverse the June 2 Order and require IQVIA to answer Veeva's Interrogatory No. 14 by divulging the information comprising each separate alleged trade secret.

Dated: July 24, 2023

Respectfully submitted,

*Attorneys for Defendant and Counterclaim-Plaintiff Veeva Systems Inc.*

s/ *Joseph A. Hayden, Jr.*
Joseph A. Hayden, Jr.
(jhayden@pashmanstein.com)
**PASHMAN STEIN WALDER HAYDEN**
Court Plaza South
21 Main Street, Suite 200
Hackensack, New Jersey
Telephone: (201) 488-8200

Charles Tait Graves
(tgraves@wsgr.com)
Amit Gressel (agressel@wsgr.com)
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2109

Steven F. Benz
(sbenz@kellogghansen.com)
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900

James T. Southwick
(jsouthwick@susmangodfrey.com)
Ryan Caughey
(rcaughey@susmangodfrey.com)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana
Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366