**David N. Cinotti**
Partner
dcinotti@pashmanstein.com
Direct: 201.270.4901

PashmanStein
WalderHayden
A Professional Corporation

November 12, 2024

**Via ECF**
Hon. Julien Xavier Neals
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

**Re:**   *IQVIA Inc. v. Veeva Systems, Inc.*, No. 2:17-cv-00177-JXN-JSA ("*IQVIA I*")

Dear Judge Neals:

Veeva writes in response to IQVIA's November 11, 2024 letter, which IQVIA filed without consulting or even notifying Veeva. Dkt. 713. IQVIA apparently seeks reconsideration of its prior proposed pretrial schedule, which would set immediate deadlines for pretrial submissions and a February trial date. The only difference is that due to the passage of time, IQVIA now proposes an even *more* compressed pretrial schedule.

The Court appropriately declined to enter this pretrial schedule during the October 9 conference, and there is no reason to change course now. The Court instead suggested that it would revisit the matter of the trial schedule after argument on the pending motions. Dkt. 710 (Oct. 9, 2024 Hrg. Tr.) at 26. That is consistent with the Court's instruction that it would take a "practical" and "pragmatic approach" to managing this case. *Id.* at 25. IQVIA's renewed proposal is not. It is not pragmatic to prepare pretrial submissions before the scope of any trial is defined in the order on the parties' cross-motions for summary judgment. It is not practical to prepare pre-trial submissions on the hyper-accelerated schedule that IQVIA proposes. It is not pragmatic to set an imminent trial date while the Court grapples with 14 boxes of motion materials and the weighty legal questions they raise. And it is not practical to schedule a February trial when there are additional issues that must be resolved first. IQVIA's proposal does not honor the Court's guidance.

The Court should proceed as discussed during the October 9 conference: it should set a date for oral argument on the parties' summary judgment and *Daubert* motions. Veeva's November 11 letter (Dkt. 714) identifies seven December and January dates on which the parties are available (December 6, 10, 11 and 13, and January 7, 8, and 9, 2025). After argument, the Court should assess the state of the case and decide how to manage it through trial. Setting a February 10, 2025 trial date in advance of further guidance on the pending motions and other outstanding would not fairly and effectively advance the case.

**I.   The Proposed Schedule Is Premature with Summary Judgment Motions Pending**

It remains premature to set a trial schedule—especially a schedule that involves immediate pretrial submissions and an imminent trial date. As Veeva previously explained, it would be a

waste of the parties' time and resources to prepare pretrial submissions before the cross-motions for summary judgment motion are resolved. An imminent trial date would also needlessly diminish the time afforded to the Court to consider and address the weighty issues raised by the briefing.

It is inefficient to prepare pretrial submissions while the summary judgment motions are still pending. At this stage, the parties do not know whether there will even be a trial. If the Court grants Veeva's motion for summary judgment, the parties would have spent a tremendous amount of time and resources preparing exhibit lists, deposition designations, and other materials for a trial that was never going to happen. One reason that parties move for summary judgment is to avoid unnecessary work on claims or issues that are not fit for trial.

Even if there were a trial, the order on the summary judgment and *Daubert* motions could render much of the pretrial submissions obsolete. The parties do not yet know what issues would be involved in any trial, or how long trial would be. The summary judgment motions implicate every element of IQVIA's trade-secret claims. The summary judgment order will therefore determine whether the trial involves only the element of secrecy, only the element of misappropriation, only questions of damages, all three of those elements, or a combination of any two. It will provide guidance regarding the weighty legal questions raised by the parties' motions, relating to, for example, trade secrecy and public data; transparency reporting; extraterritorial application of the trade-secret laws; and the viability of trade-secret claims when the defendant is not alleged to have misappropriated or even received the identified secrets. This means that after the order is issued, the parties would likely have to revisit every part of the pretrial submissions, from the witness lists, exhibit lists, and deposition designations to the jury instructions and statement of undisputed facts. That, too, would be wasteful.

IQVIA's proposed schedule would also put the Court on a short timer. Trial would be just around the corner. Summary judgment should be decided sufficiently in advance of trial not only to allow the parties to incorporate the Court's holdings and guidance, but also to set aside time to resolve other open issues. IQVIA's request leaves little time to consider and rule on the parties' motions, which were filed less than two months ago and have not yet been argued. These motions, including Veeva's motion to exclude IQVIA's expert on damages, raise issues that go to the heart of the case and any trial. The schedule should not constrain the Court's consideration.

### II.   IQVIA's Proposed Pretrial Schedule Is Unworkable

IQVIA's latest proposal includes lightning-fast pretrial deadlines that, due to the passage of time, are now even more compressed than when IQVIA first proposed them. By reverse-engineering its desired schedule to end on the same February 10 trial date, IQVIA's constructed "proposal" now allows the parties just 60 days—without factoring in the holidays—to complete all pretrial submissions. That is unrealistic. The goal should be an orderly resolution to this long-running case, not a frantic one.

Hon. Julien X. Neals
November 12, 2024
Page 3

As an example, IQVIA would have the parties complete all pretrial disclosures by December 6—in less than four weeks (with Thanksgiving in between). The parties have taken more than 100 depositions, produced 3 million documents, designated 12 expert witnesses, served thousands of pages of expert discovery, and served large volumes of other written discovery responses. Designating testimony from such a large volume of depositions and sorting through that volume of potential exhibits in such a short timeframe would require around-the-clock effort— effort that would be largely meaningless since everything would need to be revisited after the summary judgment and *Daubert* order shapes the issues that are to be tried.

The remaining proposed deadlines are equally problematic. Objections and counter-designations to inevitably expansive pretrial disclosures would be due just two weeks after the initial disclosures are exchanged. At the same time, the parties would have to draft jury instructions, a statement of undisputed facts, a statement of the case to be tried, a jury questionnaire, and a verdict form. The parties would then turn to motions *in limine*, pretrial briefs, objections to counter-designations, and other important materials, with only a few weeks to complete all of them, all over the holidays and while simultaneously preparing for argument on summary judgment and *Daubert* motions. That is to say nothing of the preparation necessary for the trial itself, such as the preparation of opening statements and witness examinations.

IQVIA has not even explained how this case could be tried in five days in February. The briefing on IQVIA's motion for summary judgment—which, IQVIA claims, addresses only some of its allegations—includes about 700 exhibits. IQVIA has designated seven expert witnesses. Veeva has designated five. Without greater explanation, the Court should not credit IQVIA's suggestion that this case can be presented to the jury in five trial days.

The necessary work cannot be done—or done well—in the short time allowed by IQVIA's proposed schedule. Independently, IQVIA's proposed schedule does leave any realistic opportunity for the parties to meet and confer about the myriad pretrial issues that arise, or for the Court to resolve those issues. All of this in service of a trial date that is fundamentally arbitrary.

### III.     Many Outstanding Motions Require Resolution Before Trial

IQVIA's proposed schedule would also pressure the Court. There are at least eight outstanding motions that must be addressed before trial. If trial were scheduled for February, that would leave the Court very little time to decide them.

The Court must first resolve the parties' cross-motions for summary judgment and three *Daubert* motions. *See* Dkts. 629, 631, 633, 657, 659. As Veeva has explained, these motions involve weighty issues to which the Court should give due consideration. The Court's decision should not be rushed.

After finishing the summary judgment and *Daubert* order, the Court would have to turn to IQVIA's pending motion for reconsideration of the Court's order ruling that IQVIA waived privilege over the communications of IQVIA's Deputy General Counsel, Harvey Ashman,

Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601

Phone: 201.488.8200
Fax: 201.488.5556
www.pashmanstein.com

regarding its Third-Party Access ("TPA") policy. Dkt. 590. Veeva is entitled to these documents well before trial. IQVIA asserts that it takes "reasonable measures" to protect its data in large part because of this TPA policy. Yet for years, IQVIA has improperly withheld non-privileged documents that reflect information about IQVIA's TPA policy, such as its intent, the degree to which it is enforced, and its effectiveness. IQVIA should not be permitted to spring those documents on Veeva on the eve of trial or, worse, withhold them altogether.

The Court would also have to revisit Veeva's objections to the Special Master's recommendation of sanctions. Dkt. 353. The Court previously reserved judgment on this matter until "the completion of discovery and pretrial motions." Dkt. 583 at 22, 28; *see* Dkt. 353. The resolution of this appeal—and whether and to what extent IQVIA can present its "spoliation" theory to the jury—will meaningfully affect both parties' presentations at trial. If the Court allows it, there is no doubt that IQVIA would continue its long-running effort to make this case about sanctions.

The Third Circuit is also still considering Veeva's petition for a writ of mandamus reversing the decision to bifurcate IQVIA's trade-secret claims. No. 24-1978, Dkt. 1-1 (3d Cir. 2024). The Third Circuit typically denies meritless mandamus petitions quickly and summarily. It has not yet ruled on Veeva's petition, and it even called for IQVIA's response. A trade-secret-only trial should not be scheduled while its propriety is under close scrutiny.

There are additional issues that are not yet ripe but may require resolution before trial. Depending on how the summary judgment motions are decided, the Court may need to determine whether IQVIA has satisfied Veeva's interrogatories with respect to trade-secret identification. *See* Dkts. 581, 585–588. There will also be motions *in limine* and other evidentiary and procedural disputes.

\*   \*   \*

There is no reason to scramble to get this case ready this case for trial by February. As the Court recognized during the October 9 conference, that date was never "set in stone." Oct. 9, 2024 Hrg. Tr. at 24–25. Its significance was as "some sort of guidepost to work for and work against." *Id.* at 24. The parties have made substantial progress in the last year, filing five significant and potentially dispositive motions. But it is now clear that a February trial is not workable. The issues to be tried (if any) remain unknown, there is insufficient time to compile voluminous pretrial submissions, and several important motions must be resolved before trial. The Court, the parties, and counsel have invested enormous time and resources into this litigation over the years. It should not end in unnecessary haste.

Veeva is committed to an efficient and prompt resolution of this matter, but IQVIA's proposal is not sensible. In the interest of moving this entire case forward, Veeva respectfully suggests that the parties should brief summary judgment and *Daubert* motions relating to Veeva's antitrust claims while the Court considers the pending trade-secret motions. After the relevant

Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601

Phone: 201.488.8200
Fax: 201.488.5556
www.pashmanstein.com

summary judgment orders are issued, the Court and the parties should confer on a plan to address any outstanding issues and efficiently prepare this case for any trials.

Respectfully,

s/ David N. Cinotti
David N. Cinotti

cc: Counsel of record

Court Plaza South           Phone: 201.488.8200
21 Main Street, Suite 200   Fax: 201.488.5556
Hackensack, NJ 07601        www.pashmanstein.com